# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

VENUE: SAN JOSE



UNITED STATES OF AMERICA,

V.

# CR 18    465



UNITED MICROELECTONICS
CORPORATION, et al.,

DEFENDANT(S).

# INDICTMENT

VIOLATIONS:

Title 18, United States Code, Section 1831(a)(5) – Conspiracy to Commit Economic Espionage;
Title 18, United States Code, Section 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets;
Title 18, United States Code, Section 1831(a)(1) – Economic Espionage (Theft of Trade Secrets);
Title 18, United States Code, Section 1831(a)(2) – Economic Espionage (Copying and Conveying of Stolen Trade
Secrets); Title 18, United States Code, Section 1831(a)(3) and (2) – Economic Espionage (Receipt and Possession
of Stolen Trade Secrets); Title 18 United States Code, Section 1832(a)(1) – Theft of Trade Secrets;
Title 18, United States Code, Section 2323 – Criminal Forfeiture

A true bill.

_Linder Dov_

Foreman

Filed in open court this _27th_ day of

_Sept, 2018_

**ROSE MAHER**

_Roer_

Clerk

~~Thomas S. Hixson~~

Bail, $ _____

NO PROCESS

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

─── OFFENSE CHARGED ───

See Attached

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

PENALTY:

See Att...

─── Name of District Court, and/or Judge/Magistrate Location ───

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

FILED
SEP 27 2018
NORTHERN DISTRICT COURT
DISTRICT COURT
SAN JOSE CALIFORNIA

─── DEFENDANT - U.S ───

United Microelectronics Corporation, Inc.

DISTRICT COURT NUMBER

CR 18   465

─── PROCEEDING ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY   ☐ DEFENSE

☐ this prosecution relates to a
pending case involving this same
defendant

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

SHOW
DOCKET NO.

MAGISTRATE
CASE NO.

─── DEFENDANT ───

IS NOT IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

☐ Federal   ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer   ☐ Yes   If "Yes"
been filed?   ☐ No   give date
filed

DATE OF
ARREST

Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED
TO U.S. CUSTODY

Month/Day/Year

Name and Office of Person
Furnishing Information on this form   ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   John Hemann and Shiao Lee

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT   Bail Amount:

If Summons, complete following:
☒ Arraignment   ☒ Initial Appearance

Defendant Address:

United Microelectronics Corporation, Inc.

Comments:

* Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time: November 19, 2018   @ 1:30pm

Before Judge: Duty Magistrate

## PENALTY SHEET ATTACHMENT (UNITED MICROELECTRONICS CORPORATION, INC.)

### Offenses Charged

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

### Maximum Penalties

Counts One and Seven:
- A fine not more than the greater of $10,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment

Count Two:
- A fine not more than the greater of $5,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment

A1

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

FILED

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SEP 27 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

### OFFENSE CHARGED

See Attached

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  See

### DEFENDANT - U.S

▶ Fujian Jinhua Integrated Circuit, Co., Ltd.

DISTRICT COURT NUMBER

CR 18 465 LHK

MMC SVK

### PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY  ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person
Furnishing Information on this form     ALEX G. TSE

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)     John Hemann and Shiao Lee

### DEFENDANT

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction          ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer     ☐ Yes     If "Yes"
been filed?      ☐ No      give date
                            filed

DATE OF
ARREST          Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED
TO U.S. CUSTODY     Month/Day/Year

☐ This report amends AO 257 previously submitted

### ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance

Defendant Address:

Fujian Jinhua Integrated Circuit, Co., Ltd.

Comments:

Bail Amount:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: November 19, 2018     Before Judge: Duty Magistrate

@ 1:30pm

# PENALTY SHEET ATTACHMENT (FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.)

## Offenses Charged

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

## Maximum Penalties

Counts One and Seven:
- A fine not more than the greater of $10,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment

Count Two:
- A fine not more than the greater of $5,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided;
- Restitution;
- Asset Forfeiture; and
- $400 special assessment

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT
☐ SUPERSEDING

─── **OFFENSE CHARGED** ───

See Attached

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  See Attached

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

─── **DEFENDANT - U.S** ───

► CHEN ZHENGKUN a.k.a. STEPHEN CHEN

**DISTRICT COURT NUMBER**

**CR 18    465**

─── **PROCEEDING** ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form  ALEX G. TSE

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)  John Hemann and Shiao Lee

**DEFENDANT**

IS *NOT* IN CUSTODY
1) ☒ Has not been arrested, pending outcome this proceeding.
If not detained give date any prior summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☐ On this charge

5) ☐ On another conviction
} ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No
} If "Yes" give date filed

DATE OF ARREST  Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY  ► Month/Day/Year

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT     Bail Amount:

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance      *Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment
Defendant Address:

CHEN ZHENGKUN a.k.a. STEPHEN CHEN

Date/Time:  November 19, 2018    Before Judge:  Duty Magistrate

Comments:

**PENALTY SHEET ATTACHMENT (CHEN ZHENGKUN, a.k.a. STEPHEN CHEN)**

**Offenses Charged**

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

**Maximum Penalties**

Counts One and Seven:
- $5,000,000 fine or twice the gross gain or loss
- 15 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

Count Two:
- $250,000 fine or twice the gross gain or loss
- 10 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

AO 257 (Rev. 6/78)

| **DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT** |
|---|

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

─── **OFFENSE CHARGED** ───

See Attached

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:   See Attached

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

FILED
SEP 2018
NO. ___ SUSAN Y. SOONG
CLERK, U.S.
U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE, CALIFORNIA

─── **DEFENDANT - U.S** ───

► CHEN ZHENGKUN a.k.a. STEPHEN CHEN

**DISTRICT COURT NUMBER**

C R  18   465

─── **PROCEEDING** ───

Name of Complaintant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY   ☐ DEFENSE

SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   John Hemann and Shiao Lee

─── **DEFENDANT** ───

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges

If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No
If "Yes" give date filed

**DATE OF ARREST** ►

Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY** ►

Month/Day/Year

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☒ Arraignment   ☒ Initial Appearance

Defendant Address:

CHEN ZHENGKUN a.k.a. STEPHEN CHEN

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: November 19, 2018   Before Judge: Duty Magistrate

@ 1:30 pm

Comments:

**PENALTY SHEET ATTACHMENT (CHEN ZHENGKUN, a.k.a. STEPHEN CHEN)**

**Offenses Charged**

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

**Maximum Penalties**

Counts One and Seven:
- $5,000,000 fine or twice the gross gain or loss
- 15 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

Count Two:
- $250,000 fine or twice the gross gain or loss
- 10 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

A3

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

─── OFFENSE CHARGED ───

See Attached

☐ Petty
☐ Minor
☐ Misde-
meanor
☐ Felony

PENALTY:

See Att...

─── Name of District Court, and/or Judge/Magistrate Location ───

**NORTHERN DISTRICT OF CALIFORNIA**

SAN JOSE DIVISION

─── DEFENDANT - U.S ───

► HE JIANTING a.k.a. J.T. HO

DISTRICT COURT NUMBER

**CR 18   465**

MMC

### PROCEEDING

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:

☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

} MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form   ALEX G. TSE

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   John Hemann and Shiao Lee

### DEFENDANT

IS *NOT* IN CUSTODY
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY

4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges

} ☐ Federal ☐ State

If answer to (6) is "Yes", show name of institution

Has detainer ☐ Yes      If "Yes"
been filed?                give date
          ☐ No           filed

DATE OF ►                Month/Day/Year
ARREST

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED ►       Month/Day/Year
TO U.S. CUSTODY

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☒ SUMMONS  ☐ NO PROCESS*  ☐ WARRANT      Bail Amount:

If Summons, complete following:
☒ Arraignment  ☒ Initial Appearance

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Defendant Address:

HE JIANTING a.k.a. J.T. HO

Comments:

Date/Time: November 19, 2018   Before Judge: Duty Magistrate – SVK

@ 1:30 pm

**PENALTY SHEET ATTACHMENT (HE JIANTING a.k.a. J.T. HO)**

**Offenses Charged**

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Five: 18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying Trade Secrets)

Count Six: 18 U.S.C. § 1832(a)(1) – Theft of Trade Secrets

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

**Maximum Penalties**

Counts One, Five, and Seven:
- $5,000,000 fine or twice the gross gain or loss
- 15 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

Counts Two and Six:
- $250,000 fine or twice the gross gain or loss
- 10 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

─── **OFFENSE CHARGED** ───

See Attached

☐ Petty
☐ Minor
☐ Misde-
     meanor
☒ Felony

PENALTY:   See Attached

Name of District Court, and/or Judge/Magistrate Location

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

─── **DEFENDANT - U.S** ───

▶ WANG YUNGMING a.k.a. KENNY WANG

**DISTRICT COURT NUMBER**

CR 18 465

─── **PROCEEDING** ───

Name of Complainant Agency, or Person (& Title, if any)

Federal Bureau of Investigation

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
   ☐ U.S. ATTORNEY   ☐ DEFENSE
   } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant
   } MAGISTRATE CASE NO.

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
   }

Name and Office of Person Furnishing Information on this form   ALEX G. TSE

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   John Hemann and Shiao Lee

─── **DEFENDANT** ───

**IS NOT IN CUSTODY**
   Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction
6) ☐ Awaiting trial on other charges
   } ☐ Federal   ☐ State

   If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No
   } If "Yes" give date filed

**DATE OF ARREST**   Month/Day/Year

Or... if Arresting Agency & Warrant were not

**DATE TRANSFERRED TO U.S. CUSTODY**   ▶ Month/Day/Year

☐ This report amends AO 257 previously submitted

─── **ADDITIONAL INFORMATION OR COMMENTS** ───

PROCESS:
☒ SUMMONS   ☐ NO PROCESS*   ☐ WARRANT   Bail Amount: _____

If Summons, complete following:
☒ Arraignment   ☒ Initial Appearance

Defendant Address:

WANG YUNGMING a.k.a. KENNY WANG

*Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment*

Date/Time: November 19, 2018   Before Judge: Duty Magistrate

Comments:

## PENALTY SHEET ATTACHMENT (WANG YUNGMING a.k.a. KENNY WANG)

### Offenses Charged

Count One: 18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage

Count Two: 18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets

Count Three: 18 U.S.C. § 1831(a)(1) – Economic Espionage (Theft of Trade Secrets)

Count Four: 18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying Trade Secrets)

Count Seven: 18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets)

### Maximum Penalties

Counts One, Three, Four, and Seven:
- $5,000,000 fine or twice the gross gain or loss
- 15 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

Count Two:
- $250,000 fine or twice the gross gain or loss
- 10 years imprisonment
- 3 years supervised release
- $100 special assessment
- Restitution
- Forfeiture

1  ALEX G. TSE (CABN 152348)
2  United States Attorney

3                          UNDER SEAL

4                                                     FILED

5                                            SEP 27 2018

6                                       SUSAN Y. SOONG
                                   CLERK, U.S. DISTRICT COURT
7                                 NORTHERN DISTRICT OF CALIFORNIA

