DAVID L. ANDERSON (CABN 149604)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JOHN H. HEMANN (CABN 165823)
SHIAO C. LEE (CABN 257413)
Assistant United States Attorneys

    450 Golden Gate Avenue, 9th Floor
    San Francisco, California 94102-3495
    Telephone: (415) 436-6924
    FAX: (415) 436-7234
    John.hemann@usdoj.gov
    Shiao.lee@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | )   CR 18-465 MMC |
|     Plaintiff, | ) |
| | )   UNITED STATES' RESPONSE TO JINHUA'S |
|     v. | )   MOTION FOR A BILL OF PARTICULARS |
| | ) |
| UNITED MICROELECTONICS | ) |
| CORPORATION, INC.; FUJIAN JINHUA | )   Date:  February 6, 2019 |
| INTEGRATED CIRCUIT, CO., LTD.; CHEN | )   Time: 2:15 p.m. |
| ZHENGKUN, a.k.a. STEPHEN CHEN; HE | ) |
| JIANTING, a.k.a. J.T. HO; and WANG | ) |
| YUNGMING, a.k.a. KENNY WANG. | ) |
| | ) |
|     Defendants. | ) |

**TABLE OF CONTENTS**

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    SUMMARY OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       A.    The Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

       B.    Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.    Summary of Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

       B.    Jinhua's Request for Information Should Be Denied Because It Falls
             Outside the Ambit of a Bill of Particulars . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       C.    The Indictment Adequately Informs Jinhua of the Charges it Faces, and
             Forthcoming Discovery Obviates Any Need for a Bill of Particulars . . . . . . . . . . . . . . 9

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3

4
*Gordon v. United States,*
    438 F.2d 858 (5th Cir. 1971) ................................................................. 6

5
*Rose v. United States,*
    149 F.2d 755 (9th Cir. 1945) ................................................................. 9

6

7
*Rubio v. United States,*
    22 F.2d 766 (9th Cir. 1927) ................................................................... 8

8
*United States v. Addonizio,*
    451 F.2d 49 (3d Cir. 1972) .............................................................. 6, 7

9

10
*United States v. Ayers,*
    924 F.2d 1468 (9th Cir. 1991) ............................................................... 6

11
*United States v. Buckner,*
    610 F.2d 570 (9th Cir. 1979) ............................................................ 8, 9

12

13
*United States v. Burgin,*
    621 F.2d 1352 (5th Cir. 1980) ............................................................... 6

14
*United States v. Diaz,*
    2006 WL 1833081 (N.D. Cal. June 30, 2006, J. Alsup) ....................... 8

15

16
*United States v. Dicesare,*
    765 F.2d 890 (9th Cir. 1985) ................................................................. 7

17
*United States v. Feola,*
    651 F. Supp. 1068 (S.D.N.Y. 1987) ...................................................... 8

18

19
*United States v. Giese,*
    597 F.2d 1170 (9th Cir. 1979) ..................................................... 7, 8, 10

20
*United States v. Johnson,*
    804 F.2d 1078 (9th Cir. 1986) ............................................................... 6

21

22
*United States v. Lazarenko,*
    564 F.3d 1026 (9th Cir. 2009) ............................................................... 5

23
*United States v. Long,*
    706 F.2d 1044 (9th Cir. 1983) ......................................................... 6, 10

24

25
*United States v. Manetti,*
    323 F. Supp. 683 (D. Del. 1971) ........................................................... 7

26
*United States v. Mitchell,*
    744 F.2d 701 (9th Cir. 1984) ................................................................. 6

27

28
*United States v. Murray,*
    527 F.2d 401 (5th Cir. 1976) ................................................................. 6

*United States v. Ojeikere,*
  299 F. Supp. 2d 254 (S.D.N.Y. 2004)............................................................................9

*United States v. Perez,*
  489 F.2d 51 (5th Cir. 1973)..........................................................................................6

*United States v. Reyna,*
  2004 WL 1197241 (W.D. Tex. June 1, 2004) ..............................................................6

*United States v. Ryland,*
  806 F.2d 941 (9th Cir. 1986)........................................................................................7

*United States v. Sherriff,*
  546 F.2d 604 (5th Cir. 1977)........................................................................................6

*United States v. Smith,*
  776 F.2d 1104 (3d Cir. 1985)........................................................................................6

*Wong Tai v. United States,*
  273 U.S. 77 (1927)........................................................................................................6

*Yeargain v. United States,*
  314 F.2d 881 (9th Cir. 1963)........................................................................................7

