CHRISTINE Y. WONG (CA SBN 284026)
ChristineWong@mofo.com
TIMOTHY W. BLAKELY (CA SBN 242178)
TBlakely@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD., et al.,<br><br>Defendant. | Case No. 18-CR-465 MMC<br><br>**REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR BILL OF PARTICULARS**<br><br>Date: February 6, 2019<br>Time: 2:15 p.m. |

Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua"), through its counsel, hereby replies to the government's response to Jinhua's motion for a bill of particulars ("Response") under Federal Rule of Criminal Procedure 7(f).

**I.  INTRODUCTION**

The government argues that a bill of particulars is not necessary for three reasons:

A.  The government insists that it "has already provided sufficient detail through the Indictment to inform Jinhua of the charges against it"; (Response at 5)

B.  The government believes that Jinhua is not entitled to "evidentiary details or legal theories of the government case against it" under the Ninth Circuit law; (*Id*. at 7-9)

and;

    C.     The government's forthcoming discovery renders Jinhua's request for a bill of particulars premature. (*See id*. at 5, 10.)

As explained below, none of these reasons withstands scrutiny. In fact, each reinforces Jinhua's position that a bill of particulars is necessary for clarifying the charges against the company – a position supported by substantial authority from this district.

## II. ARGUMENT

### A. The government cannot identify any specific allegations of wrongdoing by Jinhua

The government is correct in pointing out that the Indictment is lengthy and contains many paragraphs. The "highlights" from the Indictment included in its response (*see id*. at 2-4), however, only underscore the paucity of "statement[s] of the *facts and circumstances* as will inform [Jinhua] of the specific offence . . . with which [it] is charged." *Russell v. United States*, 369 U.S. 749, 765 (1962) (citing *United States v. Hess*, 124 U.S. 483, 487) (emphasis added).

For instance, the government's response still fails to elucidate who at Jinhua was involved in the charges, when Jinhua purportedly joined the conspiracy, and under what factual theory the government alleges that Jinhua committed wrongdoing. All of this information is critical to Jinhua's ability to prepare its defense and avoid surprise at trial. Indeed, the government's allegation that "Jinhua and UMC negotiated and later entered into a technology cooperation agreement whereby, with funding from Jinhua, UMC would develop DRAM technology, transfer the technology to Jinhua, and Jinhua would mass produce DRAM" (Response at 2, *citing* Indictment ¶ 20) does not speak to any conspiracy or wrongdoing at all.

At best, the government's response provides an important clue that well-illustrates the need for a bill of particulars here: paragraph 49 of the Indictment states that "[s]ometime after February 2017, UMC and Chen concealed at least one electronic device containing misappropriated Micron materials from Taiwan law enforcement," but does not mention Jinhua at all. In its response, the government clarifies its position that by that time co-defendant Stephen Chen "had assumed the post of President of Jinhua already[.]" (Response at 4.) The government

appears to be suggesting that it believes that Chen was acting on behalf of Jinhua when he was also allegedly working with UMC to conceal the electronic device. Jinhua should not be required, however, to rely on clues and innuendo to understand the government's view of the facts and circumstances of the charged offenses. This is especially so here, where the Indictment alleges that Jinhua was established in February 2016 (Indictment ¶ 5), but makes broad allegations of conduct and overt acts – including alleged conduct by Jinhua – that predate Jinhua's very existence (*see, e.g., id.* ¶¶ 35-38).

