STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-7200
      Laura.Vartain@usdoj.gov

JOHN C. DEMERS
Assistant Attorney General
National Security Division

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorney, National Security Division

      950 Pennsylvania Ave., NW
      Washington, DC 20530
      Tel: (202) 353-3434
      Fax: (202) 233-2146
      Nicholas.Hunter@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) **CASE NO. 18-CR-465 MMC** |
|       Plaintiff, | ) **UNITED STATES' OPPOSITION TO THE** |
| | ) **RENEWED AND AMENDED MOTION FOR** |
|    v. | ) **BILL OF PARTICULARS** |
| | ) |
| FUJIAN JINHUA INTEGRATED CIRCUIT | ) Courtroom: 7, 19th Floor |
| CO., LTD. | ) Hearing Date: June 23, 2021 |
|       Defendant. | ) Hearing Time: 2:15 PM |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND .................................................................................................1

III.  LEGAL STANDARD..........................................................................................3

IV.   THE COURT SHOULD DENY JINHUA'S BILL OF PARTICULARS REQUESTS
      REGARDING THE CONSPIRACY CHARGES ...............................................5

      A.    The Indictment Exceeds the Pleading Requirements on the Conspiracy
            Charges .....................................................................................................5

      B.    Ninth Circuit Precedent Bars Jinhua's Requests ................................6

V.    THE COURT SHOULD DENY JINHUA'S BILL OF PARTICULARS REQUESTS
      REGARDING THE TRADE SECRETS...............................................................10

      A.    The Indictment Exceeds the Pleading Requirements for the Trade Secrets ....................10

      B.    The Indictment and Discovery Provide Sufficient Detail Regarding the Patents..............14

      C.    Jinhua is Not Entitled to a Bill of Particulars Describing the When, How, and
            Other Circumstances Surrounds its Receipt of Stolen Trade Secrets ................................14

VI.   CONCLUSION.....................................................................................................16

1

TABLE OF AUTHORITIES

2

Federal Cases

3

4   *Metallurgical Indust., Inc. v. Fourtek, Inc.*, 790 F. 2d 1195 (5th Cir. 1986)...................................... 13, 15

5   *Olmstead v. United States*, 19 F.2d 842 (9th Cir. 1927)........................................................................ 8

6   *Remmer v. United States*, 205 F.2d 277 (9th Cir. 1953) ....................................................................... 4

7   *Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042 (10th Cir. 1994) ........................ 13

8   *Rose v. United States*, 149 F.2d 755 (9th Cir. 1945) ............................................................................ 4, 7

9   *Rubio v. United States*, 22 F.2d 766 (9th Cir. 1927)............................................................................. 6

10  *United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1971) ....................................................................... 5

11  *United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) ........................................................................ 3, 5

12  *United States v. Bazezew*, 783 F. Supp. 2d 160 (D.D.C. 2011) ............................................................ 9

13  *United States v. Buckner*, 610 F.2d 570 (9th Cir. 1979) ...................................................................... 4, 15

14  *United States v. Caserta*, 199 F.2d 905 (3d Cir. 1952)......................................................................... 4

15  *United States v. Chen*, No. C 05-375 SI, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) ......................... 5

16  *United States v. Chen*, No. CR 09-110 SI, 2011 WL 332713 (N.D. Cal. Jan. 29, 2011) ....................... 6, 7

17  *United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985) .................................................................... 5, 7, 8

18  *United States v. Ellis*, 121 F. Supp. 3d 927 (N.D. Cal. 2015).............................................................. 4, 8

19  *Untied States v. Etienne*, No. CR 17-00093 WHA, 2019 WL 2548790 (N.D. Cal. June 20, 2019) .......... 3

20  *United States v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) ................. 8

21  *United States v. Ford Motor Co.*, 24 F.R.D. 65 (D.D.C 1959)................................................................ 7

22  *United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979) ........................................................................ 3, 6, 7

23  *United States v. Jones*, No. 2:12-cr-00400-APG-GWF, 2013 WL 5954489 (D. Nev. Nov. 6, 2013)........ 4

24  *United States v. Kilrain*, 566 F.2d 979 (5th Cir. 1978)......................................................................... 4

25  *United States v. Krasovich*, 819 F.2d 253 (9th Cir. 1987)..................................................................... 4

26  *United States v. Kwok Cheung Chow*, No. CR 14-00196 CRB, 2015 WL 4480425 (N.D. Cal. July 21,
        2015)..................................................................................................................................................... 4

27

28  *United States v. Liew*, 2013 WL 2605126 (N.D. Cal. June 11, 2013).............................................. 11, 12

*United States v. Liew*, 856 F.3d 585 (9th Cir. 2017) ........................................................... 11, 12

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1983) ........................................................ 3, 4, 5

*United States v. Lundstrom*, 880 F.3d 423 (8th Cir. 2018) ................................................... 4, 15

*United States v. Machado*, 986 F. Supp. 2d 288 (S.D.N.Y. 2013) ............................................ 9

*United States v. Manetti*, 323 F. Supp. 683 (D. Del. 1971) ....................................................... 5

*United States v. Mannino*, 480 F. Supp. 1182 (S.D.N.Y. 1979) ................................................ 4

*United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984) ............................................................ 6

*United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016) ............................................................ 13

*United States v. Ortiz*, No. C 12-00119 SI, 2013 WL 6842541 .................................................. 7

*United States v. Perry*, 2013 WL 3158078 (D. Mass. June 19, 2013) ........................................ 4

*United States v. Rajaratnam*, No. 09 Cr. 1184(RJH), 2010 WL 2788168 (S.D.N.Y. Jul 13, 2020) .......... 9

