JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
MICHELLE KAO (SBN 322758)
Michelle.Kao@skadden.com
OLIVIA L. VADEN (SBN 334405)
Olivia.Vaden@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:     (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br>UNITED MICROELECTRONICS CO. et al.,<br><br>Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S REPLY IN SUPPORT OF ITS RENEWED AND AMENDED MOTION FOR BILL OF PARTICULARS**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 14, 2022<br><br>Hearing Date: June 23, 2021<br>Hearing Time: 2:15 p.m. |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**
**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

I.    INTRODUCTION ...................................................................................................1

II.    THE COURT SHOULD GRANT JINHUA'S REQUEST FOR A BILL OF PARTICULARS ...................................................................................................3

    A.    The Indictment Fails to Allege Sufficient Facts Demonstrating Jinhua's Purported Involvement in the Conspiracy or Any Wrongful Conduct ...................................................................................................3

    B.    The Government Has Failed To Identify Its Alleged Trade Secrets With Sufficient Particularity or To Describe What Makes the Alleged Combination of Features Unique ...................................................................................................9

    C.    The Government Has Failed to Specify The Parts Of Jinhua's Patents And Patent Application That Were Allegedly Based On Trade Secrets 2 and 6 ...................................................................................................12

    D.    The Indictment Fails to Identify With Specificity When And How Jinhua Purportedly Knowingly Received The Alleged Trade Secrets ....... 13

III.    CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

### CASES

*Alta Devices, Inc. v. L.G. Elecs., Inc.*,
   No. 18-cv-00404-LHK (VKD), 2019 WL 176261 (N.D. Cal. Jan. 10, 2019) .............................. 10

*In re of Application of O2CNI Co.*,
   No. C 13-80125 CRB (LB), 2013 WL 5826730 n.11 (N.D. Cal. Oct. 29, 2013) ....................... 10

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020) ................................................................................................... 10

*Myrio Corp. v. Minerva Network, Inc.*,
   No.: 00-cv-20996 RMW (PVt),
   2001 U.S. Dist. LEXIS 10461, at *2-3 (N.D. Cal. Apr. 4, 2001) ............................................. 10

*Olmstead v. United States*,
   19 F.2d 842 (9th Cir. 1927) ....................................................................................................... 9

*United States v. Bennett*,
   621 F.3d 1131 (9th Cir. 2010) ................................................................................................... 7

*United States v. Bortnovsky*,
   820 F.2d 572 (2d Cir. 1987) .................................................................................................... 12

*United States v. Cerna*,
   No. CR 08-0730 WHA,
   2009 U.S. Dist. LEXIS 133644, at *12-13 (N.D. Cal. Sept. 16, 2009) ..................................... 6

*United States v. Chen*,
   No. C05-375 SI, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) ................................................. 9

*United States v. DiCesare*,
   765 F.2d 890 (9th Cir. 1985) ..................................................................................................... 8

*United States v. Ellis*,
   121 F. Supp. 3d 927 (2015) ....................................................................................................... 7

*United States v. Feil*,
   No. CR 09-00863 JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) .................................... 6

*United States v. Ford Motor Co.*,
   24 F.R.D. 65 (D.D.C. 1959), the court denied .......................................................................... 8

*United States v. Giese*,
   597 F.2d 1170 (1979) ............................................................................................................ 7, 8

*United States v. Hsia*,
   24 F. Supp. 2d 14 (D.D.C. 1998) .............................................................................................. 7

*United States v. Ramirez*,
   54 F. Supp. 2d 25 (D.D.C. 1999) .............................................................................................. 8

*United States v. Taylor*,
  No. 17-cr-00191-JST-1, 2018 WL 4961608 (N.D. Cal. Oct. 12, 2018) ........................................ 6

*United States v. Tomasetta*,
  429 F.2d 978 (1st Cir. 1970) ............................................................................................... 12, 13

*United States v. Trie*,
  21 F. Supp. 2d 7 (D.D.C. 1998) ................................................................................................ 12

*United States v. Ward*,
  No. CR-11-2123-RMP (E.D. Wash. June 21, 2012) ................................................................ 13

*Vesta Corp. v. Amdocs Management Ltd.*,
  No. 3:14-CV-1142-HZ, 2016 WL 8732371 (D. Or. Apr. 1, 2016) ............................................ 10

*Via Technologies, Inc. v. Asus Computer International*,
  No. 14-cv-03586-BLF (HRL), 2016 WL 5930280 (N.D. Cal. Mar. 17, 2016) ..................... 10, 11

**STATUTES**

18 U.S.C. § 1831(a)(3) ..................................................................................................................... 15

## I.  INTRODUCTION

The government's opposition fails to identify a *single fact* alleged in the indictment—or contained within the voluminous discovery produced to date—that would be sufficient to prove *Jinhua*, as opposed to UMC or the individual defendants, guilty of the charged offenses.[1] *Not one*. Without this basic information, Jinhua lacks sufficient notice of the charges against it and it cannot effectively prepare for trial.  The government's silence in the face of Jinhua's demonstration of this utter void of evidence supporting the government's allegations is damning and begs the question of why Jinhua is even before this Court.  That question is for another day, but at the very least, Jinhua is entitled to a bill of particulars explaining with particularity precisely what it is alleged to have done so that it does not go into trial blindly.

