JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>          v.<br><br>UNITED MICROELECTRONICS CO. et al.,<br><br>                              Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S NOTICE OF MOTION AND MOTION IN LIMINE NO. 2 TO EXCLUDE THE EXPERT TESTIMONY OF DR. ADAM M. SEGAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MATTHEW E. SLOAN;  [PROPOSED ORDER]**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 14, 2022<br><br>Hearing Date: January 18, 2022<br>Hearing Time: 10:00 a.m. |

TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 18, 2022, at 10:00 a.m., or as soon thereafter as the matter may be heard at a time set by The Honorable Maxine M. Chesney in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") will move the Court, pursuant to the Federal Rules of Evidence 401, 403, 404, 702 and 704, to enter an order excluding Dr. Adam M. Segal's proffered testimony and alleged expert opinions, as well as his expert report ("Motion").   This Motion is based upon the Notice of Motion and Motion, Memorandum of Points and Authorities, the Declaration of Matthew E. Sloan ("Sloan Decl.") and exhibits thereto, the pleadings and papers on file in this action, and such further arguments and matters as may be presented at the time of the hearing on this Motion.

1

## **TABLE OF CONTENTS**

2   TABLE OF CONTENTS ................................................................................................. ii

3   TABLE OF AUTHORITIES ......................................................................................... iii

4   ISSUES TO BE DECIDED ........................................................................................... 1

5   MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 1

6       I.      INTRODUCTION ......................................................................................... 1

7       II.     LEGAL STANDARD .................................................................................... 3

8       III.    THE CHARGES AGAINST JINHUA AND ELEMENTS OF THE
9               ALLEGED OFFENSES ................................................................................ 4

        IV.     ARGUMENT .................................................................................................. 4
10

11              A.      Dr. Segal's Proffered Testimony That Jinhua Was an Instrumentality
                        of the State Will Not Assist the Jury and Is an Improper Attempt to
12                      Use Dr. Segal to Smuggle In Factual Statements about Jinhua ..................... 5

13              B.      Dr. Segal's Remaining Testimony Is Irrelevant ............................................. 6

14              C.      Dr. Segal's Testimony Is Unfairly Prejudicial and Likely to Mislead
                        the Jury ........................................................................................................... 8

15      V.      CONCLUSION ............................................................................................. 10

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3
Page(s)

4

## CASES

5
*Aguilar v. International Longshoremen's Union Local No. 10,*
6
    966 F.2d 443 (9th Cir. 1992) ................................................................................ 6

7
*City of Pomona v. SQM North America Corp.,*
    866 F.3d 1060 (9th Cir. 2017) ............................................................................ 3

8

9
*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993) ............................................................................................ 3

10
*Hangarter v. Provident Life & Accident Insurance Co.,*
11
    373 F.3d 998 (9th Cir. 2004) .............................................................................. 6

12
*Jinro America Inc. v. Secure Investments, Inc.,*
    266 F.3d 9936 (9th Cir. 2001) .............................................................. 2, 3, 8, 9

13

14
*Kumho Tire Co. v. Carmichael,*
    526 U.S. 1377 (1999) .......................................................................................... 3

15
*United States v. Diaz,*
16
    876 F.3d 1194 (9th Cir. 2017) ............................................................................ 6

17
*United States v. Heller,*
    551 F.3d 1108 (9th Cir. 2009) ............................................................................ 3

18

19
*United States v. Liew,*
    Nos. CR 11-00573-1 JSW, CR 11-00573-2 JSW, CR 11-00573-3 JSW, CR 11-
    00573-4 JSW, 2013 WL 6441259 (N.D. Cal. Dec. 9, 2013) ............................. 9

20

21
*United States v. Pangang Group Co.,*
    879 F. Supp. 2d 1052 (N.D. Cal. 2012) ............................................................ 7

22

23
*Yeazel v. Baxter Healthcare Corp.* (In re Heparin Product Liability Litigation),
    MDL No. 1953, Nos. 1:08hc600000, 1:09hc60186, 2011 WL 1059660 (N.D. Ohio
    Mar. 21, 2011) .................................................................................................... 8

