# EXHIBIT A

Confidential - Subject to Protective Order

## Indictment Decision of Taiwan Taichung District Prosecutors Office

Case No: 106-Zhen-Tzu No. 11035

106-Zhen-Tzu No. 4520

106-Zhen-Tzu No. 5612

106-Zhen-Tzu No. 5613

| | | |
|---|---|---|
| Defendant | JT Ho | (Personal information omitted) |
| Attorney | Jun-Yi Jia | |
| Defendant | Kenny Wang | |
| Attorney | Ting-Lu Zhuan | |
| | Che-Hung Chen (terminated on Feb 7, 2017) | |
| Defendant | Leh-Tian Rong | |
| Attorney | Che-Hung Chen; | |
| | En-Xu Huang; | |
| | Jia-Kun Liu (terminated on June 19, 2017) | |
| Defendant | United Microelectronics Corporation | |
| Legal Representative | Stan Hung | |
| Attorney | En-Xu Huang; | |
| | Mei-Fen Hung | |

Regarding the above defendants' violation of the Trade Secret Act , the investigation has been closed and the prosecutor has decided to indict the defendants.    The prosecutor hereby describes the facts of the

1

CERT. ULG

Exhibit 2

Page 30

USD-0000396

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 3 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 2 of 29

committed crime and presents the evidence as well as the violated laws as follows:

## Facts of the Committed Crime

I.  JT Ho and Kenny Wang were the employees of Rexchip Electronics Corp., located at No. 369, Sec.4, San Feng Rd., Houli District, Central Taiwan Science Park, Taichung ("Rexchip").   Rexchip was jointly formed by Elpida Memory, Inc. of Japan ("Elpida Japan") and Powerchip Technology Corporation ("Powerchip") to conduct business as a DRAM foundry.   Micron Technology, Inc. ("MTI") has its headquarters at Boise, Idaho of the USA.   MTI's main business includes manufacture and sale of DRAM, NAND flash and NOR flash, and assembly resolutions and semiconductor systems.   In 2013, MTI acquired most of Elpida Japan's and Rexchip's shares and renamed Elpida Japan to Micron Memory Japan, and Rexchip to Micron Memory Taiwan Co., Ltd. ("MMT").   JT Ho and Kenny Wang became the employees of MMT as a result of the acquisition.   On September 2, 2011, MTI authorized Micron Semiconductor Asia to use its IP rights.   MMT made   information relating to the method, technology, process and design for manufacturing   DRAM into copyrighted works in the form of words, symbols and graphics. This information is saved on MMT's server with encryption and limited access: MMT's employees need to log onto the server by entering user names and passwords before accessing the abovementioned electronic records.   In addition, access by USB PORT (a port connecting computers and external storage devices) has been banned since April 20, 2016.   The abovementioned electronic records are information not known to the industry and highly economically valuable with reasonable protection, and they constitute "trade secrets" under Article 2 of the Trade Secret Act.   On February 28, 2014, MMT entered into the MTI/MMT Design Engineering Services Agreement with MTI and transferred to MTI the IP rights it had obtained before and during the period covered by the Agreement.   On the same date, MMT obtained the right to continuously use MTI's IP rights from Micron Semiconductor Asia.

II.  United Microelectronics Corporation ("UMC") was the first company in Taiwan to provide integrated circuit (IC) wafer foundry OEM service.   It used to conduct DRAM development and manufacturing, but then it closed the DRAM manufacturing business and transferred relevant technical employees to other departments of UMC.   In January 2016, UMC entered into an agreement with Fujian Jinhua Integrated Circuit Co., Ltd. of Mainland China ("Jinhua") to develop 32nm DRAM and 32Snm DRAM technologies. Under the agreement, Jinhua will provide US$300 million for purchasing necessary equipment for the

2

CERT. ULG

Exhibit 2
Page 31

USD-0000397

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 4 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 3 of 29

DRAM development and will pay US$400 million to UMC based on the progress of development.    The results of development shall be jointly owned by both parties.    After the development is completed, the technology will be transferred to Jinhua for mass production of 32nm DRAM and 32Snm DRAM.    To carry out the abovementioned agreement, UMC established the New Business Development ("NBD") at the Second Factory Area of its Fab 12A in Tainan Science Park in January 2016.    Zheng-Kun Chen (Stephen Chen, Former chairman of MMT, who left MMT on July 31, 2015 and joined UMC as senior VP in September 2015) was in charge of NBD, and UMC established several departments under NBD named "Project Technology Management Department 1" ("PM1"), "Project Technology Management Department 2" ("PM2") and "Project Technology Management Department 3" ("PM3").    Stephen Chen then recruited people from MMT, including JT Ho and Kenny Wang, and appointed Leh-Tian Rong to head PM2 as Assistant Vice President.    Under PM2 there are Process Integration Unit 1 ("PI1"), Process Integration Unit 2 ("PI2"), Defect Analysis Management Unit ("DM") and Device Unit ("Device").    UMC filed an application for approval of the above technology cooperation with the Investment Commission of the Department of Economics on March 11, 2016, and the Commission approved the application on April 14, 2016 per the approval letter of Jin-Shen-Er No. 10500055030.    Subsequently, UMC, Jinhua and Ultra Memory Inc. of Japan ("UMI Japan") signed the "F32nm Design Service Agreement" on November 8, 2016.    Because semiconductor manufacture process is a professional, sophisticated and complex technology which is often affected by different manufacturing equipment and methods, it is necessary to have a set of rules in place to define the relevant electrical parameters when considering how to manufacture the products successfully.    Thus, the parties agreed that, after the DRAM design rules (also called the Layout Rule) were converted into source code, UMI Japan shall be responsible for revising the design rules, giving feedback, executing the program and designing and manufacturing the chips, and Jinhua will pay the design and service fees of US$3,783,000 to UMI Japan in 3 installments.    After UMI Japan has completed testing and delivered the GDS files (TV0 and TV1) and DDR4 chip of TV1, it will transfer the entire 32/32S nm DRAM development technology to Jinhua for Jinhua's mass production.    However, to conduct business for UMC, UMC's employees, namely JT Ho, Kenny Wang and Leh-Tian Rong, committed the following crimes.

III.   On February 24, 2014, JT Ho signed the Employment Agreement and the "Confidentiality and Intellectual Property Agreement" ("CIPA") with MMT.

