STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

TOM COLTHURST (CABN 99493)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Laura.Vartain@usdoj.gov
    Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 353-3434
    Fax: (202) 233-2146
    Nicholas.Hunter@usdoj.gov
    Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 18-CR-00465 MMC |
| Plaintiff, | ) |
| | ) UNITED STATES' OPPOSITION TO |
| v. | ) DEFENDANT'S MOTION IN LIMINE NO. 3 |
| | ) TO EXCLUDE EXPERT TESTIMONY OF |
| UNITED MICROELECTRONICS | ) TERRENCE DALY |
| CORPORATION, et al. | ) |
| | ) |
| Defendants. | ) |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

RELEVANT BACKGROUND .............................................................................................2

ARGUMENT ..........................................................................................................................3

    I.    Mr. Daly's Principal Opinion One that Modern Logic Foundries Do Not Make Stand-Alone DRAM Products Is Relevant Because It Bears on the Offense Elements and Reliable Because It Is Based on Industry Experience ................................4

        A.    Mr. Daly's Principal Opinion One Is Relevant Because It Bears on the Offense Elements ..................................................................................................4

        B.    Mr. Daly's Principal Opinion One Is Reliable Because It is Grounded in Mr. Daly's Leadership and Project Management Experience at GLOBALFOUNDRIES ..................................................................................5

    II.    Mr. Daly's Principal Opinion Four that Project M Injured Micron Is Relevant Because It Bears on Offense Elements and Not Unfairly Prejudicial Because It Is Not Based on Anti-Chinese Bias ............................................................................7

        A.    Mr. Daly's Principal Opinion Four Is Relevant Because It Bears on the Elements of Crimes Charged ..........................................................................7

        B.    Mr. Daly's Principal Opinion Four Neither Exhibits Nor Is Animated by Anti-Chinese Bias ..................................................................................9

    III.    Mr. Daly's Principal Opinion Five that Project M Benefited Jinhua and the People's Republic of China Is Relevant Because It Bears on Offense Elements and Not Unfairly Prejudicial Because It Is Not Based on Anti-Chinese Bias ...................9

        A.    Mr. Daly's Principal Opinion Five Is Relevant Because It Bears on the Intent-to-Benefit-a-Foreign-Entity Element ..............................................10

        B.    Mr. Daly's Principal Opinion Five Reflects No Anti-Chinese Bias and Goes No Further than the Economic Espionage Statute and Trial Exhibits Require ................................................................................10

CONCLUSION ....................................................................................................................11

# TABLE OF AUTHORITIES

## CASES

*Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*,
 738 F.3d 960 (9th Cir. 2013) ........................................................................................ 6

*City of Pomona v. SQM N. Am. Corp.*,
 750 F.3d 1036 (9th Cir. 2014) ................................................................................. 7, 12

*In re Heparin Prod. Liab. Litig.*,
 MDL No. 1953, 2011 WL 1059660 (N.D. Ohio Mar. 21, 2011) .............................. 11

*Jinro America Inc. v. Secure Investments, Inc.*,
 266 F.3d 993 (9th Cir. 2001) ...................................................................................... 10

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137 (1999) ..................................................................................................... 5

*Turf Ctr., Inc. v. United States*,
 325 F.2d 793 (9th Cir. 1963) ........................................................................................ 9

*United States v. Hankey*,
 203 F.3d 1160 (9th Cir. 2000) ...................................................................................... 6

*United States v. Liew*,
 No. CR 11-00573-1 JSW, 2013 WL 6441259 (N.D. Cal. Dec. 9, 2013) .................. 10

*United States v. McCaleb*,
 552 F.3d 1053 (9th Cir. 2009) ...................................................................................... 7

*United States v. Pangang Group Co.*,
 879 F. Supp. 2d 1052 (N.D. Cal. 2012) ....................................................................... 4

*United States v. You*,
 534 F. Supp. 3d 880 (E.D. Tenn. 2021) ................................................................. 2, 4

## STATUTES

18 U.S.C. § 1831 ............................................................................................... 1, 2, 10, 11

18 U.S.C. § 1832 ............................................................................................................ 1, 2

## RULES

Fed. R. Evid. 401(a) ........................................................................................................ 5

