JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
OSAMA ALKHAWAJA (SBN 334404)
Osama.Alkhawaja@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:   (650) 470-4500
Facsimile:   (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, *et al.*,<br><br>Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* NO. 3 TO ADMIT DAMAGED HARD DRIVE PRODUCED BY UNITED MICROELECTRONIC CORPORATION, INC.; [PROPOSED] ORDER**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 14, 2022<br><br>Hearing Date: January 18, 2022<br>Time: 10:00 a.m. |

# ARGUMENT AND AUTHORITIES

## I. INTRODUCTION

The government's case against *Jinhua* is built like a house of cards. Lacking *any* evidence that Jinhua conspired with UMC or knowingly obtained any Micron confidential information, the government first tries to hold *Jinhua* responsible for the conduct of *UMC* employees, whom the government alleges were dual Jinhua employees even though they never worked at Jinhua or reported to anyone at Jinhua. In the Government's Motion *in Limine* No. 3 (ECF No. 238) ("Motion" or "Mot."), the United States attempts to build on this tenuous story, by seeking to introduce a damaged hard drive produced to the government by UMC that the government claims was taken from the so-called "public use" computer that Stephen Chen allegedly authorized UMC to issue to *UMC* employee Neil Lee. Although the government admits that it has not even attempted to determine what evidence is on this hard drive and has no tangible evidence tying it to the "missing laptop," the government now seeks an advance ruling by the Court, *before calling a single witness*, that this unidentified damaged hard drive is authentic (*i.e.*, that it was taken from the so-called missing laptop) and should be admitted "*de bene*" subject to the later hearsay testimony of an FBI agent. The government's motion should be denied.

First, the government's motion is premature. If the government seeks to introduce the damaged hard drive, it should call witnesses at trial who can authenticate it and establish its admissibility. The government has not cited any support for why the court should forego this normal procedure and declare the device admissible before trial has even begun and prior to the testimony of any authenticating witness. That is what the trial is for. There is no need to decide this before a single witness has been called.

Second, even if it were *arguendo* proper to obtain an advisory, provisional ruling on authenticity and admissibility pre-trial, the government lacks any admissible evidence supporting its account that the public laptop was hidden or damaged, let alone any evidence tying the damaged hard drive to the "missing" laptop. As demonstrated in Jinhua's Motion *in Limine* No. 6 (ECF No. 248) and its opposition to the government's Motion *in Limine* No. 1 ("Opp. MIL No. 1) and Motion

1

*in Limine* No. 2 ("Opp. MIL No. 2"), filed concurrently herewith, the government will be unable to establish the admissibility of the interrogation statements or audio recordings that are the principal basis for the government's narrative about this missing laptop or how it purportedly disappeared.

Nor has the government presented any admissible evidence tying the damaged hard drive to the "missing" laptop. Instead, the government hopes to establish this solely through the testimony of an FBI case agent from whom the government seeks to elicit hearsay evidence about the results of UMC's internal investigation. The government says that this agent will testify that "UMC agreed to undertake the investigation" and that UMC "represent[ed] that the [the damaged hard drive] was the hard drive from Public Laptop 2" (*i.e.*, the missing laptop). (Mot. at 4). This is classic hearsay evidence, however, and is clearly inadmissible. If the government wants to introduce evidence about the findings of UMC's investigation, it should call a UMC witness who has percipient knowledge of its findings and where and how it found the damaged hard drive – something the government is no doubt unwilling to do because it knows that the investigation found no evidence of any conspiracy or wrongdoing by Jinhua. The government's Motion should be denied.

## II.     RELEVANT BACKGROUND

The United States has alleged that Jinhua, along with UMC and employees of UMC, conspired to steal trade secrets from Micron and use those trade secrets to help UMC and Jinhua develop DRAM technology. As part of the alleged conspiracy, the government asserts that Stephen Chen, then a Senior Vice President at UMC, approved for two "off-network, USB-enabled laptops" to be issued to UMC employees JT Ho and Neil Lee (hereinafter referred to as the "public laptops"). The government insinuates on the thinnest of circumstantial evidence that issuing these "public" laptops was in furtherance of the alleged conspiracy because it was allegedly done in order to allow Mr. Ho and Mr. Lee to access USB drives containing purported trade secrets from Micron during their work at UMC. (Mot. at 2)  The government will not be able to prove this up at trial.

On February 7 and February 14, 2017, the Taiwan Ministry of Justice Investigation Bureau ("MJIB") raided UMC's offices in Taiwan seeking evidence related to allegations that former Micron employees brought confidential Micron documents with them when they left Micron and reviewed

2

these documents in connection with their work at UMC.  The MJIB sought to seize both of these laptops, but at the time of the seizure, one of the laptops could not be located.  The government claims in the Motion that JT Ho and Ray Guo concealed these laptops during the raid.  (Mot. at 1:9-11.)  The government contends that the damaged hard drive, which is the subject of this Motion, and apparently was not found or produced to the United States by UMC until the end of its internal investigation, belonged to one of these "public" laptops which "Project M employees" caused to "disappear."  (*Id*. at 1:11-12.)

