JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
OSAMA ALKHAWAJA (SBN 334404)
Osama.Alkhawaja@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:   (650) 470-4500
Facsimile:    (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, *et al.*,<br><br>Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S REPLY IN SUPPORT OF JINHUA'S MOTION *IN LIMINE* NO. 3 TO PARTIALLY EXCLUDE THE EXPERT TESTIMONY OF TERRENCE DALY**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 14, 2022<br><br>Hearing Date: January 18, 2022<br>Time: 10:00 a.m. |

# REPLY BRIEF

## I. PRELIMINARY STATEMENT

The United States has not meaningfully addressed Jinhua's demonstration of why Mr. Terrence Daly should be precluded from offering the improper and unfairly prejudicial opinions identified in Jinhua's Motion *In Limine* No. 3 (ECF No. 246) ("Motion"). Jinhua established that Mr. Daly's Principal Opinions Nos. 1, 4 and 5 should be excluded for three principal reasons:

- First, Mr. Daly's Opinion No. 1 ("modern logic foundries like GLOBALFOUNDRIES and UMC do not make stand-alone DRAM products") is irrelevant and will not assist the jury because it is focused on broad observations about the capabilities of *other* logic foundries like GlobalFoundries and the general structure of the semiconductor industry as a whole, rather than on UMC's individual capabilities. The case law makes clear, however, that the focus of any expert testimony must be on the defendant itself, not on others in the industry. *See United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1057 (N.D. Cal. 2012).

- Second, Mr. Daly's Principal Opinions Nos. 4 ("Project M injured Micron") and No. 5 ("Project M benefited JHICC and the People's Republic of China.") are irrelevant because the key elements that the government needs to prove beyond a reasonable doubt are whether Jinhua had the *intent and/or knowledge* to harm Micron and benefit Jinhua or PRC, but Mr. Daly does not offer any opinion – nor could he offer any proper opinion – that would assist the jury to determine whether Jinhua had the requisite subjective intent or knowledge to support the government's charges.

- Third, even if, for the sake of argument, Mr. Daly's opinions would be marginally relevant, any such probative value would be greatly outweighed by the potential unfair prejudice that would be caused to Jinhua by allowing Mr. Daly's broad ranging testimony about the potential harm that Project M would cause to Micron – a leading American DRAM company – and the potential benefits it would bestow on Jinhua, an entity largely owned by the Fujian provincial government. Whether or not Mr. Daly's opinion was intended to arouse anti-China bias, Mr. Daly's focus on the scope of the potential harm to Micron and the Chinese government's broad economic policy, creates a significant risk of appealing to the jurors' potential biases about Chinese economic policies and alleged unfair competition.

Contrary to the government's statements, this is not a "semiconductor espionage case," (Opp. at 2), so Mr. Daly's broad ranging statements about the capabilities of other players in the semi-conductor industry or his speculation about Jinhua's potential revenue will provide no meaningful assistance to the jury. The only relevant facts here are whether Mr. Daly can assist the jury to determine whether Jinhua conspired with UMC to misappropriate alleged Micron trade secrets; whether Jinhua was aware that any UMC employees had brought Micron confidential information with them when they left Micron or referenced it in any way during the early stages of Jinhua's

design process; or whether Jinhua knowingly possessed or obtained Micron's alleged trade secrets. Because Mr. Daly's Opinions Nos. 1, 4 and 5 will not assist the jury to make those determinations, Jinhua's motion should be granted.

## II. ARGUMENT

### A. Mr. Daly's Principal Opinion No. 1 (Modern Logic Foundries Are Not Capable of Producing Standalone DRAM Products) Is Not Relevant And Is Not Based on Facts or Reliable Principles And Methodologies

As Jinhua demonstrated in its moving papers, Mr. Daly's Opinion No. 1 (modern logic foundries like UMC and GlobalFoundries do not make stand-alone DRAM products) is improper and should be excluded because it is focused on the history and capabilities of other DRAM manufacturers (e.g., Samsung, Micron and SK Hynix) and other foundries (*i.e.*, GlobalFoundries) *rather than on UMC's capabilities*. (Motion at 3-4; Declaration of Matthew E. Sloan, Ex. A ("Daly Report") at 2-3 (ECF No. 246-2)). For example, Mr. Daly proposes to testify that Samsung, Hynix and other so-called DRAM integrated device manufacturers ("IDMs") manufacture their own DRAM designs and that "modern logic foundries" like GlobalFoundries generally only provide contract manufacturing services for semi-conductors designed by other companies. (Ex. A, at 2). Mr. Daly's opinions are improper and would provide little assistance to the jury, however, because he does not address UMC's unique capabilities, including its past involvement in producing DRAM chips from approximately 1995 to the late 2000s. Indeed, although Mr. Daly purports to be providing opinions about UMC and Jinhua, he appears to have spent little time actually investigating UMC and its history and background.

