JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
JAEWOOK (JERRY) LEE (SBN 333054)
Jerry.Lee@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:     (650) 470-4500
Facsimile:      (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:      (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED MICROELECTRONICS CORPORATION, *et al.*,<br><br>　　　　　　　　　Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 6 TO EXCLUDE HEARSAY STATEMENTS OF PURPORTED CO-CONSPIRATORS AND PURPORTED EMPLOYEES**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 14, 2022 |

## I. INTRODUCTION

Yet again, when challenged to provide sufficient evidence to show that Jinhua engaged in a conspiracy, the government has failed to produce a *single* witness statement or document demonstrating the existence of *any* agreement between UMC and Jinhua to steal or misappropriate Micron information, or even any evidence demonstrating Jinhua's knowledge that any UMC employees possessed or purportedly used Micron confidential information. Nor has the government presented any evidence contradicting UMC's public statements that its senior management had no knowledge of the actions of the two former Micron employees and did not transfer any Micron trade secrets to Jinhua, thus denying the existence of any alleged conspiracy with Jinhua.

Rather, the government's opposition makes clear that its theory of this case is to argue that *Jinhua* should be held criminally liable for the activities of *UMC* employees. In support of this contention, the United States provides an "overarching discussion of relevant facts and law," but does not cite to any admissible evidence, despite already tendering its exhibit list, and does not proffer any declarations of proposed testimony on these issues, despite UMC's agreement to fully cooperate with the United States. (*See* ECF No. 148 ¶¶ 9, 9(c) ("UMC agrees to cooperate with the U.S. Attorney's Office and U.S. Department of Justice before and after sentencing" including by "[p]roviding all documents and other information and material, tangible and intangible, requested by the government in its possession, custody, control, or otherwise available to UMC.").)

Jinhua filed this motion to facilitate a streamlined trial that does not have to unnecessarily pause for lengthy discussions and proffers outside the presence of the jury about who is an employee and whether there was a conspiracy. Rather than engage in good faith with this procedure, the government punted, speaking in hypotheticals about what the evidence may show without providing a shred of admissible evidence. The Court should grant the motion because the government has not—and cannot—proffer sufficient proof to satisfy its burden to show that the hearsay exclusions of Federal Rule of Evidence 801(d)(2)(D) or (E) apply to the evidence at issue.

## II. ARGUMENT

Jinhua's Motion seeks to preclude the government from seeking to introduce various hearsay statements that the government has incorrectly identified as purported "co-conspirator" or

1

RE: CO-CONSPIRATOR AND EMPLOYEE STATEMENTS

CASE NO.: 3:18-cr-00465-MMC

"employee/agent" statements, which the government asserts are admissible under Rule 801(d)(2)(D) or (E).  To be clear, Jinhua has not moved to exclude *all* statements in the government's November 1, 2021, Crim. L.R. 16-1(c)(4) Notice (the "Local Rule 16-1(c) Notice").  (*See* Sloan Decl. Ex. A.) Rather, its Motion focuses on four categories of documents: (1) LINE messenger chats between Kenny Wang and JT Ho; (2) statements made during interrogations conducted by the Taiwan Ministry of Justice Investigation Bureau ("MJIB"); (3) statements made during depositions taken by counsel for Micron in the related civil matter *Micron v. UMC et al.*, Case No. 3:17-cv-06932-MMC (N.D. Cal.); and (4) audio recordings of internal UMC interviews purportedly conducted and made by David Huang, UMC's former in-house counsel.[1]

The government makes three main arguments in its opposition.  First, the government contends that Jinhua is responsible for the actions of certain UMC employees because Jinhua, at UMC's request, agreed to supplement the salary of some UMC engineers as a retention measure.  Second, the government contends that Jinhua is liable for the actions of Stephen Chen while he was an UMC employee because he was somehow a shadow Jinhua agent.  Third, and most astoundingly, the government contends that *all* UMC employees working on the DRAM development project with Jinhua (called "Project M" for "memory") were Jinhua agents, and thus, *any* statement by *any UMC employee* relating to the project is admissible, in a criminal trial, against *Jinhua*.