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11  UNITED STATES OF AMERICA,          CR 18 465 LHK
12                                     )  NO.
          Plaintiff,                   )
13                                     )  VIOLATIONS:
      v.                               )  Title 18, United States Code, Section 1831(a)(5) –
14                                     )  Conspiracy to Commit Economic Espionage;
                                       )  Title 18, United States Code, Section 1832(a)(5) –
15  UNITED MICROELECTONICS             )  Conspiracy to Commit Theft of Trade Secrets;
    CORPORATION; FUJIAN JINHUA         )  Title 18, United States Code, Section 1831(a)(1) –
16  INTEGRATED CIRCUIT, CO., LTD.; CHEN )  Economic Espionage (Theft of Trade Secrets);
    ZHENGKUN, a.k.a. STEPHEN CHEN; HE  )  Title 18, United States Code, Section 1831(a)(2) –
17  JIANTING, a.k.a. J.T. HO; and WANG )  Economic Espionage (Copying and Conveying of
    YUNGMING, a.k.a. KENNY WANG.       )  Stolen Trade Secrets);
18                                     )  Title 18, United States Code, Section 1831(a)(3) and
          Defendants.                  )  (2) – Economic Espionage (Receipt and Possession of
19                                     )  Stolen Trade Secrets);
                                       )  Title 18 United States Code, Section 1832(a)(1) –
20                                     )  Theft of Trade Secrets;
                                       )  Title 18, United States Code, Section 2323 –
21                                     )  Criminal Forfeiture
                                       )
22  _____)  **SAN JOSE VENUE**

23                      I N D I C T M E N T

24  The Grand Jury charges:

25                INTRODUCTORY ALLEGATIONS

26       1.      Dynamic random-access memory (DRAM) is a memory device product used in

27  electronics to store information.  DRAM stores each bit of data in a separate tiny capacitor within an

28  integrated circuit.  DRAM is a technologically advanced commodity; it is widely used in digital

INDICTMENT                                1

electronics where low-cost and high-capacity memory is required. DRAM is used in leading-edge computing, consumer, networking, automotive, industrial, embedded, and mobile productions, and is a product that is used or intended for use in interstate or foreign commerce.

2. Growth of the electronics industry in the People's Republic of China (PRC) created significant demand for memory products such as DRAM. The Central Government and State Council of the PRC publicly identified the development of DRAM technology as a national economic priority because PRC companies had not been able to develop technologically advanced DRAM production capabilities, and PRC electronics manufacturers relied on producers outside the PRC to supply DRAM. DRAM production technology was closely held by manufacturers in the United States, South Korea, and Taiwan, including Micron Technology, Inc. ("Micron"), which had improved the technology through intensive research and development over many years.

3. Aware of the PRC's national priority and the barriers placed by non-PRC manufacturers, including Micron, on access to the technology, at the times set forth below, individuals and companies named in this Indictment obtained DRAM trade secrets belonging to Micron and conveyed information containing those trade secrets to a company controlled by the PRC government without authorization from Micron.

Defendants

4. Defendant United Microelectronics Corporation ("UMC") was a semiconductor foundry company headquartered in Taiwan with global offices in Taiwan, China, Europe, Singapore, Japan, Korea, and the United States, including in Sunnyvale, California. UMC was publicly listed and traded on the NASDAQ. UMC's primary business was to mass produce integrated-circuit logic products based on designs and technology developed and provided by its customers. UMC did not, prior to the events charged in this Indictment, possess advanced DRAM-related technology.

5. Defendant Fujian Jinhua Integrated Circuit, Co., Ltd. ("Jinhua") was established in February 2016 in the Fujian Province of China for the sole purpose of designing, developing, and manufacturing DRAM. Jinhua was created with US$5.65 billion in funding provided by the PRC government and PRC government entities. Its two major shareholders were Electronics & Information Group Co., Ltd. and Jinjiang Energy Investment Co., Ltd., which were PRC state-owned enterprises.

Jinhua's self-described aim was "to introduce intellects, technology, and resources from Taiwan and the world, create the first self-dependent DRAM production project and 12 inch DRAM wafer line in China and fill the blank." Jinhua described itself as having the "duty to realize the domestic manufacturing of [integrated circuit] chip and aims to become a state owned [integrated circuit] manufacturing enterprise with advanced process and [an] independent intellectual property system."

6.     In or around January 2016, UMC entered into a technology cooperation agreement with Jinhua to develop DRAM technology for a product that UMC referred to as the "32nm and 32Snm DRAM" or "F32nm/F32Snm DRAM." Under the technology cooperation agreement, UMC would provide the DRAM research and development, and Jinhua would provide the manufacturing and fabrication facilities to mass-produce DRAM. UMC and Jinhua were to jointly own the DRAM technology and development. Under the terms of the agreement, Jinhua would provide US$300 million for purchasing necessary equipment for DRAM development and would pay US$400 million to UMC based on the progress of DRAM development. In or around April 2016, Taiwan's Ministry of Economics approved the UMC and Jinhua technology cooperation agreement.

7.     Defendant Chen Zhengkun (a.k.a. Stephen Chen) was a Taiwanese national and former General Manager and Chairman of Rexchip Electronics Corporation ("Rexchip"), a company that Micron acquired in or around 2013, which formed Micron Memory Taiwan Co., Ltd. ("MMT"), Micron's Taiwan subsidiary. Chen became the President of MMT and Site Director of MMT's Fabrication Facility 16, responsible for making Micron's 25nm DRAM chip. Chen resigned from MMT in July 2015 and began working for UMC as the Senior Vice President and Fabrication Director in Taiwan in September 2015. In or around January 2016, Chen helped negotiate the terms of the UMC/Jinhua technology cooperation agreement and became the Senior Vice President of UMC's newly formed New Business Development ("NBD") division, tasked with overseeing UMC's F32nm DRAM development project and the technology cooperation agreement between UMC and Jinhua. In or around February 2017, UMC released Chen from his position at UMC, and Chen became the President of Jinhua in charge of its DRAM production facility.