## FEDERAL RULES, STATUTES, AND REGULATIONS

18 U.S.C. § 2...............................................................................................................1

18 U.S.C. § 1831(a)(1).................................................................................................1

18 U.S.C. § 1831(a)(2).................................................................................................1

18 U.S.C. § 1831(a)(3).................................................................................................1

18 U.S.C. § 1831(a)(5).................................................................................................1

18 U.S.C. § 1832(a)(1).................................................................................................1

18 U.S.C. § 1832(a)(5).................................................................................................1

Fed. R. Crim. P. 7(C)(1) ........................................................................................5, 9

# I.   INTRODUCTION

Defendant Fujian Jinhua Integrated Circuit Co. Ltd. ("Jinhua") moves for a bill of particulars. The motion is premature and should be denied.  The parties have yet to enter their first appearance in District Court, or enter into and file a protective order with the Court.  Fulsome discovery, which would otherwise answer many of the questions raised by Jinhua, awaits production while the parties come to an agreement on preliminary matters.  Moreover, the eighteen-page Indictment, containing sixty-five paragraphs of allegations, including fifteen introductory paragraphs summarizing the alleged conduct, the parties involved, and the stolen trade secrets at issue, and an additional thirty-two paragraphs describing the manner and means of the conspiracy charged and the overt acts performed in furtherance of it, more than adequately informs Jinhua of the nature of the charges it faces.  Jinhua's request for additional information, which essentially seeks details about the evidence the government intends to use to prove its case, plainly falls outside the scope and purpose of a bill of particulars.  Accordingly, the Court should deny the motion.

# II.   SUMMARY OF RELEVANT FACTS

## A.  The Indictment

On September 27, 2018, a grand jury in the Northern District of California returned a seven-count Indictment charging two companies—United Microelectronic Corporation ("UMC") and Jinhua[1]—and three individuals—Stephen Chen, J.T. Ho, and Kenny Wang—with conspiracy to commit economic espionage in violation of 18 U.S.C. § 1831(a)(5), conspiracy to commit theft of trade secrets in violation of 18 U.S.C. § 1832(a)(5), and economic espionage (receipt and possession of stolen trade secrets) in violation of 18 U.S.C. § 1831(a)(3) and 18 U.S.C. § 2 (aiding and abetting).  Kenny Wang was also charged with substantive economic espionage counts for theft of trade secrets and copying and conveying those trade secrets in violation of 18 U.S.C. § 1831(a)(1) and (a)(2).  J.T. Ho was also charged with theft of trade secrets in violation of 18 U.S.C. § 1832(a)(1), based on conduct that occurred before Jinhua was formed, and with economic espionage in violation of 18 U.S.C. § 1831(a)(2), based on conduct occurring after Jinhua was formed and while Ho was working at UMC.

---

[1] Jinhua is a state-owned enterprise of the People's Republic of China ("PRC").

The Indictment contains detailed introductory allegations describing the technology that was stolen – technology pertaining to dynamic random-access memory ("DRAM"), a memory device product used in electronics.  The Indictment describes who the defendants are, what their relationship is to one another, and what their respective roles were in stealing, conveying, or possessing trade secrets belonging to Micron Technology Inc. ("Micron").

The Indictment describes with particularity the specific trade secrets that were stolen, conveyed, or possessed by the defendants:  Trade Secrets 2-8 are identified by specific file names and descriptions of what each file contains; and Trade Secret 1 encompasses the "Micron process to manufacture and produce DRAM contained in the totality of information stolen by Wang and Ho from Micron and provided to UMC and Jinhua under the direction of Chen and others."[2]

The Indictment not only identifies and describes each trade secret, it identifies for each count the government's theories of misappropriation, which trade secrets apply, and the statutory basis for the charge.  For the conspiracy charges, the Indictment describes in detail the manner and means of the conspiracy, the overt acts committed to effect the object of the conspiracy, and examples of how the defendants improperly used the trade secrets.

For example, the Indictment alleges, among other things, that:

- UMC and Jinhua, a company entirely funded by the PRC government, and employees of both, conspired to circumvent Micron's restrictions on its proprietary technology and illegally obtain DRAM technology that had been developed by Micron, including Trade Secrets 1 through 8.  *See* Indictment at ¶ 18.

- In or around January 2016, Jinhua and UMC negotiated and later entered into a technology cooperation agreement whereby, with funding from Jinhua, UMC would develop DRAM technology, transfer the technology to Jinhua, and Jinhua would mass produce DRAM.  *Id.* at ¶ 20.