### B. Jinhua's request is well supported by law of this Court and the Ninth Circuit

The government mischaracterized Jinhua's request as "nothing more than an improper attempt to bind the prosecution and have the government lay out its case"; and that Jinhua is looking for "discovery of evidentiary details" and "the government's legal theories as to how it will prove the charges against Jinhua at trial." (Response at 8-9.) Instead, Jinhua merely seeks *factual theories* of the company's involvement in the alleged conspiracies and the substantive charge. Ample authority establishes that "disclosure of the government's *factual theory* of the case is one of the primary purposes of a bill of particulars." *United States v. Etienne*, No. CR 17-00093 WHA, 2018 WL 1456658, at *2 (N.D. Cal. Mar. 23, 2018) (emphasis added); *see also United States v. Williams*, No. 13-CR-00764-WHO-1, 2015 WL 3830515, at *1 (N.D. Cal. June 19, 2015) (ordering a bill of particulars "because [the defendants] are entitled to know the government's *factual theory* for their involvement in the [alleged crimes]") (emphasis added); *United States v. Middleton*, 35 F. Supp. 2d 1189, 1193 (N.D. Cal. 1999) ("the goal of a bill of particulars is satisfied if the defendant is aware of '*the theory of the government's case*'") (quoting *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphasis added).

The cases cited by the government are distinguishable. For example, the government relies on *United States v. Giese* for its position that "[a] request for the 'when, where, and how' of *every act in furtherance of the conspiracy* [is] equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars." (Response at 7, *citing* 597 F.2d 1170, 1181 (9th Cir. 1979)) (emphasis added). But the very next sentence in

*Giese* states that "[a] defendant is not entitled to know all the Evidence the government intends to produce, but only the Theory of the government's case." *Giese*, 597 F.2d at 1181. Therefore, while a broad demand for details regarding "every act in furtherance of a conspiracy" may be impermissible, Jinhua is clearly entitled to "the theory of the government's case" under *Giese*. (*Id*.)

The government's reliance on *United States v. Dicesare* also is misplaced. (Response at 7). The defendants in *Dicesare* "requested a bill for three reasons: (1) to obtain the names of any *unknown* coconspirators; (2) to determine the *exact* date on which the conspiracy allegedly began; and (3) to delineate *all other overt acts* that comprised the charged activity." *United States v. Dicesare*, 765 F.2d 890, 897 (9th Cir. 1985) (emphasis added). Not surprisingly, the Ninth Circuit ruled that "[t]hese reasons … do not warrant a bill of particulars." *Id*. But Jinhua is not making such a broad demand: Jinhua tailored its eleven requests so that the company can understand "the specific charges being presented" against it. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). Indeed, courts in this district routinely order bills of particulars that would provide precisely the kind of information that Jinhua needs here. For example:

- In *Etienne*, the court required the government to clarify the "earliest known date" each defendant was participating in the alleged conspiracies, and to "provide details of who was present at meetings in which the [alleged crime] was discussed, when and where such meetings took place, and what each defendant did or said to indicate participation in the conspiracy." *Etienne*, 2018 WL 1456658 at *2, *4-5;

- In *United States v. Handl*, even after the government provided most of the information requested in its response to the defendant's motion, the court ordered the government to identify the earliest known date at which each individual defendant joined the conspiracy, without prejudice to the government later proving an even earlier date. No. CR 15-00126 WHA, 2015 WL 5029062, at *4 (N.D. Cal. Aug. 25, 2015);

- In *United States v. Cerna*, the Court directed the government to provide details including "*when* each defendant is alleged to have first joined each conspiracy,"

"*who* was present at meetings where [alleged crimes] were discussed, *when* and *where* such meetings took place, *what* was said at these meetings, and *what* each defendant allegedly did to indicate their participation in the conspiracy." No. CR 08-0730 WHA, 2009 WL 2998929, at *2-3 (N.D. Cal. Sept. 16, 2009);

- Similarly, in *United States v. Alvarez*, the court required the government to provide a bill of particulars clarifying "*when* each defendant is alleged to have first joined each conspiracy[,]" "*who* was present at meetings in which [alleged crimes] were discussed, *when* and *where* such meetings took place, *what* was said at the meetings, and *what* each defendant did or said to indicate participation in the conspiracy." No. 14-CR-00120 EMC, 2014 WL 7240670, at *2-3 (N.D. Cal. Dec. 19, 2014).[1]