*United States v. Ramirez*, 54 F. Supp. 2d 25 (D.D. C. 1999) ..................................................... 9

*United States v. Remire*, 400 F. Supp. 2d 627 (S.D.N.Y 2005) ............................................... 15

*United States v. Richardson*, No. 90 CR 345, 1990 WL 70335 (N.D. Ill. May 14, 1990) ....................... 12

*United States v. Robertson*, 15 F.3d 862 (9th Cir. 1994) ........................................................... 4

*United States v. Santiago*, 174 F. Supp. 2d 16 (S.D.N.Y. 2001) ............................................... 9

*United States v. Taylor*, Case No. 17-cr-00191-JST-1, 2018 WL 4961608 (N.D. Cal. Oct. 12, 2018), at *3 (N.D. Cal. 2018) .......... 5

*Wong Tai v. United States*, 273 U.S. 77 (1927) ......................................................................... 4

*Yeargain v. United States*, 314 F.2d 881 (9th Cir. 1963) ............................................................ 3

## Federal Statutes

18 U.S.C. § 2 ............................................................................................................................ 14

18 U.S.C. § 1831(a)(3) ................................................................................................................. 1

18 U.S.C. § 1831(a)(5) ................................................................................................................. 1

18 U.S.C. 1832(a)(5) .................................................................................................................... 1

18 U.S.C. § 1839(3) ................................................................................................................ 2, 12

1

Federal Rules

2

Federal Rule of Criminal Procedure 7 ....................................................................... 1

Federal Rule of Criminal Procedure 7(c) ................................................................... 3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.     INTRODUCTION

The Indictment charging Fujian Jinhua Integrated Circuit Company ("Jinhua") and its co-conspirators with conspiracy and substantive counts of economic espionage and trade-secret theft exceeds the pleading standards under Federal Rule of Criminal Procedure 7 and Ninth Circuit case law in every respect.  The Indictment pleads a detailed manner and means of the conspiracy, numerous overt acts as to each defendant, and specifies the trade secrets at issue with particularity.  Accordingly, Jinhua has more than enough to prepare for trial without surprise and to prevent double jeopardy.

Jinhua has more than the Indictment and document discovery to inform its defense.  Jinhua's co-defendant, United Microelectronics Corporation ("UMC"), pleaded guilty in 2020 with detailed factual admissions by UMC.  Furthermore, Taiwan conducted a criminal trial in 2020 that resulted in the conviction of UMC and three individuals—two of whom are co-defendants in this case—based on the same underlying facts.  The United States provided Jinhua the transcripts of that trial and the judgment of the Taiwan court. Discovery is substantially complete, and Jinhua's motion makes clear it has had an opportunity to review it.  (Dkt. 164 at 2).

Against the overwhelming weight of authority, Jinhua's motion seeks to force the United States to marshal its trial evidence and set forth its legal and factual theories in response to detailed requests that are akin to civil interrogatories, and in some cases misapprehend the charged statutes.  The Federal Rules of Criminal Procedure do not contemplate such a discovery device, and long-standing Circuit case law has rejected the defense attempts to use a bill of particulars to obtain such discovery.  The Court should follow that precedent and deny Jinhua's motion with prejudice.

## II.     BACKGROUND

A grand jury returned a seven-count indictment charging Jinhua in September 2018.  Jinhua is charged in Counts One, Two, and Seven, respectively: Conspiracy to Commit Economic Espionage in violation of 18 U.S.C. § 1831(a)(5), Conspiracy to Commit Theft of Trade Secrets in violation of 18 U.S.C. 1832(a)(5), and Economic Espionage in violation of 18 U.S.C. § 1831(a)(3) and (2).  The Indictment sets out the manner and means of the conspiracy counts (Indictment ¶¶ 18-34) and includes many overt acts (Indictment ¶¶ 35-49).

Those counts have substantial overlap in terms of the allegations in the Indictment and the United

States' burden of proof at trial. Each, for example, involves the same alleged stolen trade-secret information (Trade Secrets 1-8). Each involves the same definition of trade-secret meaning "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized." 18 U.S.C. § 1839(3); *see* 9th Cir. Model Jury Instruction 8.141C. The United States must prove the information was a trade secret for the substantive economic espionage count. For the conspiracy counts, however, it must only prove that defendants reasonably believed the information was a trade secret. *See* 9th Cir. Model Jury Instruction 8.41A cmt. (economic espionage), 8.41B cmt. (theft of trade secrets).

Soon after unsealing the Indictment, and before production of discovery, the Court heard defendants' first motion for a bill of particulars and denied it without prejudice on February 6, 2019. Feb. 6, 2019 Tr., Dkt. 38, at 16.

Since the Court heard the first motion for a bill of particulars, Defendant UMC pleaded guilty pursuant to a cooperation plea agreement and defendant has received voluminous discovery. *See* Dkt. 148 (plea agreement). UMC's guilty plea included detailed factual admissions, including regarding the conduct of UMC employees and individual defendants Kenny Wang, JT Ho and Stephen Chen. *See id*. at ¶ 2.q-z. Ho and Chen were employees of both UMC and Jinhua, with Chen serving as Jinhua's President. *See id*. The discovery that UMC has produced pursuant to the Plea Agreement has included, among other things, custodial files for Ho and Chen from their work at UMC.

With its amended and renewed motion for a Bill of Particulars, Dkt. 164, Jinhua seeks a court order compelling the government to provide twelve sets of "specific facts", which the Notice of Motion groups into four categories:

- Requests 1-4 seek "Specific Facts Regarding Jinhua's Purported Role in the Alleged Conspiracy and Jinhua's Specific Wrongful Acts.