Jinhua demonstrated in its moving papers that the indictment was deficient in numerous respects and that the government's discovery had failed to cure those deficiencies.  The government's opposition fails to address these pleading flaws, let alone the gaping hole in the government's evidence.  Contrary to the government's assertions, Jinhua does not seek a "fully integrated" roadmap of the government's order of proof and witnesses, nor do Jinhua's requests amount to "civil interrogatories."  (Opp. at 1:17, 5:2.)  Jinhua simply seeks what Rule 7(f) requires, and due process demands: sufficient disclosure of the government's alleged facts *as against Jinhua* (as opposed to the other defendants), to allow Jinhua to adequately prepare for trial.  The indictment, even when viewed with the benefit of the voluminous discovery, does not come close to meeting that standard.

*First*, as noted above, the government has still failed to identify any specific facts in the indictment detailing Jinhua's role in the alleged conspiracy or *any* wrongful conduct by Jinhua.  The indictment does not allege *when* Jinhua purportedly entered the conspiracy; *who* purportedly acted on Jinhua's behalf; or any wrongful overt acts allegedly committed by Jinhua.  To the contrary, the only specific allegations of wrongful conduct in the indictment are asserted against individual defendants Wang and Ho, who were both *UMC* employees at the time they committed their allegedly wrongful acts. (Mot. at 5:4-17.)  Nothing in the 7 million documents produced to date fills this void.

---

[1] This brief uses the same abbreviations used in Jinhua's motion.  *See* Dkt. 164.

1

There is not a single admission in those almost 17 million pages of documents that points to anything resembling a conspiracy.  *Not one.*  If there was, the government would surely point it out.

The government seeks to fill these pleading deficiencies and evidentiary holes by relying on *UMC's* guilty plea.  (Opp. at 2:19-20.)  But UMC's plea does not implicate *Jinhua* in any way. (Mot. at 8:5-9:5.)  On the contrary, despite its cooperation agreement requiring UMC to provide all relevant documents and information requested by the government (Dkt. 148 ¶ 9(c)), UMC did not admit the existence of a conspiracy (Dkt. 145 at 2-3; Dkt 148 ¶¶ 1-2, 2(n)); stated that its senior management had no knowledge of any misappropriation (Dkt. 144 at 4:19-20); and issued a press release the same day as its guilty plea stating that it had stripped any confidential Micron information from its DRAM technology and never delivered any Micron proprietary information to Jinhua. (Sloan Decl. ¶ 14; *id.* at Ex. 4.; *see also* Dkt. 144 (UMC's Sentencing Memorandum) at 4.)

The government's reliance on the Taiwan proceedings (Opp. at 1:10-13) is similarly misplaced.  Neither Jinhua nor Stephen Chen (who became Jinhua's President in February 2017, well after the purported misappropriation and wrongful use of Micron's alleged trade secrets alleged here (Dkt. 1, ¶¶ 7, 18-31)), were parties to those proceedings; no conspiracy with Jinhua was alleged; and the Taiwanese court found that there was no evidence that UMC had used Micron's trade secrets or that UMC had provided any Micron trade secrets to Jinhua. (Dkt. 144 at 5.)

*Second*, the government has still failed to identify with specificity which elements of the 23 voluminous documents it now contends constitute alleged Trade Secrets 1 through 8 are purportedly trade secrets and were allegedly misappropriated, copied, or knowingly obtained by Jinhua. Apparently recognizing that it cannot identify any discrete elements of these documents (most of which were for technology that had already been in mass production for several years as of 2016) that are entitled to trade secret protection, the government has now belatedly claimed that alleged Trade Secrets 1 through 8 are "combination" or "compilation" trade secrets.  Even under this new found designation, however, the government must still identify how the specific combination of elements in each trade secret makes that particular design unique, valuable and entitled to trade secret protection.  The government has not even attempted to meet that burden.  Nor has it identified where Jinhua can find alleged Trade Secrets 1-8 in the 148,000 pages of the Technology Transfer Package

2

(sometimes referred to herein as the "TTP") that UMC sent to Jinhua in September 2018. (Dkt. 144 at 4.)  Indeed, despite the statements in UMC's sentencing memorandum stating that "the *first tranche* of DRAM process technology [was transferred to Jinhua] . . . in September 2018" through the TTP (*id.* (emphasis added); *see also* Dkt. 148 at 6, ¶ 2(n)), the government now claims that it need not prove that *any* documents in the TTP "contain" Micron trade secrets, and refuses to explain when the purported trade secrets were allegedly transferred to Jinhua.  (Opp. at 13:18-23.)

*Third,* while the government's opposition provides some guidance on the specific parts of the five patents and patent application identified in the indictment that are "similar to" or "based on or derived from" alleged Trade Secrets 2 and 6, the indictment, even when viewed with the benefit of the FBI-302 cited by the government, is insufficient to satisfy Rule 7(f).  Indeed, the referenced FBI-302 is just two pages long and only addresses a handful of examples in which Micron alleges purported similarities between the filed patents and patent application *and* Micron products.