24

## STATUTES

25
18 U.S.C. § 1831 .................................................................................................... 4
26
18 U.S.C. § 1839(1) ............................................................................................... 5

27

28

**RULES**

Fed. R. Evid. 401(a)–(b) ................................................................................................ 3

Fed. R. Evid. 401(b) ...................................................................................................... 6

Fed. R. Evid. 402 .......................................................................................................... 3

Fed. R. Evid. 403 ...................................................................................................... 2, 8

Fed. R. Evid. 404(b)(1) ................................................................................................. 8

Fed. R. Evid. 702(a) ...................................................................................................... 6

Fed. R. Evid. 702(a)–(d) ............................................................................................... 3

**OTHER CITATIONS**

Ninth Circuit Model Criminal Jury Instructions, Instruction 8.141A (Economic Espionage) .......... 4

1

## ISSUES TO BE DECIDED

2   Defendant Jinhua seeks an Order from the Court excluding the testimony of Dr. Adam M.
3   Segal, the government's purported "PRC [People's Republic of China] Technology Expert," in its
4   entirety.

5   ## MEMORANDUM OF POINTS AND AUTHORITIES

6   ## I.   INTRODUCTION

7   Jinhua brings this Motion to exclude the testimony of Dr. Adam M. Segal, the government's
8   purported "PRC [People's Republic of China] Technology Expert."  Rather than focus on Jinhua's
9   specific conduct, Dr. Segal seeks to paint China as a unfair competitor of the US and invoke the
10   jury's potential prejudice against Chinse companies like Jinhua.    Dr. Segal's testimony is thus
11   improper and should be excluded.

12   Dr. Segal provides four main opinions in his expert report: (1) Jinhua "is a foreign
13   Instrumentality of PRC"; (2) Jinhua "was Part of China's Efforts to Make Its Economy more
14   innovative and Secure"; (3) Jinhua "is part of [a] Long History of Attempting to Build an Independent
15   Semiconductor Industry"; and (4) "PRC Government Support for a Domestic Semiconductor
16   Industry is Likely to Damage Leading Global Chip Firms and Slow Innovation."  *See generally* Sloan
17   Decl., Ex. A ("Expert Disclosure of Adam Segal" or "Segal Report") .

18   Jinhua respectfully moves to exclude Dr. Segal's testimony in  its entirety on several grounds.
19   *First*, Dr. Segal's opinion that Jinhua is a "foreign instrumentality" (opinion (1), above) should be
20   excluded, pursuant to Rules 702 and 704 of the Federal Rules of Evidence, because it will not
21   meaningfully assist the jury to determine a fact in issue, and seeks to usurp the jury's role in
22   determining the ultimate facts.  Moreover, the government is apparently trying to use Dr. Segal to
23   smuggle in factual information that it should have to introduce through percipient witnesses and
24   documents rather than use Dr. Segal as a mouthpiece for the government's legal arguments.

25   *Second*, Dr. Segal's remaining opinions (opinions (2) through (4), above) are not relevant to
26   any facts at issue in the case since his purported opinions do not establish any elements of the offenses
27   charged against Jinhua or provide any other probative information.  Rather, Dr. Segal's opinions are

28                                                                   1

1 focused solely on the Chinese government's purported industrial policy and do not relate at all to

2 Jinhua's alleged conduct here. As such, his opinions are inadmissible under Rules 401 and 402.[1]

3     *Third*, even if Dr. Segal's remaining opinions were in any way relevant (which they are not),

4 any minimal probative value they have is substantially outweighed by the danger of unfair prejudice,

5 confusing the issues or misleading the jury, and should thus be excluded pursuant to Rule 403.