3

CERT. ULG

Exhibit 2
Page 32
USD-0000398

Under the CIPA, JT Ho shall, upon the termination of his employment with MMT, leave with MMT all documents, records, notebooks or other repositories containing confidential information (including trade secrets), including copies thereof and information maintained in hardcopies and electronic form then in his possession or control; if JT Ho has any confidential information on non-MMT property, he shall immediately return such confidential information to MMT and destroy any copies in his possession or control.   Because of his position as the section chief of MMT's mass production department, JT Ho logged into the company's controlled server to access electronic records relating to the DRAM production process, which is MTI's trade secret ("Electronic Record A").   He copied the records to his own USB (item 36 in Confiscated-Property Storage in Table 6) and personal hard drive (item shown in Table 7) for his reference any time during work, and possessed the hardcopy documents containing MTI's trade secrets (Paper Documents nos. 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13 and 14 of item 35 in Confiscated-Property Storage in Table 6 and documents named ECD-DPB-1076 and ECD-DPB-1111 in File 15, collectively referred to as "Paper Documents B.")   Subsequently on October 15, 2015 when JT Ho resigned from MMT, he did not destroy Electronic Record A and Paper Documents B   in accordance with the agreements.   JT Ho joined UMC in November 2015 and became the Process Integration1 Manager under PM2 in April 2016.   In January 2016, JT Ho was aware that UMC started to carry out the cooperation project with Jinhua and became MTI's competitor, and he was aware that the Electronic Record A and the Paper Document B he possessed could contribute to UMC's and Jinhua's mass production of DRAM in Mainland China.   Instead of deleting or destroying Electronic Record A and Paper Documents B, JT Ho reviewed Electronic Record A using his UMC issued laptop (Item No. 34 of Confiscated-Property Storage in Table 6), with USB PORT control removed, in his   UMC staff dormitory (Rm 657, No. 63 Dashun 6th Rd, Xinshi Dist., Tainan City), and in his UMC office in the Second Factory Area of UMC's Fab 12A (57 Nanke 3rd Rd, Xinshi Dist., Tainan City) during the period from January 2016 to February 7, 2017 (the date when [Prosecutors] conducted the search).   During this period, he also brought Paper Documents B to the PI1 office for use.   JT Ho's access to Electronic Record A and Paper Documents B exceeded MMT's authorized scope of use for such information, and he intended to use the information in Mainland China contrary to MTI's interest.

IV.    Kenny Wang's last position at MMT was Product Quality Integration Manager, which gave him the right to access information relating to all final products to

<div align="center">4</div>

CERT. ULG

Exhibit 2

Page 33

USD-0000399

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 6 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 5 of 29

ensure that the final DRAM products met client specifications and quality requirements.    In January and February 2016, Kenny Wang contacted JT Ho, who was then working at NBD of UMC, through the communication application LINE, and became aware that UMC was looking device specialists for its DRAM project with Jinhua.    After further discussion, Kenny Wang decided to join UMC and submitted his resume to UMC through JT Ho.    Consequently, at the end of February 2016, Kenny Wang visited UMC and was interviewed by UMC's HR team leader and Leh-Tian Rong.    UMC and Kenny Wang agreed that Kenny Wang would be hired with the same salary and benefits as he had at MMT but that, if he is relocated to Mainland China, he will sign another contract with Jinhua and be entitled to an additional bonus.    Subsequently on March 25, 2016, Kenny Wang received an Offer Letter from UMC, and    informed JT Ho through the LINE communication application.    JT Ho thus started treating Kenny Wang as a team member of UMC and discussed through the LINE communication application the issues that UMC had in developing DRAM technologies.    Kenny Wang submitted his resignation letter to MMT on April 5, 2016 and left the company on April 26, 2016 upon the company's approval.    From April 16 to 23, 2017, being fully aware that MTI and UMC are competitors in the development and manufacturing of DRAM    and with the intent to use the information in Mainland China and to damage MTI's interest, Kenny Wang abused his authorization as the Product Quality Integration Manager by using MMT's laptop (Staff number: 1132954, User name: KENNYW, items shown in Table 1) to log on to MMT's server and to access MTI's electronic information relating to the method, technology, process and design of DRAM ("Electronic Record C," including a total of 931 files), which are protected trade secrets and copyrighted works.    He stored Electronic Record C onto the abovementioned laptop, transferred it to a USB storage device (Item 3 in Confiscated-Property Storage of Table 3), and then to two of his own laptops (Table 2 and item No. 6 in Table 3 of the Confiscated-Property Storage) and also uploaded it to his Google Drive (account number: brh5476@gmail.com)..    Kenny Wang's unauthorized copying of Electronic Record C violated MTI's and MMT's control over the records, and infringed MTI's trade-secret right and copyright in the records.

V.    After joining UMC on April 28, 2016, as Device Technology Manager of PM2, with the abovementioned intent and also the criminal intent to reproduce another's works, Kenny Wang used his phone (number: 0911-834291, i.e. Item No. 17 of the Confiscated-Property Storage in Table 5) and the laptop issued by UMC (i.e. Item No. 18 of the Confiscated-Property Storage in Table 5) to access

CERT. ULG

Exhibit 2
Page 34

USD-0000400

Electronic Record C stored on Google Drive (account number: brh5476@gmail.com) and downloaded MMT's "DRAM design rules" (file name: [DR25nmS] Temporary design rules Periphery Rev. 6; location path: V90B/0.Design/Design rules, hereafter "DR25nmS Design rules") and other electronic records.   Kenny Wang then printed out the above electronic records (i.e. Paper documents No. C-1-2 in Table 4 and Item No. 22 of the Confiscated-Property Storage in Table 6, collectively referred to as "Paper Documents D"), thereby infringing MTI's copyright.   Subsequently one day in July or August 2016, when attending the PM2 morning meeting held by Leh-Tian Rong, Kenny Wang was asked to stay in the meeting room with Ming-De Wei (the manager of PI2) after the meeting and discuss the draft of the F32 DRAM design rules presented by Wei.   Because UMC has specialized as a logic process foundry in the past and has no DRAM-related designer's manual, PI2 had to use a 65nm logic process designer's manual as its blueprint.   The abovementioned draft therefore lacked the necessary parameters of "Cell," "Array" and "Periphery" in the DRAM design rules.   Kenny Wang thus provided his comments on ion-implantation process parameters (a key process to control doping in semiconductor manufacturing).   Leh-Tian Rong, albeit fully aware that Kenny Wang left MMT nearly six months previously and that the MMT information Kenny Wang possessed was likely obtained illegally, asked Kenny Wang to compare the F32 DRAM design rules of UMC with MMT's materials (i.e. the DR25nmS design rules), circle out the differences between the two, write down MTI's "stabilization data" on UMC's draft design rules, fill in necessary parameters relating to ion-implantation which cannot be obtained through reverse engineering, and help complete the parts including "Cell", "Array", and "Periphery" for Rong's review, so that UMC can complete the F32 DRAM design rules more quickly.   Two to three days after Kenny Wang received the said instructions from Rong, he downloaded UMC's final version of the logic IC design rules, created columns for "Cell," "Array" and "Periphery" and filled in parameters for "width" and "space" on more than 10 pages of UMC's final version of the design rules, using the DR25nmS design rules as a reference. Kenny Wang quickly completed the addition and revision of the parameters and handed in the hard copies containing the parameters of the DR25nmS design rules to Leh-Tian Rong in person.   Rong handed them to Wei and told Wei to discuss them with Kenny Wang.   Wei, unaware of the foregoing, discussed the stability of the parameters of UMC's F32 DRAM design and other parameters with Kenny Wang and Wu Kuo-How, an engineer of PI2, and completed UMC's F32 DRAM design rules.   Originally UMC had no mask tape out team or ion-

6

CERT. ULG

Exhibit 2
Page 35

USD-0000401

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 8 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 7 of 29

implantation specialists.    After Kenny Wang provided the DR25nmS design rules production parameters, PI2 skipped processes such as the optical lithography adjustment, etching and yellow light processes when developing the F32 DRAM.    The design rules were completed within only 2 months and handed to the chip design manufacturer for the next step.    Kenny Wang was promoted to Device Manager in January 2017 for excellent performance in reducing the time, costs, equipment and labor in producing the design rules.