Fed. R. Evid. 702 .................................................................................................... 1, 2, 7

Fed. R. Evid. 704(b) ..................................................................................................... 10

## OTHER AUTHORITIES

29 Charles Alan Wright & Victor Gold, Federal Practice and Procedure § 6265.4 (2016) ..... 1

1 Robert P. Mosteller, McCormick on Evidence § 13 ....................................................................... 6

# INTRODUCTION

Expert testimony is admissible if (among other requirements) it is "help[ful]" to the jury. FED. R. EVID. 702. The government's foundry expert, Terrence Daly, is a former senior vice president of GlobalFoundries Inc. ("GlobalFoundries") and a 35-year veteran of the semiconductor industry. He will help the jury understand Project M: the "memory" and "Mainland China" technology cooperation between United Microelectronics Corporation, Inc. ("UMC") and defendant Fujian Jinhua Integrated Circuit Co. Ltd. ("Jinhua"). Specifically, Mr. Daly's five principal opinions will help the jury understand the difference between logic semiconductor fabrication companies or "fabs," on the one hand, and dynamic random access memory ("DRAM") integrated device manufacturers or "IDMs," on the other hand, and the planning, budget, manpower curves, and other Project M business records that document how UMC and Jinhua worked to create a virtual DRAM IDM. The technology, industry, and internal business documents are not materials with which lay jurors will be familiar, even in the Bay Area, and the jury cannot reasonably be expected to sift the unfamiliar and complex business and technical documentation on its own. *See* 29 CHARLES ALAN WRIGHT & VICTOR GOLD, FEDERAL PRACTICE AND PROCEDURE § 6265.4, at 292 (2016) ("Expert testimony is also commonly found to be helpful when offered to explain the conduct of businesses or other activity beyond the usual experience of jurors."). Mr. Daly is a genuine expert.

Contrary to Jinhua's contention, Mr. Daly's opinions are relevant, reliable, and not unfairly prejudicial. Jinhua seeks to exclude principal opinions one, four, and five as irrelevant. But those three opinions concern the defendants' agreement and intent to steal trade secrets, injure the trade-secret owner, and benefit a foreign entity – all of which tend to prove conspiracy to commit economic espionage, conspiracy to commit trade-secret theft, and the substantive economic espionage counts under 18 U.S.C. §§ 1831(a)(5), 1832(a)(5), and 1831(a)(3) and this Circuit's jury instructions.

Not only are Mr. Daly's opinions relevant to offenses, but they are also reliable under *Daubert*, *Joiner*, and *Kumho*. Jinhua contends that principal opinion one is not reliable. But that opinion describes Mr. Daly's experience in the industry. As the Advisory Committee Note implementing *Kumho* explains, "experience alone" may provide a sufficient foundation for expert testimony. FED. R. EVID. 702 advis.

UNITED STATES' OPP.
TO DEF.'S MOT. IN LIMINE NO. 3
18-CR-00465 MMC                                      1

comm. note (2000). Tellingly, Jinhua's experts Woodward Yang and Eugene Barash offer similar opinions based on their experience, which is far less than Mr. Daly's. Indeed, all four of the technical experts in this case are engineers by training with more or less experience in the semiconductor industry.

Jinhua contends that Mr. Daly's principal opinions four on injury and five on foreign benefit should be excluded as unfairly prejudicial because it relies on anti-Chinese "bias." Dkt. 246, at 9, 10. But that contention has no basis in Mr. Daly's disclosure. Jinhua quotes from unrelated cases in which experts had such bias and were excluded and then gingerly asserts that "Mr. Daly appears to be attempting to establish a similar bias here." Dkt. 246, at 10. The proffered testimony in those other cases, however, bears not even a passing resemblance to any disclosure made on behalf of Mr. Daly in this case. Neutral expert testimony along the lines of that offered by Mr. Daly was properly admitted over objections like Jinhua's in the recent trial of Xiaorong You. *See United States v. You*, 534 F. Supp. 3d 880 (E.D. Tenn. 2021). Mr. Daly's testimony should similarly be admitted here to help the jury resolve this semiconductor espionage case.