The government does not offer any facts, witnesses or direct evidence to prove that this hard drive is what the government purports it to be, however.  Rather, the government seeks to establish the authenticity, relevance and admissibility of this unidentified hard drive prematurely through the hearsay testimony of its FBI case agent, whom the government wants to testify about the purported results of a lengthy investigation conducted by UMC's outside counsel, and inadmissible audio recordings.  (*See* ECF No. 237).  The Motion should be denied.

## III. ARGUMENT

### A. The Government is Seeking to Admit Evidence Prematurely

As an initial matter, the Motion should be denied because it is premature.  Typically, before an exhibit may be admitted, the proponent must establish its authenticity.  *See* Fed. R. Evid. 901.  In other words, absent a stipulation by the parties, the proponent must produce "evidence sufficient to support a finding that the item is what the proponent claims it is."  *Id*. at 901(a).  The burden is on the offering party to establish sufficient authentication.  *Id.*  Here, the government is using this Motion as a thinly-veiled attempt to prematurely introduce inadmissible evidence prior to trial rather than calling percipient witnesses to lay a proper foundation for its authenticity.

The government has not cited any authority supporting its request that the Court forego this standard procedure and admit the hard drive provisionally before a witness even takes the stand.  This is especially unprecedented and improper where, as here, the purported authenticity and relevance of the evidence, is in dispute.  The key purpose of the authentication requirements is to ensure that only genuine and trustworthy evidence is considered at trial.  *See e.g.*, *United States v.*

3

**JINHUA'S OPP. TO MOTION *IN LIMINE* NO. 3**  **CASE NO.: 3:18-cr-00465-MMC**
**RE: ADMIT DAMAGED HARD DRIVE PPRODUCED BY UMC**

*Panaro*, 266 F.3d 939, 951 (9th Cir. 2001) (holding for evidence to meet authenticity requirement, trial court must be satisfied that it is "accurate, authentic, and generally trustworthy"), *aff'd*, 75 F. App'x 590 (2003). "It is of the utmost importance that, so far as practicalities permit, there should not be a legitimate question about the integrity of physical evidence seized by the government and introduced into evidence against an accused." *United States v. Godoy*, 528 F.2d 281, 284 (9th Cir. 1975) (per curiam).

Here, the government has not and will not be able to satisfy its burden of authentication under Rule 901 for a at least two reasons. First, the government's motion is premature and it has not yet provided sufficient evidence "to support a finding that the item is what the proponent claims it is." *Id*. at 901(a). Second, the government cannot produce admissible evidence to establish the relevance of the hard drive. (*See infra* Section III(B)). Therefore, allowing the government to prematurely introduce this hard drive into evidence would unfairly prejudice Jinhua. Accordingly, the Court should require the government to call the appropriate percipient witnesses or present other admissible evidence to authenticate and establish the relevance and admissibility of the damaged hard drive before admitting it, even if only provisionally. As with the Taiwan drive documents (*see* Government's Motion *In Limine* To Authenticate Taiwan Drive (ECF No. 220 and related filings)), the government does not get a free pass just because the witnesses are hard to procure and the evidence was found in Taiwan.

### B. The Government Cannot Produce Admissible Evidence To Establish That The Hard Drive Is Relevant To The Case

The government seeks to establish the relevancy of the damaged hard drive (*i.e.*, to inform the jury about the public laptop that the government claims was the source of the damaged hard drive) through the statements that JT Ho, Neil Lee and Ray Guo made to the Taiwanese police as well as certain audio recordings the government seeks to admit of UMC employees Huang Wanjun (Joyce Huang) and Guo Fengming (Ray Guo). (*See* ECF No. 237) The government alleges that the recordings purportedly establish "the formation of [an] illicit agreement . . . including the damaged

4

**JINHUA'S OPP. TO MOTION *IN LIMINE* NO. 3**  **CASE NO.: 3:18-cr-00465-MMC**
**RE: ADMIT DAMAGED HARD DRIVE PPRODUCED BY UMC**

1  hard drive that is the subject of the United States' Motion *In Limine* No. 3." (*Id*. at 10).  For the
2  reasons stated below, however, these statements cannot be authenticated, and are inadmissible.

        1.    <u>Audio recordings of Huang Wanjun (Joyce Huang) and Guo Fengming (Ray Guo) cannot be properly authenticated</u>

5  As discussed in Jinhua's opposition to the Government's Motion *in Limine* No. 2, filed
6  concurrently herewith, the government's Motion fails because it has not proffered sufficient evidence
7  to establish that these audio recordings are authentic.  The government seeks to introduce these
8  recordings without calling a single witness who was present when the recordings were allegedly
9  made and can speak about the underlying circumstances in which they were made.  Nor does the
10 government intend to call any witness who knows the purported speakers and can identify whether
11 Ms. Huang or Mr. Guo are the voices on the recordings, as the government contends.  Therefore,
12 these recordings cannot be properly authenticated.