This Court has previously held that similar opinions "about the structure of corporations in the PRC, in general, and which are not directed to the . . . Defendants specifically" were irrelevant and sustained defendant's objection to these opinions. *Pangang Grp. Co.*, 879 F. Supp. 2d at 1057. Mr. Daly has made the same error here by focusing almost exclusively on the capabilities of GlobalFoundries and other companies, rather than analyzing UMC's capabilities. Put simply, the fact that GlobalFoundries (the company for which Mr. Daly worked from 2010-2016), considers itself to be a "modern logic foundry" and, according to Mr. Daly, would be unable to easily shift to

manufacturing and/or designing DRAM chips (Ex. A, at 2-3), does not mean that UMC could not make that transition. Accordingly, Mr. Daly's Principal Opinion No. 1 should be excluded because the government has not demonstrated that it would "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *In re Wilczak*, 830 F. App'x 545, 546 (9th Cir. 2020) (rejecting expert testimony because it "would not have been helpful or reliable.")

Mr. Daly's Opinion No. 1 is also deficient because it is not based on sufficient facts or data; nor is it "the product of reliable principles and methods." Fed. R. Evid. 702(b), (c). Rather, Mr. Daly has merely drawn broad conclusions from his experience in the industry that because other logic foundries have not elected to enter the DRAM market, UMC could not have made this transition without stealing Micron's trade secrets. Mr. Daly's opinion, however, is based on little more than speculation and analogy and is not the product of reliably applying established principles and methods to the facts of the case. *See* Fed. R. Evid. 702(d); *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) (affirming exclusion of expert testimony that was the product of unreliable methodology). Accordingly, the government should be prohibited from eliciting Mr. Daly's testimony on Opinion No. 1.

### B. Mr. Daly's Opinions That Project M Injured Micron (Opinion No. 4) And Benefited Jinhua (Opinion No. 5) Are Irrelevant Because They Do Not Help Establish Any Elements of the Offense

Jinhua demonstrated in its moving papers that Mr. Daly's Principal Opinions No. 4 (Project M Would Have Injured Micron) and No. 5 (Project M Benefitted Jinhua and the PRC) are not relevant to the jury's consideration because the government does not need to prove *actual* injury to Micron or benefit to Jinhua or the Chinese government. (Motion at 5-7). Rather, in order to establish that Jinhua is guilty of trade secret theft or economic espionage, the government must prove beyond a reasonable doubt that Jinhua "*knew*" or "*intended*" that UMC's alleged theft of Micron's purported trade secrets would injure Micron (Ninth Circuit Criminal Jury Instructions Instruction No. 8.141B (Theft of Trade Secrets)); and/or that it "*knew*" or "*intended*" that its conduct would benefit Jinhua or the Chinese Government. (*Id.* Instructions No. 8.141A (Economic Espionage)). The government concedes that it does not need to prove actual injury or benefit to Jinhua (Opp. at 8, 10), but it

3

contends that Mr. Daly's opinion is still relevant as circumstantial evidence about Jinhua's state of mind.[1]

The government, however, has not explained how Mr. Daly's testimony on the injury that Project M would cause to Micron or the benefit it would have to Jinhua could provide any evidence, whether direct or circumstantial, about Jinhua subjective intent or knowledge. Evidence of such subjective intent is generally presented through documents or percipient testimony. Despite UMC's production of over 3 million documents and its cooperation agreement with the government, however, the United States has yet to identify a single document or identify a single witness who can testify that Jinhua knowingly or intentionally misappropriated or obtained Micron's confidential information or intended to injure Micron.