Jinhua has already demonstrated that (1) stipend payments to UMC employees did not create an employer-employee relationship between these UMC employees and Jinhua (*see* ECF No. 248 at 13-14); (2) Stephen Chen was not acting as Jinhua's agent while he was an UMC employee, (*see* ECF No. 274 at 8-9, 16-17); and (3) the government's contention that *all* UMC employees working on the DRAM development project with Jinhua were Jinhua agents, and thus, any statement by any

---

[1] The government states that its opposition is focused on three categories of information: (1) LINE chat messages between Kenny Wang and JT Ho; (2) emails relating to Project M from UMC or Jinhua; and (3) Board of Director documents from Jinhua and UMC, and statements of "the state-owned shareholders of Jinhua." (Opp. at 1-2.) This is misleading because Jinhua does not specifically seek to exclude all emails relating to Project M from UMC or Jinhua, all Board of Director documents from Jinhua and UMC, or all statements of "the state-owned shareholders of Jinhua."  Some of these statements may be admissible as, for instance, statements of Jinhua employees.  The government's attempt to make Jinhua's Motion overbroad is a strawman argument and should not be entertained by the Court.

UMC employee relating to the project is admissible, is overbroad and utterly unsupported by the law. (*See id*. at 18)  Because Jinhua has already briefed these arguments, Jinhua will not repeat them here. Rather, Jinhua will address the government's failure to address several arguments Jinhua raised in its Motion which underscore why the Court should grant Jinhua's Motion now.

### A. The Statements Are Not Admissible Statements of Co-Conspirators Under Fed. R. Evid. 801(d)(2)(E).

In order for statements of purported co-conspirators to be admissible under Rule 801(d)(2)(E), the government must demonstrate that "(a) the declaration was in furtherance of the conspiracy; (b) it was made during the pendency of the conspiracy; and (c) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *United States v. Snow*, 521 F.2d 730, 733 (9th Cir. 1975) (citing *Carbo v. United States*, 314 F.2d 718, 735 n.21 (9th Cir. 1963)).  The government advocates for the Court expanding the scope of Rule 801(d)(2)(E) in an unprecedented way, applying it to make statements of "joint venturers" admissible in a way that is untethered to concepts of agency law.  The Court should reject the government's request.

#### 1. The Statements Are Not in Furtherance of the Conspiracy.

The government asserts that it can meet its burden under Rule 801(d)(2)(E) if it can show that Jinhua was in a "joint venture" or "common enterprise" with UMC.  Specifically, the government contends that statements in furtherance of a "common enterprise" that is "'factually intertwined' with the charged conspiracy" are statements made "in furtherance of" the conspiracy. (Opp. at 7.)  The government argues that because Jinhua and UMC agreed to cooperate to develop DRAM—a completely legitimate business arrangement—any statements they made about the project were "in furtherance of" the conspiracy.  Such an argument stretches the law beyond what any court has previously held, and does not apply to the facts of this case.

The government cites to *United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988) in support of this "lawful joint venture" theory of Rule 801(d)(2)(E).  As the government notes, this theory rests on concepts of agency.  "A 'joint venture' is by definition a 'business undertaking by two or more persons engaged in a single defined project.'" *Conn. Bank of Com. v. Republic of Congo*, 309 F.3d

3

**1** 240, 263 (5th Cir. 2002) (quoting Black's Law Dictionary 843 (7th ed. 1999)).  As the Fifth Circuit

**2** has observed:

> **3** Courts and commentators have identified several characteristics of joint ventures.  The parties' intentions are important.  Joint ventures involve joint control or joint right of control, and joint proprietary interests in the subject of the venture.  Both venturers share in the profits, and both have a duty to share the losses.  But of course these elements cannot be applied mechanically.  No one aspect of the relationship is decisive.