8.     Defendant He Jianting (a.k.a. J.T. Ho) was a Taiwanese national and former process integration manager at MMT, whom Chen recruited to join UMC. Ho resigned from MMT in or around

October 2015 and began working at UMC in its process integration division in November 2015.  Prior to leaving MMT, Ho stole Micron confidential and proprietary materials and used the stolen materials in his work at UMC to advance the development of UMC's F32 DRAM technology design for transfer to Jinhua. In April 2016, Ho became a project integration manager in UMC NBD's Project Management 2 Department.  Between about December 2015 and January 2017, Ho communicated with another former MMT employee, Wang Yungming (a.k.a. Kenny Wang), using the LINE Messaging platform and personal emails, to share and exchange confidential and proprietary Micron information to further UMC's F32nm DRAM technology design.

9.      Defendant Kenny Wang was a Taiwanese national and former MMT employee, whom Chen hired to join UMC.  At MMT, Wang was a Process Integration/Device Section Manager and remained in that role until his promotion to Product Quality Integration Section Manager in January 2016 and resignation from MMT in April 2016.  While at MMT, Wang shared and exchanged confidential and proprietary Micron information with Ho, who at the time was working at UMC.  Prior to his official exit from MMT, Wang misappropriated over 900 Micron files, some containing Micron confidential and proprietary information for the design of the company's DRAM technology in its current and future generations that were still in its research and development phase.  Wang downloaded trade secrets from Micron's company servers in the United States, took them with him when he left the company, and stored the files on his Google Drive account located on servers in the United States.  After Wang left MMT in April 2016 and began working at UMC immediately thereafter, he used the misappropriated confidential and proprietary Micron materials to further UMC's design of the F32nm DRAM design process.

<u>Micron Trade Secrets and Confidentiality Provisions</u>

10.     Micron is the only United States-based company that manufactures DRAM.  Micron's headquarters were in Boise, Idaho, and it maintained a large office in the Northern District of California. The company became a major participant in the global semiconductor industry with its purchase of Texas Instruments' DRAM memory business in 1998 and thereafter specialized in the advanced research and development and manufacturing of memory products including, but not limited to, DRAM. Micron provides approximately 20-25% of the world supply of DRAM.  The trade secrets identified

below consisted of detailed, confidential information used to design and construct efficient

manufacturing processes for advanced DRAM technology.  The development of this information and its

confidentiality provides Micron with a significant competitive advantage in the world market. This

competitive advantage allows Micron to remain in business and continue to research and develop

advanced DRAM for commercial and other uses.

11.     MMT was a subsidiary of Micron.  MMT was one of Micron's fabrication plants in

Taiwan that engaged in making DRAM.  MMT assigned all intellectual property, including all trade

secrets that it developed, to Micron.

12.     Micron's DRAM technology included, but was not limited to, the following trade secrets,

as defined in 18 U.S.C. § 1839(3):

        a.     **Trade Secret 1**: The Micron process to manufacture and produce DRAM

contained in the totality of information stolen by Wang and Ho from Micron and provided to UMC and

Jinhua under the direction of Chen and others.  Trade Secret 1 included ways and means in which

proprietary and non-proprietary components were compiled and combined by Micron to form substantial

portions of the DRAM design and manufacturing process, including Trade Secrets 2 through 8, below.

        b.     **Trade Secret 2**: A 233-page PDF document identified with digital filename

"FAB16 90s Traveler-20150518" (hereafter "25nm Process Traveler document").  The 25nm Process

Traveler document contained comprehensive and very detailed information documenting the beginning-

to-end manufacturing process for Micron's 25nm DRAM product, including details of specifications and

production processes.

        c.     **Trade Secret 3**: An Excel spreadsheet with multiple tabs identified with digital

filename "(ALL) IMP conditions Table_20150318" (hereinafter "Implant Conditions Table").  The

Implant Conditions Table contained implant data required to make each of the various different

transistor types required to make a 25nm DRAM product.  Data in the Implant Conditions Table

included very specific details of the relevant particular process code - which could be matched back to

process descriptions in Trade Secret 2.

        d.     **Trade Secret 4**: An Excel spreadsheet with multiple tabs identified with digital

filename "Implant Condition for MES setting_1015" (hereafter "Implant Conditions for MES

1  document"). MES referred to a particular software used to track the 25nm DRAM product through the
2  fabrication process, and the Implant Conditions for MES document was a tracking document that
3  informed the software. The document inputted into the MES software enabled Micron to closely
4  monitor and manage its 25nm DRAM fabrication process. The Implant Conditions for MES document
5  provided critical details to manage the fabrication of the 25nm DRAM product through the fabrication
6  process and provided information on the precision and outcome of each particular step.

7          e.      **Trade Secret 5**: An Excel spreadsheet with multiple tabs identified with digital
8  filename "[DR25nmS] Design rules Periphery_EES_2012000026-013_Rev.13" (hereafter "Design
9  Rules document"). The Design Rules document contained detailed design specifications for the
10  architecture of the 25nm DRAM product, including details on how to layer Micron's 25nm DRAM
11  product. The Design Rules document included precise information on how to build distances between
12  elements in a DRAM product to avoid electrical and physical interference. The Design Rules document
13  included Micron trade secrets related to these types of specifications, which were critical information
14  needed to build a 25nm DRAM product.

15          f.      **Trade Secret 6**: A 302-page PDF document identified with digital filename
16  "DRAM_100_series_(20nm)_traveler_(v00h) 150730" (hereafter "20nm Process Traveler document").
17  The 20nm Process Traveler document contained the specific types of details summarized in the 25nm
18  Process Traveler document but for the next generation 20nm DRAM product. The 20nm Process
19  Traveler document also contained details regarding Micron's upgrade from the 25nm to the 20nm
20  DRAM product and contained trade secret information pertinent to both generations of the product.