- In September 2015, UMC hired Chen …. In January 2016, UMC established the NBD [New Business Development] division for developing DRAM technology to

---

[2] Any additional questions Jinhua has about the identified trade secrets can and will be addressed through discovery.  Once a protective order is entered, the government intends to produce to Jinhua the documents forming the basis of Trade Secrets 2-8 as well as all of the information stolen by Wang and Ho currently in the government's possession, custody, and control.  From this discovery, questions Jinhua has about the nature and details of the stolen trade secrets should be addressed, and a bill of particulars, which is not intended to be a tool in lieu of discovery, will be rendered moot.

transfer to Jinhua and placed Chen in charge of the NBD division.  *Id.* at ¶ 22.

- From in or around October 2015 through April 2016, Chen recruited and hired several MMT [Micron Memory Taiwan] employees to work for UMC, including Ho and Wang, among others.  *Id.* at ¶ 23.

- In or around November 2015, Chen hired Ho to work for UMC.  Prior to leaving MMT, Ho stole confidential and proprietary materials belonging to Micron, including trade secrets pertaining to the prior, current, and future generations of Micron's DRAM technology, including the 80 (30nm), 90 (25nm), 100 (20nm), and 110 (1Xnm) series DRAM.  Ho referenced the stolen Micron materials to support UMC's design of the F32nm DRAM technology for transfer to Jinhua pursuant to the two companies' technology transfer agreement.  Ho stored the stolen Micron trade secrets, including Trade Secrets 1, 6, 7, and 8 on one or more digital devices belonging to UMC.  *Id.* at ¶ 24.

- Between in or around December 2015 and April 2016, Ho communicated with his former colleague Wang, who was still working at MMT.  Wang provided Ho with confidential and proprietary Micron information to further UMC's F32nm DRAM technology design, including information related to Micron's wafer specifications for its 25nm DRAM chip. *Id.* at ¶ 25.

- In the weeks leading up to Wang's resignation from MMT, he [Wang] downloaded over 900 confidential and proprietary files belonging to Micron, including Trade Secrets 1-8, by downloading the files from Micron servers and transferring them to USB external storage devices or uploading the files to his personal Google Cloud account stored on servers in the United States. *Id.* at ¶ 28.

- While working at UMC, Wang referenced Micron trade secrets to assist and further UMC's development of its F32nm DRAM technology.  In or around July or August 2016, Wang, at the direction of a UMC employee, referenced Micron's Trade Secret 5 and provided critical design rule data to that employee to further UMC's development of its F32nm DRAM technology, knowing that UMC would transfer the technology to Jinhua.  *Id.* at ¶ 30.

- On October 23, 2016, Chen, UMC, Jinhua, and government officials from the PRC attended a Jinhua/UMC recruiting fair in the Northern District of California to recruit employees from the United States with semi-conductor experience to work for both companies in either the research and development or sales and marketing division.  Chen stated at the recruiting fair that UMC had transferred its 25nm DRAM chip to Jinhua ….  While at the recruiting fair and visiting the equipment-manufacturing companies in the Northern District of California, Chen, UMC, and Jinhua had obtained and were in continuous control of the stolen Micron trade secrets. *Id.* at ¶ 31.

- From in or around September 2016 through March 2017, UMC and Jinhua filed five patents and a patent application concerning DRAM technology that contained information that was the same or very similar to technology described in Micron's Trade Secrets 2 and 6.  Ho was listed as an inventor in each of the five patents and

the patent application.  The information contained in the patents and patent application contained Micron trade secrets that could not be obtained through reverse engineering.  *Id.* at ¶ 32.

- In February 2017, Taiwan law enforcement authorities executed search warrants and seized items from UMC's offices and Ho's and Wang's residences.  They found electronic and hard copy files containing Micron trade secrets in areas and on devices associated with UMC and belonging to Ho and Wang.  *Id. at ¶ 33.*

- In or around February 2017, in addition to his position at UMC, Chen assumed the post of President of Jinhua.  *Id.* at ¶ 34.