Regarding the alleged trade secrets, other than the conclusory statement that the "Indictment describes with particularity the specific trade secrets" (Response at 2), the government provides no legal or factual analysis to counter Jinhua's request. The government does not dispute that Trade Secret 1 is not a specific document, but instead a broadly-described "process" contained in the "totality of information" allegedly stolen by some co-defendants and provided to others, including "[the] ways and means in which proprietary and non-proprietary components were compiled and combined by Micron to form substantial portions of the DRAM design and manufacturing process[.]" Indictment ¶12(a); *see also United States v. Liew*, No. 11-CR-00573-JSW, slip op. at 4 (N.D. Cal. June 11, 2013), ECF No. 338 ("Trade Secret 1 is identified as . . . [a] process to manufacture TiO2 . . . includ[ing] ways and means in which proprietary and non-proprietary components were compiled and combined . . . ."). Similarly, the government does not dispute that Trade Secrets 2 through 8 are either PDFs of hundreds of pages or expansive Excel spreadsheets, which may also include proprietary and nonproprietary

---

[1] The government relies on a single case from this district, Judge Alsup's 2006 opinion in *United States v. Diaz*, 2006 WL 1833081 (N.D. Cal. June 30, 2006), to support its argument that courts have denied requests for the type of information Jinhua seeks here. (Response at 8.) The government ignores the numerous more recent Judge Alsup opinions discussed above. *See Etienne*, 2018 WL 1456658, at *2, *4-5; *Handl*, 2015 WL 5029062, at *4; and *Cerna*, 2009 WL 2998929, at *2-3.

1  components. (*See* Indictment ¶¶ 12(b)-(h).) This is especially problematic as the Indictment does not allege with specificity how Jinhua received any of the alleged trade secrets, except that UMC transferred the DRAM technology to Jinhua pursuant to the technology cooperation agreement between the two parties. As such, the government should be required to provide specific information about the alleged trade secrets.

### C. Pending discovery is irrelevant to the Court's decision

The government cites no authority to support its assertion that Jinhua's request "is premature[.]" (Response at 10.) This is because "forthcoming discovery" does not preclude a bill of particulars. *See*, *e.g.*, *Alvarez*, 2014 WL 7240670 at *1 (granting in part a motion for a bill of particulars "with the Court's knowledge of the disclosures made and *not made* by the government in the case so far") (emphasis added); *see also* Fed. R. Crim. P. 7(f) ("The defendant may move for a bill of particulars *before or within 14 days after arraignment* or at a later time if the court permits."[2]) (emphasis added).

Instead, "a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054. Following *Long*, this Court has ruled that the quality of the indictment itself is the key to its analysis. *See Alvarez*, 2014 WL 7240670, at *2 (citing *Long* and holding that a bill of particulars "is appropriate where an indictment is ambiguous … In other words, the purpose of a bill of particulars is to clarify ambiguities in an indictment, not to serve as a replacement for discovery requests"); *see also United States v. Wang*, No. 5:12-CR-00581-EJD, 2014 WL 794203, at *2 (N.D. Cal. Feb. 26, 2014) (citing *Long* and holding that "[t]he decision to grant or deny a bill of particulars … is appropriate where an indictment is ambiguous such that a defendant needs clarification in order to prepare a defense"). Because the Indictment is insufficient and ambiguous with respect to Jinhua, a bill of particulars is appropriate and necessary at this time.

---

[2] Nor does the government make any effort to explain how the "fulsome discovery" it intends to produce will provide the necessary information *related to Jinhua*.

## III. CONCLUSION

For all of the foregoing reasons, as well as those stated in Jinhua's motion, the Court should order the government to provide a bill of particulars that sets forth its factual theories and specifies the necessary details of the alleged trade secrets.

Dated: February 4, 2019

CHRISTINE Y. WONG
TIMOTHY W. BLAKELY
MORRISON & FOERSTER LLP


By: */s/ Christine Y. Wong*
　　CHRISTINE Y. WONG

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.