- Requests 5-8 seek "Specific Facts Identifying Which Elements in Micron's Confidential Documents the Government Alleges are Protectable Trade Secrets."

- Request 9 Seeks "Specific Facts Identifying Which Parts of the Patent and Patent Applications the Government Alleges Are 'the Same or Very Similar to' or 'Were Based on or Derived From' Trade Secrets 2 and 6."

- Requests 10-12 seek "Facts Regarding Which Trade Secrets Jinhua Purportedly Knowingly Received and When and Under What Circumstances it Knowingly Received Them."

In response to Jinhua's requests for further information, the government provided additional information regarding Trade Secret 1, which the Indictment defines as the totality of DRAM manufacturing information stolen by defendants Wang and Ho from Micron.  *See* Indictment ¶ 12.a.   On May 4, 2021, the United States provided defendant a list of 16 specific files—culled from the thousands of documents defendants stole—that the United States will tell the jury Trade Secret 1 comprises.  *See* Sloan Decl. Ex. 14.

The case is set for trial on February 14, 2022.  Starting on July 2, 2021, and pursuant to Scheduling Orders, the government will disclose to defendant, among other things: expert disclosures, co-conspirator statements intended to be used at trial, exhibit and witness lists. *See, e.g.,* Dkt. 160 (Scheduling Order).

## III.   LEGAL STANDARD

Federal Rule of Criminal Procedure 7(c) requires in part that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."  Criminal Rule 7(f) continues and provides that "[t]he court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits."

A bill of particulars has three functions: "[1] to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [2] to avoid or minimize the danger of surprise at the time of trial, and [3] to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979); *see United States v. Ayers*, 924 F.2d 1468, 1483–84 (9th Cir. 1991); *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).[1]

---

[1] Jinhua cites *Untied States v. Etienne*, No. CR 17-00093 WHA, 2019 WL 2548790, at *6 (N.D. Cal. June 20, 2019), for the incorrect proposition that "one of the primary purposes of a bill of particulars" is "[d]isclosure of the government's factual theory of the case."  Dkt. 164, at 1.  The "factual theory" statement was first made in *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963) (per

To determine whether a bill of particulars is warranted, "a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054. When the language of the indictment itself provides the "specific charges" against the defendant, a bill of particulars is not required. *United States v. Robertson*, 15 F.3d 862, 873–74 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 669 (1995); *see Wong Tai v. United States*, 273 U.S. 77, 82 (1927) ("sufficiently advised"); *United States v. Krasovich*, 819 F.2d 253, 254–55 (9th Cir. 1987) ("sufficient detail"). Moreover, "[f]ull discovery will obviate the need for a bill of particulars." *Long*, 706 F.2d at 1054. "A defendant seeking particularization 'has the burden of showing by brief, affidavit, or otherwise that nondisclosure would lead to prejudicial surprise or the obviation of opportunities for meaningful defense preparation." *United States v. Jones*, No. 2:12-cr-00400-APG-GWF, 2013 WL 5954489, at *4 (D. Nev. Nov. 6, 2013) (citing *United States v. Perry*, 2013 WL 3158078 (D. Mass. June 19, 2013)).

A bill of particulars is not a tool for a defendant "to obtain a detailed disclosure of the government's evidence prior to trial." *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978) (internal citation omitted); *see United States v. Kwok Cheung Chow*, No. CR 14-00196 CRB, 2015 WL 4480425, at *2 (N.D. Cal. July 21, 2015) ("The purpose of a bill of particulars is not to provide defendants with every detail of the Government's case, as [defendant] seems to request.") (citation

---

curiam), which adopted it with citations to two criminal tax cases concerned with the disclosure of the government's theory of tax calculations. *See id.*; *see also Remmer v. United States*, 205 F.2d 277, 282 (9th Cir. 1953) (denying bill of particulars where government made clear during hearing it was "proceeding upon a net worth theory"); *United States v. Caserta*, 199 F.2d 905, 910 (3d Cir. 1952) ("[T]he most that the defendant could be entitled to prior to trial was the fact that the prosecution was to proceed upon [an expenditure] theory."). This case, however, does not involve numerical theories of income and tax calculations. In that situation, the overwhelming weight of authority is that the defense is not entitled to the government's factual or legal theories prior to trial. *See, e.g.*, *United States v. Buckner*, 610 F.2d 570, 574 (9th Cir. 1979) ("Assuming . . . that all relevant facts were disclosed and available, the government is not obligated to disclose the theory under which it will proceed."); *Rose v. United States*, 149 F.2d 755, 758 (9th Cir. 1945) ("The purpose of a bill of particulars is to secure facts, not legal theories.") (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927); *United States v. Ellis*, 121 F. Supp. 3d 927, 939-40 (N.D. Cal. 2015) (citing cases holding that a bill of particulars is not warranted for the defense to obtain the names of unknown coconspirators, the exact date on which a conspiracy began, and to delineate all overt acts); *see also, e.g.*, *United States v. Lundstrom*, 880 F.3d 423, 439 (8th Cir. 2018) ("A bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial."); *United States v. Mannino*, 480 F. Supp. 1182, 1185 (S.D.N.Y. 1979) ("A bill of particulars should not be used to conduct discovery of the Government's theory of a case, to force detailed disclosure of acts underlying a charge, or to restrict the Government's proof at trial.").