*Finally*, the government continues to dodge Jinhua's simple and straightforward request that the government identify precisely when it alleges that Jinhua "knowingly received" the alleged trade secrets.  Jinhua needs this information to properly prepare for trial because it is unclear from the indictment *when* during the course of the alleged three-year conspiracy the government claims that Jinhua actually obtained the alleged trade secrets.  The government's unexplained and unreasonable silence forces Jinhua to continue guessing about the most basic elements of the charges against it.  The court should therefore grant Jinhua's motion for a bill of particulars.

## II. THE COURT SHOULD GRANT JINHUA'S REQUEST FOR A BILL OF PARTICULARS

### A. The Indictment Fails to Allege Sufficient Facts Demonstrating Jinhua's Purported Involvement in the Conspiracy or Any Wrongful Conduct

As demonstrated in Jinhua's motion, the indictment, even when viewed in connection with the government's discovery, fails to provide sufficient information about Jinhua's purported role in the alleged conspiracies—or, indeed, any wrongful conduct *by Jinhua*—to give Jinhua notice to adequately prepare for trial.  (Mot. at 11-14.)  Most significantly, the indictment fails to describe with specificity (1) when, where and how Jinhua purportedly joined the conspiracies; (2) the specific individuals who allegedly acted on Jinhua's behalf to join the conspiracies; (3) the nature and date

3

of any overt acts purportedly committed by Jinhua that demonstrate that Jinhua knowingly and willfully participated in the alleged conspiracies; and (4) whether the government is alleging that Jinhua conspired to (a) misappropriate, (b) copy or (c) knowingly obtain Micron's trade secrets, or some combination of the above. (*Id.*; Sloan Decl. Ex. 15 ¶¶ 1-4.)

The government's claims that the combination of the indictment, the discovery produced to date, UMC's guilty plea and the Taiwanese criminal judgment against UMC are sufficient to give Jinhua adequate notice to prepare for trial are without merit. Indeed, the indictment provides almost no details about any allegedly wrongful conduct by Jinhua. (Mot. at 5:4-17.) The government's attempt to cure this defect by pointing to the allegations of wrongdoing against the individual defendants are unavailing. The government makes much of the fact, for instance, that the indictment alleges that Stephen Chen, who was a senior vice president of UMC as well the President of Jinhua, was one of the alleged conspirators. (Opp. at 5.) The government neglects to mention, however, that by the its own account, Chen did not become the President of Jinhua until February 2017 (Dkt. 1 ¶ 7), well after the conspiracies allegedly commenced in January 2016 (Count One) and October 2015 (Count Two), respectively (*id.* at ¶¶ 17, 51); well after defendant Ho (who was a *UMC employee*) allegedly stole Micron trade secrets from MMT in or around October 2015 (*id.* at ¶¶ 25, 37); and well after defendant Wang allegedly stole Micron confidential materials when leaving MMT in April 2016 and then later allegedly used stolen Micron trade secret material contained in alleged Trade Secret 5 to assist UMC in it design of the F32nm DRAM design rules (*id.* at ¶¶ 26-28, 43).

The government's reliance on UMC's guilty plea (Opp. at 1) fares no better. UMC pled guilty to a single, narrowly-focused charge of trade secret theft based almost solely on the conduct of defendants Wang and Ho, who were both UMC employees at the time of their conduct, and whom UMC has admitted had acted, at least in part, for UMC's benefit. (Dkt. 144 at 4; Dkt. 148 ¶ 2(z).) Significantly, UMC did not plead guilty to the conspiracy charges leveled against UMC and Jinhua in the indictment despite the provision in its cooperation agreement requiring it to give the government all evidence in its possession. (Dkt. 144 at 1, 5 (noting that UMC "has done an extensive investigation of the underlying facts, and has cooperated with the government, including providing information about facts discovered in its internal investigation"); Dkt. 148, ¶ 9(c).) To the contrary,

1  UMC stated in its sentencing memorandum and in a press release issued immediately after its guilty
2  plea that UMC decided as early as December 2015 or January 2016 that it planned to model its
3  technology after Samsung, not Micron (so Micron's confidential designs would be of little value to
4  it); and that UMC's "top management" first learned about defendant Ho's and Wang's wrongful
5  conduct *after* the Taiwan raids in February 2017 (*Id.* at 3-4; Sloan Decl. ¶ 14; *id.* at Ex. 4; Dkt. 144
6  at 4), thus undermining any claim that UMC conspired with Jinhua.  Moreover, UMC publicly stated
7  that following the Taiwan raids, it directed any potential inputs from defendant Wang to be removed
8  from UMC's DRAM technology and that UMC had never delivered any materials based on Micron
9  confidential information to Jinhua or anyone else.  (Dkt. 148 at ¶ 14; *id.* at Ex. 4; Dkt. 144 at 5.)