6 Specifically, Dr. Segal seeks to paint Jinhua as part of an overarching scheme by the Chinese

7 government to develop its semiconductor industry by every means possible, including potential

8 misappropriation of trade secrets, and further states that this is "likely to damage the competitiveness

9 of leading semiconductor firms and possibly slow the pace of innovation across the sector." (Ex. A

10 (Segal Report) at USEXPERT_SEGAL-00000006-00000011). Dr. Segal asserts, for example, that

11 "China is indifferent to how it acquires foreign technology," cites articles on the "Theft of American

12 Intellectual Property," and states that "China's goal is to challenge and then displace Western firms

13 and to gain international leadership." (*Id.* at 5, 6.). This testimony will provide no assistance to the

14 jury in determining the facts in issue and is transparently designed to appeal to the potential biases

15 of the jury by suggesting that Jinhua's actions will harm American competitors—like the

16 complainant here, Micron Technology, Inc. ("Micron")—and that Jinhua is part of a nefarious

17 scheme by the Chinese government to steal American trade secrets and drive U.S. DRAM companies

18 out of business.

19     This is precisely the type of unfairly prejudicial evidence that Rule 403 is designed to exclude

20 because its seeks to encourage the jury to reach a verdict based on improper biases and concerns, as

21 well as generalized facts about the alleged behavior of others, rather than on the basis of evidence

22 related to the specific conduct of Jinhua. The Ninth Circuit has held that expert testimony like this,

23 which is "tinged with ethnic bias and stereotyping" is unfairly prejudicial and therefore should be

24

25

26 ————————————

27    [1] For purposes of this Motion, "Rule" refers to the Federal Rules of Evidence.

*(cont'd)*

28

**JINHUA'S MOTION IN LIMINE NO. 2 TO EXCLUDE**                  **CASE NO.: 3:18-cr-00465-MMC**
**THE OPINIONS OF DR. ADAM M. SEGAL**

1  "excluded under Rule 403's balancing test."  *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1006

2  (9th Cir. 2001).  As such, Dr. Segal's preferred testimony should be excluded in its entirety.[2]

3  ## II.   LEGAL STANDARD

4      Motions in limine are proper to exclude inadmissible or prejudicial evidence before trial.  *City*

5  *of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017); *United States v. Heller*, 551

6  F.3d 1108, 1111 (9th Cir. 2009).  The admissibility of expert testimony is governed by Rule 702.

7  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 & n.7, 597 (1993).

8      Under Federal Rule of Evidence 702, an expert witness may testify if

9
10      (a) the expert's scientific, technical, or other specialized knowledge will help the trier
    of fact to understand the evidence or to determine a fact in issue; (b) the testimony is
11      based on sufficient facts or data; (c) the testimony is the product of reliable principles
    and methods; and (d) the expert has reliably applied the principles and methods to the
12      facts of the case.

13  Fed. R. Evid. 702(a)–(d).  It is well established that a court has a "gatekeeping function" to determine

14  if expert testimony is both relevant and reliable, including excluding expert testimony that fails to

15  meet those standards.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 159 (1999); *Daubert*,

16  509 U.S. at 589, 597.

17      To meet the standard of relevance under Federal Rule of Evidence 401, the government must

18  establish that the proposed expert testimony has a "tendency to make a fact more or less probable

19  than it would be without the evidence; and [] the fact is of consequence in determining the action."

20  Fed. R. Evid. 401(a)–(b).  "Relevant evidence" is generally admissible unless it is proscribed by the

21  constitution, statutes or the rules of evidence; "[i]rrelevant evidence is non-admissible."   Fed. R.

22  Evid. 402.   The court may exclude even relevant evidence, however, "if its probative value is

23  substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

24  the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

25  evidence."  *Id.*; *see also Jinro*, 266 F.3d at 1006.  "Expert evidence can be both powerful and quite

26
27  [2]   Jinhua reserves the right to object to any other areas of testimony that the government may
    seek to elicit from Dr. Segal during trial in the event this motion is not granted in full.

28
**JINHUA'S MOTION IN LIMINE NO. 2 TO EXCLUDE**          **CASE NO.: 3:18-cr-00465-MMC**
**THE OPINIONS OF DR. ADAM M. SEGAL**

misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses."  *Daubert*, 509 U.S. at 595 (citation omitted).