VI.    After Kenny Wang left, MMT through its internal investigation suspected that Kenny Wang had copied Electronic Record C without authorization.    MTI and MMT thus filed a criminal complaint with MJIB New Taipei Branch and provided the laptop (as in Table 1) to MJIB for its custody.    After receiving the complaint, the prosecutor of this Office filed an application to monitor Kenny Wang's phone (Number: 0911-834291) with the Taichung District Court, which was approved.    After the grant of the search warrant by the Taichung District Court, the prosecutor led the investigation officers of MJIB New Taipei Branch to search the places as shown in Tables 2 to 5 simultaneously and seized the items as shown in Tables 2 to 5 on February 7, 2017.    At around 14:10 on February 7, 2017, the MJIB officers arrived at the Second Factory Area of UMC's Fab 12A (address: No.57, Nan-Ke-San Rd., Xin-Shi District, Tainan) to conduct searches. When the officers were heading to PM2 accompanied by UMC's Security Team Manager Ching-Yuan Chiu and others, UMC's HR team informed Leh-Tian Rong that the MJIB officers were about to search Kenny Wang's work area.    Rong immediately asked Kenny Wang and JT Ho respectively to delete and remove all the information relating to MMT.    Following Rong's instructions, Kenny Wang and JT Ho handed the items listed in Table 6 to Shu-Han Huang, an assistant engineer of PM2, for her custody (Huang was subject to deferred indictment due to her violation of Article 165 of Criminal Code).    Huang locked the items in her personal locker and left the office with Kenny Wang's phone (Number: 0911-834291).    As a result, when the MJIB officers searched Kenny Wang's workplace, they only found his UMC issued phone (Number: 0965-702303); his personal phone under surveillance (Number: 0911-834291) was missing.    When questioned, Kenny Wang claimed that Shu-Han Huang borrowed the phone in the morning because she wanted to see some photos.    After the supervisors of UMC were asked to contact Huang demanding that she return to the office immediately, Huang came back to the office and handed over Kenny Wang's personal phone (Number: 0911-834291) to MJIB officers for their custody at 15:25 on February 7, 2016 (sic) [2017].

CERT. ULG

Exhibit 2
Page 36
USD-0000402

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 9 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 8 of 29

VII. After being questioned by the prosecutor as a witness, JT Ho submitted the items listed in Table 7 for MJIB officers' custody on February 8, 2017.   Shu-Han Huang also spontaneously submitted the items listed in Table 6 for the prosecutors' custody on February 9, 2017.   On February 7 and 8, 2017, when Kenny Wang was questioned by the MJIB officers and the prosecutor, he confessed to the facts stated in Section 5 above.   Based on the above evidence, the prosecutor obtained another search warrant from the Taichung District Court and led officers of the MJIB New Taipei Branch to search the places listed in Tables 8 and 9, seizing the items listed in Tables 8 and 9 on February 14, 2017. The prosecutor and the MJIB officers further searched the places listed in Table 10 with Leh-Tian Rong's consent and seized the items listed in Table 10.

VIII. MMT and MTI filed the criminal complaint (please see Table 12 for the attorney authorization and the defendants to be named); UMC also filed a report of the crime (please see Table 13 for the attorney authorization and the defendant to be named).   The MJIB New Taipei Branch officers investigated the case under the supervision of the prosecutor of this Office, and sent the case to this Office for further handling.

**Evidence and Statutes Violated**

I.   The evidence serving as the basis for Criminal Findings:

(I)   Testimonial evidence:

1.   Defendant JT Ho's testimony when questioned by MJIB officers on February 14, 2017 (pages 2-54 in File C); his testimony when questioned by the prosecutor on February 15 and June 9, 2017 (pages 78-87 in File C, pages 87-91 in File A4);

2.   Defendant Kenny Wang's testimony when questioned by MJIB officers on February 7 and 14, 2017 (pages 4-27, 115-135 in File B); his testimony both before and after being placed under oath when questioned by the prosecutor on February 8 and 15, 2017 (pages 92-107, 243-252 in File B); and his testimony when questioned by the prosecutor on June 9, 2017 (pages 92-107 and 243-252 in File B, and pages 83-91 in File A4);

3.   Defendant Leh-Tian Rong's testimony when questioned by MJIB officers on February 14, 2017 (pages 5-25 in File D); his testimony when questioned by the prosecutor on February 15 and June 15, 2017 (pages 41-55, 115-125 in File D);

4.   The statements of Jia-Kun Liu, Esq. (i.e. Defendant UMC's lawyer) when questioned by MJIB on March 14, 2017 (pages 14-24 in File A5);

5.   Co-Defendant Shu-Han Huang's testimony when questioned by MJIB officers on

8

CERT. ULG

Exhibit 2
Page 37

USD-0000403

February 7, 2017 (pages 5-12 in File E); her testimony when questioned by the prosecutor on February 8-9 and June 15, 2017 (pages 73-75 in File E);

6. Complainant MMT's legal manager Siesen Chen's statements when questioned by MJIB officers on August 18 and September 1, 2016 (pages 132-147 in File A1); his testimony as a witness when questioned by the prosecutor on February 13, 2017 (pages 186-187 in File A2);

7. The testimony of Witness David Alford Ashmore (MTI's general counsel) when questioned by MJIB officers on September 1 and December 14, 2016 (pages 149-154, 316-321 in File A1);

8. The testimony of Witness J. R. Tietsort (MTI's IT security department personnel) when questioned by MJIB officers on September 1, 2016 (pages 155-163 in File A1);

9. The testimony from Witness Lucient Jan (MTI's engineer) when questioned by MJIB officers on November 22, 2016 and February 16, 2017 (pages 267-274 in File A1, pages 331-336 in File A2);

10. Defendant JT Ho's testimony as witness when questioned by MJIB officers on February 7, 2017 (pages 341-353 in File A1); and his testimony as witness when questioned by the prosecutor on February 8, 2017 (pages 357-365 in File A1);

11. The testimony from Witness Sandy Kuo (UMC's project manager in the Southern Taiwan Science Park) when questioned by MJIB officers on February 8, 2017 (pages 368-378 in File A1); and her testimony when questioned by the prosecutor on February 8, 2017 (pages 383-385 in File A1);

12. The testimony of Witness Stephen Chen (UMC's senior VP) when questioned by MJIB officers on February 8, 2017 (pages 387-393 in File A1); and his testimony when questioned by the prosecutor on February 8, 2017 (pages 396-401 in File A1);

13. The testimony of Witness Bo-Chang Hung (MMT's process-integration department manager) when questioned by MJIB investigator on February 7, 2017 (pages 1-7 in File A2);

14. The testimony of Witness Wen-How Hsieh (MMT's process-integration department section manager) when questioned by MJIB officers on February 7, 2017 (pages 11-19 in File A2);