## RELEVANT BACKGROUND

The indictment charges Jinhua with conspiracy to commit economic espionage (count one), conspiracy to commit theft of trade secrets (count two), and having knowingly received and possessed stolen Micron trade secrets (count seven). Dkt. 1 at 8-13; 18 U.S.C. §§ 1831(a)(5), 1832(a)(5), and 1831(a)(3). Among the elements of the two conspiracy counts are (1) an agreement between two or more persons to commit an offense – in this case alleged to be economic espionage in count one and theft of trade secrets in count two – and (2) that the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. *See* Ninth Circuit Model Criminal Jury Instruction 8.20. The third count, economic espionage, requires a finding that the defendant intended or knew that its actions would benefit any foreign government, foreign instrumentality, or foreign agent, and that the defendant knowingly received, bought, or possessed trade secrets, knowing the same to have been stolen, appropriated, obtained, or converted without authorization. *See* Ninth Circuit Model Criminal Jury Instruction 8.141A.

Mr. Daly's proposed testimony goes to all of those elements of the crimes charged.

# ARGUMENT

Mr. Daly's expert testimony should be permitted in full. Jinhua seeks to exclude Mr. Daly's principal opinions one, four, and five as irrelevant, unreliable, unfairly prejudicial, or a combination of objections, as show in the following table:

| Table of Terrence Daly's Principal Opinions and Jinhua's Objections | | | |
|---|---|---|---|
| **Principal Opinion** | **Relevance** | **Reliability** | **Unfair Prejudice** |
| *"First*, modern logic foundries like GLOBALFOUNDRIES and UMC do not make stand-alone DRAM products." <br><br> Dkt. 246-2, at 2 | Jinhua objection | Jinhua objection | |
| *"Fourth*, Project M injured Micron." <br><br> Dkt. 246-2, at 2 | Jinhua objection | | Jinhua objection |
| *"Fifth*, Project M benefited JHICC and the People's Republic of China." <br><br> Dkt. 246-2, at 2 | Jinhua objection | | Jinhua objection |

Jinhua does not move against Mr. Daly's principal opinions two and three.

Contrary to Jinhua's objections, Mr. Daly's principal opinions one, four, and five are relevant because they bear on offense elements and tend to make it more probable that the government will satisfy its burden to prove those elements. Mr. Daly's principal opinion one is reliable because it is based on his industry experience. And Mr. Daly's principal opinions four and five neither overtly state any anti-Chinese bias nor implicitly reflect such bias by relying on a chain of reasoning that incorporates anti-Chinese animus.

## I. Mr. Daly's Principal Opinion One that Modern Logic Foundries Do Not Make Stand-Alone DRAM Products Is Relevant Because It Bears on the Offense Elements and Reliable Because It Is Based on Industry Experience

### A. Mr. Daly's Principal Opinion One Is Relevant Because It Bears on the Offense Elements

"Evidence is relevant if: (a) it has any tendence to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401(a).

Mr. Daly's first principal opinion should be read together with his second and third principal opinions, rather than separated to expose unfairly alleged weaknesses that do not exist when the opinions are taken together.[1] Mr. Daly's first three opinions are:

> *First*, modern logic foundries like GLOBALFOUNDRIES and UMC do not make stand-alone DRAM products.
>
> *Second*, for a foundry independently to develop stand-alone DRAM, the required resources — in money, engineers, and time — vastly exceed those committed by UMC and Fujian Jinhua Integrated Circuit Co., Ltd. (JHICC) in those companies' joint technology development program, Project M.
>
> *Third*, although the resources committed to Project M were not sufficient independently to develop DRAM technology, they were consistent with the adoption of DRAM technology from a third party.

Dkt. 246-2, at 2.