        2.    <u>Statements that JT Ho, Neil Lee, and Ray Guo made to the Taiwanese Police are inadmissible hearsay</u>

15 Furthermore, as explained in Jinhua's opposition to the Government's Motion *in Limine No.*
16 *1*, filed concurrently herewith, the statements that JT Ho, Neil Lee, and Ray Guo made in their
17 interrogations by the Taiwanese police are not admissible under Fed. R. Evid. 801(d)(2)(D) and there
18 are serious questions about the procedures and circumstances under which they were obtained.  As
19 Jinhua has argued, these individuals were not Jinhua employees at the time of the interrogations, and,
20 even if they were, the statements were not made during employment, and were not on a matter within
21 the scope of the individuals alleged *Jinhua* employment.  Therefore, since the only evidence the
22 government has to explain the relevance of this hard drive is based on inadmissible testimony, the
23 government's Motion should be denied.

24 **C.**    <u>**The Hard Drive Cannot be Authenticated Based Merely on UMC's Act of Production Because the FBI Case Agent's Testimony Is Hearsay**</u>

26 Finally, the government cannot establish that the hard drive is what the government purports
27 it to be, pursuant to Fed. R. Evid. 901(a), based merely on UMC's act of production.  While the FBI
28

5

**JINHUA'S OPP. TO MOTION *IN LIMINE* NO. 3**                    **CASE NO.: 3:18-cr-00465-MMC**
**RE: ADMIT DAMAGED HARD DRIVE PPRODUCED BY UMC**

Agent may be able to testify that UMC produced the hard drive, the act of production proves little standing by itself except that UMC found a damaged hard drive and produced it to the government. Period.  Just because the hard drive was produced by UMC to the FBI, does not mean it is the hard drive that belonged to one of the so-called "off-network laptops" allegedly used to access Micron trade secrets.

The government tries to fill this evidentiary void by seeking to elicit the testimony of an FBI case agent whom the government states "will testify that UMC agreed with the United States to conduct [an] internal investigation" and "that, upon concluding its investigation of the whereabouts of Public Laptop 2, UMC produced the damaged hard drive to the United States ***representing that it was the hard drive from Public Laptop 2.***" (*Id.*)(emphasis added).  The FBI agents' proffered testimony is classic hearsay, however, and is therefore inadmissible.  *See* Fed. R. Evid. 801(c)(2) (prohibiting out of court testimony offered to prove the truth of the matter asserted).  While the FBI agent may be able to testify that UMC produced the hard drive to the government, that does not give the FBI agent license to testify that UMC found the hard drive as a result of a privileged internal investigation and determined based on interviews and other inadmissible evidence and conclusions that it was taken from the allegedly missing public laptop.  Such testimony would incorporate level upon level of hearsay that the government cannot sidestep by simply eliciting the purported conclusion of UMC's investigation.  As such, the FBI agent is incapable of providing the "testimony of a witness with knowledge" as required by Fed. R. Evid. 901(b)(1).

If the government wants to authenticate that the hard drive is what the government purports it to be, the United States must call a UMC witness with either personal knowledge of the hard drive or of UMC's internal investigation.  This witness would have to be able to testify about how the hard drive came into UMC's possession, and other facts he or she observed as a percipient witness, including the state of the hard drive when he or she found it or received it and what UMC did with the hard drive after they received it.  The government cannot sidestep that process, by trying to elicit UMC's purported conclusion about the damaged laptop without even calling witnesses who have percipient knowledge about the hard drive or the investigation.  The government has already

6

**JINHUA'S OPP. TO MOTION *IN LIMINE* NO. 3**
**RE: ADMIT DAMAGED HARD DRIVE PPRODUCED BY UMC**  **CASE NO.: 3:18-cr-00465-MMC**

indicated that it has no percipient witnesses who can testify about the damaged hard drive, however. And the government is likely reluctant to call a witness who has any admissible, non-hearsay evidence about the investigation because upon cross-examination, that witness would likely testify that after its extensive investigation, UMC found no evidence of a conspiracy with Jinhua, thus crippling the government's case in chief. The government cannot avoid these inconvenient facts by relying on the agent's inadmissible hearsay testimony.

Without a UMC witness, the government cannot establish that the hard drive is what the government purports it to be. The damaged hard drive could literally be from any computer at UMC. Jinhua is unaware of any serial number or other evidence tying it to the missing laptop, and presenting it to the jury without further evidence would be asking the jury to engage in rank speculation. The government has not provided any support for why it is appropriate to introduce this highly prejudicial evidence without first conducting the standard authenticating procedure.

## IV. CONCLUSION

For the reasons set forth above, this Court should deny the government's motion to prematurely admit the damaged hard drive.

DATED: December 22, 2021

                            SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


                            By:    */s/ Matthew E. Sloan*
                                  Matthew E. Sloan
                                 Attorneys for Defendant
                         FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.