In fact, Mr. Daly's proposed testimony would provide little assistance to the jury in determining the facts in issue. If the government simply wanted to prove that Project M would harm Micron, the government could simply call one of the nine Micron employees on its witness list to testify that Project M would likely reduce Micron's market share if it succeeded; the jury does not need full blown expert testimony to provide that evidence. Similarly, the jury does not need an expert to testify that Project M would have benefited Jinhua if it succeeded. This testimony thus seems designed to prejudice the jury rather than simply establish the necessary elements of the alleged offenses. Accordingly, as discussed in more detail below, the Court should exclude this testimony.

---

[1] The government quotes sections of a case cited by Jinhua, *Turf Center, Inc. v. United States*, 325 F.2d 793, 797 n.5 (9th Cir. 1963), for the proposition that intent may be proved by circumstantial evidence. (Opp. at 8-9). Jinhua does not dispute this argument, but "circumstantial evidence" is not a blank check to introduce any and all prejudicial evidence against Jinhua. The evidence must still tend to prove or disprove an element of the charges against Jinhua. The government has yet to introduce any evidence regarding Jinhua's intent, however. Nor has it provided a sufficient explanation for why Mr. Daly's opinions constitute circumstantial evidence of Jinhua's purported knowledge or intent.

4

**C.  Mr. Daly's Proffered Testimony Regarding the Potential Injury That Project M Would Cause to Micron And the Benefits It Would Have for Jinhua And The People's Republic Of China Would Be Unduly Prejudicial And Any Marginal Relevance of Such Testimony Would Be Substantially Outweighed by The Danger of Unfair Prejudice**

As explained in Jinhua's moving papers, moreover, even if, for the sake of argument, Mr. Daly's opinions were marginally relevant, the probative value of his proposed testimony would be greatly outweighed by the potential prejudice and confusion to the jury that would be caused by its admission. *See* Fed R. Evid. 403. The government agrees that "racial or ethnic bias have no place in the courtroom" (Opp. at 10), but contends that Mr. Daly's testimony will not include any statements or opinions expressing any overt ethnic bias, such as any statements that "Chinese people – as a race or ethnic group – steal." (*Id.* at 11.) The absence of such blatantly prejudicial statements is not dispositive, however. Whether the government intended to overtly appeal to juror's prejudices or not, there can be little doubt that Mr. Daly's detailed opinions about how Project M would injure Micron – one of America's leading semiconductor companies – and benefit the Chinese government has a substantial potential to arouse juror's latent prejudices about alleged unfair Chinese competition and appeal to their pro-American biases. This is especially true in the current political atmosphere. Given that the government can prove injury and benefit through numerous other means, the unfairly prejudicial effect of Mr. Daly's proposed Opinions No. 4 and 5 substantially outweighs any even arguable probative value of such testimony.

The government's appeal to the Economic Espionage Act does not mitigate or justify the admission of such prejudicial opinions. As discussed above, in order to satisfy the Trade Secrets Act or the Economic Espionage Act, the government only needs to demonstrate that Jinhua intended to injure Micron and intended or knew that Jinhua would benefit from Project M. *See e.g.*, 18 USC §§ 1831, 1832; Ninth Circuit Criminal Jury Instructions Nos. 8.141A, 8.141B. Contrary to the government's position, these statutes nowhere require the government to present evidence about the Chinese government's "five-year plans and other policies that explain why the PRC government contemplated providing $10 billion to Jinhua." (Opp. at 11). Rather the government's attempt to introduce that evidence is a transparent attempt to turn this simple case about a few UMC employees

1  who improperly brought Micron documents with them when they transferred from Micron's
2  Taiwanese subsidiary to UMC into an international "semiconductor espionage case." (Opp. at 2).
3  While that may make for a racier case to sell to the jury, Mr. Daly's proposed testimony on these
4  matters will not assist the jury to make a factual determination and threatens to appeal to the jurors'
5  latent biases which may cause them to decide the case on emotions rather than applying the facts to
6  the law. Mr. Daly's testimony should thus be excluded because its probative value, if any, is
7  substantially overweighed by the risk of unfair prejudice, pursuant to Rule 403.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Jinhua's Motion and issue an Order precluding Mr. Daly from offering any testimony at trial in support of his Principal Opinions Nos. 1, 4 and 5 from his July 2, 2021, expert disclosure.

DATED: January 4, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _/s/ Matthew E. Sloan_
Matthew E. Sloan
Attorneys for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.