**7** *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978) (citations omitted).

**8** The cases applying a lawful joint venture approach under Rule 801(d)(2)(E) are consistent **9** with these principles.  For example in *Layton*, which the government relies on, the declarant was **10** James Jones, the leader of Jonestown, and the defendant was a member of Jones' religious sect.  The **11** district court admitted Jones' out-of-court statements against Layton on the theory that Layton and **12** Jones were engaged in a joint venture to prevent Congressman Leo Ryan—who was murdered on a **13** factfinding mission to Jonestown—from discovering the truth about the conditions there.  *See id.* at **14** 1397-98.  The court of appeals affirmed.  It found that two speeches by Jones warning Ryan to stay **15** away, coupled with a petition to the same effect that both Jones and Layton signed, constituted **16** sufficient evidence that "Jones and Layton were participants in a common enterprise, to prevent Ryan **17** from discovering and revealing the truth about the living conditions at Jonestown."  *Id.* at 1401.

**18** The *Layton* case is closely linked to the principles that govern joint ventures and agency law **19** generally.  The government, as proponent of the evidence, established that defendants and declarants **20** worked together toward a joint, clearly defined, agreed-upon goal.  The joint venture had a finite **21** duration (*e.g.*, dissuading Congressman Ryan from coming to Jonestown and discovering the truth).  **22** Under the specific circumstances of that case, it was not unreasonable to treat the declarants as agents **23** of the defendants and to find that that the declarants' out-of-court statements constituted admissions **24** of the defendants.

**25** Here, by contrast, there is insufficient evidence to establish that UMC and Jinhua were **26** engaged in a joint venture.  The government has shown, at most, that UMC agreed to develop DRAM **27** and then provide this technology to Jinhua for a substantial price.  It was not UMC's joint venture **28** partner.  If a cooperation agreement such as this sufficed to create a joint venture or conspiracy under

4

Rule 801(d)(2)(E), then almost any business relationship could be found to constitute a joint venture such that a statement by one member in furtherance of the group's common goals would become an admission by all of the others. To Jinhua's knowledge, no court has ever interpreted the "lawful joint venture" theory under Rule 801(d)(2)(E) as expansively as the government seeks to do here. Even as courts have permitted the "lawful joint venture" expansion, they have remained faithful to the settled principles that govern joint ventures and other agency relationships. The government now asks this Court to remove even these limits from the rule.

The government's "lawful joint venture" theory is particularly troubling when applied to this case. As noted in Jinhua's Motion, UMC did not plead guilty to any conspiracy charges, and the factual statement in the plea agreement did not include any facts that would support such a charge. UMC's public statements, made contemporaneously with its plea agreement, indicate that not only was there no agreement between UMC and Jinhua to steal Micron information, but Jinhua did not even know what these UMC employees were doing until *after* the Taiwanese government raided UMC in February 2017. Specifically, UMC publicly stated that (1) "UMC top management was not aware" of individual defendants Kenny Wang and J.T. Ho's possession and use of Micron information at UMC until after the Taiwanese raids in February 2017; (2) upon learning about Mr. Wang's conduct, "UMC undertook significant efforts to remove any unauthorized information from the process technology that it was developing under the Cooperation Agreement"; and (3) UMC did not provide any "Micron trade secrets or any unauthorized third-party information to Jinhua." Press Release, UMC, *UMC and US Department of Justice Reach Plea Agreement on Trade Secret Case* (Oct. 29, 2020), https://www.umc.com/en/News/press_release/Content/corporate/20201029a; (*see also* ECF No. 144 (UMC Sentencing Memorandum) (containing no facts supporting a conclusion that there was an agreement between UMC and Jinhua to steal Micron information, and failing to reference any "conspiracy")).

Moreover, as argued at length in the Motion, the government is seeking to hold Jinhua *criminally* liable for statements made by *UMC* employees when interrogated by the Taiwanese government—statements that cannot be in "furtherance of" any conspiracy. (Mot. at 4-9). The government's theory amounts to an unprecedented expansion of the co-conspirator's exclusion to

5

the hearsay rules. The Court should grant Jinhua's Motion and stop the government from making such an unwarranted end run around the Federal Rules.[2]

### 2. The Government Fails to Proffer Independent (or Any) Proof of the Conspiracy.

The parties agree that the government must establish, by a preponderance of the evidence, that Jinhua was in a conspiracy before it can introduce statements of alleged co-conspirators at trial. (Mot. at 5; Opp. at 6.) The government indicates it has no intent to introduce co-conspirator statements unless and until such a showing is made.