21          g.      **Trade Secret 7**: A 360 page PDF identified with digital filename
22  "dram_110_series_(1xnm)_ traveler_(z11a)-20150915.pdf" (hereafter "1xnm Process Traveler
23  document"). The 1xnm Process Traveler document contained the comprehensive and very detailed
24  information documenting the beginning-to-end manufacturing process for Micron's 1xnm DRAM
25  product, including details of specifications and production processes. The 1xnm DRAM product was
26  Micron's most advanced DRAM at the time. The 1xnm Process Traveler document also contained
27  details regarding Micron's upgrade from the 20nm DRAM product to the 1xnm DRAM product and
28  contained trade secret information pertinent to both generations of the product.

INDICTMENT                                6

h.      **Trade Secret 8**: A 260 page PDF identified with digital filename "dram_1xnm_process_(Z11AA41200)_-_summary_flow_document" (hereafter "1xm Process Summary Flow document"). The 1xnm Process Summary Flow document contained the manufacturing process of the 1xn DRAM chip as it flowed through the manufacturing facility. It compared the 1xnm process flow with prior generations of DRAM products. It described the evolution of the DRAM product to the 1xnm generation, explaining the purpose and reasons why certain changes and upgrades were made from one generation to the next.

13.     Micron took reasonable measures to keep Trade Secrets 1 through 8 secret, including physical, electronic, legal, and policy measures.

14.     The information contained in Trade Secrets 1 through 8 derived independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

15.     The value of Trade Secrets 1 through 8, and each of them, to UMC and Jinhua, was at least $400 million and up to $8.75 billion, including expenses for research and design and other costs of reproducing the trade secrets that UMC and Jinhua avoided by the actions alleged in Counts 1, 2, and 7.

///
///
///
///
///
///
///
///
///
///
///

1   COUNT ONE:   (18 U.S.C. § 1831(a)(5) – Conspiracy to Commit Economic Espionage)

2   16.   The allegations contained in Paragraphs 1 through 15 are re-alleged.

3   17.   Beginning in or about January 2016, and continuing to the date of this Indictment, in the

4   Northern District of California and elsewhere, defendants,

5                   UNITED MICROELECTONICS CORPORATION,
                    FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,
6                   CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,
                    HE JIANTING, a.k.a. J.T. HO,
7                   WANG YUNGMING, and a.k.a. KENNY WANG,

8   together with others known and unknown to the Grand Jury, knowingly combined, conspired, and

9   agreed to:

10          a.   knowingly steal and without authorization appropriate, take, carry away, and

11   conceal, and by fraud, artifice, and deception obtain trade secrets belonging to Micron; and

12          b.   knowingly and without authorization copy, duplicate, sketch, draw, photograph,

13   download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and

14   convey trade secrets belonging to Micron; and

15          c.   knowingly receive, buy, and possess trade secrets belonging to Micron, knowing

16   the same to have been stolen, appropriated, obtained, and converted without authorization; intending and

17   knowing that the offenses would benefit a foreign government, namely the PRC, and a foreign

18   instrumentality, namely Jinhua.

19                          Manner and Means of the Conspiracy

20   18.   In order to develop DRAM technology and production capabilities without investing

21   years of research and development and the expenditure of many millions of dollars, UMC and Jinhua, a

22   company entirely funded by the PRC government, and employees of both, conspired to circumvent

23   Micron's restrictions on its proprietary technology and illegally obtain DRAM technology that had been

24   developed by Micron, including Trade Secrets 1 through 8.

25   19.   In or around February 2016, the PRC formed and funded Jinhua for the purpose of

26   developing, designing, and mass-producing advanced DRAM technology.  The PRC prioritized the

27   development of integrated circuit devices, which included DRAM, in its 13th Five-Year Plan, a national

28   plan that included objectives for China's economic priorities for the years 2016-2020, ratified by the

1 | National People's Congress, and which established the Chinese Communist Party's vision for the
2 | country's future developments.

3 |        20.      In or around January 2016, Jinhua and UMC negotiated and later entered into a
4 | technology cooperation agreement whereby, with funding from Jinhua, UMC would develop DRAM
5 | technology, transfer the technology to Jinhua, and Jinhua would mass produce DRAM.

6 |        21.      In the years leading up to the technology cooperation agreement, UMC did not have
7 | advanced DRAM technology and had not been producing DRAM.  UMC, however, had intentions to
8 | take over DRAM business in China.

9 |        22.      In September 2015, UMC hired Chen, who was previously the President of MMT and the
10 | site director of MMT's Fabrication Facility 16 in charge of producing Micron's 25nm DRAM product,
11 | to be the Senior Vice President of UMC.  In January 2016, UMC established the NBD division for
12 | developing DRAM technology to transfer to Jinhua and placed Chen in charge of the NBD division.

13 |        23.      From in or around October 2015 through April 2016, Chen recruited and hired several
14 | MMT employees to work for UMC, including Ho and Wang, among others.

15 |        24.      In or around November 2015, Chen hired Ho to work for UMC.  Prior to leaving MMT,
16 | Ho stole confidential and proprietary materials belonging to Micron, including trade secrets pertaining to
17 | the prior, current, and future generations of Micron's DRAM technology, including the 80 (30nm), 90
18 | (25nm), 100 (20nm), and 110 (1Xnm) series DRAM.  Ho referenced the stolen Micron materials to
19 | support UMC's design of the F32nm DRAM technology for transfer to Jinhua pursuant to the two
20 | companies' technology transfer agreement.  Ho stored the stolen Micron trade secrets, including Trade
21 | Secrets 1, 6, 7, and 8 on one or more digital devices belonging to UMC.