The Indictment goes further to allege 15 overt acts the defendants committed to effect the object of the conspiracy, including some specifically mentioning Jinhua.  While only one overt act by any one co-conspirator is enough to sustain a conspiracy charge, and while the overt act of any one co-conspirator may be imputed to all co-conspirators, the government alleges 15 overt acts that touch upon each of the different defendants.  Examples of overt acts mentioning Jinhua are that:

- On or about October 18, 2016, UMC and Jinhua filed a patent application (with corresponding Patent No. 9,679,901 B1) in the United States Patent and Trademark Office, which claimed priority to a Chinese patent application filed on September 22, 2016 …. The disclosures and inventions described in the patent application were based on or derived from misappropriated proprietary Micron materials identified in Trade Secrets 2 and 6.  On June 13, 2017, the United States Patent and Trademark Office issued patent 9,679,901 B1 to UMC and Jinhua.  *Id.* at ¶ 45.

- Sometime after February 2017, UMC and Chen [who had assumed the post of President of Jinhua already, see *Id.* at ¶ 34] concealed at least one electronic device containing misappropriated Micron materials from Taiwan law enforcement.  *Id.* at ¶ 49.

## B.  Discovery

Although the parties have neither had their first appearance in District Court nor stipulated to a protective order, the government has begun producing discovery.  On January 11, 2019, just two days after Jinhua was arraigned on the Indictment, the government produced approximately 629 pages of discovery, which included: 31 interview transcripts; instant messaging communications between Ho and Wang, a transcript of the Taiwan Ministry of Justice's surveillance of Wang's telephone; a letter and Confidentiality and Intellectual Property Agreement between Ho and Micron Memory Taiwan; Micron emails related to Wang; a Micron summary forensic report of Wang's company laptop with attachments;

1   documentation related to the recruiting event described above, including a video file, still photographs,

2   FBI 302 report, Micron report, and PDF scans of brochures and business cards obtained at the event; and

3   open source articles.

4        The government anticipates entering into a protective order with Jinhua in short order, at which

5   point the government will produce or provide for inspection additional discovery, including numerous

6   additional interview transcripts; over 100 hours of audio and video recordings from interviews; a copy

7   of materials submitted to the Taiwan Ministry of Economics by UMC for its Technical Collaboration

8   with Jinhua; additional attachments and records obtained from Taiwan authorities; results from search

9   warrants, including thousands of documents located on a Google Drive account belonging to Wang;

10   results from 2703(d) orders; FBI 302 reports; a list of over 250,000 file names referencing files located

11   on devices seized by the Taiwan Ministry of Justice Investigation Bureau; documents obtained from

12   Micron; documents obtained from LAM Research; and the results of email subscriber records requests

13   from internet service providers.

14                                    **III.   ARGUMENT**

15        Despite the detailed allegations contained in the Indictment, and the discovery that will be

16   forthcoming, Jinhua claims that it needs a bill of particulars so that it can "understand the charges

17   against it, avoid surprise at trial, and adequately prepare and present its defense." *See* Motion at 2.

18   Purportedly to achieve these goals, Jinhua seeks via its request for a bill of particulars a host of

19   evidentiary details, legal theories, and government trial strategies. *See Id.* at 6-7.   As set forth below,

20   courts have routinely denied these requests as falling outside the scope of a bill of particulars.

21   Moreover, even if such requests were appropriate, they should be denied here, because the government

22   has already provided sufficient detail through the Indictment to inform Jinhua of the charges against it,

23   obviating the need for a bill of particulars.

24   **A.  Summary of Applicable Law**

25        An indictment should "be a plain, concise, and definite written statement of the essential facts

26   constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  "An indictment is sufficient if it: (1)

27   contains the elements of the offense charged and fairly informs a defendant of the charge against which

28   he must defend; and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for

the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotations omitted). It is generally sufficient for the indictment to set forth the charged offense in the words of the statute itself. *United States v. Johnson*, 804 F.2d 1078, 1084 (9th Cir. 1986).

A bill of particulars "is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). "Where an indictment is sufficient, the court is within its discretion in denying a request for a bill of particulars." *United States v. Ayers*, 924 F.2d 1468, 1484 (9th Cir. 1991); *See also Long*, 706 F.2d at 1054 ("In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government."); *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (bill of particulars unnecessary if indictment provides "sufficient details" and "if the government provides full discovery").