1  omitted).  Further, the United States is not required to "weave the information at its command into the

2  warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451

3  F.2d 49, 64 (3d Cir. 1971).  And a bill of particulars may not be used "to compel the government to

4  describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix

5  irrevocably the perimeters of its case in advance of trial." *United States v. Manetti*, 323 F. Supp. 683,

6  696 (D. Del. 1971).

7  **IV.   THE COURT SHOULD DENY JINHUA'S BILL OF PARTICULARS REQUESTS**
   **REGARDING THE CONSPIRACY CHARGES**
8
        **A.      The Indictment Exceeds the Pleading Requirements on the Conspiracy Charges**
9

10         The Indictment provides far more than the basic allegations necessary to plead the charged

11  unlawful agreement and defendant's role in it.  *See Ayers*, 924 F.2d at 1484 (conspiracy count sufficient

12  where it included "five separate means and methods" and "fifteen overt acts"; in addition, the

13  government provided defendant "with a significant amount of discovery").  In 31 paragraphs (Indictment

14  ¶¶ 18-49), the Indictment alleges an agreement among individuals and corporations – one of whom,

15  (Stephen Chen) was a senior vice president of UMC and president of Jinhua – to steal trade secrets from

16  Micron and use them to make memory chips for Jinhua, a Chinese state-owned entity, causing injury to

17  Micron. *See, e.g.*, *id.* ¶¶ 22-25, 31, & 34. That unlawful agreement establishes conspiracy to commit

18  economic espionage and conspiracy to misappropriate trade secrets. Indeed, the overt acts pleaded in the

19  Indictment go beyond the pleading requirements for those charges—on which no overt act pleading is

20  required at all.  *See United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985); *United States v. Chen*,

21  No. C 05-375 SI, 2006 WL 3898177, at *3 (N.D. Cal. Nov. 9, 2006).

22         In addition to the Indictment, the Court is entitled to consider and deny a bill of particulars based

23  on material available to the defendant outside the indictment.  *See Long*, 706 F.2d at 1054 (court can

24  consider "the indictment and all other disclosures made by the government"); *United States v. Taylor*,

25  Case No. 17-cr-00191-JST-1, 2018 WL 4961608 (N.D. Cal. Oct. 12, 2018), at *3 (N.D. Cal. 2018)

26  (considering the indictment and search warrant affidavits).

27         Here, the government has provided full discovery and will soon provide additional pre-trial

28  disclosures that also obviate any need to further particularize the conspiracy. Courts in this Circuit have

1   repeatedly denied requests for a bill of particulars when the government has provided full discovery. *See*

2   *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) ("These purposes [of a bill of particulars] are

3   served if the indictment itself provides sufficient details of the charges and if the Government provides

4   full discovery to the defense.") (citation omitted); *Giese*, 597 F.2d at 1180 ("Full discovery also obviates

5   the need for a bill of particulars."); *Etieene*, 2019 WL 2548790, at *4 (N.D. Cal. 2019) ("Full discovery

6   obviates the need for a bill of particulars.") (citing *Giese*, 597 F.2d at 1180-81; *United States v. Chen*,

7   No. CR 09-110 SI, 2011 WL 332713, at *8 (N.D. Cal. Jan. 29, 2011) (discovery obviated need for bill of

8   particulars even though it was "voluminous").

9          In addition, the government provided a six-page factual chronology in paragraph 2 of UMC's plea

10   agreement (Dkt. 148, at 2:16-10:2), which elaborates further on the 31 conspiracy paragraphs in the

11   complaint. Among other highly relevant facts, admissions in the UMC guilty plea reveals that defendants

12   Stephen Chen and JT Ho were employees of Jinhua. *See* Dkt. 148, at 7:9-13.

13          **B.      Ninth Circuit Precedent Bars Jinhua's Requests**

14          Notwithstanding the information available to prepare for trial, Jinhua seeks a court order

15   compelling the United States to provide four "specific facts" about the conspiracy.  Dkt. 164-17.  Each

16   request for a court order on "specific facts" about Jinhua's role in the conspiracy is contrary to Ninth

17   Circuit law.

18          *First*, Jinhua seeks a Court order for the United States to "specify when, where and how" Jinhua

19   joined the conspiracy and to say what evidence demonstrates Jinhua's agreement.  (Dkt. 164 at Ex 15.).

20   But Jinhua is not entitled to that detail. Jinhua's "request for the 'when, where, and how' of every act in

21   furtherance of the conspiracy [i]s equivalent to a request for complete discovery of the government's

22   evidence, which is not a purpose of the bill of particulars." *Giese*, 597 F.2d at 1181; *see Etieene*, 2019

23   WL 2548790, at *4 (same).  As the Court observed in denying the last bill-of-particulars motion, the

24   government cannot be expected to be a "fly on the wall" to observe when, where, and how a defendant

25   joins a conspiracy. Feb. 6, 2019 Tr., Dkt. 38, at 8:12. "Speaking generally, the government has no

26   knowledge of the exact time or place of the formation of the conspiracy, and to require it to specify the

27   particular time and place, and limit the proof to that time and place, would defeat almost every

28   prosecution" for conspiracy. *Rubio v. United States*, 22 F.2d 766, 767 (9th Cir. 1927).  The time and

1   place of the formation of a conspiracy, therefore, are sufficiently fixed by the overt acts set forth in the

2   indictment.  *See id.*  Defendant's request for "specific conduct or evidence" regarding its agreement to

3   join the conspiracies further ignores the law, which holds that a defendant's participation in the

4   conspiracy can be proved by circumstantial evidence, as conspiracy is proved in the overwhelming

5   majority of criminal cases. *See Rose v. United States*, 149 F.2d 755, 759 (9th Cir. 1945) ("Conspiracy is

6   an offense which from its very nature can rarely be proved by direct evidence.  Ordinarily, only the

7   results of a conspiracy, and not the private plotting and promoting, are observed.  Like any other issue of

8   fact conspiracy may be proved by circumstantial evidence.") (citations omitted).