10        The government's embrace of the Taiwan criminal case is similarly unavailing.  Although
11 the Taiwanese court found that UMC was guilty under Taiwanese trade secret law for failing to
12 exercise the requisite degree of caution to prevent the crimes committed by its employees, UMC's
13 senior management was not found culpable of intentionally misappropriating Micron's trade secrets
14 or conspiracy of any kind, and there were no charges brought against Jinhua.  (Dkt. 144 at 5.)
15 Moreover, the Court found that there was no evidence that UMC had used Micron's 25nm DRAM
16 design rules or that UMC had provided those design rules to Jinhua.  (*Id.*)

17        The government's legal challenges to Jinhua's requested bill of particulars are also
18 unfounded.  The government takes issue first with Jinhua's request that the government specify
19 "when, where and how" Jinhua purportedly joined the conspiracies, including the specific conduct
20 or evidence demonstrating Jinhua's purported agreement to enter the conspiracies.  (Opp. at 6.)
21 Contrary to the government's assertions, however, there is strong case law in favor of such a bill of
22 particulars in cases such as this where the indictment pleads a nearly three-year long conspiracy (*See*
23 Dkt. 1 ¶ 35, 49) and there is genuine uncertainty as to when the government alleges Jinhua
24 purportedly entered it.  The uncertainty is real here.  The indictment appears to allege that UMC and
25 Jinhua "conspired to circumvent Micron's restrictions on its proprietary technology" at the very
26 beginning of the purported conspiracies, which allegedly began, "in or about January 2016" (Count
27 One) and "in or about October 2015" (Count Two.) (*Id.*, ¶¶ 17, 18, 51.)  But according to the
28 government's allegations elsewhere, that is *before* Jinhua was even "formed and funded" by the

5

Chinese government in or round February 2016.  (*Id.*, ¶ 19.)  Moreover, there are no facts alleged as to what action Jinhua purportedly took to enter the conspiracies or who acted on Jinhua's behalf.

Given these glaring deficiencies and inconsistencies in the indictment, the court should compel the government to specify when Jinhua is alleged to have entered the conspiracies, so that it is not left guessing what it is actually accused of doing.  Is the government alleging that Jinhua entered the conspiracy in October 2015 or January 2016, when the conspiracies allegedly began?  In February 2016 when Jinhua was allegedly founded?  In April 2016 when Wang allegedly downloaded Micron files from MMT?  In July or August 2016 when Wang allegedly used stolen Trade Secret 5 to assist UMC with its design of its DRAM product?  In October 2016, when Jinhua attended the recruiting fair in California?  In September through March 2017 when UMC and Jinhua allegedly filed patents and a patent application?  Or in September 2018 when Jinhua apparently received the TTP from UMC?  (*Id.* at ¶¶ 17, 19, 28, 30-32, 51; Dkt. 144 at 4.)  The answers to those questions remain a mystery even though the case was indicted more than two and a half years ago.

In situations like this where the indictment provides no guidance as to when a defendant purportedly entered a long-running conspiracy with multiple co-conspirators and multiple points the government could allege a defendant entered the conspiracy, courts have ordered a bill of particulars "clarifying *when* each defendant is alleged to have first joined each conspiracy."  *United States v. Cerna*, No. CR 08-0730 WHA, 2009 U.S. Dist. LEXIS 133644, at *12-13 (N.D. Cal. Sept. 16, 2009) ("Without knowing *when* they are alleged to have joined each conspiracy, defendants cannot know the universe of conduct against which they must prepare a defense.") (emphasis in original).  This Court reached a similar result in *United States v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) (holding that defendants are entitled to a bill of particulars where the alleged conspiracy "spans a period of three to seven years," and "the Government has produced over 70,000 pages of discovery.") *Id.* at *3.[2]

---

[2]  The government's attempt to distinguish *Feil* and *Cerna* falls flat.  It attempts to distinguish *Feil* by citing *United States v. Taylor*, No. 17-cr-00191-JST-1, 2018 WL 4961608 (N.D. Cal. Oct. 12, 2018) (Opp. at 8-9), where the court denied defendant's request for a bill of particulars because "the level of detail in this case far exceeds the boilerplate paragraphs from the indictment" in *Feil*. 2018 WL 4961608 at *4.  That is not the case here, where the indictment lacks *any* allegations of
*(cont'd)*

The government's reliance on *United States v. Giese,* 597 F.2d 1170 (1979), is misplaced. Unlike in *Guise,* Jinhua does not seek the "when, where, and how" of *every* act in furtherance of the conspiracy" or "*all overt acts* in furtherance of the conspiracy." *Id.* at 1180-81 (emphasis added). Jinhua merely seeks the government to identify when in the course of the nearly three-year long alleged conspiracy, Jinhua is accused of entering the conspiracy and how it purportedly manifested that assent. Given that the government has now obtained the full cooperation of the principal alleged co-conspirator (UMC) and free access to its documents and employees, that should not be difficult to provide if there is any cognizable evidence to support the government's charges (which of course, there is not). The government's citation to a 75 year old case is unavailing. (Opp. at 7 (citing *Rose v. United States*, 149 F.2d 755 (9th Cir. 1945).) While the government may prove a conspiracy by "circumstantial evidence," "mere suspicion or speculation cannot be the basis for creation of logical inferences." *United States v. Bennett*, 621 F.3d 1131, 1139 (9th Cir. 2010) (overturning conviction of one defendant based on its relationship with its co-defendant where "[t]he government introduced no evidence regarding the relationship between [the two defendants], and the record contains nothing from which the jury could discern the [nature of the relationship]"). Here, the government has nothing beyond mere suspicion and the fact that UMC and Jinhua entered into a technology cooperation agreement to support its conspiracy allegations. As *Bennett* instructs, this is insufficient.