## III.  THE CHARGES AGAINST JINHUA AND ELEMENTS OF THE ALLEGED OFFENSES

The Indictment charges Jinhua with three offenses.  Count One alleges that Jinhua conspired with United Microelectronics Corporation ("UMC") and the individual defendant to commit economic espionage in violation of 18 U.S.C. § 1831(a)(5).  (ECF 1, at 8-13).  Count Two alleges that Jinhua conspired with the same defendants to commit theft of trade secrets in violation of 18 U.S.C. § 1832(a)(5).  (*Id.* at 14).  And Count Seven alleges that Jinhua and the other defendants knowingly received and possessed stolen Micron trade secrets in violation of 18 U.S.C. § 1831(a)(3).  (*Id.* at 16).

In order to prove that Jinhua conspired to commit economic espionage, as alleged in Count One, or committed a substantive charge of economic espionage, as alleged in Count Seven, the government must prove, among other things, that  Jinhua (1) conspired to commit or knowingly took actions that it intended to or knew would benefit a "foreign government" or "foreign instrumentality," and (2) knowingly received, bought, or possessed a trade secret, knowing the same to have been stolen or obtained by fraud or artifice.  *See* Ninth Circuit Model Criminal Jury Instructions, Instruction 8.141A (Economic Espionage); 18 U.S.C. § 1831.

## IV.  ARGUMENT

Jinhua respectfully requests the Court to exclude Dr. Segal's proffered testimony in its entirety because it will *not* assist the jury or the finder of fact; it is irrelevant to the charges against Jinhua; and the probative value, if any, is substantially overweighed by the risk of unfair prejudice or confusing the jury.

**A.    Dr. Segal's Proffered Testimony That Jinhua Was an Instrumentality of the State Will Not Assist the Jury and Is an Improper Attempt to Use Dr. Segal to Smuggle In Factual Statements about Jinhua**

Dr. Segal's report indicates that he is "prepared to testify that Fujian Jinhua is an instrumentality of the People's Republic of China because of its ownership structure" as well as the fact that it purportedly "received [an] initial investment of $5.65 billion from Fujian Electronics & Information Group (FEIG, http://www.feig.com.cn/index.html), a state-owned asset management company and investment platform established by the Fujian Provincial Government in 2014, and the Jinjiang City Energy Investment Group Co., Ltd., a state-owned limited liability company funded by the Jinjiang Finance Bureau (UMCDOJ-03102609; UMCDOJ-03108565)."  (Ex. A at USEXPERT_SEGAL-00000006).   In addition, Dr. Segal also indicated that he will testify about other purported evidence that Jinhua is "a foreign [i]nstrumentality" of the Chinese government, including that "[l]ocal officials and former officials [of the Chinese government]" allegedly "had majority control of Fujian Jinhua's board."  (*Id.*).

While the government must prove beyond a reasonable doubt that Jinhua conspired to benefit a "foreign instrumentality" or " intended" or "knew" that its alleged receipt of Micron's purported trade secrets "would benefit any foreign government" or "foreign instrumentality," *see* Section III *supra*, Dr. Segal's purported testimony here will not "help the trier of fact understand the evidence or . . . determine a fact in issue" as required to satisfy Rule 701(a).  Rather, the government's attempt to introduce this testimony by Dr. Segal is a transparent attempt to usurp the jury's role in applying the facts to the law and reaching the ultimate determination of guilt or innocence.  Here, Section 1839(1) clearly provides that the term "foreign instrumentality" means "any agency, bureau, ministry, component, institution, association, or any legal, commercial, or business organization, corporation, firm, or entity that is substantially owned, controlled, sponsored, commanded, managed, or dominated by a foreign government."  18 U.S.C. § 1839(1). The jury does not need Dr. Segal's opinion to determine whether the government has established those facts beyond a reasonable doubt, however.  The jury can and must make that determination solely on its own, based on the evidence in the record.  This is clearly prescribed by Rule 704

1    which states that "an expert witness must not state an opinion about whether the defendant did or

2    did not have a mental state or condition that constitutes an element of the crime charged or of a

3    defense.  Those matters are for the trier of fact alone."  Fed. R. Evid. 704(b).