15. The testimony of Witness Shiu-Jan Lin (MMT's process-integration department engineer) when questioned by MJIB officers on February 7, 2017 (pages 74-82 in

9

CERT. ULG

Exhibit 2
Page 38

USD-0000404

File A2);

16. The testimony of Witness Yi-Ling Chen (MMT's real-time defect-analysis department manager) when questioned by MJIB investigator on February 7 and February 13, 2017 (pages 85-93, 118-124 in File A2); the testimony when questioned by the prosecutor on February 13 and May 25, 2017 (pages 182-187, page 383-387 in File A2);

17. The testimony of Witness Hung-Yi Lin (MMT's PROVER department function section engineer) when questioned by MJIB officers on February 7, 2017 (pages 95-101 in File A2);

18. The testimony of Witness Ding-Lu Yu (chairman of Applied Materials Taiwan) when questioned by MJIB officers on February 7, 2017 (pages 103-107 in File A2);

19. The testimony of Witness Chi- Lun Wang (Chief Director of Techinsights Taiwan) when questioned by MJIB officers on February 13, 2017 (pages 108-111 in File A2); and his testimony when questioned by the prosecutor on February 13, 2017 (pages 113-116 in File A2);

20. The testimony of Witness Kuo-How Wu (UMC's process-integration engineer) when questioned by MJIB officers on February 14, 2017 (pages 230-241 in File A2); and his testimony when questioned by the prosecutor on February 15, 2017 (pages 314-319 in File A2);

21. The testimony of Witness Ming-De Wei (second manager of UMC's process-integration department) when questioned by MJIB officers on February 14, 2017 (pages 248-264 in File A2); and his testimony when questioned by the prosecutor February 15, 2017 (pages 320-326 in File A2).

(II) Non-testimonial evidence:

1. MMT's corporate registration records (page 17 in File A1);

2. MMT's standard confidentiality and IP agreement (pages 18-26 in File A1);

3. "The Maintenance of Confidential Information" in MMT's "Team Member Manual" (pages 32-36 in File A1);

4. MMT's work rules (page 37-41 in File A1);

5. The USB control measure for personal computers issued by MMT on April 20, 2016 (pages 54-56 in File A1);

6. The warning language that would appear while MMT's employees access to the

10

CERT. ULG

Exhibit 2
Page 39

USD-0000405

electronic records containing trade secrets in the computer server (page 57 in File A1);

7. Defendant Kenny Wang's resignation letter submitted to MMT on April 5, 2016 (pages 73-74 in File A1);

8. Defendant Kenny Wang's attendance and entrance records in MMT from March 20 to April 26, 2016 (page 78-81 in File A1);

9. Defendant Kenny Wang's file-transfer records in the laptop he used shown in Table 1 (pages 83-97 in File A1);

10. The Employment Agreement cum Confidentiality and Intellectual Property Agreement between Defendant Kenny Wang and MMT signed on February 26, 2014 (pages 104-120 in File A1);

11. Defendant Kenny Wang's training records during his service at MMT (pages 122-126 in File A1);

12. Defendant Kenny Wang's resignation agreement on April 26, 2016 (pages127-131 in File A1);

13. MTI's written explanation of the importance of the electronic records that Defendant Kenny Wang illegally obtained (pages 186-198 in File A1, pages 325-492 in File A3);

14. MTI/MMT Design Engineering Service Agreement on February 28, 2014 (pages 206-216 in File A1); MSA/MTI Front-end Manufacturing Supply Agreement on September 2, 2011 (pages 217-231 in File A1); Foundry Agreement between Micron Singapore and MMT on February 28, 2014 (pages 233-252 in File A1);

15. MTI's analysis report of the laptop used by Defendant Kenny Wang shown in Table 1 (pages 511-528 in File A1);

16. Defendants Kenny Wang and JT Ho's labor-insurance records (pages 536-537 in File A3);

17. Forensic report attached in MJIB's 2016-10-05 Letter Diao-Zi-Wu-Zi No. 10514003270 (pages 543-544 in File A3);

18. Forensic report attached in MJIB's 2017-02-23 Letter Diao-Zi-Wu-Zi No. 10614505100 (pages 570-573 in File A3);

19. The file list of the cloud drive used by Defendant Kenny Wang (pages 576-678 in File A3);

20. The complete file of UMC's investment application for UMC's cooperation

11

CERT. ULG

Exhibit 2
Page 40

USD-0000406

project with Jinhua provided by the Investment Commission (pages 682-725 in File A3);

21. Defendant Kenny Wang's chat history in Line communication application (pages 790-912 in File A3);

22. MMT's letter to Defendant JT Ho on April 19, 2016 (pages 191-192 in File A2);

23. The Employment Agreement cum Confidentiality and Intellectual Property Agreement between Defendant JT Ho and MMT signed on February 24, 2014 (pages 193-200, 210-218 in File A2);

24. Photocopy of Defendant JT Ho's personnel data card kept by MMT (page 203 in File A2);

25. The employment agreement between Rexchip and Defendant JT Ho (pages 204-206 in File A2);

26. MJIB's on-site report on the search over Defendant Kenny Wang's office on February 7, 2017 (pages 16-17 in File E);

27. The seizure record in Table 1 (pages 176-178.1 in File A1), the search and seizure record in Table 2 (pages 31-34 in File F1), the search and seizure record in Table 3 (pages 47-49 in File F1), the search and seizure record in Table 4 (pages 24-26 in File F1), the search and seizure record in Table 5 (pages 30-33 in File F2), the seizure record in Table 6 (pages 67-68 in File E), the seizure record in Table 7 (pages 96-99 in File C), the search and seizure record in Table 8 (pages 26-29 in File F4), the search and seizure record in Table 9 (pages 23-27 in File F3), and the search and seizure record in Table 10 (pages 28-31 in File F3);

28. Photos of articles seized (pages 53-75 in File A4);

29. Articles seized listed in Tables 1 to 10.

II.   Determination for the case:

(I)   Whether an offence constitutes direct harm should be decided by whether the criminal conduct has directly led to infringement upon a legal interest.   When more than one legal interest simultaneously exist in one object and are directly infringed by the criminal conduct, the right holders of both legal interests are the direct victims, and it does not matter if there are other direct victims.   *See* Supreme Court precedent Year 1941 Shang-Zi 3416.   Defendants JT Ho and Kenny Wang are suspected to have infringed the information regarding the methods, technology, process, and design of manufacturing DRAM wafers, which has been licensed to MMT by MTI through Micron Semiconductor Asia.

12

CERT. ULG

Exhibit 2
Page 41

USD-0000407

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 14 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 13 of 29

The said information is stored in the form of electronic records in MMT's computer server which is protected by confidential protection measures, and constitutes the Work under Article 3(1)(1) of the Copyright Act, and the Trade Secret under Article 2 of the Trade Secrets Act.   To elaborate, MTI is the owner of said electronic records, and MMT is the quasi-possessor of said electronic records (please refer to Article 966(1) of the Civil Code).   Therefore, both MTI and MMT are entitled to file a criminal complaint for the facts of the crime relating to infringement of electronic records.   As to UMC, it filed a "criminal complaint" on February 23, 2017 accusing Defendant Kenny Wang of concealing the facts of his illegal use of MMT's trade secrets from UMC while working for UMC.   However, since UMC is neither the owner nor the quasi-possessor of said electronic records, the "criminal complaint" UMC submitted can only be deemed as reporting the criminal conduct.