Thus, Mr. Daly's principal opinion that "modern logic foundries like GLOBALFOUNDRIES and UMC do not make stand-alone DRAM," Dkt. 246-2, at 2, is relevant because that opinion, together with principal opinions two and three, tends to make it more probable that the defendants, including Jinhua, knew they did not have the DRAM manufacturing technology internally and could not make it with the resources and in the time available to them. Accordingly, Mr. Daly's principal opinion one,

---

[1] Jinhua attempts to split opinion one from opinions two and three and contends that opinion one is about "corporations . . . in general" rather than "Defendants specifically." Dkt. 246, at 4 (quoting *United States v. Pangang Group Co.*, 879 F. Supp. 2d 1052, 1057 (N.D. Cal. 2012)). But Mr. Daly's opinion one, even read in isolation, is specific to the products made by defendant "UMC." Dkt. 246-2, at 2. Principal opinions two and three are likewise specific to UMC and Jinhua's "joint technology development program, Project M." *Id.*

together with principal opinions two and three, also tends to make it more probable that the defendants, including Jinhua, knew that the aggressive business schedule Jinhua was following was impossible without the unlawful acquisition of trade secrets from another company.  And that knowledge goes directly to the elements of counts one and two: that there was an agreement to commit economic espionage and trade secret theft, and that the defendants, including Jinhua, entered into that agreement knowing of the object of the conspiracy and intending to help accomplish it.  Put another way, the opinions make it less probable that Jinhua (and the other defendants) was unaware of the fact that its business was based on trade secrets from another company.

Moreover, although not an element the United States is required to prove, the fact that these opinions also help establish that the defendants, including Jinhua, did in fact commit economic espionage and theft of trade secrets (as opposed to only conspiring to do so), is excellent proof that they in fact conspired to commit those crimes.  Crimes are not committed by accident, but instead through intentional actions.  A jury would be reasonable to conclude that if a crime was committed, such as economic espionage or theft of trade secrets, the persons who worked together to commit those crimes in fact had agreed to do so, that is, they had conspired to do so, which is the crime charged in counts one and two.

As explained above, because the opinions go to the elements of the crimes charged, they are highly relevant to this matter and are of consequence in determining the action.

**B.    Mr. Daly's Principal Opinion One Is Reliable Because It is Grounded in Mr. Daly's Leadership and Project Management Experience at GLOBALFOUNDRIES**

Mr. Daly's principal opinions are properly grounded in his semiconductor industry experience, in particular his seven years on the senior leadership team a one of the world's leading logic foundries. Thus, Mr. Daly's first principal opinion that modern (post-2010) logic foundries do not make stand-alone DRAM products is a descriptive industry observation. It is well within the experience of a former senior vice president of one of the world's three leading logic foundries.

Descriptive statements such as Mr. Daly's first principal opinion are properly based on industry experience even after the Supreme Court in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999),

applied *Daubert* to non-scientific testimony and evidence rule 702 was amended in 2000. As Professor Mosteller explains in *McCormick on Evidence* (emphasis added):

> One category is a descriptive or summational inference. The expert essentially describes or summarizes experience in her field. The expert's only conclusion is an immediate inference from the experience that a practice, custom, *or condition exists*. Suppose for instance, that in a contract lawsuit, there is a dispute as to the meaning of a term in the written agreement. To support his interpretation of the term, the plaintiff calls an experienced member of the industry as an expert. According to the witness, in the industry there is a trade custom or usage, that is, a linguistic convention as to the meaning of that term. The expert's specific theory is that the usage exists within the industry. The witness is prepared to testify that she has been a member of the industry for a considerable period of time and that her inference rests on her personal experience as well as conversations with other industry members. She will testify that she and her colleagues have encountered that usage of the term by industry members on numerous occasions and have never or rarely encountered a different usage. Her testimony, summarizing her experience and that of her colleagues, points to the existence of the usage.
>
> The same rationale explains the approving mention of police testimony about drug argot in both Justice Breyer's *Kumho* opinion and the Advisory Committee's Note to the 2000 amendment to Federal Rule 702. . . . As the 2000 Advisory Committee Note states, in this situation "experience alone . . . may . . . provide a sufficient foundation for expert testimony."

1 ROBERT P. MOSTELLER, MCCORMICK ON EVIDENCE § 13, at 118-19 (2020) (footnotes omitted; last two ellipses in original); *see United States v. Hankey*, 203 F.3d 1160, 1168-70 (9th Cir. 2000) (admitting police officer's expert opinion on gang affiliations over *Kumho* objection based on experience); *see also Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969-70 (9th Cir. 2013) ("The *Daubert* reliability requirement 'is flexible' and '*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case.' . . . Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

The Advisory Committee itself explains that expert testimony may be grounded solely in "experience alone"):

> Nothing in this amendment is intended to suggest that experience alone – or experience in conjunction with other knowledge, skill, training or education – may not provide a sufficient foundation for expert testimony. To the contrary, the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.