The government fails to acknowledge, however, that it must tender "some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement." *United States v. Mikhel*, 889 F.3d 1003, 1049 (9th Cir. 2018) (quoting *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988)); *see also* Fed. R. Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it under (E).") The government does not indicate how it intends to satisfy this burden using statements *other* than the proffered co-conspirator statements themselves. The government will be unable to meet its burden.

### 3. Admission of Statements Made to the MJIB and/or UMC's In-House Counsel Would Violate the Confrontation Clause.

The government also fails to address Jinhua's argument that the statements that alleged co-conspirators made to the Taiwanese MJIB and/or to UMC's in-house counsel during the course of

---

[2] The government also argues for a blanket catch-all order that statements of any UMC employee working on Project M should be admissible against Jinhua under Rule 801(d)(2)(D). (Opp. at 9:5-7.) Such an extension of Rule 801(d)(2)(D) would render the rule meaningless. The government has presented no evidence that either Jinhua or the purported "agents" of Jinhua manifested an intent to form an agency relationship. And that, in and of itself, warrants the Court granting Jinhua's Motion to the extent it applies to statements of UMC employees who were never so-called "dual" employees of Jinhua. An agent is not only one who is subject to the control of a principal; to form an agency relationship, "both the principal *and* the agent must manifest assent to the principal's right to control the agent." *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010)(emphasis added). Here, the government has presented no evidence that any of these unnamed UMC employees manifested an intent to work under Jinhua's control. Thus, this Court should, at a minimum, issue an order ruling that run-of-the-mill UMC employees are not agents of Jinhua simply by virtue of working on Project M, and that the government is foreclosed from arguing such at trial.

his internal investigation would violate the Confrontation Clause because these statements were testimonial in nature. It is undisputed that Jinhua did not have an opportunity to cross examine these witnesses. For "testimonial" statements like these, the Supreme Court is clear—"the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford v. Washington*, 541 U.S. 36, at 68-69 (2004). Even if they were statements of alleged co-conspirators, their testimonial nature means admitting them without giving Jinhua an opportunity to cross-examine them would violate the Confrontation Clause. For this reason alone, the Court should grant Jinhua's motion immediately, without holding it in abeyance, at least as it relates to:

- "Admissions made by directors, employees, contractors, or agents of UMC or Jinhua during interviews conducted by the Taiwan Ministry of Justice Investigation Bureau ('MJIB') or prosecutors in Taiwan," including statements by over a dozen UMC employees;
- "Admissions" by Stephen Chen, Jennifer Fung, and Jennifer Wang made during depositions taken by counsel for Micron in the civil matter *Micron v. UMC, et al.*, Case No. 3:17-cv-06932-MMC; and
- Two audio recordings of internal UMC interviews which were provided by David Huang, UMC's former in-house counsel.

(*See* Sloan Decl. Ex. A (Local Rule 16-1(c) Notice) at 2, 5.)

### B. The Purported Statements are Not Admissible Under Fed. R. Evid. 801(d)(2)(D).

Jinhua has already demonstrated in its Motion and in its Opposition to the government's Motion *in Limine* No. 1 (ECF No. 274) why statements by UMC employees (including Ray Guo, Neil Lee, JT Ho, Joyce Huang, Jennifer Wang, and Stephen Chen), made during UMC's internal investigation, during interviews conducted by the Taiwan authorities and during depositions in the related civil case, are not admissible against Jinhua as statements of employees or agents. (*See generally* Jinhua's Motion (ECF No. 248); Jinhua's Opposition to the Government's MIL No. 1 (ECF No. 274); and Jinhua's Opposition to the Government's MIL No. 2 (ECF No. 275.)) Jinhua will not repeat these arguments here. Rather, Jinhua will address two argument advanced in Jinhua's Motion that the government has failed to rebut in its opposition.