22 |        25.      Between in or around December 2015 and April 2016, Ho communicated with his former
23 | colleague Wang, who was still working at MMT.  Wang provided Ho with confidential and proprietary
24 | Micron information to further UMC's F32nm DRAM technology design, including information related
25 | to Micron's wafer specifications for its 25nm DRAM chip.

26 |        26.      On April 26, 2016, Wang left MMT's employment.  During Wang's exit interview from
27 | MMT, Wang told MMT that he was leaving to work at his family business, and he signed the MMT
28 | Declaration of Resignation, declaring and certifying that he did not keep any documents, confidential or

1  otherwise, belonging to the company, and that he destroyed any hard copy or electronic form in his

2  possession or control that were stored on non-Micron property, including computers, phone, personal

3  email, or file sharing accounts.

4      27.  Wang did not leave to work for his family business but rather immediately began

5  working for UMC.

6      28.  In the weeks leading up to Wang's resignation from MMT, he downloaded over 900

7  confidential and proprietary files belonging to Micron, including Trade Secrets 1-8, by downloading the

8  files from Micron servers and transferring them to USB external storage devices or uploading the files to

9  his personal Google Cloud account stored on servers in the United States.  Many of the files were

10 marked "Micron Confidential," "Micron Technology, Inc., Confidential and Proprietary," or "Micron

11 Confidential/Do Not Duplicate." The created dates in the Google files metadata showed that Wang

12 accessed Micron confidential and proprietary files both before and after he left Micron employment, and

13 while working at UMC.

14     29.  In the weeks leading up to Wang's resignation from MMT, Wang ran numerous deletion

15 processes and a CCleaner program on his laptop computer to mask his theft of Micron trade secrets.  He

16 also conducted numerous internet searches, accessing a number of publicly available news articles about

17 the PRC government's support of the growth of the DRAM business in the PRC, and specifically on

18 UMC and Jinhua's cooperation toward creating and producing DRAM.

19     30.  While working at UMC, Wang referenced Micron trade secrets to assist and further

20 UMC's development of its F32nm DRAM technology.  In or around July or August 2016, Wang, at the

21 direction of a UMC employee, referenced Micron's Trade Secret 5 and provided critical design rule data

22 to that employee to further UMC's development of its F32nm DRAM technology, knowing that UMC

23 would transfer the technology to Jinhua.  Wang used his UMC-assigned laptop to access his Google

24 Drive, download a copy of Trade Secret 5, and reference the data contained therein to assist UMC with

25 its F32nm DRAM design rule.  UMC employees were directed to use the information Wang provided to

26 complete UMC's F32nm DRAM design rule.  Trade Secret 5 and UMC's F32nm DRAM design rule

27 were stored in Wang's Google Drive, and a comparison of the two show Micron's information being

28 used in UMC's F32nm DRAM design rule document.

31.     On October 23, 2016, Chen, UMC, Jinhua, and government officials from the PRC attended a Jinhua/UMC recruiting fair in the Northern District of California to recruit employees from the United States with semi-conductor experience to work for both companies in either the research and development or sales and marketing division.  Chen stated at the recruiting fair that UMC had transferred its 25nm DRAM chip to Jinhua.  On or about October 24, 2016, Chen and others from UMC and Jinhua, including the mayors from the PRC cities of Jinjiang and Quanzhou, also visited several semiconductor equipment-manufacturing companies in the Northern District of California to facilitate its DRAM production process.  While at the recruiting fair and visiting the equipment-manufacturing companies in the Northern District of California, Chen, UMC, and Jinhua had obtained and were in continuous control of the stolen Micron trade secrets.

32.     From in or around September 2016 through March 2017, UMC and Jinhua filed five patents and a patent application concerning DRAM technology that contained information that was the same or very similar to technology described in Micron's Trade Secrets 2 and 6.  Ho was listed as an inventor in each of the five patents and the patent application.  The information contained in the patents and patent application contained Micron trade secrets that could not be obtained through reverse engineering.

33.     In February 2017, Taiwan law enforcement authorities executed search warrants and seized items from UMC's offices and Ho's and Wang's residences.  They found electronic and hard copy files containing Micron trade secrets in areas and on devices associated with UMC and belonging to Ho and Wang.  Knowing that Taiwan law enforcement was on its way to execute search warrants at UMC, a UMC employee directed both Ho and Wang to remove any electronic devices they possessed that contained Micron information on them.  Some of the electronic devices that contained Micron information were turned over to Taiwan law enforcement.  At least one electronic device that contained Micron information was not turned over to Taiwan law enforcement and had been concealed by UMC and Chen.

34.     In or around February 2017, in addition to his position at UMC, Chen assumed the post of President of Jinhua.

Overt Acts

35.     Between in or about October 2015 and April 2016, Chen recruited Micron employees Ho and Wang to work at UMC to develop F32nm DRAM technology.

36.     In or around January 2016, UMC entered a technology cooperation agreement to develop and transfer F32nm DRAM technology to Jinhua, a state-owned enterprise of the People's Republic of China.

37.     In or around October 2015, Ho stole Micron trade secrets, including Trade Secret 1 and files identified as Trade Secrets 6, 7, and 8, and brought them with him to UMC.  In or around December 2015, Ho saved files identified as Trade Secrets 6, 7, and 8 onto his UMC laptop.

38.     In or around December 2015, Ho obtained from Chen a UMC company laptop with USB capability in order to access confidential and proprietary Micron materials in support of the UMC F32nm DRAM project.

39.     On or about February 28, 2016, Wang downloaded Trade Secret 5 from Micron servers. On or about May 4, 2016 and June 29, 2016, Wang uploaded Trade Secret 5 to his BRH5476 Google Cloud Account.

40.     On or about April 23, 2016, Wang downloaded Trade Secrets 2, 3, and 4 from his Micron company laptop and uploaded Trade Secrets 2, 3, and 4 to his BRH5476 Google Cloud Account.