The purpose of a bill of particulars is limited in nature. It provides "only that minimum amount of information necessary to permit the defendant to conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985). A bill of particulars is not intended to provide "generalized discovery," *United States v. Reyna*, 2004 WL 1197241, *1 (W.D. Tex. June 1, 2004), or a "detailed exposition of its evidence or [explanation of] the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980). *See United States v. Sherriff*, 546 F.2d 604, 606 (5th Cir. 1977) (affirming denial of defendant's bill of particulars request because it "went well beyond the information necessary to enable him to prepare for trial and to avoid surprise"); *Gordon v. United States*, 438 F.2d 858, 886 n.61 (5th Cir. 1971) (bill of particulars not intended "to give defendants a preview of the government's case"); *United States v. Murray*, 527 F.2d 401, 411 (5th Cir. 1976) (a bill of particulars "may not be used to obtain a detailed disclosure of the government's evidence prior to trial") (citing *United States v. Perez*, 489 F.2d 51, 70-71 (5th Cir. 1973)); *see also Wong Tai v. United States*, 273 U.S. 77, 82 (1927) (affirming denial of bill of particulars motion which "in effect sought a complete discovery of the government's case in reference to the overt acts" because the indictment was "sufficiently definite" and "the motion called 'for too much details of evidence.'").

The United States is not required to "weave the information at its command into the warp of a

fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972).  And a bill of particulars may not be used "to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial." *United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del. 1971).

**B.  Jinhua's Request for Information Should Be Denied Because It Falls Outside the Ambit of a Bill of Particulars**

Jinhua's motion seeks eleven categories of information related to various evidentiary details or legal theories of the government's case against it.  *See* Motion at 6-7.  Specifically, Jinhua seeks, among other things, information on the date Jinhua joined the conspiracy; the precise words or conduct by which Jinhua agreed to join the conspiracy; the nature, date, time, and place of any overt act demonstrating that Jinhua intended its agreement with UMC to have the purpose of misappropriating DRAM technology from Micron, or demonstrating that Jinhua knew that UMC had used misappropriated Micron information to develop DRAM technology; the government's theory of what Jinhua knew or should have known were trade secrets; information about how any conduct by Jinhua in the United States was in furtherance of the alleged conspiracies; and more specificity about the trade secrets described in the Indictment.  *Id.*

The Ninth Circuit has routinely denied motions like Jinhua's, because obtaining the details of the government's case falls outside the scope of a bill of particulars.  A bill of particulars is not to be used "(1) to obtain the names of any unknown conspirators; (2) to determine the exact date on which the conspiracy allegedly began; (3) to delineate all other overt acts that comprised the charged activity." *United States v. Dicesare*, 765 F.2d 890 (9th Cir. 1985).  A "request for the 'when, where and how' of every act in furtherance of the conspiracy [is] equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars."  *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979).  *See United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986); *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963).

In applying Ninth Circuit precedent, a district court in this district has held that "defendants are

1   not entitled to the exact dates on which they or alleged conspirators became members of the

2   conspiracies.  These details are generally not within the government's knowledge.  To require this

3   information, and potentially to limit the proof to that time, would hamper prosecutions unnecessarily."

4   *United States v. Diaz*, 2006 WL 1833081, *3 (N.D. Cal. June 30, 2006, J. Alsup) (citing *Rubio v. United*

5   *States*, 22 F.2d 766, 767-68 (9th Cir. 1927)).  The court in *Diaz* also denied the defendants' requests for,

6   among other things, the following information:

7   • dates on which particular members' participation in the conspiracies ended;

8   • at what place and through what act a defendant joined the conspiracy;

9   • where a defendant completed his participation in the conspiracy;

10  • how the defendant became a member of the conspiracy;

11  • when a particular defendant met or communicated with other conspirators; and

12  • the legal theory under which a particular defendant was allegedly liable for a charged

13  offense.

14  *Id.* at *4, 6.

15  Jinhua is requesting precisely the same information:  It seeks discovery of evidentiary details

16  regarding how and when the conspiracy was formed, Jinhua's role and knowledge about the conspiracy

17  in relation to other co-conspirators, and the government's legal theories as to how it will prove the

18  charges against Jinhua at trial.  Its request for details about the "who, what, when, where and how" of

19  the Indictment's allegations is really an attempt to force the government to provide comprehensive

20  evidentiary detail as well as its trial strategy.  As Ninth Circuit precedent makes clear, this is an entirely

21  inappropriate request under the guise of a motion for a bill of particulars.

22  While a defendant has the right to know the offense with which he is charged, he does not have

23  the right to know "the details of how it will be proved."  *United States v. Feola*, 651 F. Supp. 1068, 1132

24  (S.D.N.Y. 1987).  Whether or not the charges involve conspiracy, the government has no duty to divulge

25  the precise manner in which the crimes alleged in the Indictment were committed or the manner in

26  which the government will attempt to prove its charges.  Almost all courts considering this issue have

27  found that such details as to the "what" and "how" of the government's theories fall squarely outside the

28  bounds of a proper bill of particulars request.  *See, e.g., Giese*, 597 F.2d at 1180; *Rubio*, 22 F.2d at 768.