9       *Second*, Jinhua's request that the United States "identify the specific individuals" who are co-

10   conspirators is not on sound legal footing.  Jinhua is not entitled to further particulars about the

11   conspirators who acted on Jinhua's behalf.  *See DiCesare*, 765 F.2d at 897-98 (no abuse of discretion to

12   deny bill of particulars where defendant sought names of "unknown coconspirators," "exact date on

13   which the conspiracy allegedly began," and a delineation of "all other overt acts") (citing cases); *United*

14   *States v. Ford Motor Co.*, 24 F.R.D. 65, 67-69 (D.D.C 1959) (denying bill of particulars for corporate

15   defendant seeking information about the time, place and nature of each corporate act, and by whom the

16   corporation acted through).  In *Ford Motor*, the Court noted that the defendant corporation had the very

17   knowledge it desired within its own possession.  *See id.* at 69.  Together with the indictment, that

18   knowledge served as a basis for the defendant corporation to investigate. *See id.* In any event, the

19   Indictment and UMC Plea Agreement make clear that at least Stephen Chen and JT Ho were employees

20   of Jinhua.

21       *Third*, Jinhua seeks the "nature, date, time and place" of any of Jinhua's overt acts.  But the

22   Indictment sufficiently pleads the conspiracy, and Jinhua is not entitled to additional particulars of the

23   overt acts beyond paragraphs 35-49 of the Indictment. *Giese*, 597 F.2d at 1180-81 ("The information

24   available to appellant was actually more than he had a right to demand, for there is no requirement in

25   conspiracy cases that the government disclose even all the overt acts in furtherance of the conspiracy.")

26   (citations omitted); *United States v. Ortiz*, No. C 12-00119 SI, 2013 WL 6842541, at*4 (N.D. Cal. Dec.

27   27, 2013) (indictment charging conspiracy and no substantive counts need not allege that defendant

28   "committed any specific acts related to any murders or assaults"); *Chen*, 2011 WL 332713, at *8 (N.D.

1    Cal. 2011) (an indictment "need not specify the overt acts . . . [and] it is unreasonable to require the

2    government to 'state the circumstances under which, and the words or conduct by means of which'

3    defendants and every alleged co-conspirator entered into the alleged conspiracies.") (citing *DiCesare*).

4         *Fourth*, defendant seeks an order requiring the government to identify for Counts One and Two

5    the precise object of the conspiracy.  Defendant is not entitled to the particulars of the objects of the

6    conspiracy and the evidence supporting those objects. *See Olmstead v. United States*, 19 F.2d 842, 844

7    (9th Cir. 1927) ("Here the defendants each demanded a bill of particulars, showing when and by what act

8    he would be shown to be a party to the conspiracy, what act he committed pursuant thereto, what

9    intoxicating liquors he conspired to import, where it was imported from, and to what port and when, what

10   intoxicating liquors he conspired to possess unlawfully, where it was possessed, and when, and so on,

11   with numerous details, all of like nature.  To have granted such demands for particulars would have been

12   to unduly limit and embarrass the government, and possibly to shut out material evidence.") (citations

13   omitted).

14        Against the weight of Ninth Circuit law denying bills for precisely the conspiracy particulars it

15   seeks, Jinhua cites only two cases within this Circuit, neither of which has comparable facts. In *United*

16   *States v. Cerna*, No. CR 08-0730 WHA, 2009 U.S. Dist LEXIS 133644, at *11 (N.D. Cal. Sep. 16, 2009),

17   the court ordered "a limited bill of particulars to clarify ambiguities and certain excessive generalities"

18   but "otherwise . . . denied" the motion for conspiracy particulars in a sprawling RICO gang prosecution

19   of MS-13. As the court in *United States v. Ellis*, 121 F. Supp. 3d 927 (N.D. Cal. 2015), explained in

20   distinguishing *Cerna*, "the government charged 24 of the total 31 defendants with three separate

21   conspiracy counts and the three conspiracies were alleged to have been in existence since 'at least the late

22   1990s,' when some defendants were just ten years old." 121 F. Supp. 3d at 939-40. By contrast, the

23   conspiracy alleged against UMC and Jinhua occurred in a compressed time frame with far fewer

24   individuals and is well described in the indictment and UMC's guilty plea.

25        In *United States v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010), the

26   court ordered particulars where the indictment alleged a marijuana "conspiracy, or conspiracies,

27   span[ning] a period of three to seven years" (*id*. *3) with no manner and means, no overt acts, and no

28   supporting factual allegations. The same judge subsequently, in *Taylor*, distinguished *Feil* because the

OPPOSITION TO BILL OF PARTICULARS
18-CR-465 MMC                                    8

1  indictment in *Taylor* "far exceed[ed] the boilerplate paragraphs" in *Feil* and information outside the

2  indictment (in *Taylor*, the "search warrant affidavits") provided sufficient information to the defendants.

3  2018 WL 491608, at *4. Compared to the boilerplate conspiracy allegations in *Feil*, the Indictment here

4  contains 31 paragraphs of manner and means and overt acts, and Jinhua also has the UMC plea

5  agreement and full document discovery to inform its defense.