The government's challenge to Jinhua's request that the government identify the specific individuals who allegedly entered the conspiracy on behalf of Jinhua (Opp. at 7) is similarly unfounded. Given that the only senior Jinhua employee who is identified in the indictment is Stephen Chen, and he did not become Jinhua's President until February 2017, long after the indictment alleges that the "conspiracies" commenced (in January 2016 (Count One) and October 2015 (Count Two), respectively), Jinhua is entitled to know whom the government contends entered the conspiracy on Jinhua's behalf. *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) ("Often it is not readily

---

wrongful conduct by Jinhua. The government's citation to *United States v. Ellis*, 121 F. Supp. 3d 927 (2015), (Opp. at 8), is similarly distinguishable: in *Ellis* the indictment "allege[d] that defendants were involved in two specific incidents in furtherance of the racketeering conspiracy" and specified which defendants were involved in each incident. 121 F. Supp. 3d at 929. Here, the indictment alleges no specific wrongful conduct by Jinhua whatsoever, such that it is impossible for Jinhua to tell when it purportedly entered the alleged conspiracies.

7

1  apparent from an indictment who performed acts attributed to corporations, and a bill of particulars
2  is an appropriate way to identify these individuals to help the defendant prepare for trial even when
3  the defendant is the corporation itself."). Although the government has now produced more than 16
4  million pages of documents, including millions of pages from the key UMC custodians, these offer
5  no clue as to who allegedly conspired on behalf of Jinhua. Given the uncertainty of the government's
6  allegations, Jinhua needs to know the identity of that person (or persons) so that it can adequately
7  prepare its defense. *See also United States v. Ramirez,* 54 F. Supp. 2d 25, 30 (D.D.C. 1999)
8  (Defendants "are entitled to a bill of particulars setting forth the names of all persons the government
9  would claim at trial were co-conspirators . . . , the approximate dates and locations of any meetings
10 or conversations not already identified in the indictment in which each defendant allegedly
11 participated, and the approximate date on which each defendant allegedly joined the conspiracy.")

12        The cases cited by the government are easily distinguishable. In *United States v. DiCesare*,
13 765 F.2d 890 (9th Cir. 1985), for instance, the defendant sought names of multiple "unknown
14 coconspirators," the "exact date on which the conspiracy allegedly began," and a description of "all
15 other overt acts." *Id* at 897-98. Here by contrast, Jinhua simply seeks the name of the person who
16 is alleged to have entered the conspiracy on its behalf. *United States v. Ford Motor Co.*, 24 F.R.D.
17 65 (D.D.C. 1959), a 1959 case about the Sherman Anti-Trust Act, is similarly distinguishable, as
18 there the indictment contained "sufficient detail . . . to serve as a basis upon which the defendant may
19 investigate and determine the information by itself." *Id.* at 69. Here, as noted, the indictment fails
20 to provide any information specific to Jinhua's allegedly wrongful conduct. For the reasons
21 discussed above, it is imperative that Jinhua have that information to properly prepare for trial.

22        The government's opposition to Jinhua's third and fourth requests also falls short. The
23 government again tries to reframe Jinhua's request by suggesting that Jinhua seeks an order requiring
24 the government to identify "all the overt acts in furtherance of the conspiracy" (Opp. at 7 (citing
25 *Giese*, 597 F.2d at 1180-81)). That is not what Jinhua is seeking. Jinhua requests the government
26 to identify any overt acts that demonstrate that Jinhua allegedly acted *knowingly in the alleged*
27 *unlawful conduct*. (Sloan Decl. Ex. 15 ¶ 3.) Given the lack of such evidence in the discovery and
28 *Jencks* material produced to date, Jinhua is entitled to notice of what, if anything, the government

8

contends supports that element of its charges.. (*See* Mot. at 13-14.)[3]

Finally, the government challenges Jinhua's request that the government identify precisely which objects of the conspiracy Jinhua allegedly conspired to violate. Given the dearth of allegations in the indictment and the void of evidence in the record, Jinhua needs this information to avoid potential prejudicial surprise at trial. (Mot. at 12:6-13:10.) The government's arguments to the contrary are unavailing and the case it cites, *Olmstead v. United States*, 19 F.2d 842 (9th Cir. 1927), a bootlegging case from the 1920s, is easily distinguishable. In fact, *Olmstead* **granted** a limited bill of particulars within a narrower scope of what was requested. *Id.* at 844.