4           To the extent that the government can introduce percipient witness testimony or admissible

5    documents establishing that Jinhua is a foreign instrumentality, it should present that to the jury and

6    let the jury decide whether the government has met its burden; it should not allow Dr. Segal to

7    substitute his reasoning for that of the jury.  *See Hangarter v. Provident Life & Accident Ins. Co.*,

8    373 F.3d 998, 1016 (9th Cir. 2004) (an expert in a criminal case must not "give an opinion as to her

9    *legal conclusion*" (citation omitted)); *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*, 966 F.2d

10   443, 447 (9th Cir. 1992) (expert testimony consisting of legal conclusions is "utterly unhelpful" and

11   inadmissible (citation omitted)).  The rationale behind such prohibition is that "[w]hen an expert

12   undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but

13   rather attempts to substitute the expert's judgment for the jury's."  *United States v. Diaz*, 876 F.3d

14   1194, 1197 (9th Cir. 2017) (alteration in original) (quoting *United States v. Duncan*, 42 F.3d 97, 101

15   (2d Cir. 1994)) (citing Fed. R. Evid. 702(a), 704(a)).

16          **B.     Dr. Segal's Remaining Testimony Is Irrelevant**

17          Dr. Segal's remaining testimony—namely, his opinions that Jinhua "was Part of China's

18   Efforts to Make Its Economy more Innovative and Secure"; Jinhua "is part of [a] Long History of

19   Attempting to Build an Independent Semiconductor Industry"; and that the Chinese government's

20   support for Jinhua and a domestic semiconductor industry "is Likely to Damage Leading Global

21   Chip Firms and Slow Innovation" (*see* Ex. A at USEXPERT_SEGAL-00000006-00000011)—

22   should be excluded under Federal Rules of Evidence 401 and 702 because it is irrelevant and will

23   not meaningfully assist the jury or finder of fact.  Under Rule 401, testimony is only admissible if it

24   is regarding a fact "of consequence in determining the action."  Fed. R. Evid. 401(b).  Similarly,

25   under Rule 702, expert testimony must "help the trier of fact to understand the evidence or to

26   determine a fact in issue."  *Id.* 702(a).

27

28
     **Jinhua's Motion in Limine No. 2 to Exclude**                        **Case No.: 3:18-cr-00465-MMC**
     **the Opinions of Dr. Adam M. Segal**

1      Here, none of Dr. Segal's testimony, with the exception of his first opinion that Jinhua is a

2  "foreign instrumentality," is related to the elements the government must prove at trial. *See* Section

3  III, *supra*.   Moreover, as demonstrated above, his opinions are focused on the economic objectives

4  of the Chinese government and its effect on third parties, rather than on Jinhua's specific conduct.

5  Thus, this testimony is irrelevant and should be excluded pursuant to Rules 401, 402 and 702 of the

6  Federal Rules of Evidence.   For example, a significant portion of Dr. Segal's expert report is

7  dedicated to how China in recent years has prioritized shifting from a factory, low-cost

8  manufacturing economy to one based on advanced technologies, like semiconductors, in order to

9  reduce dependence on foreign suppliers and bolster cybersecurity.   (*See* Ex. A at

10  USEXPERT_SEGAL-00000007-00000009).   Dr. Segal then discusses how Chinese policymakers

11  have prioritized building an independent semiconductor industry.   (*See id.* at USEXPERT_SEGAL-

12  000000010-00000011).   Finally, Dr. Segal generally discusses how "Chinese industrial policy in

13  semiconductors is likely to damage the competitiveness of leading semiconductor firms . . . ."   (*Id.*

14  at USEXPERT_SEGAL-00000006).

15      China's economic policies and motivations generally are not relevant to allegations in this

16  case, namely whether Jinhua purportedly misappropriated or knowingly obtained or possessed stolen

17  trade secrets from Micron.   In *United States v. Pangang Group Co.*, 879 F. Supp. 2d 1052, 1057

18  (N.D. Cal. 2012), this Court held that similar opinions "about the structure of corporations in the

19  PRC, in general, and which are not directed to the . . . Defendants specifically" were irrelevant and

20  sustained defendant's objection to these opinions.   Similar to the charges against Jinhua here, the

21  government in that case alleged that the defendant Pangang Group, a Chinese state-owned enterprise,