(II) The Copyright Act and the Trade Secrets Act protect "information".   Such information is valuable and is a kind of property like other tangible goods.   Obtaining such information without the owner's consent would constitute infringement upon the owner's interest in information property.   In addition, "electronic record" mentioned under Article 10(6) of the Criminal Code is defined as records made through the use of electronic, magnetic, optical or other similar means for computer processing.   An electronic record is intangible property, and its characteristics include that it is inalienable, inexhaustible and ubiquitous once disclosed.   If the information protected under the Copyright Act and the Trade Secrets Act is obtained or possessed without the owner's consent, the owner loses its control of such trade secret and copyrighted work.   And it would definitely impair the owner's exclusive use of the information and the monopoly value of the trade secret, hence constituting infringement of a property interest.   After Defendant JT Ho and Kenny Wang commenced work for MTI's competitor, i.e. UMC, they still possessed MTI's trade secrets without justification.   Such trade secrets allowed UMC to solve problems when developing DRAM products, and the methods, technologies, processes, and designs developed by UMC would be eventually transferred to Jinhua in Mainland China.   Besides, without referring to any physical documents and electronic records and conducting a verification process, it would be almost impossible for an engineer to provide UMC with parameters like "Cell", "Array" and "Periphery" in the F32 DRAM design rules merely based on memory or experience.   Such can be supported by Witness Lucient Jan's testimony while answering MJIB officer's questions on February 16, 2017.   Therefore, when Defendant Leh-Tian Rong requested on a certain day in

13

CERT. ULG

Exhibit 2
Page 42

USD-0000408

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 15 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 14 of 29

July or August 2016 that Defendant Kenny Wang (who worked in the Device Department) provide the parameters of design rules to Ming-De Wei, Defendant Leh-Tian Rong subjectively should have known that the information possessed by Defendant Kenny Wang was illegally obtained from MMT.   This point can also be proved by the fact that before MJIB officers searched UMC's PM2 department on February 7, 2017, Defendant Leh-Tian Rong instructed Defendants Kenny Wang and JT Ho to dispose of the MMT information in their possession. Defendants Kenny Wang and JT Ho argued that the documents and electronic records and paper documents listed in the Criminal Facts column were for their personal research.   Defendant Leh-Tian Rong argued that he only asked his subordinate (i.e. Defendant Kenny Wang) to comment on the draft F32 DRAM design rules enacted by UMC.   None of their arguments is credible.   Defendants Kenny Wang, JT Ho and Leh-Tian Rong did have the intent to infringe upon MTI's interest and use MTI's trade secrets in Mainland China.

(III) A provision of Article 13-4 of the Trade Secrets Act requires that "the representative of a juristic person or natural person has made his/her best efforts to prevent a crime from being committed", which means the person has made sincere efforts to "actively" prevent wrong doings, and its efforts would reasonably prevent the unwanted result.   In this case, in order to prove that the three Defendants had promised that they would not disclose their former employer's confidential information to UMC, and that they had taken the IP education courses provided by UMC to prevent another company's trade secrets from being brought into UMC, Defendant UMC submitted the photocopies of employment agreements and training materials of Defendants Kenny Wang, JT Ho and Leh-Tian Rong during their employment with UMC.   UMC further stated that UMC prohibited use of USBs and that laptops issued by the company cannot connect with the company's intranet.   However, after search and seizure, the prosecutor found out that the above-mentioned electronic records and paper documents obtained by Kenny Wang and JT Ho from MMT were kept in UMC's PI2 office.   In addition, Kenny Wang and JT Ho had continuously used and took said information as reference after resigning from UMC.   This shows that apart from executing standard employment agreements with JT Ho, Kenny Wang, and Leh-Tian Rong and conducting regular orientation training, Defendant UMC has not adopted any positive measures to prevent the Defendants from infringing upon other companies' trade secrets after joining UMC (for example, UMC could periodically audit the information assets in places under its control).   Therefore, Defendant UMC's argument cannot be adopted.

CERT. ULG

Exhibit 2
Page 43

USD-0000409

III. Laws violated

(I)  Defendant JT Ho possessed MTI's trade secrets with the intention to use the trade secrets in Mainland China and to damage Complainant MTI's interests.   Having failed to delete and destroy such trade secrets upon MTI's request, JT Ho exceeded the authorization and used such trade secrets.   Ho has thus committed the crime prohibited in Article 13-2(1) of the Trade Secrets Act, *i.e.* violating Subparagraphs 2 and 3 of Paragraph 1 of Article 13-1 with the intent to use in Mainland China.   As Defendant JT Ho continuously committed the crime with a single criminal intent, he shall be deemed as committing one crime. Complainant's attorney Jeanne Wang Esq. stated in the investigation hearing on February 13, 2017 that JT Ho's misconduct also constituted the crime prohibited under Article 359 of the Criminal Code, i.e. retrieving another's electronic records without justification and causing harm.   However, Witness Yi-Ling Chen testified in the same hearing that MMT did not prohibit an engineer from storing company files in USB drive.   Therefore, there is no positive evidence to support the finding that JT Ho obtained the company's electronic records "without justification" while working for MMT.

(II)  Defendant Kenny Wang reproduced and obtained the trade secrets by illegal means with the intent to use the trade secrets in Mainland China and to damage Complainant MTI's interests.   He further used and disclosed such trade secrets after obtaining the same.   He also infringed MTI's copyright.   He thus has committed the crime prohibited Paragraph 1 of Article 13-2 of the Trade Secrets Act, *i.e.* violating Subparagraphs 2 and 3 of Paragraph 1 of Article 13-1 with the intent to use in Mainland China, and also the crime prohibited under Paragraph 1 of Article 91 of the Copyright Act.   As Defendant Kenny Wang committed the above crimes with a single criminal intent and single continuous misconduct, he shall be punished for the crime with the harsher penalties, which is the crime of Paragraph 1 of Article 13-2 of the Trade Secrets Act.   Complainants MTI and MMT also asserted that Defendant Kenney Wang has committed the crime prohibited under Article 317 (disclosing industrial and commercial secrets acquired in the course of business), Article 318-1 (disclosing secret know-how via computer), Paragraph 1 of Article 342 (critical breach of trust), and Article 359 (obtaining another's electronic records without justification and causing harm) of the Criminal Code.   However, Articles 13-1 to 13-4 of the Trade Secret Act were newly enacted on January 31, 2013, and the legislative reason is that Articles 317, 318-1, 318-2, 342, 359 are insufficient to protect trade secrets (please refer to the related legislation documents of the 14th meeting of the second

15

CERT. ULG

Exhibit 2
Page 44

USD-0000410

session of the 8th Legislative Yuan).   Therefore, the articles in the Trade Secret Act shall take priority over those articles in the Criminal Code.   Based on the principle that special laws should take priority over general laws, the Trade Secret Act shall be applied.   In addition, Defendant Kenny Wang made critical statements related to the case while being interrogated, which led the prosecutor to be able to indict Co-Defendant Leh-Tian Rong for the crime described in Item 5 of the Criminal Facts Section.   With the prosecutor's advanced consent, please reduce or waive Defendant Kenny Wang's punishment for committing the crime under Paragraph 1 of Article 13-2 of the Trade Secrets Act pursuant to Article 14(1) of the Witness Protection Act.