FED. R. EVID. 702 advis. comm. note (2000).

In *United States v. McCaleb*, 552 F.3d 1053, 1060-61 (9th Cir. 2009), the Ninth Circuit affirmed admission of expert opinion testimony from a Drug Enforcement Administration forensic chemist "about the actual yield of PCP that could be produced in a clandestine laboratory for purposes of establishing the fact that the conspiracy in Count One involved more than 100 grams of PCP" (*id*. at 1060). If expert opinion testimony on the hypothetical production capability of a clandestine laboratory is reliable under the *Daubert* line of cases, it would seem to follow *a fortiori* that expert opinion testimony on the actual production capability of logic fabs is also reliable.

Jinhua's position is not consistent on this issue, in any event. Although Jinhua objects to Mr. Daly's principal opinion one about whether modern logic fabs make DRAM, Jinhua does not object to principal opinions two and three about what modern logic fabs would need to do to be able to make DRAM. Similarly, although Jinhua contends that Mr. Daly has no reliable basis to testify that modern logic fabs do not make DRAM, Jinhua offers its own foundry expert to opine that they can. *See* Dkt. 246, at 4-5 (paraphrasing Dr. Eugene Barash's Expert Disclosure, at 2-4 ("Mr. Daly's Principal Opinion 1 Regarding the Limits of Modern Logic Foundries is Oversimplified")). *Cf. City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (reversing exclusion of expert testimony: "A factual dispute is best settled by a battle of the experts before the fact finder, not by judicial fiat. Where two credible experts disagree, it is the job of the fact finder, not the trial court, to determine which source is more credible and reliable.").

**II.   Mr. Daly's Principal Opinion Four that Project M Injured Micron Is Relevant Because It Bears on Offense Elements and Not Unfairly Prejudicial Because It Is Not Based on Anti-Chinese Bias**

Contrary to Jinhua's contention, Dkt. 246, at 5-7, Mr. Daly's principal opinion four is relevant because it tends to prove the elements of the crimes charged and not unfairly prejudicial because it exhibits no anti-Chinese bias.

**A.   Mr. Daly's Principal Opinion Four Is Relevant Because It Bears on the Elements of Crimes Charged**

Jinhua does not dispute that principal opinion four is relevant to proof of injury. Jinhua instead contends, Dkt. 246, at 6, that the government need not prove actual injury and instead must prove that it

"intended" or "knew" (Ninth Circuit Model Criminal Jury Instruction 8.141B) that the offense would injure the trade secret owner.

The government agrees that it need not prove actual injury. The United States parts company with Jinhua, however, when Jinhua concludes that actual injury thus becomes irrelevant. Just as with the Mr. Daly's earlier opinions, the fact that principal opinion four helps establish that the defendants, including Jinhua, did in fact commit theft of trade secrets (as opposed to only conspiring to do so), is helpful proof that they in fact conspired to commit those crimes. A jury would be reasonable to conclude that if the crime theft of trade secrets was committed, the persons who worked together to commit those crimes in fact had conspired to do so, which is the crime charged in count two.

The United States also parts company with Jinhua when Jinhua asserts that "[t]o meet that burden, the government must present percipient witness testimony about Jinhua's purported intent and/or knowledge." Dkt. 246, at 6. Although percipient witness testimony is one way to prove Jinhua's knowledge, a jury may also infer Jinhua's knowledge based on expert testimony that establishing a DRAM megafab with Micron's trade secrets would injure Micron.

Indeed, Jinhua quotes *Turf Ctr., Inc. v. United States*, 325 F.2d 793, 797 n.5 (9th Cir. 1963), for the proposition that "In determining the issue as to intent the jury is entitled to consider any statements made and acts done or omitted by the defendant." Dkt. 246, at 7. But Jinhua fails to quote the entire section relevant to the issue, which is, in pertinent part:

> "Intent may be proved by circumstantial evidence. It rarely can be established by any other means; because while witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.
>
> "It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So, unless the contrary appears from the evidence, the jury may draw the inference that the defendant intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to result from any act knowingly done or knowingly omitted by them.
>
> "*In determining the issue as to intent the jury is entitled to consider any statements made and acts done or omitted by the defendant*, and all facts and circumstances in evidence which may aid in determination of state of mind.