7

**JINHUA'S REPLY ISO MOT. *IN LIMINE* NO. 6
RE: CO-CONSPIRATOR AND EMPLOYEE STATEMENTS**                                    **CASE NO.: 3:18-cr-00465-MMC**

First, the government does not address Jinhua's argument that most of the statements that the government seeks to introduce concern the declarants' *UMC* or *Micron* employment, not their *Jinhua* employment, and thus, are not admissible against Jinhua under Rule 801(d)(2)(D).[3] Because the government cannot satisfy its burden to show that the so-called "dual" UMC employees who made the statements identified in the government's Local Rule 16-1(c) Notice were ever agents or employees of Jinhua (in the case of Mr. Ho, for example) or that other UMC employees who later became Jinhua employees were speaking during and within the scope of their employment at Jinhua when they made the relevant statements, the hearsay exclusion in Rule 801(d)(2)(D) does not apply, and these statements constitute inadmissible hearsay.

Second, the government does not address Jinhua's argument about the timing of some of the statements. For example, the 2015 LINE chats between Mr. Ho and Kenny Wang are inadmissible because there is no argument that Mr. Ho or Mr. Wang were Jinhua employees that early in time. (Mot. at 13, 16.) The government concedes that Mr. Ho was not an employee before mid-2016. (Opp. at 3:5-6.) But it offers no explanation how these statements would be admissible under Rule 801(d)(2)(D) before Mr. Ho was a purported Jinhua employee. And they are not admissible as co-conspirator statements for the reasons set forth in the Motion and above. For these two reasons alone, the Court should grant Jinhua's Motion.

Finally, the government's claim that Jeff Yu, Jinhua's Human Resources Division Manager, "all but admitted [that] J.T. Ho was a Jinhua employee" (Opp. at 6:3-4) when he was interrogated by the MJIB is just plain wrong. The government claims that Mr. Yu described a purported distinction between UMC employees who signed "labor contracts" with Jinhua and those who signed "consultant agreements" and concludes that, because Mr. Ho signed a "labor contract," Mr. Yu

---

[3] Courts have uniformly held that a party who fails to raise an argument in an opposition to a motion waives that argument. *Sathianathan v. Smith Barney, Inc.*, C 04-02130 SBA, 2009 WL 537158, at *9 (N.D. Cal. Mar. 3, 2009) (party waived argument by not raising it in its opposition to motion to confirm arbitration award), *aff'd*, 362 F. App'x 853 (9th Cir. 2010); *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1015 (N.D. Ill. 2005) (finding that a plaintiff waives an argument he fails to raise in opposition to a motion for sanctions), *aff'd*, 200 F. App'x 592 (7th Cir. 2006); *Wolotka v. Sch. Town of Munster*, 399 F. Supp. 2d 885, 901 (N.D. Ind. 2005) (waiver "applies both when a party fails to raise or to support adequately an argument in briefing any motion filed at the trial or appellate level.").

admitted Mr. Ho was an employee of Jinhua.  (*Id.* at 6:4-6.)  Mr. Yu was making a distinction between individuals who took part in the R&D Talent Retention Fund and full-time employees of Jinhua, however.  Mr. Yu thought at the time that Mr. Ho had signed a consultant contract.   Jinhua anticipates that Mr. Yu will testify at trial that the fact that the contract Mr. Ho signed was called a "labor contract" does not make him a Jinhua employee.  This testimony will be supported by the testimony of Jinhua's labor law expert, Prof. Jiang Ying, as described in more detail in Jinhua's Opposition to the Government's Motion *in Limine* No. 2 (ECF No. 275).  Without proof that these individuals were Jinhua employees, Rule 801(d)(2)(D) does not apply, and the statements cannot be admissible against Jinhua.

## III.    CONCLUSION

The government must proffer sufficient evidence to prove the existence of a conspiracy or an employment/agent relationship *before* the Court allows any alleged co-conspirator or employee/agent statements to be presented to the jury.  Here, the government has failed to proffer *any* admissible evidence of a conspiracy or employment/agency relationship, and will not be able to do so at trial.  Moreover, due to the unrebutted constitutional issues with admitting some of the evidence, the Court should grant this Motion excluding the so-called "co-conspirator" and "employee" statements, and does not need to wait, as the government suggests, until any proffer at trial.  Such proffers would be futile.

Dated: January 4, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By:      */s/ Jack P. DiCanio*
JACK P. DICANIO
Attorneys for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.