41.     On or about April 23, 2016, Wang downloaded Trade Secret 6 from Micron servers.  On or about April 23, 2016 and October 23, 2016, Wang uploaded Trade Secret 6 to his BRH5476 Google Cloud Account.

42.     On or about May 22, 2016, Wang emailed Trade Secret 5 from his BRH5476 Gmail Account to his UMC email account.

43.     In or around July or August 2016, Wang used stolen Micron trade secret material contained in Trade Secret 5 to assist UMC with its design of the F32nm DRAM product.  Information from Trade Secret 5 was put into UMC's document titled: UMC 32nm DRAM Process Topological Layout Rule Version 0.1, Phase 3 (Revision History Approved Date August 1, 2016).

44.     On or about October 10, 2016, Wang uploaded Trade Secrets 7 and 8 to his BRH5476 Google Cloud Account.

45.     On or about October 18, 2016, UMC and Jinhua filed a patent application (with corresponding Patent No. 9,679,901 B1) in the United States Patent and Trademark Office, which claimed priority to a Chinese patent application filed on September 22, 2016.  Ho was listed as a named inventor on the patent application.  The disclosures and inventions described in the patent application were based on or derived from misappropriated proprietary Micron materials identified in Trade Secrets 2 and 6.  On June 13, 2017, the United States Patent and Trademark Office issued patent 9,679,901 B1 to UMC and Jinhua.

46.     On or about October 23, 2016, UMC, Jinhua, and Chen, after having obtained Micron trade secrets and being in continuous control over them, arranged and coordinated a UMC/Jinhua recruiting event in the Northern District of California to recruit employees from the United States with semi-conductor experience to work for UMC/Jinhua.  PRC government officials attended the event to show support for the companies.  Chen announced at the recruiting event that UMC had transferred the F32nm DRAM design technology to Jinhua.

47.     On or about October 24, 2016, UMC, Jinhua, Chen, and government officials from the PRC visited Applied Materials, Lam Research, and KLA Tencor, semiconductor equipment-manufacturing companies in the Northern District of California, to facilitate and further its DRAM production process.

48.     In February 2017, a UMC employee directed Ho and Wang to remove and hide electronic devices containing Micron information from Taiwan law enforcement who were going to search UMC's offices.

49.     Sometime after February 2017, UMC and Chen concealed at least one electronic device containing misappropriated Micron materials from Taiwan law enforcement.

All in violation of Title 18, United States Code, Section 1831(a)(5).

///

///

///

///

///

1   COUNT TWO:          (18 U.S.C. § 1832(a)(5) – Conspiracy to Commit Theft of Trade Secrets)

2       50.    The allegations contained in Paragraphs 1 through 15 are re-alleged and incorporated as

3   if fully set forth herein.

4       51.    Beginning in or about October 2015, and continuing to the date of this Indictment, in the

5   Northern District of California and elsewhere, defendants,

6                       UNITED MICROELECTONICS CORPORATION,
                        FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,
7                       CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,
                        HE JIANTING, a.k.a. J.T. HO,
8                       WANG YUNGMING, and a.k.a. KENNY WANG,

9   together with others known and unknown to the Grand Jury, knowingly combined, conspired, and

10  agreed to:

11              a.    knowingly steal and without authorization appropriate, take, carry away, and

12  conceal, and by fraud, artifice, and deception obtain trade secrets belonging to Micron; and

13              b.    knowingly and without authorization copy, duplicate, sketch, draw, photograph,

14  download, upload, alter, destroy, photocopy, replicate, transmit, deliver, send, mail, communicate, and

15  convey trade secrets belonging to Micron; and

16              c.    knowingly receive, buy, and possess trade secrets belonging to Micron, knowing

17  the same to have been stolen, appropriated, obtained, and converted without authorization;

18  intending to convert a trade secret that is related to a product, namely DRAM, that is used in and

19  intended for use in interstate and foreign commerce, to the economic benefit of someone other than

20  Micron, and intending and knowing that the offense would injure Micron.

21                            Manner and Means of the Conspiracy

22      52.    The objects of the conspiracy were carried out, in part, as alleged in Paragraphs 18

23  through 34 above.

24                                    Overt Acts

25      53.    In furtherance of the conspiracy and to effect its objects, defendants committed the overt

26  acts alleged in paragraphs 34 through 49, among others, in the Northern District of California and

27  elsewhere.

28      All in violation of Title 18, United States Code, Section 1832(a)(5).

INDICTMENT                                14

1  COUNT THREE:     (18 U.S.C. § 1831(a)(1) – Economic Espionage (Theft of Trade Secrets))

2       54.     The allegations contained in Paragraphs 1 through 49 are re-alleged.

3       55.     From in or about March 2016 to in or about October 2016, in the Northern District of

4  California and elsewhere, defendant

5                       WANG YUNGMING, a.k.a. KENNY WANG,

6  intending and knowing that he would benefit a foreign government, foreign instrumentality, and foreign

7  agent, knowingly stole, and without authorization, appropriated, took, carried away, and concealed, and

8  by fraud, artifice, and deception, obtained Trade Secrets 1 through 8, in violation of Title 18, United

9  States Code, Section 1831(a)(1).

10  COUNT FOUR:     (18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying of Trade
11                                   Secrets))

12       56.     The allegations contained in Paragraphs 1 through 49 are re-alleged.