Likewise, the defendant is not entitled to know the "theories" of liability or the government's theories as to the "roles" of defendants regarding specific counts.  *See United States v. Buckner*, 610 F.2d 570, 574 (9th Cir. 1979) ("Assuming, as we do, that all relevant facts were disclosed and available, the government is not obliged to disclose the theory under which it will proceed.") (*citing Rose v. United States*, 149 F.2d 755 (9th Cir. 1945)); *United States v. Ojeikere*, 299 F. Supp. 2d 254, 261 (S.D.N.Y. 2004) (the government "may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the government's evidence or legal theories").

Accordingly, the defendant's request for information amounting to evidentiary details of the case and the government's theory of liability as it pertains to Jinhua should be denied.  Jinhua's request for a bill of particulars is nothing more than an improper attempt to bind the prosecution and have the government lay out its case.  Requiring the government to provide such information, particularly at such a preliminary stage of the litigation, and before the bulk of discovery has been produced, would unduly restrict the government and hamper its ability to present its case.  Accordingly, the defendant's request should be denied.

## C. The Indictment Adequately Informs Jinhua of the Charges it Faces, and Forthcoming Discovery Obviates Any Need for a Bill of Particulars

The Indictment provides a detailed description of the charges against Jinhua—much more detail than the "plain, concise, and definite written statement of the essential facts constituting the offense charged" required by Fed. R. Crim. P. 7(c)(1), and more than enough information to enable Jinhua to prepare its defense and avoid surprise at trial.  And where "the indictment or information itself provides details of the alleged offense, a bill of particulars is . . . unnecessary." *Geise*, 597 F.2d at 1180.  Here, the Indictment describes in detail the manner and means of the conspiracy; the defendants' agreement to illegally obtain Micron's DRAM technology; the particular trade secrets that were stolen, conveyed, or possessed by the co-conspirators; the co-conspirators' respective roles; and the overt acts performed in furtherance of the conspiracy.  Specifically, it describes the technology collaboration agreement between Jinhua and UMC; the fact that, according to Chen, UMC had transferred its DRAM technology to

1  Jinhua; that UMC and Jinhua had filed patents that contained information that was the same or very

2  similar to technology described in Micron's Trade Secrets 2 and 6; and that Chen, during his time as

3  President of Jinhua, concealed from Taiwan authorities at least one electronic device containing

4  misappropriated Micron materials.  These facts, combined with the allegations about other members of

5  the conspiracy, more than adequately inform Jinhua of the charges against which it must defend.

6          Moreover, Jinhua's request for a bill of particulars is premature in light of the early stage of

7  litigation and procedural posture of the case.  As noted, the parties have not yet appeared in District

8  Court, a protective order has not been entered, and the bulk of the discovery has not yet been produced.

9  Because a bill of particulars is not a replacement for discovery, and because a determination of whether

10  a defendant is fairly apprised of the charges must consider the Indictment as well as the government's

11  other disclosures, it would be premature to grant Jinhua's motion for a bill of particulars when

12  discovery, which will likely answer many of Jinhua's questions, is awaiting production.  As mentioned

13  above, the government anticipates providing fulsome discovery to the defendant promptly once a

14  protective order is entered.  The production of discovery, in addition to the detailed Indictment in this

15  case, obviates the need for a bill of particulars.  *See Giese*, 597 F.2d at 1180 ("full discovery obviates the

16  need for a bill of particulars"); *see also Long*, 706 F.2d at 1054 ("Full disclosure will obviate the need

17  for a bill of particulars.").

18          Because the Indictment more than adequately informs Jinhua of the nature of the charges it faces,

19  and because discovery is forthcoming in this case, the defendant's motion should be denied.

20                                  **IV.    CONCLUSION**

21          For the foregoing reasons, the United States respectfully requests that this Court deny

22  defendant's motion for a bill of particulars in its entirety.

23  Dated: January 30, 2019                    Respectfully Submitted,

24                                             DAVID L. ANDERSON
                                               United States Attorney
25

26

27  By:  _____/s/_____
                                               JOHN H. HEMANN
28                                             SHIAO C. LEE
                                               Assistant United States Attorneys