6      Although Jinhua cites four cases outside the Circuit, those cases support denying the conspiracy

7  particulars here. In *United States v. Bazezew*, 783 F. Supp. 2d 160, 168-69 (D.D.C. 2011), the district

8  court granted one minor part of the bill of particulars because the conspiracy was alleged to have

9  commenced on a specific day and the sole overt act occurred more than a week later.  Otherwise, the

10  D.C. district court rejected the defendants' motion to particularize the conspiracy (*id.* at 168):

11          For example, they [the defendants] are not entitled to know exactly how government law
            enforcement officials determined that each defendant was involved in the conspiracy; the exact
12          date, time, and place when the conspiracy began; the conduct of all co-conspirators in furtherance
            of the conspiracy that was known to each individual defendant; the names, addresses, and
13          telephone numbers of all persons having information or knowledge of each defendant's
            involvement in the conspiracy; the identity of all persons known by the government to have
14          participated in each alleged overt act; or a description of the nature of all acts or statements that
            each defendant allegedly engaged in or uttered in support of or in furtherance of the conspiracy.
15

16      In *United States v. Machado*, 986 F. Supp. 2d 288, 292-94 (S.D.N.Y. 2013), the New York

17  district court distinguished *United States v. Rajaratnam*, No. 09 Cr. 1184(RJH), 2010 WL 2788168

18  (S.D.N.Y. Jul 13, 2020), on which Jinhua relies, because *Rajaratnam* was "far more complex than this

19  case." 986 F. Supp. 2d at 293 (*Rajaratnam* described as "the 'largest hedge fund insider trading case in

20  history'").  In *United States v. Santiago*, 174 F. Supp. 2d 16 (S.D.N.Y. 2001), the New York district court

21  ordered particulars for a defendant who had only "a single reference in the indictment" (*id.* at 37) and

22  whose counsel asserted that his name did not even appear in discovery (*see id.*).  By contrast, the

23  Indictment here specifically sets out facts regarding Jinhua, which are further detailed in discovery.

24  Lastly, the D.C. district court in *United States v. Ramirez*, 54 F. Supp. 2d 25 (D.D. C. 1999), ordered

25  particulars for defendants who were alleged to have been part of a narcotics conspiracy even though the

26  sole criminal conduct was an aborted drug sale "only *six days* before the alleged conspiracy ended" (*id.* at

27  30 (emphasis court's).  Jinhua's cases on facts far removed from the conspiracy alleged here demonstrates

28  that no further particulars should be required.

OPPOSITION TO BILL OF PARTICULARS
18-CR-465 MMC                    9

V.      **THE COURT SHOULD DENY JINHUA'S BILL OF PARTICULARS REQUESTS REGARDING THE TRADE SECRETS**

Each count at issue involves the same eight trade secrets, all of which are described in the Indictment, and have been described in discovery and in discussions with counsel.  Jinhua will not be surprised at trial about what the alleged trade secrets are, because the United States has specifically identified the specific documents that are the trade secrets.  Further, the upcoming scheduling deadlines, including the deadline for expert disclosures on July 2, 2021, will provide further information to Jinha about the United States' anticipated trial testimony.

A.      **The Indictment Exceeds the Pleading Requirements for the Trade Secrets**

There are eight trade secrets at issue, and the United States has adequately pleaded each of them. The Trade Secrets can best be understood in two categories.  For Trade Secrets 2-8, each is defined in the Indictment as a single document.  For example, the Indictment pleads Trade Secret 2 as "[a] A 233-page PDF document identified with digital filename 'FAB16 90s Traveleer-20150518 (hereafter '25nm Process Traveler document').  The 25 nm Process Traveler document contained comprehensive and detailed information documenting the beginning-to-end manufacturing process for Micron's 25nm DRAM product, including details of specifications and production process."  Indictment ¶ 12.b.

Discovery includes multiple copies of each of trade secrets 2-8. Some of the files were found on multiple digital devices or in email accounts belong to Wang, Ho, or both.  Jinhua can identify those files simply by performing a keyword search on the discovery the United States has provided.  Furthermore, the United States provided a copy of the files in September 2020 so that there would be no doubt about what files constitute Trade Secrets 2-8.

Unlike Trade Secrets 2-8, Trade Secret 1 is not a single digital file.  Instead, the Indictment describes Trade Secret 1 as:

> The Micron process to manufacture and product DRAM contained in the totality of information stolen by Wang and Ho from Micron and provided to UMC and Jinhua under the direction of Chen and others.  Trade Secret 1 included ways and means in which proprietary and non-proprietary components were compiled and combined by Micron to form substantial portions of the DRAM design and manufacturing process, including Trade Secrets 2-8 . . . .

Indicment ¶12.a.  In response to Jinhua's request for further definition of Trade Secret 1, the United

1    States specified that Trade Secret 1 consists of the combination of information in Trade Secrets 2-8,

2    along with the information in 16 additional stolen files (6 of which are essentially subparts of another

3    file). *See* Sloan Decl. Ex. 14.

4           Despite that precision, Jinhua seeks even more information about the trade secrets, much of which

5    is irrelevant and will not be part of the United States' case.  For Trade Secrets 2-8, defendant wants to

6    know which "portions" of each document is a trade secret (request 6).  The United States has answered

7    that question in the Indictment and in meets and confers: the specific combination of information in each

8    document is a trade secret.  *See* Sloan Decl. ¶ 13 ("[T]he government views the trade secrets as the

9    combination of all the information contained in the seven alleged Trade Secret documents, rather than

10   any individual part of those documents.").