### B. The Government Has Failed To Identify Its Alleged Trade Secrets With Sufficient Particularity or To Describe What Makes the Alleged Combination of Features Unique

As Jinhua demonstrated in its moving papers, the indictment failed to identify the alleged trade secrets with sufficient particularity to satisfy Rule 7(f). (Mot. at 14-21.) The government's glib claim that the "Indictment [e]xceeds the [p]leading [r]equirements" is anything but accurate. Rather than identify the specific elements or features of Micron's confidential materials that purportedly meet Section 1839(3)'s demanding standards for trade secret protection (which requires the government to prove that the alleged information was not "generally known" or "readily ascertainable through proper means" like reverse engineering), the indictment broadly described the alleged trade secrets at issue here. The indictment identifies Trade Secret 1 as "the ways and means in which proprietary and non-propriety components were compiled and combined by Micron" and alleged Trade Secrets 2-8 as seven voluminous documents (which are collectively over 1300 pages long). (Dkt 1 ¶ 12(a)-(h).) That sweeping description was clearly insufficient to give Jinhua notice of the specific elements of Micron's voluminous materials that the government alleges are entitled to trade secret protection or are alleged to have been misappropriated. (Mot. at 14-16.)

In apparent recognition of these deficiencies in the indictment, the government made some

---

[3] *United States v. Chen*, which is cited by the government, actually supports Jinhua's position. There, the court **granted** a bill of particulars with respect to specific counts, requiring that "the government state the manner in which [defendant] and each alleged co-conspirator contributed to the charged conspiracy, and the times and places of said participation." No. C05-375 SI, 2006 WL 3898177, at * 4 (N.D. Cal. Nov. 9, 2006).

9

**JINHUA'S REPLY ISO MOTION FOR BILL OF PARTICULARS**    CASE NO.: 3:18-cr-00465-MMC

significant eleventh hour corrections.  First, it sent Jinhua the May 4, 2021 letter specifying that "Trade Secret 1 comprises the compilation of information in Trade Secrets [2-8], along with the information" contained in 16 additional voluminous files identified in the letter.  (Sloan Decl. ¶ 30; *id.*, Ex. 14 at 1.)  Secondly, in its opposition, the government definitively confirmed that it will now assert that alleged Trade Secrets 2-8 are compilation or combination trade secrets.  (Opp. 11:6-8.)

However, the government still fails to meet its burden of identifying the alleged trade secrets with sufficient specificity under federal law.  *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020) (holding a trade secret plaintiff must "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade" (alteration in original)).[4]  Even if the government is now belatedly claiming that the alleged trade secrets at issue are combination or compilation trade secrets, the government must still:  (1) identify the specific portions of a document that make up the compilation/combination; and (2) demonstrate how the compilation/combination is distinguishable from what is already publicly known.  *See Myrio Corp. v. Minerva Network, Inc.*, No.: 00-cv-20996 RMW (PVt), 2001 U.S. Dist. LEXIS 10461, at *2-3 (N.D. Cal. Apr. 4, 2001) (requiring a trade secret plaintiff to "specify precisely which portions of the document describes the trade secret(s)"); *see also Alta Devices, Inc. v. L.G. Elecs., Inc.*, No. 18-cv-00404-LHK (VKD), 2019 WL 176261, at *5 (N.D. Cal. Jan. 10, 2019) (requiring a trade secret plaintiff to "state and . . . identify [the trade secret] compositions in a manner that distinguishes them from what is already known").

Rather than try to repair these flaws  in its pleading, the government simply ignores them and the key cases cited by Jinhua—*Vesta Corp. v. Amdocs Management Ltd.*, No. 3:14-CV-1142-HZ, 2016 WL 8732371 (D. Or. Apr. 1, 2016) and *Via Technologies, Inc. v. Asus Computer International*, No. 14-cv-03586-BLF (HRL), 2016 WL 5930280 (N.D. Cal. Mar. 17, 2016). The government's failure to address the standard for identifying a compilation/combination trade secret likely stems

---

[4] Courts have recognized that civil trade secret law is instructive given the dearth of criminal cases on trade secret theft.  *See, e.g.*, *In re of Application of O2CNI Co.*, No. C 13-80125 CRB (LB), 2013 WL 5826730, at *15 n.11 (N.D. Cal. Oct. 29, 2013) ("The point here is that [civil trade secret law] provides a mechanism to frame the appropriate scope of discovery, including discovery in aid of a criminal case.").  The government does not contest this in its Opposition.