22  conspired to commit economic espionage and theft of trade secrets, as well as attempted to commit

23  economic espionage.   *Id.* at 1056.   The defendants objected to an expert declaration submitted by the

24  government in opposition to defendant's motion to quash for improper service.   This declaration set

25  forth general opinions about Chinese corporate structure in an attempt to show why service on a

26  related entity in the U.S. was sufficient.   *Id.* at 1057.   Defendant objected to this declaration as

27

28

**JINHUA'S MOTION IN LIMINE NO. 2 TO EXCLUDE THE OPINIONS OF DR. ADAM M. SEGAL**        **CASE NO.: 3:18-cr-00465-MMC**

1    irrelevant, and this Court agreed, finding that because the testimony was not specific to the Pangang

2    Group, the testimony was irrelevant under Federal Rule of Evidence 401.  *Id.*

3        Similarly, here, Dr. Segal's generalized statements about Chinese government policy and

4    decision-making is irrelevant to Jinhua and should therefore be excluded.  As in *Pangang Group*, the

5    fact that Jinhua is an alleged foreign instrumentality does not grant expert witnesses license to

6    comment generally on Chinese policies and suggest that Jinhua was acting in conformity therewith.

7        **C.**   **Dr. Segal's Testimony Is Unfairly Prejudicial and Likely to Mislead the Jury**

8        Even if Dr. Segal's testimony were marginally relevant—which, it is not—it is unfairly

9    prejudicial and therefore should be excluded under Federal Rule of Evidence 403.  Under Rule 403,

10   "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a

11   danger of . . . unfair prejudice [or] misleading the jury." Fed. R. Evid. 403.  The Ninth Circuit has

12   held that expert testimony "tinged with ethnic bias and stereotyping" is unfairly prejudicial and

13   therefore should be "excluded under Rule 403's balancing test."  *Jinro*, 266 F.3d at 1006.  Here, Dr.

14   Segal relies on such bias to form the basis of his opinions.  Dr. Segal's testimony is unfairly

15   prejudicial and likely to mislead the jury for several reasons, including because it improperly (i)

16   focuses on China's economic policy rather than the conduct of Jinhua; (ii) suggests that Jinhua should

17   be seen as part of  the Chinese government's overall economic plan to develop its semiconductor

18   industry, reduce its dependence on foreign suppliers, strengthen its cybersecurity; and strengthen its

19   ties with Taiwan; and (iii) asserts that Chinese development in the semiconductor industry would

20   "damage" Western companies in that industry and slow innovation.  Perhaps most troublingly, Dr.

21   Segal suggests that the Chinese government has a long history of and willingness to misappropriate

22   foreign technology and insinuates that Jinhua is part of that policy goal.   (Ex. A at

23   USEXPERT_SEGAL-00000009-00000010).[3]

24   _____

25   [3]    Dr. Segal's testimony regarding China's "history" of misappropriating foreign technology

     should also be barred under Federal Rule of Evidence 404(b).  Rule 404(b) states that "[e]vidence of

26   any other crime, wrong, or act is not admissible to prove a person's character in order to show that

     on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).

27   Therefore, Dr. Segal's testimony suggesting that China's alleged misappropriation of (or pressure to

                                                                                    *(cont'd)*

                                                   8

1   **First**, even if Dr. Segal's broad statements on China's motivations and policy making were

2   relevant, they should be excluded because the probative value of such testimony is substantially

3   outweighed by the risk of unfair prejudice. *See* Fed. R. Evid. 403. Courts have held that "generalized

4   opinions about Chinese culture and business practice [that] have no link to the parties involved in

5   this case . . . have a serious risk of prejudicing the jury." *Yeazel v. Baxter Healthcare Corp.* (In re

6   Heparin Prod. Liab. Litig.), MDL No. 1953, Nos. 1:08hc600000, 1:09hc60186, 2011 WL 1059660,

7   at *11 (N.D. Ohio Mar. 21, 2011). "Courts repeatedly exclude this type of testimony because 'the

8   risk of racial or ethnic stereotyping is substantial, appealing to bias, guilt by association and even

9   xenophobia.'" *Id.* (quoting *Jinro*, 266 F.3d at 1008)); *see also Jinro*, 266 F.3d at 1008.