(III) Defendant Leh-Tian Rong intended to use the trade secrets in Mainland China and damage the complainant MTI's interests. Although he knew that the trade secrets possessed by Defendant Kenny Wang were illegally obtained, he still used said trade secrets.   Defendant Leh-Tian Rong committed the crime prohibited under Paragraph 1 of Article 13-2 of the Trade Secrets Act, *i.e.* violating Subparagraph 4 of Paragraph 1 of Article 13-1 of the Trade Secrets Act with the intent to use in Mainland China.

(IV) Because Defendant UMC's employees, i.e. JT Ho, Kenny Wang and Leh-Tian Rong committed the crime prohibited under Article 13-2(1) of the Trade Secrets Act in the course of performing their job duties, please punish by imposing on Defendant UMC the criminal fine mentioned under Article 13-2(1) of the Trade Secrets Act pursuant to the former part of Article 13-4 of the Trade Secrets Act.

IV.   Confiscation:

Please confiscate the Electronic Record A and Paper Document B illegally obtained by Defendant JT Ho and the Electronic Record C and Paper Document D illegally obtained by Defendant Kenny Wang pursuant to the former part of Article 38-1(1) of the Criminal Code.   Pursuant to Article 38(2) of the Criminal Code, please confiscate the articles listed in Table 2, Items 3 & 6 of the Confiscated-Property Storage in Table 3, Item 16 of the Confiscated-Property Storage in Table 5, and Item 20 of the Confiscated-Property Storage in Table 6, which were articles owned and used by Defendant Kenny Wang for committing the crime.   Pursuant to Article 38(2) of the Criminal Code, please confiscate the articles listed in Item 36 of the Confiscated-Property Storage in Table 6 and items shown in Table 7, which were articles owned and used by Defendant JT Ho for committing the crime.

CERT. ULG

Exhibit 2
Page 45

USD-0000411

V. The prosecutor hereby indicts the Defendants in accordance with Article 251(1) of the Code of Criminal Procedures.

Respectfully submitted to Taiwan Taichung District Court

August 8, 2017

The Prosecutor: Li-Wei Chen

August 31, 2017

Clerk：Yi-Qing Chen (Signature: Yi-Qing Chen)

Table 1
Date of action: September 29, 2016
Place of action: Investigation Bureau, Taipei city
Subject of action: Micron Memory Taiwan Co., Ltd
Basis of action: Article 133(3) of the Criminal Code

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| A-1 | 1 | Laptop computer used by Kenny Wang | 1 unit | This is the computer used by Kenny Wang during his service in MTI |

Table 2
Date of action: February 7, 2017
Place of action: Premises at Nantun District and 18 Cheng Lane and surrounding area
Acted by: Kenny Wang
Basis of action: Search warrant ShengSouZi No. 372 of 2017 issued by Taichung District Court, Taiwan

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| F-1 | 2 | Laptop computer (including cable) | 1 unit | 1. After reviewing, the Investigation Bureau copied the electronic records in the laptop computer as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-10 \ .<br>2. After review on 13 February 2017, witness Yi-Ling Chen confirmed that the electromagnetic records stored in the path below are |

17

CERT. ULG

Exhibit 2
Page 46

USD-0000412

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 19 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 18 of 29

| | | | | ③106030-25-10\106030-25-10-FUJITS U-NW9XT682R86A, P2 |
|---|---|---|---|---|

Table 3

Date of action: February 7, 2017

Place of action: Premises at 9 of 11th floor, No. 201 Section 1, Wenxin South 5th Road, Nantun District, Taichung and surrounding area

Subject of action: Kenny Wang

Basis of action: Search warrant ShengSouZi No. 372 of 2017 issued by Taichung District Court, Taiwan

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| D-1 | 1 | USB | 1 unit | 1. After reviewing, the Investigation Bureau copied the electronic records in the USB as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-06 \ . <br> 2. After review on 13 February 2017, witness Yi-Ling Chen confirmed that the electronic records stored in the path below are MTI's trade secrets: <br> ①4G3D_Bin-z_v(1).s WAT paramcorre lation.xls <br> ②Fab11_twr_materials_for_25mm_tas k_force_V6.pptx <br> ③WAT param check for 1RP746 3E. |

(continued)

| | | | | WWC1 split.xls |
|---|---|---|---|---|
| D-2 | 4 | USB | 1 unit | After reviewing, the Investigation Bureau copied the electronic records in the seized item as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-07 \ . |
| D-3 | 5 | USB | 1 unit | After reviewing, the Investigation Bureau copied the electronic records in the seized item as Item 48 in the Confiscated-Property Storage |

18

CERT. ULG

Exhibit 2
Page 47

USD-0000413

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 20 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 19 of 29

| | | | | | under USB \ 106030-25-08 \ . |
|---|---|---|---|---|---|
| D-4 | 6 | Acer laptop computer (including cable) | 1 set | 1. | After reviewing, the Investigation Bureau copied the electronic records in the seized item as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-09 \ . |
| | | | | 2. | After review on 13 February 2017, witness Yi-Ling Chen confirmed that the electronic records stored in the path below are MTI's trade secrets: \106030-25-09\106030-25-09-WD-\ XL1A61D6395-250GB, P2\USB\YFA POOL\ |
| D-5 | 7 | Employment Agreement | 1 copy | | |
| D-6 | 8 | Passbook (Bank SinoPac Hsinchu branch, account number: 018004001551741, name of account holder: Kenny Wang) | 1 copy | | |

Table 4
Date of action: February 7, 2017
Place of action: Limited to premises which are Kenny Wang's personal apartment on 1-9/F Nos. 428 and 430 Longmujing Road, Shanhua District, Tainan City
Subject of action: Kenny Wang
Basis of action: Search warrant Sheng Sou Zi No. 372 of 2017 issued by Taichung District Court, Taiwan

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| C-1-1 to C-1-3 | 9 | Information about Kenny Wang | 3 copies | After review in the course of being interviewed by the investigator, witnesses Yi-Ling Chen and Lucient Jan confirmed that document C-1-2 (Title: Peripheral Design Rules for DR25nm) comprises MTI's trade secrets. |
| C-2 | 10 | USB | 1 unit | After reviewing, the Investigation Bureau found that the USB could not be read due to damage, so no related information is available. |

CERT. ULG

Exhibit 2
Page 48

USD-0000414

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 21 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 20 of 29

Table 5
Date of action: February 7, 2017
Place of action: No. 57 Nanke 3rd Road, Xinshi District, Tainan City and surrounding area (Kenny Wang's product manager office in UMC's Second Factory Area of Fab 12A)
Subject of action: Kenny Wang
Basis of action: Search warrant Sheng Sou Zi No. 375 of 2017 issued by Taichung District Court, Taiwan