> "It is not necessary for the prosecution to prove knowledge of the accused that a particular act or failure to act was a violation of law. Unless and until outweighed by evidence to the contrary, the presumption is that every person knows what the law forbids, and what the law requires to be done. However, evidence that the accused or any of these defendants acted or failed to act because of ignorance of the law, is to be considered in determining whether or not the accused acted or failed to act with specific intent as charged."

*Turf Ctr., Inc.*, 325 F.2d at 797 n.5 (asterisked omissions and quotation marks in original; emphasis italics added to show Jinhua's quotation). As the Ninth Circuit explained, the jury is not limited to percipient witness evidence on intent and is instead entitled to consider "all facts and circumstances in evidence which may aid in determination of state of mind." That evidence should include reliable expert opinion testimony such as that of the government's foundry expert, Mr. Daly. Percipient witness testimony is one way to prove intent, not the only way.

Contrary to Jinhua's ultimate-issue argument, Dkt. 246, at 7, Mr. Daly in principal opinion four by its terms offers no prohibited opinion on Jinhua's mental state. *Cf.* FED. R. EVID. 704(b).

### B. Mr. Daly's Principal Opinion Four Neither Exhibits Nor Is Animated by Anti-Chinese Bias

Although Jinhua contends that principal opinion four suggests that "China is an unfair competitor," Dkt. 246, at 7, Mr. Daly's disclosure analyzes the injury from the addition of a DRAM megafab. Dkt. 246-2, at 9-10. Only one sentence even mentions the People's Republic of China: "That objective [to catch up with Micron, Samsung, and SK Hynix by 2020] is well beyond the establishment of an indigenous Chinese DRAM firm to address local needs, supply specialty DRAM, or fill niche markets." No anti-Chinese bias is exhibited in that sentence or implied.

### III. Mr. Daly's Principal Opinion Five that Project M Benefited Jinhua and the People's Republic of China Is Relevant Because It Bears on Offense Elements and Not Unfairly Prejudicial Because It Is Not Based on Anti-Chinese Bias

Contrary to Jinhua's contention, Dkt. 246, at 7-10, Mr. Daly's principal opinion five that Project M benefited Jinhua and the People's Republic of China is relevant because it tends to prove the intent-to-benefit-a-foreign-entity element of the economic espionage count lodged against Jinhua and not unfairly prejudicial because it exhibits no anti-Chinese bias.

### A. Mr. Daly's Principal Opinion Five Is Relevant Because It Bears on the Intent-to-Benefit-a-Foreign-Entity Element

Mr. Daly's principal opinion five that "Project M benefited [Jinhua] and the People's Republic of China," Dkt. 246-2, at 2, is relevant because it tends to prove intent or knowledge to benefit "any foreign government, foreign instrumentality, or foreign agent" 18 U.S.C. § 1831(a)(3); Ninth Circuit Model Criminal Jury Instruction 8.141A. As with principal opinion four, Jinhua does not dispute that principal opinion five is relevant to proof of foreign benefit. Jinhua instead contends, Dkt. 246, at 8-9, that the government need not prove foreign benefit and instead must prove that it "intended" or "knew" that the offense would benefit the PRC or an instrumentality or agent thereof. As explained in connection with principal opinion four, that overstates Ninth Circuit decisions.

Moreover, since Jinhua is itself the defendant, Mr. Daly's expert opinion rendered stating that Jinhua benefitted from the commission of the crimes charged goes directly to motive and thus makes it more probable that Jinhua did in fact commit the crimes it is charged with in the indictment. Although Jinhua argues, Dkt. 246, at 8-9, that a benefit to Jinhua is not itself a benefit to the PRC, the evidence at trial will show that Jinhua is a "foreign instrumentality" and therefore a benefit to Jinhua satisfies the foreign-benefit element of the economic espionage count. Jinhua can dispute this evidence, but it cannot preclude its introduction.