13       57.     From in or about March 2016 to in or about February 2017, in the Northern District of

14  California and elsewhere, defendant

15                       WANG YUNGMING, a.k.a. KENNY WANG,

16  intending and knowing that he would benefit a foreign government, foreign instrumentality, and foreign

17  agent, knowingly and without authorization, copied, duplicated, downloaded, uploaded, replicated,

18  transmitted, delivered, sent, communicated, and conveyed Trade Secrets 1 and 5, in violation of Title 18,

19  United States Code, Section 1831(a)(2).

20  COUNT FIVE:     (18 U.S.C. § 1831(a)(2) – Economic Espionage (Copying and Conveying of
21                                   Trade Secrets))

22       58.     The allegations contained in Paragraphs 1 through 49 are re-alleged.

23       59.     From in or about February 2016 to in or about February 2017, in the Northern District of

24  California and elsewhere, defendant

25                       HE JIANTING, a.k.a. J.T. HO,

26  intending and knowing that he would benefit a foreign government, foreign instrumentality, and foreign

27  agent, knowingly and without authorization, copied, duplicated, downloaded, uploaded, replicated,

28  transmitted, delivered, sent, communicated, and conveyed Trade Secret 1, in violation of Title 18,

1 | United States Code, Section 1831(a)(2).

2

3 | COUNT SIX:      (18 U.S.C. § 1832 (a)(1) – Theft of Trade Secrets)

4 |      60.    The allegations contained in Paragraphs 1 through 49 are re-alleged.

5 |      61.    In or about October 2015, in the Northern District of California and elsewhere, defendant

6 | HE JIANTING, a.k.a. J.T. HO,

7 | intending to convert a trade secret to the economic benefit of someone other than Micron, and intending

8 | and knowing that the offense would injure Micron, knowingly stole and without authorization

9 | appropriated, took, carried away, concealed, and by fraud, artifice and deception obtained Trade Secrets

10 | 1, 6, 7, and 8, related to a product and service used in and intended for use in interstate and foreign

11 | commerce, in violation of Title 18, United States Code, Section 1832(a)(1).

12

13 | COUNT SEVEN:      (18 U.S.C. §§ 1831(a)(3) and 2 – Economic Espionage (Receiving and Possessing Stolen Trade Secrets))

14 |      62.    The allegations contained in Paragraphs 1 through 49 are re-alleged.

15 |      63.    From in or about February 2016 to the present, in the Northern District of California and

16 | elsewhere, defendants,

17

18 | UNITED MICROELECTONICS CORPORATION,<br>FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,<br>CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,

19 | HE JIANTING, a.k.a. J.T. HO, and<br>WANG YUNGMING, a.k.a. KENNY WANG,

20

21 | intending and knowing that they would benefit a foreign government, foreign instrumentality, and

22 | foreign agent, knowingly received, bought, and possessed Trade Secrets 1 through 8, knowing them to

23 | have been stolen and appropriated, obtained, and converted without authorization, in violation of Title

24 | 18, United States Code, Sections 1831(a)(3) and 2.

24 | ///

25 | ///

26 | ///

27 | ///

28

CRIMINAL FORFEITURE ALLEGATION:

64.     The allegations contained in Counts One through Seven of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 2323(b).

65.     As a result of their conviction on one or more of the felony offenses set forth in Counts One through Seven of this Indictment, defendants,

UNITED MICROELECTONICS CORPORATION,
FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.,
CHEN ZHENGKUN, a.k.a. STEPHEN CHEN,
HE JIANTING, a.k.a. J.T. HO,
WANG YUNGMING, and a.k.a. KENNY WANG,

shall forfeit the following property, real or personal, to the United States:

(1)     Any article, the making or trafficking of which, is prohibited under 18 U.S.C. Chapter 90;

(2)     Any property used, or intended to be used, in any manner or part to commit or facilitate a violation of 18 U.S.C. Chapter 90; and

(3)     Any property constituting or derived from any proceeds obtained directly or indirectly as a result of a violation of 18 U.S.C. Chapter 90.

66.     If any of the property described above, as a result of any act or omission of the defendant:

a.     cannot be located upon exercise of due diligence;

b.     has been placed beyond the jurisdiction of the Court;

c.     has been transferred or sold to, or deposited with a third party;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

///
///
///
///
///
///

INDICTMENT                                              17

1  the United States of America shall be entitled to forfeiture of substitute property pursuant to Title

2  21, United States Code, Section 853(p), all pursuant to Title 18, United States Code, Section 2323(b).

3

4  DATED: _Sept. 29, 2018_    A TRUE BILL.

5

6                  _____

7                  FOREPERSON
                San Francisco Grand Jury No. 17-3

8

9  ALEX G. TSE
United States Attorney

10

11  _____

12  BARBARA VALLIERE
Chief, Criminal Division

13

14  Approved as to form:  _____

15           JOHN H. HEMANN
         Deputy Chief, Criminal Division
         SHIAO LEE

16           Assistant United States Attorney

17

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT          18

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

FILED

SEP 27 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## CRIMINAL COVER SHEET

*__Instructions:__ Effective November 1, 2016, this Criminal Cover Sheet must be completed and submitted, along with the Defendant Information Form, for each new criminal case.*

| | | |
|---|---|---|
| **CASE NAME:** | | **CASE NUMBER:** |
| USA V.   JUNITED MICROELECTONICS CORPORATION, et al. | | CR |
| **Is This Case Under Seal?** | No | CR 18  465 SVK LHK MMC |
| **Total Number of Defendants:** | Five | |
| **Does this case involve ONLY charges under 8 U.S.C. § 1325 and/or 1326?** | No | |
| **Venue (Per Crim. L.R. 18-1):** | San Jose | |
| **Is this a potential high-cost case?** | No | |
| **Is any defendant charged with a death-penalty-eligible crime?** | No | |
| **Is this a RICO Act gang case?** | No | |

**Assigned AUSA (Lead Attorney):** Shiao C. Lee

**Date Submitted:** 9/27/2018

**Comments:**

Form CAND-CRIM-COVER (Rev. 11/16)

RESET FORM       SAVE PDF