11          Defendant complains about the size of the documents. But the page-count is irrelevant as a legal

12   matter.  Indeed, the length of the documents is part of the reason they are so valuable.  The documents

13   consolidate information about the process to manufacture DRAM.  That process is extremely complex,

14   and the product of decades of research and development.  It cannot be described in just a few pages.

15           One of the leading criminal trade-secret and economic-espionage cases in the Ninth Circuit was

16   tried in this district and included similarly lengthy trade secrets: *United States v. Liew*, No. 11-573 JSW

17   (N.D. Cal.).  Defendant Liew was convicted at trial, and his conviction was upheld on appeal.  *See United*

18   *States v. Liew*, 856 F.3d 585 (9th Cir. 2017) (affirming economic espionage and trade secret and

19   conspiracy convictions).  The defendants in that case moved for a bill of particulars, which the Court

20   granted in part and denied in part.  The Court's analysis is instructive.  Trade Secret 5 ("TS 5") in that

21   case was a "407 page document" that contained "the process and equipment information necessary to

22   design" a particular kind of processing plant.  *Liew*, 2013 WL 2605126, at *3 (N.D. Cal. June 11, 2013).

23   Despite the fact that TS 5 was a 407-page document, the Court declined to order a bill of particulars. The

24   Court found that voluminous discovery and other scheduling deadlines ordered by the Court resulted in

25   adequate specificity for to the defendant.  *Id.* at *8.  Where the trade secret is definitively tied to a

26   particular document, and ample discovery has been provided, the defendant is on sufficient notice of the

27   charges against him, irrespective of the size of the document or the amount of information comprising the

28   trade secret.  That is also the case with Trade Secrets 2-8.

Trade Secret 1 in *Liew*, on the other hand—like Trade Secret 1 in this case before the government added specificity—was defined more broadly and was not reduced to a particular, specified document. The Court therefore concluded that Trade Secret 1 was insufficiently specific and required the United States to provide a bill of particulars, which it did.  *See Id.*; Bill of Particulars as to Trade Secret 1 ("Liew Bill"), *United States v. Liew*, 11-CR-00573 JSW (Dkt. 363). That bill of particulars specified, among other things, more than 20 process "components and subparts" that made up Trade Secret 1, without even referencing particular documents.  Liew Bill ¶ 2.  Defendants in that case were convicted of the trade secret and economic espionage charges based on all the Trade Secrets, including Trade Secret 1 (as defined in the bill of particulars).  Here, there is no reason for the Court to order a bill of particulars on Trade Secret 1, because the United States has already provided a level of detail greater than the bill of particulars in *Liew*, to include the specific documents that make up Trade Secret 1.  Sloan Decl.  ¶ 30 & Ex. 14.

Defendant's reliance on *United States v. Ward*, No. CR-11-2123-RMP, slip op. (E.D. Wash. June 21, 2012) (ECF No. 175), is misplaced.  In *Ward*, the Court noted that the government had identified the "Integrator Aircraft Maintenance Manual" both as a standalone trade secret and as a repository for other, unspecified trade secrets contained within it.  *Ward*, slip op. at 5.  The Court observed that each page of the manual could contain one or more possible trade secrets, which left the defendant in the "position of having to guess which portions of the manual will be the subject of the Government's case-in-chief . . . ." *Id.*  Here, there is no such confusion because the trade secrets are specifically identified in the Indictment, and the United States has clearly identified that the documents that make up each trade secret.  Unlike *Ward*, the government has not vaguely referred to other, unspecified information as constituting a trade secret.

Defendant's reliance on *United States v. Richardson*, No. 90 CR 345, 1990 WL 70335 (N.D. Ill. May 14, 1990), is likewise not helpful to Jinhua.  There, the Indictment and discovery did not identify the trade secrets at all, which is plainly not the case here.  *Id.*at *1-2.

For Trade Secret 1-8, defendant wants the government to "identify . . . the specific 'ways and means in which proprietary and non-proprietary components were combined," (request 5) or otherwise parse the trade secrets into such components (request 7).  But that information is irrelevant, and not even

an element the definition of "trade secret." *See* 18 U.S.C. § 1839(3) (defining trade secret as "all forms and types of . . . scientific, technical, . . . or engineering information including . . . compilations, . . . methods, techniques, processes, . . . [or] procedures."). It is black-letter law that a "trade secret may consist of a compilation of data, public sources or a combination of proprietary and public sources." *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016). Therefore, the classification of various "components"—whatever those are—of the alleged trade secrets is irrelevant. "[I]t is the secrecy of the claimed trade secret as a whole that is determinative." *Id. (quoting* Restatement (Third) of Unfair Competition § 39 cmt. f (1995)); *see Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.,* 28 F.3d 1042, 1046 (10th Cir. 1994); *Metallurgical Indust., Inc. v. Fourtek, Inc.*, 790 F. 2d 1195, 1202 (5th Cir. 1986) ("[A] trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectible secret.").

The subpart of Request 7 for why the alleged "combination or compilation" trade secrets are valuable is a request for the obvious and not subject to additional pleading given that the Indictment speaks directly to this issue. It is also described in witness interviews in the discovery. The trade secrets are valuable because a competitor or would-be competitor who stole them would be able to free ride on the owner's efforts to develop the information.

Defendant's request 8 for the government to identify which "of the more than 37,000 Technology Transfer Package documents UMC provided to Jinhua in the fall of 2018" contain stolen trade secrets, and what portion of those documents, is also misguided. As a threshold matter, this is not a matter of pleading, because the Indictment does not talk about the Technology Transfer Package at all. In any event, the government need not prove that any of the documents in the 2018 Technology Transfer Package "contain[]" a Micron trade secret to prove its case. And to the extent the government plans to elicit expert testimony about the content of the Technology Transfer Package, Jinhua will receive a summary of that testimony on July 2, 2021.