10

JINHUA'S REPLY ISO MOTION FOR BILL OF PARTICULARS    CASE NO.: 3:18-cr-00465-MMC

1  from the fact that it has no clear idea about how or why the alleged trade secret documents—some
2  of which appear to be high-level training documents prepared to help familiarize employees with
3  DRAM concepts—are unique from what was publicly known at the time Jinhua allegedly conspired
4  to steal them. Indeed, contrary to the government's claims that these documents contain highly
5  sensitive recipes for DRAM, alleged Trade Secret 7 disclaims that it provides any detailed values.
6  The document notes that it is merely a ███████████ and ███████████
7  ███████████ or ███████████ (Sloan Decl., Ex. 12 at 4.)
8  Moreover, the plain language of Trade Secret 7 demonstrates that it was obsolete before the
9  conspiracies here even began: it states that ███████████
10 ███████████ (*Id.*)
11         Significantly, now that the government has indicated that all of the alleged trade secrets are
12 compilation or combination trade secrets, the government and its experts should be precluded from
13 arguing that any single element, process flow, or specification is entitled to individual trade secret
14 protection or that UMC's DRAM technology copied any of these discrete line items or features in
15 the alleged trade secret documents. Given the government's insistence that the alleged trade secrets
16 are the documents themselves or "the specific combination of information in each document," (Opp.
17 11:6-8), it must prove beyond a reasonable doubt that Jinhua obtained or received the complete
18 documents identified as alleged Trade Secrets 1-8, or every piece of information they contain, in
19 order to establish that Jinhua knowingly received the alleged trade secrets (as required for Count 7).
20         The government's attempt to avoid its responsibility to identify which of the more than
21 37,000 documents in the Technology Transfer Package purportedly contain or reflect Trade Secrets
22 1-8 (Opp. at 13:18-25) is telling. The UMC sentencing memorandum states that "UMC transferred
23 the first tranche of DRAM process technology to Jinhua in September 2018." (Dkt. 144 at 4; *see
24 also* Dkt. 148 ¶ 2(n).) Given that the indictment alleges that both the conspiracy counts (Counts 1
25 and 2) and the substantive economic espionage count (Count 7) continued through the date of the
26 indictment, the clear implication is that the government plans to prove that the TTP contained
27 sensitive Micron trade secrets. If that is true, then Jinhua is entitled to a bill of particulars identifying
28 where in the over 148,300 pages of those materials, the government contends that Jinhua will find

the alleged trade secrets. *See United States v. Bortnovsky*, 820 F.2d 572, 574-75 (2d Cir. 1987) (reversing denial of bill of particulars relating to information vital to the defendants' understanding of the charges, where the government asserted "that it fulfilled its obligation to inform appellants of the charges by being explicit in the indictment and by providing over 4,000 documents to defense counsel during discovery"). It would simply be unfair to expect Jinhua's expert to comb through the 37,000 documents to discover what the government should long since have identified before indictment. Due process requires that the government provide this information now, or not rely on this theory later at trial. *See United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970) ("Without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an accused is at a material disadvantage in meeting the charge against him.").

On the other hand, if the government does not intend to prove that Jinhua obtained any of the alleged trade secrets through the TTP, the court should require the government to say so now, so Jinhua has fair notice and its experts do not have to spend hundreds or thousands of hours looking for a proverbial needle in the 148,000 pages of this production. As Jinhua indicated in its moving papers, Jinhua has yet to find any trade secret documents in this production. And UMC, despite its obligation to cooperate with the government, has indicated that it "never planned to, and did not transfer Micron trade secrets or any unauthorized third-party information to Jinhua." (Sloan Decl. ¶ 14 (citation omitted); *id.* at Ex. 4. at 1)  The government should stop playing hide the ball now, *see United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998), and either confirm that it does not intend to prove that Jinhua received any of the alleged Trade Secrets—or any other confidential Micron information—in the TTP or identify precisely where it contends the alleged trade secrets reside.

Notwithstanding the government's promises that it will cure any flaws in identifying the relevant trade secrets in its upcoming expert disclosures on July 2, 2021 (Opp. at 10), the government cannot continue to evade responsibility for providing more detail by shifting the goalposts with vague promises of future disclosures. Jinhua is entitled to that information now.

**C.  The Government Has Failed to Specify The Parts Of Jinhua's Patents And Patent Application That Were Allegedly Based On Trade Secrets 2 and 6**

As demonstrated in Jinhua's moving papers, the indictment also fails to identify with

specificity either (1) the specific portions of the six joint UMC/Jinhua patents and patent application filed during the relevant time period that allegedly contained information that was "based on" or "very similar to" to alleged Trade Secrets 2 and 6; or (2) the specific sections of Trade Secrets 2 and 6 (which are respectively 233-pages and 302-pages long) upon which the unnamed portions of these patents were purportedly based. (Mot. at 21.) The government's generalized assertion that this information was buried somewhere within the indictment is simply insufficient to provide Jinhua with its Sixth Amendment guarantee "to be informed of the nature and cause of the accusation [against it]." *Tomasetta*, 429 F.2d at 979. Without further information, Jinhua and its expert would be forced to "guess which portions" of the almost 100 pages of technical specifications, claims and diagrams in the patents/patent application "will be the subject of the Government's case-in-chief." *See United States v. Ward*, No. CR-11-2123-RMP, at 5-6 (E.D. Wash. June 21, 2012).