10   **Second**, Dr. Segal's suggestion that China—and by extension Jinhua—are willing to steal

11   foreign trade secrets because it "is indifferent to how it acquires foreign technology and

12   semiconductor expertise" should be precluded due to its prejudicial effect on a jury. (Ex. A at

13   USEXPERT_SEGAL-00000009-00000010, citing to reports, books and articles on the theft of

14   American intellectual property, Chinese industrial espionage and pillaging Taiwan's intellectual

15   property). This court has excluded such inflammatory aspersions in the past. *See United States v.*

16   *Liew*, Nos. CR 11-00573-1 JSW, CR 11-00573-2 JSW, CR 11-00573-3 JSW, CR 11-00573-4 JSW,

17   2013 WL 6441259, at *2 (N.D. Cal. Dec. 9, 2013) (excluding opinion that "'[n]ational industrial

18   policy goals in China encourage intellectual property theft, and an extraordinary number of Chinese

19   in business and government are engaged in this practice[.]' . . . on the basis that any probative value

20   is substantially outweighed by the potential for prejudice and to confuse the issues" (alteration in

21   original) (citation omitted)). The Ninth Circuit's decision in *Jinro* is directly on point. There, the

22   Ninth Circuit found that:

23   Allowing an expert witness . . . to generalize that most Korean businesses are
24   corrupt, are not to be trusted and will engage in complicated business transactions to
     evade Korean currency laws is tantamount to ethnic or cultural stereotyping, inviting
25   the jury to assume the Korean litigant fits the stereotype. In stark terms, [the expert]'s

26   transfer) foreign technology in other incidents is evidence of Jinhua's purported intent to
27   misappropriate Micron's trade secrets here—and that Jinhua acted in conformity with those
     government policies—should be excluded.

28
9

syllogism reduced to this: (a) Korean businesses generally are corrupt; (b) Jinro is a Korean business; (c) therefore, Jinro is corrupt. Our caselaw, and that of other circuits, establishes that this is an impermissible syllogism.

*Jinro*, 266 F.3d at 1007.

Dr. Segal appears to be attempting to establish a similar bias here: (i) China has a history of stealing foreign technology; (ii) Jinhua is a Chinese state-owned enterprise; (iii) therefore, Jinhua has stolen or is likely to have stolen foreign technology, namely, Micron's trade secrets. Such reductionist and prejudicial opinions should be excluded.

**Third**, Dr. Segal should not be permitted to assert that (i) "China's goal is to challenge and then displace Western firms" such that a developed Chinese semiconductor industry would result in losses for American companies; (ii) Jinhua is a Chinese state-owned enterprise; (iii) therefore, if Jinhua is allowed to produce DRAM, it would harm American semiconductor companies. (*See* Ex. A at USEXPERT_SEGAL-00000011). Dr. Segal's opinions raise a substantial risk of unfairly arousing the jurors' potential suspicions and biases against Chinese companies, which could have the effect of unfairly prejudicing them against Jinhua and distorting their analysis of the evidence with improper factors. China is free to develop its own DRAM industry, even if it would harm U.S. interests. To imply there is something improper about that activity is unduly prejudicial and any even marginal assistance that Dr. Segal's testimony could provide to the jury in understanding the evidence would be substantially outweighed by this unfair prejudice. Dr. Segal's testimony should therefore be excluded in its entirety.

## V.    CONCLUSION

For the foregoing reasons, the Court should issue an Order precluding Dr. Segal from testifying at trial or offering any of the above-referenced testimony, and excluding his expert report.

DATED: December 1, 2021                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  _____ */s/Matthew E. Sloan* _____
                    JACK P. DICANIO
                    MATTHEW E. SLOAN
                    EMILY REITMEIER

                    *Attorneys for Defendant*
           FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

JINHUA'S MOTION IN LIMINE NO. 2 TO EXCLUDE                    CASE NO.: 3:18-cr-00465-MMC
THE OPINIONS OF DR. ADAM M. SEGAL