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| A-1 | 11 | Organization Chart of PM2 | 1 sheet | |
| A-2-1 A-2-2 A-2-3 | 12 | Documents | 3 copies | 1. After review in the course of interviewed by the investigator, witness Yi-Ling Chen confirmed that they are not MMT's documents. 2. After reviewing document A-2-2 in the course of being interviewed by the investigator on 16 February 2017, witness Lucient Jan confirmed that the parameters contained in the documents bear similarities to the parameters contained in document C-1-2. |
| A-3 | 13 | UMC personnel data card | 1 copy | |
| A-4 | 14 | Kenny Wang's notebook | 1 copy | After review, witness Yi-Ling Chen confirmed that they contain no trade secrets of MMT. |
| A-5 | 15 | Handwritten notes | 1 copy | After review, witness Yi-Ling Chen confirmed that they contain no trade secrets of MMT. |

(continued)

| A-6 | 16 | Kenny Wang's mobile phone (No.: 0911-834291) | 1 | 1. The Investigation Bureau's report of review is included as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-01 \ . 2. Kenny Wang confessed that it contains MMT's information. |
|---|---|---|---|---|

CERT. ULG

Exhibit 2
Page 49

USD-0000415

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 22 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 21 of 29

| A-7 | 17 | Kenny Wang's mobile phone (No.: 0965702303) | 1 | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-02 \ . |
| A-8 | 18 | The office-use laptop computer (including cable) distributed by United Microelectronics Corporation to Kenny Wang | 1 | 1. After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-03 \ . <br> 2. After review on February 13, 2017, witness Yi-Ling Chen confirmed that the path below contains MTI's trade secrets: <br> \106030-25-03\106030-25- 0 -INTEL-CVTR548103WB240CGN- 240GB , P\Users\00046685\Downloads\本 材料 - 20161223T111122Z |
| A-9 | 19 | USB | 1 | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-04 \ . |

Table 6
Date of action: February 9, 2017
Place of action: Third investigation court of Taiwan Taichung District Prosecutors Office
Subject of action: Shu-Han Huang
Basis of action: Article 133(3) of the Criminal Code

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| 1 | 34 | Laptop computer of the HP brand (UMC label: UMC030761) | 1 unit | Owned by UMC. After reviewing, the Investigation Bureau copied the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-12 \ . |

(continued)

| 2 | 20 | USB (Silver PNY128GB) | 1 unit | 1. Owned by Kenny Wang. After reviewing, the Investigation Bureau copied the electronic |

CERT. ULG

Exhibit 2
Page 50

USD-0000416

| | | | | |
|---|---|---|---|---|
| | | | | records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-13 \ .<br>2. After review in the course of being interviewed by the investigator, witness Yi-Ling Chen confirmed that they contain electronic records of trade secrets of MTI. |
| | 36 | USB (Kingston brand) | 1 unit | 1. Owned by Kenny Wang. After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-14 \ .<br>2. After review in the course of being interviewed by the investigator, witness Yi-Ling Chen confirmed that they contain electronic records of trade secrets of MTI. |
| 3 | 21 | Paper materials | 1 copy | Owned by Kenny Wang, with sticker depicting no. 1 on the paper. |
| | 22 | Paper document | 1 copy | Owned by Kenny Wang, with sticker depicting no. 9 on the paper. After review in the course of interviewed by the investigator, witness Yi-Ling Chen confirmed that they are trade secrets of MTI. |
| | 35 | Paper document | 13 copies | 1. Owned by Kenny Wang, with stickers depicting nos. 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15 on the paper.<br>2. Paper documents numbered 2, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 1 and ELPIDA ECD-DPB-1111 and ECD-DPB-1076 in archive numbered 15. After review in the course of being interviewed by the investigator, Yi-Ling Chen confirmed that they are trade secrets of MTI. |
| 4 | 23 | Laptop computer | 1 unit | Owned by Kenny Wang. |

22

CERT. ULG

Exhibit 2
Page 51

USD-0000417

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 24 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 23 of 29

| 5 | 37 | Operation plan of Elpida – RGM Houli Technology R&D Center | 1 copy | |
|---|----|-----|----|---|

**Table 7**
Date of action: February 8, 2017
Place of action: Room 657 No. 63 Dashun 6th Road., Xinshi District, Tainan City
Subject of action: JT Ho
Basis of action: Article 133(3) of the Criminal Code

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| 1 | 25 | USB | 1 unit | 1. After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-11 \ . 2. After review in the course of being interviewed by the investigator, witness Yi-Ling Chen confirmed that they contain electronic records of trade secrets of MTI. |

**Table 8**
Date of action: February 14, 2017
Place of action: No. 57 Nanke 3rd Road, Xinshi District, Tainan City (Kenny Wang's personal office in PM2 of New Business Development Center in UMC's Second Factory Area of Fab 12A)
Subject of action: JT Ho
Basis of action: Search warrant Sheng Sou Zi No. 421 of 2017 issued by Taichung District Court, Taiwan

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| 2B-1-1 to 2B-1-4 | 26 | Notebook of JT Ho | 4 copies | |
| 2B-2 | 27 | MMT letters | 1 copy | |
| 2B-3 | 28 | Employment Agreement | 1 copy | |
| 2B-4 | 29 | Mobile phone of JT Ho (Nos: 0910411131, 0965280938) | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-15 \ . |
| 2B-5 | 30 | Miscellaneous record of JT Ho | 1 sheet | |
| 2B-6 | 31 | Laptop computer of JT Ho | 1 unit | After reviewing, the |

23

CERT. ULG

Exhibit 2
Page 52

USD-0000418

| | | (Asus brand) | | Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-16 \ . |
|---|---|---|---|---|
| 2B-7 | 32 | Contact information | 2 sheets | |
| 2B-8 | 33 | USB of JT Ho | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-17 \ . |

Table 9
Date of action: February 14, 2017
Place of action: No. 57 Nanke 3rd Road, Xinshi District, Tainan City (Leh-Tian Rong's personal office in PM2 of New Business Development Center in UMC's Second Factory Area of Fab 12A)
Subject of action: Leh-Tian Rong
Basis of action: Search warrant Sheng Sou Zi No. 416 of 2017 issued by Taichung District Court, Taiwan

| Item no. of seized record | Item no. of Confiscated-Property Storage | Name of seized item | Quantity | Remark |
|---|---|---|---|---|
| 2A-1-1 | 39 | iPhone handset | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-18 \ . |
| 2A-1-2 | 40 | iPhone handset | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-19 \ . |
| 2A-2 | 41 | USB | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-20 \ . |
| 2A-3 | 42 | USB | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-21 \ . |
| 2A-4 | 43 | USB | 1 unit | After reviewing, the |

24

CERT. ULG

Exhibit 2
Page 53

USD-0000419

|  |  |  |  | Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-22 \ . |
|---|---|---|---|---|
| 2A-5-1 2A-5-2 | 44 | Notebooks | 2 copies |  |
| 2A-6-1 | 45 | Documents | 2 copies |  |