### B. Mr. Daly's Principal Opinion Five Reflects No Anti-Chinese Bias and Goes No Further than the Economic Espionage Statute and Trial Exhibits Require

All parties agree that statements reflecting racial or ethnic bias have no place in the courtroom (or anywhere else). Expert testimony that exhibits such bias or is based on a chain of reasoning that makes claims based on racial or ethnic characteristics is properly excluded as unfairly prejudicial. The three cases cited by Jinhua, Dkt. 246, at 10, stand for that proposition. *See Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1001, 1006, 1007 (9th Cir. 2001) (improper to admit purported expert on Korean business practices whose testimony sought "to link a defendants conduct to that which is said to be typical of a particular racial, ethnic group or nationality" and opined that "Korean businesses generally are corrupt"); *United States v. Liew*, No. CR 11-00573-1 JSW, 2013 WL 6441259, at *2 (N.D. Cal. Dec. 9, 2013) (excluding testimony that "an extraordinary number of Chinese in business and

UNITED STATES' OPP.
TO DEF.'S MOT. IN LIMINE NO. 3
18-CR-00465 MMC                             10

government are engaged in this practice" of intellectual property theft); *In re Heparin Prod. Liab. Litig.*, MDL No. 1953, 2011 WL 1059660, at *11 (N.D. Ohio Mar. 21, 2011) (disapproving "generalized opinions about Chinese culture and business practice").

But a firm distinction exists between prohibited ethnical or racial bias, on the one hand, and permitted discussion of foreign government policies, on the other hand. For more than a century, criminal prosecutions have proceeded under statutes that permit or require admission of evidence of foreign government policies. *See, e.g.*, Espionage Act of 1917; The Trading with the Enemy Act of 1917; Foreign Agents Registration Act of 1938; International Emergency Economic Powers Act of 1977. Criminal prosecutions under those laws reflect disagreements with foreign government policies, not the foreign nationals who live in those countries.

So, too, here, the Economic Espionage Act of 1996 was passed to prosecute the theft of trade secrets by "[w]hoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent." 18 U.S.C. § 1831(a). Such a prosecution contemplates and necessitates discussion before the jury of five-year plans and other policies that explain why the PRC government contemplated providing $10 billion to Jinhua, how Jinhua would benefit the PRC, and why a benefit to Jinhua is itself a benefit to the PRC because Jinhua is majority owned and controlled by the PRC. Neither Mr. Daly's principal opinion five that "Project M benefited JHICC and the People's Republic of China," Dkt. 246-2, at 2, nor any other statement in his disclosure expresses or implies that Chinese people – as a race or ethnic group – steal. (The only specific example discussed in Jinhua's brief is the accusation that Mr. Daly thinks the "Project M would provide a domestic source of supply for China's military applications 'despite public representations to the contrary.'" Dkt. 246, at 9. The lone sentence relies on no racial or ethnic stereotyping and is instead based on Project M documents.)

## CONCLUSION

For the reasons set forth above, Jinhua's motion *in limine* number 3 should be denied in its entirety. Rather than excluding relevant, reliable, and unbiased expert testimony, the Court should allow Mr. Daly to testify in aid to the jury and allow Jinhua to cross-examine Mr. Daly as to all of his opinions. That approach is a proper exercise of the Court's power in its role as a gatekeeper for expert

1 | witness testimony. *See City of Pomona*, 750 F.3d at 1049 ("A factual dispute is best settled by a battle
2 | of the experts before the fact finder, not by judicial fiat. Where two credible experts disagree, it is the
3 | job of the fact finder, not the trial court, to determine which source is more credible and reliable."). The
4 | jury will be able to assess the weight and credibility of the testimony in its deliberations.

6 | Dated: December 22, 2021         Respectfully Submitted,

STEPHANIE M. HINDS
Acting United States Attorney

               /s/
LAURA VARTAIN HORN
NICHOLAS WALSH
Assistant United States Attorneys

NICHOLAS O. HUNTER
STEPHEN MARZEN
Trial Attorneys, National Security Division

UNITED STATES' OPP.
TO DEF.'S MOT. IN LIMINE NO. 3
18-CR-00465 MMC                    12