In short, defendant has all the information it needs about the alleged trade secrets to prepare for trial. And to the extent the United States will elicit expert testimony about the trade secrets, it will provide defendant summaries of the trade secrets on July 2, 2021.

1   //

2   **B.      The Indictment and Discovery Provide Sufficient Detail Regarding the Patents**

3         Similar to a civil patent-infringement case, Jinhua's Request 9 seeks detailed contentions about

4   the relationship between patents and patent applications mentioned in the Indictment, and Trade Secrets 2

5   and 6.  The indictment and discovery, however, already provide detailed information about that

6   relationship.  And to the extent the United States will offer expert testimony at trial on the subject, that

7   testimony will be summarized in expert disclosures on July 2.

8         In the manner and means allegations, and as an overt act, the Indictment alleges that Jinhua and

9   UMC jointly applied for patents based on stolen Micron trade secret information.  The Indictment alleges

10  that in the span of six months, UMC and Jinhua jointly filed five patents and a patent applications

11  concerning DRAM that were similar to Micron Trade Secrets 2 and 6.  Indictment ¶ 32.  The patents are

12  identifiable as those filed during a certain timeframe with JT Ho listed as a named inventor.  And as an

13  overt act, the Indictment alleges that UMC and Jinhua obtained U.S. Patent No. 9,679,901 ("the '901

14  patent") based on Micron Trade Secrets 2 and 6.  *Id.* at ¶ 45.

15        Discovery provided to Jinhua provides further detail about how the patents reflect Micron's

16  technology.  For example, as detailed in an FBI-302, a Micron employee described similarities between

17  the '901 patent and a Micron trade secret.  That discussion is produced in discovery and is not detailed

18  here to ensure confidentiality of trade secret information.  In short, the employee describes the design

19  similarities between the patent and Micron's technology. The employee gave similarly detailed

20  descriptions for four other patents, and in at least one additional interview, the substance of which the

21  United States provided to Jinhua in discovery.  In total, therefore, the discovery in this case should

22  ameliorate defendant's concern that its expert will be forced to "sift" through technical specifications

23  without any roadmap.  No bill of particulars is necessary.

24  **C.      Jinhua is Not Entitled to a Bill of Particulars Describing the When, How, and Other
            Circumstances Surrounds its Receipt of Stolen Trade Secrets**

25

26        The Court should also deny defendant's requests 10-12 for additional facts as to when and how

27  Jinhua received the alleged trade secrets.  Defendant's requests do not accurately characterize the law

28  under § 1831(a)(3) and 18 U.S.C. § 2.  Defendant seems to incorrectly think that, to be convicted, it must

have "knowingly received, obtained, [or] converted [trade secrets] without authorization."  But that language is not in Count Seven of the Indictment or in the statute.  Instead, § 1831(a)(3)—which Count 7 parrots—requires Jinhua to "receive[], buy[], or possess[] a trade secret," or aid and abet someone who does.  18 U.S.C. §§ 2, 1831(a)(3).  Mere possession, with the appropriate intent, is a sufficient actus reus to convict.

Moreover, § 1831(a)(3) does not require defendant itself to knowingly receive, obtain, or convert trade secrets, as presumed in requests 10-12.  It merely requires defendant to know that that the trade secrets at issue were "stolen or appropriated, obtained, or converted without authorization," by *anyone*. *See id.*  Thus, if Jinhua possessed stolen trade secrets—or aided someone who did—knowing that *someone else* stole the trade secrets, that would meet the requirements of § 1831(a)(3).

Those misunderstandings aside, defendant's requests 10-12 should not be granted because they again seek to force the government to marshal and disclose its trial evidence well in advance of trial.  For all the reasons explained in the conspiracy section above, that is not a proper purpose of a bill of particulars, especially where the government has provided full discovery.  *E.g.*, *Buckner*, 610 F.2d at 574 ("Assuming . . . that all relevant facts were disclosed and available [in discovery], the government is not obliged to disclose the theory under which it will proceed."); *see also, e.g.*, *Lundstrom*, 880 F.3d at 439 ("A bill of particulars is not a discovery device to be used to require the government to provide a detailed disclosure of the evidence that it will present at trial."); *United States v. Remire*, 400 F. Supp. 2d 627, 633 (S.D.N.Y 2005) ("The function [of a bill of particulars] is not to force the government to disclose the manner in which it will attempt to prove the charges, nor the means by which the crimes charged were committed." (internal quotations omitted)).

//

//

//

//

//

//

//

OPPOSITION TO BILL OF PARTICULARS
18-CR-465 MMC                                             15

1   //

2   **VI.   CONCLUSION**

3         Defendant's motion for a bill of particulars is contradicted by the weight of authority.  Defendant

4   has not cited a single criminal case where a Court has required the government to respond with anything

5   close to the level of detail it is seeking.  Defendant's essential argument—that no evidence supports a

6   conviction—is a contention for trial.  The Court should deny defendant's motion for a bill of particulars

7   with prejudice.

8

9   Dated: May 26, 2021                              Respectfully Submitted,

10                                                   STEPHANIE M. HINDS
                                                     Acting United States Attorney
11

12                                                    /s/ Laura Vartain Horn
                                                     LAURA VARTAIN HORN
13                                                   Assistant United States Attorneys

14                                                   NICHOLAS O. HUNTER
                                                     STEVEN MARZEN
15                                                   Trial Attorneys, National Security Division

16

17

18

19

20

21

22

23

24

25

26

27

28