The government's attempt to cure these pleading deficiencies by pointing to an FBI-302 from a Micron employee who purportedly describes "the design similarities between the patent[s] and Micron's Technology," (Opp. 14:18-19), falls short. The Micron FBI-302 is just two pages long and only addresses a handful of alleged similarities. Thus, the broad-brush statements in the indictment, even when considered with the benefit of the FBI-302, fail to provide sufficient information to give Jinhua adequate notice of the government's allegations since it does not identify all instances of such similarities or even provide enough specificity with respect to the instances it does purport to identify. In order to provide Jinhua sufficient notice to be able to adequately prepare for trial, and ensure that its Sixth Amendment rights are protected, the court should either (1) compel the government to identify any other instances in which it claims that UMC and Jinhua's joint patents or patent applications are "the same or very similar to"—or "based upon or derived from"—alleged Trade Secrets 2 and 6 or (2) preclude the government from introducing any evidence at trial that UMC and Jinhua's patents or patent application were similar to or based upon Trade Secrets 2 and 6 other than those similarities already addressed in the two-page FBI-302. *See Tomasetta*, 429 F.2d at 979.

### D. The Indictment Fails to Identify With Specificity When And How Jinhua Purportedly Knowingly Received The Alleged Trade Secrets

The government must also identify *when* and *how* Jinhua purportedly received the alleged

13

trade secrets in order for Jinhua to properly prepare a defense. (Mot. at 22.) This is not an improper attempt to force the government to "marshal and disclose" *all* of its trial evidence, as the government suggests. (Opp. at 15.) Jinhua simply seeks fair notice of when it is accused of taking possession of Micron's alleged trade secrets, which is one of the central facts in this case. The answer, which should be clear cut, is a mystery to Jinhua even now, more than two and a half years after indictment, and after receiving almost 16 million pages of discovery. (Sloan Decl. ¶ 16.)

Does the government allege and intend to prove that Jinhua received the trade secrets: (1) In late 2015 and early 2016, when Ho and Wang allegedly brought documents from Micron to UMC? (2) In July 1, 2016 when the "employment" agreement[5] Ho signed with Jinhua allegedly became effective? (3) In July or August 2016, when Wang allegedly used Trade Secret 5 to assist in UMC's design of the F32nm DRAM product? (4) From approximately September 2016 through March 2017, when UMC and Jinhua allegedly filed the five patents and a patent application purportedly "concerning DRAM technology that contained information that was the same or very similar to technology described in Micron's Trade Secrets 2 and 6"? (5) In October 2016, when Jinhua participated in the recruiting fair in Northern California, at which time, the indictment alleges "Chen, UMC and Jinhua had obtained and were in continuous control of the stolen Micron trade secrets" (although the UMC sentencing memorandum, states that the UMC RAM process technology was not turned over to Jinhua until September 2018)? (6) In February 2017, when Chen allegedly became Jinhua's President? Or (7) in September 2018, when UMC purportedly delivered the Technology Transfer Package to Jinhua? (Dkt. 1 ¶¶ 7, 24, 25, 28, 31, 32, 37-47; Dkt. 144 at 4.) Alternatively, does the government intend to argue that Jinhua received the alleged Trade Secrets at some other undisclosed time during the nearly three year span of the alleged conspiracies? Given the numerous possibilities—and the complete lack of any concrete allegations in the indictment or evidence in the produced discovery—Jinhua needs more specificity so it will not be forced to prepare at least seven

---

[5] As Jinhua will establish at trial, notwithstanding any such agreements, Ho never became a Jinhua employee and Jinhua cannot be held criminally (or civilly) liable for his alleged actions under *respondeat superior* or any other theory of vicarious liability.

*(cont'd)*

14

different defenses on the basic element of when it purportedly received the alleged trade secrets.[6]

Rather than meaningfully contest Jinhua's showing that the government must *allege facts* establishing that Jinhua *knew* the alleged trade secrets it received were stolen (Mot. at 22-23), the government resorts to a convoluted argument about whether Section 1831(a)(3) even requires "knowing receipt" as opposed to "[m]ere possession, with the appropriate intent." (Opp. 14-15.) The statute at issue clearly states that "knowing receipt" is required: "Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, *knowingly* . . . receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization." 18 U.S.C. § 1831(a)(3) (emphasis added). Thus, by the plain language of the statute, the government must show Jinhua *knowingly* received or possessed a trade secret. And given UMC's public press release, stating that *UMC's* senior leadership had no knowledge about Wang and Ho's conduct, and that UMC stripped any Micron influence out of the Technology Transfer Package before UMC's DRAM was delivered to Jinhua (Sloan Decl. ¶ 14; *id.* Ex. 4), the court should require the government to provide a bill of particulars setting forth specific facts supporting the government's allegations that Jinhua obtained the alleged Trade Secrets knowing that they had been misappropriated or stolen.

## III.  CONCLUSION

For the foregoing reasons, Jinhua respectfully requests that the Court issue an Order pursuant to Federal Rule of Criminal Procedure 7(f) requiring the government to provide a bill of particulars.

DATED: June 9, 2021                     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:     */s/ Jack P. DiCanio*
JACK P. DICANIO
MATTHEW E. SLOAN
MICHELLE KAO
OLIVIA L. VADEN
*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

---

[6] Further, to the extent the government is alleging that Jinhua received the purported trade secrets at different times, the government must identify which of alleged Trade Secrets 1-8 it received and when. If the government is alleging that Jinhua only received the alleged trade secrets once, then it should be compelled to identify when that was and which particular trade secrets Jinhua supposedly received at that time.