(continued)

| 2A-6-2 |  |  |  |  |
|---|---|---|---|---|
| 2A-7 |  | Confidentiality Agreement | 1 copy | The prosecutor considered no need of seizure, and instructed the New Taipei City Investigation Bureau to return it to Leh-Tian Rong on February 14, 2017. |
| 2A-8 | 46 | Leh-Tian Rong's ACER laptop computer | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-23 \ . |
| 2A-9 |  | Seating plan | 1 sheet | The prosecutor considered no need of seizure, and instructed the New Taipei City Investigation Bureau to return it to Leh-Tian Rong on February 14, 2017. |
| 2A-10 | 47 | Leh-Tian Rong's USB which contains business information | 1 unit | 1. After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-24 \ . 2. The prosecutor considered no need of seizure after the inspection, and returned it to Leh-Tian Rong on April 25, 2017 in the form of disposal order |

| Table 10 Date of action: February 14, 2017 Place of action: 5 of 8th floor, No. 6 Dashun 3rd Road 112, Xinshi District, Tainan City Subject of action: Leh-Tian Rong Basis of action: Search conducted pursuant to Article 131-1 of the Criminal Code with consent of the target of search |  |  |  |  |
|---|---|---|---|---|
| Item no. | Item no. of | Name of seized item | Quantity | Remark |

CERT. ULG

Exhibit 2
Page 54

USD-0000420

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 27 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 26 of 29

| of seized record | Confiscated-Property Storage | | | |
|---|---|---|---|---|
| 2C | 38 | HTC handset | 1 unit | After reviewing, the Investigation Bureau included the electronic records as Item 48 in the Confiscated-Property Storage under USB \ 10603-25-25 \ . |

Table 11
USB provided by MJIB

| Item no. of seized record | Name of seized item | Quantity | Remark |
|---|---|---|---|
| 24 | USB (Black 64GB) | 1 unit | 1. These are information obtained from Kenny Wang's Google Drive account during his interrogation by the Investigation Bureau of New Taipei City on February 14, 2017.<br>2. After review in the course of interview by the investigator, Lucient Jan confirmed that the GDS file in the Google Drive bears similarities to MTI's Design Rules of 25nm DRAM products.<br>3. The file in the USB has been copied as Item 48 in the Confiscated-Property Storage under USB \ 106030-25-26 \ . |
| 48 | USB (ITB Black) | 1 unit | It contains the electronic records to be reviewed by MJIB for the case 106030. |

Table 12

| Complainant | Agents | Accused |
|---|---|---|
| Micron Memory Taiwan Co., Ltd | Lawyer Jeanne Wang<br>Lawyer Lin Liang Rong (terminated on 2 September 2016)<br>Lawyer Max Lee<br>Lawyer Chen Xi Xian | Kenny Wang<br>JT Ho<br>UMC |
| Micron Technology, Inc. | Lawyer Jeanne Wang<br>Lawyer Lin Liang Rong (terminated on September 2, | |

CERT. ULG

Exhibit 2
Page 55
USD-0000421

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 28 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 27 of 29

| 2016) | |
| Lawyer Peng Jian Ren | |

| Table 13 | | |
|---|---|---|
| Complainant | Agents | Accused |
| UMC | Lawyer Che-Hung Chen<br>Lawyer Jia-Kun Liu (terminated on June 19, 2017)<br>Lawyer En-Xu Huang | Kenny Wang |

Laws violated:

Article 13-1 of the Trade Secrets Act

Anyone who has one of the following circumstances done with the intent to obtain illegal gains for oneself or third persons, or damage interests of trade-secret owners shall be liable to imprisonment or detention of no more than 5 years and a fine more than TWD1 million but less than TWD 10 million for:

1. Obtaining trade secrets by stealing, infringement, fraud, threat or unauthorized copying or other illegal means or using and disclosing the same after obtaining them.

2. Copying, using, or disclosing known trade secrets or possessing trade secrets without authorization or beyond the scope of authorization.

3. Failure to delete, destroy or conceal trade secrets after being instructed by the trade-secret owners to have them deleted or destroyed.

4. Obtaining, using, or disclosing trade secrets from another person knowing that the person knows or possesses the trade secrets from the above three circumstances.

Any attempt of the above shall be subject to penalty.

For fines, if the perpetrator obtains gains which exceed the maximum amount of fine, discretion should be exercised to increase the fine to an amount not greater than three times the gains obtained.

Article 13-2 of the Trade Secrets Act

Anyone who attempt to use trade secrets in foreign countries, Mainland China, Hong Kong or Macau in violation of one of the said crimes of Paragraph (1) of the preceding Article shall be liable to imprisonment of more than one year but less than 10 years and a fine above TWD3 million but less than TWD 50 million.

Any attempt of the above shall be subject to penalty.

CERT. ULG

Exhibit 2
Page 56
USD-0000422

Confidential - Subject to Protective Order
Case 3:18-cr-00465-MMC   Document 247-2   Filed 12/01/21   Page 29 of 30
Case 3:17-cv-06932   Document 1-2   Filed 12/05/17   Page 28 of 29

For fines, if the perpetrator obtains gains which exceed the maximum amount of the fine, discretion should be exercised to increase the fine to an amount not greater than two to ten times the gains obtained.

Article 13-4 of the Trade Secrets Act

If a representative of a legal entity, or an agent of a legal entity or a natural person, an employee or other contractors violate Article 13-1 or 12-2 for purposes of conducting business, besides punishing the perpetrator pursuant to the related Article, the legal entity or natural person shall also be subject to a fine unless the representative of the legal entity or natural person has done their utmost to stop the perpetrator's act.

Article 91 of the Copyright Act

Anyone who infringes IP rights of others by unauthorized copying of a work shall be liable to imprisonment or detention of less than 3 years and optional or compulsory fine of no more than TWD750,000.

Anyone who infringes upon IP rights of others by copying the work unauthorized with an intent to sell or lease the same shall be liable to imprisonment of more than 6 months but less than 5 years and optional or compulsory fine of no more than TWD200,000 but less than TWD2 million.

Anyone who commits the said crime by copying the data on CDs shall be liable to imprisonment of more than 6 months but less than 5 years and compulsory fine of more than TWD500,000 but less than TWD5 million.

Personal reference or reasonable use of the works shall not constitute infringement upon copyrights.

28

CERT. ULG

Exhibit 2
Page 57

USD-0000423

ULG
UNITED LANGUAGE GROUP

United Language Group
3 Columbus Circle
14th Floor
New York, NY 10119
+1 888.601.9814
legaltranslations@ulgroup.com

State of New York )
 ) ss:
County of New York )

**Certificate of Accuracy**

This is to certify that the attached translation is, to the best of our knowledge and belief, a true and accurate translation of the attached document, carried out by translators competent to translate from Chinese into English.

Dated: November 27, 2017

Yasushi Sasaki
Senior Project Manager – Legal Translations
United Language Group

Sworn to and signed before me, this 27th day of November 2017

Notary Public

SELIN CAYIRLI
Notary Public, State of New York
No. 01CA6275260
Qualified in New York County
Commission Expires Jan 22, 2021