**UNREDACTED VERSION OF
JINHUA'S MIL NO. 6 [ECF NO. 248]**

JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
JAEWOOK (JERRY) LEE (SBN 333054)
Jerry.Lee@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:     (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 3:18-cr-00465-MMC |
| Plaintiff, | **DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 6 TO EXCLUDE HEARSAY STATEMENTS OF PURPORTED CO-CONSPIRATORS AND PURPORTED EMPLOYEES; DECLARATION OF MATTHEW E. SLOAN AND ATTACHED EXHIBITS; [PROPOSED] ORDER** |
| v. | |
| UNITED MICROELECTRONICS CORPORATION, *et al.*, | |
| Defendants. | |
| | Judge: The Honorable Maxine M. Chesney |
| | Trial Date: February 14, 2022 |

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on January 18, 2022, at 10:00 a.m., or as soon thereafter as the parties may be heard, before the Honorable Maxine M. Chesney, Judge, United States District Court for the Northern District of California, in the San Francisco Division Courthouse, Courtroom 7, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Fujian Jinhua Integrated Circuit, Co., Ltd. ("Jinhua") will bring for hearing, pursuant to Rule 801 of the Federal Rules of Evidence, this Motion *In Limine* No. 6 to Exclude Hearsay Statements of Purported Co-Conspirators and Purported Jinhua Employees ("Motion").  This Motion is based on this Notice of Motion and Motion, the arguments and authorities cited below, any evidence or argument presented to the Court at the hearing, the Declaration of Matthew E. Sloan ("Sloan Decl.") and attached exhibits, and such other papers, evidence, and arguments as may be submitted to the Court.

1

## **TABLE OF CONTENTS**

2   NOTICE OF MOTION AND MOTION ......................................................................... i

3   TABLE OF CONTENTS.......................................................................................... ii

4   TABLE OF AUTHORITIES .................................................................................... iii

5   ISSUE TO BE DECIDED .........................................................................................1

6   ARGUMENT AND AUTHORITIES ........................................................................1

7       I.      INTRODUCTION ..........................................................................1

8       II.     BACKGROUND ............................................................................2

9       III.    ARGUMENT .................................................................................4

10          A.    The Statements Are Not Admissible Statements of Co-Conspirators

11                 Under Fed. R. Evid. 801(d)(2)(E). .................................................4

12                1.    The Government Does Not Have Independent Evidence of a
                               Conspiracy Involving Jinhua. ..........................................................5

13                2.    The Government Cannot Show That Certain Statements Were
                               Made During the Conspiracy and in Furtherance of the

14                             Conspiracy. ......................................................................................7

15                3.    The Testimonial Statements Made to the Taiwanese MJIB
                               and in Internal Interviews Conducted by UMC's Former

16                             General Counsel Should Also Be Excluded Pursuant to the

17                             Confrontation Clause. ...................................................................10

18                4.    The Court Should Not Conditionally Admit the Hearsay
                               Evidence........................................................................................12

19          B.    The Purported Statements are Not Admissible Under Fed. R. Evid.

20                 801(d)(2)(D)....................................................................................13

21                1.    Mr. Ho and the Other UMC Recruits Who Received
                               Supplemental Income from Jinhua Were Never Jinhua

22                             Employees....................................................................................13

23                 2.    The Statements Were Not Made During the Individual's
                               Alleged Employment with Jinhua...................................................16

24                 3.    The Statements Were Not on a Matter Within the Scope of
                                 the Alleged Employment. ..............................................................16

25      IV.    CONCLUSION...............................................................................17

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Carbo v. United States*,
    314 F.2d 718 (9th Cir. 1963) ................................................................5

*Crawford v. Washington*,
    541 U.S. 36 (2004)...................................................................11, 12

*Davis v. Washington*,
    547 U.S. 813 (2006)..........................................................................11

*Fiswick v. United States*,
    329 U.S. 211 (1946)............................................................................9

*Melendez-Diaz v. Massachusetts*,
    557 U.S. 305 (2009)..........................................................................11

*Michigan v. Bryant*,
    562 U.S. 344 (2011)..........................................................................11

*NLRB v. Friendly Cab Co.*,
    512 F.3d 1090 (9th Cir. 2008) ...........................................................15

*Ohio v. Clark*,
    576 U.S. 237 (2015)..........................................................................11

*United States v. Allen*,
    425 F.3d 1231 (9th Cir. 2005) ...........................................................11

*United States v. Alonzo*,
    991 F.2d 1422 (8th Cir. 1993) .............................................................9

*United States v. Arias-Villanueva*,
    998 F.2d 1491 (9th Cir. 1993) .............................................................8

*United States v. Bonds*,
    608 F.3d 495 (9th Cir. 2010) ......................................................14, 15

*United States v. Bowman*,
    215 F.3d 951 (9th Cir. 2000) ...............................................................5

*United States v. Bridgeforth*,
    441 F.3d 864 (9th Cir. 2006) .............................................................11

*United States v. Chen*,
    Case No. 17-cr-00603-BLF-1, 2021 WL 2936731 (N.D. Cal. July 13, 2021) ...............5, 8

*United States v. Gordon*,
    844 F.2d 1397 (9th Cir. 1988) .............................................................5

*United States v. Kim*,
    857 F. App'x 375 (9th Cir. 2021) ........................................................8

*United States v. Loya*,
807 F.2d 1483 (9th Cir. 1987) ...................................................................12

*United States v. Mikhel*,
889 F.3d 1003 (9th Cir. 2018) ....................................................................5

*United States v. Nazemian*,
948 F.2d 522 (9th Cir. 1991) .......................................................................8

*United States v. Orr*,
825 F.2d 1537 (11th Cir. 1987) ..................................................................9

*United States v. Perez*,
658 F.2d 654 (9th Cir. 1981) .....................................................................13

*United States v. Santos*,
20 F.3d 280 (7th Cir. 1994) .......................................................................10

*United States v. Shaw*,
Case No. CR 14-00338(4)-SJO, 2018 WL 9649494 (C.D. Cal. Feb. 5, 2018)...................7

*United States v. Snow*,
521 F.2d 730 (9th Cir. 1975) ......................................................................5

*United States v. Williams*,
272 F.3d 845 (7th Cir. 2001), *amended on clarification* (Feb. 11, 2002)...........................9

**Rules**

Fed. R. Evid. 801(d)(2) ...................................................................................5

Fed. R. Evid. 801(d)(2)(D) ...........................................................................16

Fed. R. Evid. 801(d)(2)(E) .............................................................................5

Fed. R. Evid. 804(b)(1)(B)...........................................................................9, 10

iv

**ISSUE TO BE DECIDED**

Defendant Jinhua seeks an Order from the Court precluding the government from introducing hearsay statements of purported co-conspirators or purported Jinhua employees as identified in the government's November 1, 2021 Crim. L.R. 16-1(c) Notice.

**ARGUMENT AND AUTHORITIES**

**I.     INTRODUCTION**

The government's case against Jinhua is built on the thinnest of circumstantial evidence. The government will ask the trier of fact to infer that Jinhua conspired with United Microelectronics Corporation ("UMC") to steal and use alleged trade secrets purportedly stolen from Micron Technology, Inc. ("Micron") based on little more than evidence that (1) Jinhua entered into a technology cooperation agreement with UMC, a well-established and capable Taiwanese semi-conductor foundry, to develop new DRAM technology; (2) two *UMC* employees brought alleged trade secrets with them when they left Micron and allegedly referenced some of those documents in their work *at UMC*; and (3) Jinhua supplemented the income of certain UMC employees (hired from Micron and other several DRAM companies in Taiwan, Korea and Japan) to help attract and retain engineers. The government, however, has not produced a *single* witness statement or document demonstrating the existence of *any* agreement between UMC and Jinhua to steal or misappropriate Micron information, or even any evidence demonstrating Jinhua's knowledge that any UMC employees possessed or purportedly used Micron confidential information. No such evidence exists. Indeed, UMC, which pled guilty to a narrow charge of knowingly possessing a single alleged Micron trade secret, and is actively cooperating with the government, publicly stated in its official press release and its sentencing papers that UMC's senior management had no knowledge of the actions of the two former Micron employees and did not transfer any Micron trade secrets to Jinhua, thus denying the existence of any alleged conspiracy with Jinhua.

Because there are no documents, emails, or witness statements reflecting an agreement between UMC and Jinhua to steal or improperly obtain Micron confidential information, the government intends to improperly rely on an assortment of hearsay statements at trial in an attempt to prove the existence of a conspiracy. (*See* Sloan Decl. Ex. A (the November 1, 2021, Crim. L.R.

1

1  16-1(c)(4) Notice (the "Local Rule 16-1(c) Notice") providing notice of purported co-conspirator
2  statements the government intends to introduce at trial)).

3  Jinhua brings this Motion to exclude certain statements[1] that the government set forth in its
4  Local Rule 16-1(c) Notice because the statements are inadmissible hearsay and, contrary to the
5  government's position, are not (1) statements of a "co-conspirator" under the "co-conspirator"
6  hearsay exclusion, Fed. R. Evid. 801(d)(2)(E), or (2) statements by employees of Jinhua under the
7  "employee-agent" hearsay exclusion, Fed. R. Evid. 801(d)(2)(D), as alleged in the government's
8  Local Rule 16-1(c) Notice.[2]  For the reasons set forth below, the government will not be able to
9  satisfy its burden to show that either of these exclusions apply.  Accordingly, Jinhua's Motion should
10  be granted.

11  ## II.    BACKGROUND

12  The United States has alleged that Jinhua, along with UMC and employees of UMC,
13  conspired to steal trade secrets from Micron and use those trade secrets to help UMC and Jinhua
14  develop DRAM technology.  Both Jinhua and UMC were charged with two conspiracy counts—
15  Conspiracy to Commit Economic Espionage (Count 1) and Conspiracy to Commit Theft of Trade
16  Secrets (Count 2).  (ECF No. 1 (Indictment) ¶¶ 16-49 (Count 1); *id.* ¶¶ 50-53 (Count 2).)

17  In October 2020, UMC entered a guilty plea to a single count of knowingly receiving and
18  possessing a stolen trade secret, in violation of 18 U.S.C. § 1832(a)(3), based on, *inter alia*, the
19  conduct of two former Micron employees, individual defendants Kenny Wang and J.T. Ho.  (ECF
20  No. 148 ¶¶ 1, 2.)  Notably, UMC did not plead guilty to any conspiracy charges, and the factual
21  statement in the plea agreement did not include any facts that would support such a charge, despite

22

23  [1]    The government has not yet submitted its exhibit list.  After it files its exhibit list,
24  Jinhua could amend this Motion to clarify the relief sought in this Motion with reference to specific
     exhibit numbers.

25  [2]    This pre-trial motion *in limine* only focuses on the admissibility of the statements
26  under Rule 801(d)(2)(E) (statement of a co-conspirator) and 801(d)(2)(D) (statement of an employee
     or agent) of the Federal Rules of Evidence because the issues raised under these sections of Rule 801
27  can, and should, be determined pre-trial.  Jinhua reserves its right to object and/or move to exclude
     any of the documents and evidence identified in the government's Local Rule 16-1(c) Notice
28  pursuant to Rules 801(d)(2)(A)-(C) and 803(6) of the Federal Rules of Evidence or any other
     grounds.

1   UMC's agreement to fully cooperate with the United States.  *See* ECF No. 148 ¶¶ 9, 9(c) ("UMC

2   agrees to cooperate with the U.S. Attorney's Office and U.S. Department of Justice before and after

3   sentencing" including by "[p]roviding all documents and other information and material, tangible

4   and intangible, requested by the government in its possession, custody, control, or otherwise

5   available to UMC.")  In fact, UMC's public statements, made contemporaneously with its plea

6   agreement, indicate that not only was there no agreement between UMC and Jinhua to steal Micron

7   information, but Jinhua did not even know what these UMC employees were doing until *after* the

8   Taiwanese government raided UMC in February 2017.  Specifically, UMC publicly stated that (1)

9   "UMC top management was not aware" of individual defendants Kenny Wang and J.T. Ho's

10  possession and use of Micron information at UMC until after the Taiwanese raids in February 2017;

11  (2) upon learning about Mr. Wang's conduct, "UMC undertook significant efforts to remove any

12  unauthorized information from the process technology that it was developing under the Cooperation

13  Agreement"; and (3) UMC did not provide any "Micron trade secrets or any unauthorized third-party

14  information to Jinhua."  Press Release, UMC, UMC and US Department of Justice Reach Plea

15  Agreement on Trade Secret Case (Oct. 29, 2020), https://www.umc.com/en/News/

16  press_release/Content/corporate/20201029a; *see also* ECF 144 (UMC Sentencing Memorandum)

17  (containing no facts supporting a conclusion that there was an agreement between UMC and Jinhua

18  to steal Micron information, and failing to reference any "conspiracy").

19         Despite UMC's full cooperation and the government's free access to UMC's documents since

20  its pled guilty more than a year ago, the United States has not identified a single document, email, or

21  witness statement among the over 6 million documents produced to date reflecting an agreement

22  between UMC and Jinhua to steal or improperly obtain Micron confidential information.  In lieu of

23  such evidence, the government has given notice of its intent to prove the alleged existence of a

24  conspiracy and/or Jinhua's knowledge through a variety of hearsay evidence, pursuant to the hearsay

25  exclusions of Rule 801(d)(2)(E) (co-conspirator statements) and Rule 801(d)(2)(D) (statements of

26  employees or agents), including, *inter alia*:

27         1.  "LINE chats between Kenny Wang and JT Ho."  These are text messages between two
            UMC employees, ranging in time from 2015 – 2017, in which they discuss a variety of
28          topics, some related to their work at UMC;

3

2. Statements allegedly attributed to Stephen Chen, as documented in FBI 302 reports of *other* witnesses besides Chen;

3. Two audio recordings of internal UMC interviews purportedly conducted and made by David Huang, UMC's former in-house counsel;

4. "Admissions made by directors, employees, contractors, or agents of UMC or Jinhua during interviews conducted by the Taiwan Ministry of Justice Investigation Bureau ('MJIB') or prosecutors in Taiwan," including statements by over a dozen UMC employees;

5. "Admissions" by Stephen Chen, Jennifer Fung, and Jennifer Wang made during their depositions taken by counsel for Micron in the related civil matter *Micron v. UMC et al.*, Case No. 3:17-cv-06932-MMC (N.D. Cal.);

6. Documents "including email messages" that the government purports are "related to Project M" and "sent or authored by any director, employee, contractor, consultant, or agent of UMC or Jinhua";

7. Various "Chinese-government documents related to Jinhua, including documents from the state-owned shareholders of Jinhua and its creditors"; and

8. Board of Directors' documents for both Jinhua and UMC.

(*See* Sloan Decl. Ex. A (Local Rule 16-1(c) Notice) at 2-7.)

For the reasons set forth below, the government will not be able to demonstrate that most of these documents or purported out-of-court statements are admissible under either the hearsay exclusion for co-conspirator statements, pursuant to Rule 801(d)(2)(E), or statements of an employee or agent, pursuant to Rule 801(d)(2)(D) (statements of employees or agents).  Accordingly, the Court should exclude such evidence.

## III.   ARGUMENT

### A.   The Statements Are Not Admissible Statements of Co-Conspirators Under Fed. R. Evid. 801(d)(2)(E).

The co-conspirator exclusion to the hearsay rule provides that an out-of-court statement that is offered against an opposing party which "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay and is potentially admissible.   Fed. R. Evid. 801(d)(2)(E).   In order to satisfy this standard, the government must demonstrate that "(a) the

declaration was in furtherance of the conspiracy; (b) it was made during the pendency of the conspiracy; and (c) there is independent proof of the existence of the conspiracy and of the connection of the declarant and the defendant to it." *United States v. Snow*, 521 F.2d 730, 733 (9th Cir. 1975) (citing *Carbo v. United States*, 314 F.2d 718, 735 n.21 (9th Cir. 1963)).   In other words, there must be "some evidence, aside from the proffered statements, of the existence of the conspiracy and the defendant's involvement." *United States v. Mikhel*, 889 F.3d 1003, 1049 (9th Cir. 2018) (quoting *United States v. Gordon*, 844 F.2d 1397, 1402 (9th Cir. 1988)); *see also* Fed. R. Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it under (E).")   The burden is on the government to make this showing by a preponderance of the evidence. *United States v. Bowman*, 215 F.3d 951, 960–61 (9th Cir. 2000); *see also United States v. Chen*, Case No. 17-cr-00603-BLF-1, 2021 WL 2936731, at *1 (N.D. Cal. July 13, 2021) ("Under Rule 801(d)(2)(E), the statement of a co-conspirator is admissible against the defendant if the government shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy." (citation omitted)).   If the government fails to meet these requirements, and if no other hearsay exception or exclusion applies, the evidence cannot be admitted.   As demonstrated below, the government cannot satisfy these requirements.

1.    The Government Does Not Have Independent Evidence of a Conspiracy Involving Jinhua.

First, in order to admit out-of-court statements pursuant to Rule 801(d)(2)(E), the government must present independent evidence of a conspiracy between Jinhua and the declarant, using evidence that is separate and apart from the alleged co-conspirator statement itself.  Even reading the discovery in a light most favorable to the government, however, the documents at best support a claim that certain *UMC* employees, who were former Micron employees—namely, individual defendants Kenny Wang and J.T. Ho—misappropriated confidential information from Micron and may have referenced this information in their work at UMC.  There is no evidence that Jinhua conspired with these employees or any other UMC employees to steal or misappropriate confidential information

from Micron, however, nor that Jinhua (as opposed to UMC) knowingly received and/or possessed any alleged Micron trade secrets. **None**. Jinhua asked for this proof in its Motion for a Bill of Particulars (ECF No. 164 (Renewed & Amend. Mot. for Bill of Particulars) at 1), but the government did not and could not proffer any such proof. The government also has not offered any evidence that Jinhua *knew* that UMC's F32nm or F32s DRAM design allegedly contained Micron trade secrets or that the patents and patent applications that Jinhua jointly filed with UMC purportedly contained information that was the same or very similar to Micron's alleged trade secrets. Finally, the government has not identified any independent facts establishing that Jinhua *knowingly* or *intentionally* misappropriated, copied, obtained or possessed any purported Micron trade secrets.

Thus, the government will be unable to carry its Rule 801(d)(2)(E) burden. At best, the government has established that Jinhua entered into a cooperation agreement with UMC, one of the leading independent semiconductor foundries in Taiwan and in all of Asia. Jinhua does not dispute that it retained UMC to design a new DRAM chip pursuant to that cooperation agreement. (*See, e.g.*, Sloan Decl. Exs. B-C (Technology Cooperation Agreement, D-0000658).) But outside of the bare existence of this cooperation agreement, the Government has not proffered a single witness statement, written document, or any other direct evidence even remotely suggesting that Jinhua entered into a conspiracy with UMC.

The absence of any independent evidence of a conspiracy with Jinhua is supported by UMC's plea agreement and its public statements thereafter, in its press release and sentencing statements, both of which were made in the context of UMC's cooperation agreement, which required UMC to agree that the facts set forth in the plea agreement were true. (ECF No. 148 ¶ 2.) As discussed above, the Plea Agreement states that UMC's receipt and possession of the stolen trade secret was based on Mr. Wang's theft and use of alleged Trade Secret 5 in an "early draft" of UMC's DRAM design rules. (*Id.* ¶ 2(w).) Significantly, however, UMC did not plead guilty to any conspiracy counts and the Plea Agreement does not state that UMC *conspired* with Jinhua or any of the individual defendants to steal, copy, or knowingly receive Micron trade secrets. (ECF No. 145 at 2-3; ECF No. 148 ¶¶ 1, 2, 2(n) (stating only that UMC and Jinhua executed the Technology Cooperation Agreement, which was agreed upon by UMC and Jinhua stakeholders).)

6

The government has thus failed to proffer *any* evidence independent of the alleged co-conspirator statements themselves, sufficient to show that Jinhua conspired with UMC or any of the individual defendants, let alone that it joined a conspiracy with any of the potential declarants.[3]  For this reason alone, the Court should exclude the evidence identified in the Local Rule 16-1(c) Notice.

> 2.   The Government Cannot Show That Certain Statements Were Made During the Conspiracy and in Furtherance of the Conspiracy.

Second, even if there was sufficient evidence to satisfy the government's burden to show the existence of a conspiracy in which Jinhua was a member, the government must also show, by a preponderance of the evidence, that the statement was made "during" the conspiracy and in "furtherance of" the conspiracy.  *United States v. Shaw*, Case No. CR 14-00338(4)-SJO, 2018 WL 9649494, at *2 (C.D. Cal. Feb. 5, 2018) (citation omitted).

The Ninth Circuit has held that "mere conversations or narrative declarations are not admissible under this rule."  *United States v. Arias-Villanueva*, 998 F.2d 1491, 1502 (9th Cir. 1993), *overruled on other grounds by United States v. Jimenez–Ortega*, 472 F.3d 1102, 1103–04 (9th Cir. 2007); *see also United States v. Kim*, 857 F. App'x 375, 376 (9th Cir. 2021) ("As the government concedes, a statement made to law enforcement about the origins of the conspiracy after it has been carried out is not a statement made 'during the course and in furtherance of the conspiracy.'" (citation omitted)).  Rather, "statements made to induce enlistment, further participation, prompt further action, allay fears or keep coconspirators abreast of an ongoing conspiracy's activities are admissible."  *Arias-Villanueva*, 998 F.3d at 1502; *see also Chen*, 2021 WL 2936731, at *3 (finding admissible "statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities . . . ." (quoting *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991)).  The key here is that the statements must be made while the conspiracy is ongoing and must be made for the purpose of

---

[3]   Notably, even the alleged co-conspirator statements themselves do not support the existence of a conspiracy between Jinhua and UMC or the individual defendants.

7

1   furthering that conspiracy in some way, such as by inducing a co-conspirator to take some further

2   action to promote the aims of the conspiracy.

3          The *Chen* case in this court is instructive.  In *Chen*, the defendant was accused of conspiracy

4   to steal trade secrets, possession of trade secrets, and aiding and abetting.  The government tried to

5   introduce purported co-conspirator statements under Rule 801(d)(2)(E).  The court found that there

6   was a sufficient showing to admit certain statements under Rule 801(d)(2)(E), but the evidence that

7   the alleged statements were in furtherance of the conspiracy there was fairly clear cut.  For example,

8   the court found that the following statements were made "in furtherance" of a conspiracy:

9
10   - Emails allegedly showing that a defendant "help[ed] instruct his co-Defendants on how [to] steal (sic) Applied Materials's trade secrets."  *Chen*, 2021 WL 2936731, at *2.

11
12   - "[E]mails authored by [that second defendant] that demonstrate[d] his need for 'hackers' to circumvent Applied Materials's security for loading files onto a USB drive."  *Id.*

13   In marked contrast, the government has not identified any emails or other documents demonstrating

14   the existence of an agreement or advising the alleged co-conspirators how to further the conspiracy

15   here.  None.

16          Here, the government seeks to introduce, *inter alia*: (1) statements by witnesses as

17   documented in FBI 302 reports, as described in Exhibit A to the Local Rule 16-1(c) Notice; (2) two

18   audio recordings of internal interviews conducted during UMC's internal investigation, which were

19   provided by David Huang, UMC's former in-house counsel; (3) "Admissions made by directors,

20   employees, contractors, or agents of UMC or Jinhua during interviews conducted by the Taiwan

21   Ministry of Justice Investigation Bureau ('MJIB') or prosecutors in Taiwan," as set forth in Exhibit

22   B to the Local Rule 16-1(c) Notice; and (4) "Admissions made by directors, employees, contractors,

23   or agents of UMC or Jinhua during depositions taken by counsel for Micron Technology Inc. as part

24   of its civil case against UMC and Jinhua," as set forth in Exhibit C to the Local Rule 16-1(c) Notice.

25   (*See* Sloan Decl. Ex. A (Local Rule 16-1(c) Notice).)

26          These types of statements do not qualify as co-conspirator statements because they were not

27   made during the course of the conspiracy or in furtherance of the conspiracy.  For example,

28   statements made by UMC employees during custodial interrogations conducted by the Taiwanese

8

1    authorities after the raid conducted on UMC's offices in February 2017 were not even arguably for

2    the purpose of furthering the alleged conspiracy—a conspiracy which the Taiwanese government

3    was actively investigating.  Courts have repeatedly held that such statements made after the fact are

4    not in furtherance of a conspiracy unless they are used to mislead the police.  The Supreme Court

5    has noted that "confession or admission by one coconspirator after he has been apprehended is not

6    in any sense a furtherance of the criminal enterprise.  It is rather a frustration of it." *Fiswick v. United*

7    *States*, 329 U.S. 211, 217 (1946); *but see United States v. Alonzo*, 991 F.2d 1422, 1426 (8th Cir.

8    1993).  ("[C]onspirator statements to a known police agent are admissible under Rule 801(d)(2)(E)

9    only if intended to allow the conspiracy to continue, for example, by misleading law enforcers.").

10   *See also United States v. Williams*, 272 F.3d 845, 860 (7th Cir. 2001) (holding that statements given

11   to law enforcement that money was "drug money" was not made in furtherance of the conspiracy

12   under Rule 801(d)(2)(E)), *as amended on clarification* (Feb. 11, 2002); *United States v. Orr*, 825

13   F.2d 1537, 1541 (11th Cir. 1987) (statements made in connection with a plea agreement are not made

14   in furtherance of the conspiracy under Rule 801(d)(2)(E)); *United States v. Santos*, 20 F.3d 280, 286

15   (7th Cir. 1994)  (statements to an IRS agent of past activities are not made in furtherance of the

16   conspiracy under Rule 801(d)(2)(E)).  For these same reasons, statements made to the Federal Bureau

17   of Investigation ("FBI") during the government's investigation here were not made with the intent

18   to further any alleged conspiracy.[4]  Similarly, the government cannot claim that statements by

19   employees to UMC's in-house counsel during the internal investigation conducted after the

20   Taiwanese government's raids in February 2017 were made with the intent to further any alleged

21   conspiracy.  There is no allegation that any of these statements were made with the intent to mislead

22   in-house counsel.

23        Finally, the government cannot demonstrate that purported admissions made by directors,

24   employees, contractors, or agents of UMC or Jinhua during depositions taken in the civil case against

25

26        [4]    Additionally, for other statements the government seeks to introduce through the FBI
27   FD-302s, like statements by Albert Wu and Stephen Chen at a legitimate recruiting event (*see* Sloan
     Decl. Ex. A (Local Rule 16-1(c) Notice) at 9), the government has failed to tender sufficient evidence
28   how these statements are in "furtherance" of the conspiracy.

*(cont'd)*

9

1   UMC and Jinhua brought by Micron were in furtherance of the alleged conspiracy.   These

2   depositions occurred in 2018, over a year after the criminal case was initiated by the Taiwanese

3   authorities, and are not in furtherance of the conspiracy for the reasons set forth above.[5]

4       Since these statements could not possibly be in "furtherance of" the conspiracy, they do not

5   fall under Rule 801(d)(2)(E) and should be excluded.

6       3.   <u>The Testimonial Statements Made to the Taiwanese MJIB and in Internal Interviews Conducted by UMC's Former General Counsel Should Also Be Excluded Pursuant to the Confrontation Clause.</u>

7

8       The Court should also exclude the statements that alleged co-conspirators made to the

9   Taiwanese MJIB and/or to UMC's in-house counsel during the course of his internal investigation

10  because these statements were testimonial in nature and Jinhua did not have an opportunity to cross

11  examine these witnesses, so admission of these statements would violate the Confrontation Clause.

12  The Supreme Court in *Crawford v. Washington* explained that testimonial statements include:

13      *[E]x parte* in-court testimony or its functional equivalent—that is,
14      material such as affidavits, custodial examinations, prior testimony
        that the defendant was unable to cross-examine, or similar pretrial
15      statements that declarants would reasonably expect to be used
        prosecutorially; extrajudicial statements . . . contained in formalized
        testimonial materials, such as affidavits, depositions, prior testimony,
16      or confessions; statements that were made under circumstances which
        would lead an objective witness reasonably to believe that the
17      statement would be available for use at a later trial.

18

19  *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004).  The Supreme Court has further explained the

20  boundaries of testimonial evidence through "what has come to be known as the 'primary purpose'

21  test."  *Ohio v. Clark*, 576 U.S. 237, 244 (2015).  Under that test, statements are testimonial when

22  they result from questioning, "the primary purpose of [which was] to establish or prove past events

23

24      [5]     To the extent that the government seeks to introduce this deposition testimony as prior
        testimony under oath, pursuant to Rule 804(b)(1), it is not admissible because at the time that the
25      depositions were taken in the civil case (June-July 2018), Jinhua had not yet appeared in the case, so
        Jinhua did not have an opportunity and motive to cross examine the identified deponents (*e.g.*, J.T.
26      Ho, Jennifer Wang, and Stephen Chen).  *See, e.g., Micron v. UMC et al.*, Case No. 3:17-cv-06932-
        MMC (N.D. Cal.), ECF Nos. 98-107 (indicating that Jinhua's first appearance in the civil action was
        not until October 2, 2018).  *See* Fed. Evid. 804(b)(1)(B) (providing that prior deposition testimony
27      of deponent is excluded from hearsay rule where the deponent is "unavailable" and the party against
        which the testimony is offered had "an opportunity and similar motive to develop" the witnesses'
28      testimony through direct or cross- examination).

potentially relevant to later criminal prosecution," *Davis v. Washington*, 547 U.S. 813, 822 (2006), and when written statements are "functionally identical to live, in-court testimony," "made for the purpose of establishing or proving some fact" at trial, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009) (citation and internal quotation marks omitted).  "To determine . . . the primary purpose" of a statement, "we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." *Michigan v. Bryant*, 562 U.S. 344, 359 (2011).

The Ninth Circuit has held that there is no Confrontation Clause issue with the admission of a valid co-conspirator statement under Federal Rule of Evidence 801(d)(2)(E) because the standards for Rule 801(d)(2)(E) are identical to the requirements of the Confrontation Clause, noting that co-conspirator statements are not testimonial in nature.  *See United States v. Bridgeforth*, 441 F.3d 864, 868-69 & n.1 (9th Cir. 2006) (citing *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005)); *see also Crawford*, 541 U.S. at 56 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy.").  But for "testimonial" statements, the Supreme Court is clear—"the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69.

Here, several of the alleged co-conspirator statements are testimonial, because they were given with the purpose of establishing or proving some fact to be used later in legal proceedings.  For example, the government seeks to introduce:

- "Admissions made by directors, employees, contractors, or agents of UMC or Jinhua during interviews conducted by the Taiwan Ministry of Justice Investigation Bureau ('MJIB') or prosecutors in Taiwan," including statements by over a dozen UMC employees;

- "Admissions" by Stephen Chen, Jennifer Fung, and Jennifer Wang made during depositions of them taken by counsel for Micron in the civil matter *Micron v. UMC, et al.*, Case No. 3:17-cv-06932-MMC; and

- Two audio recordings of internal UMC interviews which were provided by David Huang, UMC's former in-house counsel.

1  (*See* Sloan Decl. Ex. A (Local Rule 16-1(c) Notice) at 2, 5.)  These statements are testimonial.  Thus,

2  admitting these statements without Jinhua having an opportunity to cross-examine those witnesses

3  would violate the Confrontation Clause.

4                  4.        <u>The Court Should Not Conditionally Admit the Hearsay Evidence.</u>

5          While a court can allow introduction of co-conspirator statements provisionally, prior to

6  making the findings above, the trial court has the discretion to require the government to proffer its

7  corroborating non-hearsay evidence *before* it allows any alleged co-conspirator statements to be

8  presented to the jury.  *See, e.g.*, *United States v. Loya*, 807 F.2d 1483, 1490 (9th Cir. 1987).  Here,

9  due to the lack of evidence of any conspiracy, the court should exercise its discretion and require the

10  government to satisfy its burden prior to admitting any purported co-conspirator statements.

11          Courts should be particularly cautious about allowing the introduction of co-conspirator

12  statements on a provisional basis in cases such as this where the government's whole case rests on

13  such statements.  If the government fails to establish independent evidence of the alleged conspiracy

14  during the course of the trial, an after-the-fact cautionary instruction to disregard the alleged co-

15  conspirator statements will often be insufficient to remove the taint of unfair prejudice, thus

16  potentially requiring the court to grant a mistrial.  The Ninth Circuit has stated that conditional

17  admission would only be appropriate where a motion to strike "could cure defects resulting from

18  insufficient proof of the necessary preliminary facts."  *United States v. Perez*, 658 F.2d 654, 658 (9th

19  Cir. 1981).  Here, the Court should require the government to present independent evidence of a

20  conspiracy in both a pre-trial proffer and in the trial itself before it allows the government to introduce

21  multiple statements under the co-conspirator exception.  The risks posed by the broad admission of

22  such statements before the government has made such a showing is too great, as after-the-fact

23  limiting instructions may ultimately be insufficient to cure the harm caused by the premature

24  introduction of such potentially inadmissible statements.  Sometimes the bell simply cannot be un-

25  rung without granting a mistrial.

26

27

28

**B.    The Purported Statements are Not Admissible Under Fed. R. Evid. 801(d)(2)(D).**

The government has also indicated it may try to introduce certain hearsay statements under Rule 801(d)(2)(D) as statements of Jinhua's employees or agents.  For example, the government seeks to introduce, *inter alia*, LINE chats from 2015-2017 between Kenny Wang and JT Ho (both UMC employees); emails by Mr. Ho; audio recordings of UMC employees recorded during UMC's internal investigation; and statements made by UMC employees during interviews conducted by the Taiwan authorities (including, for example, Mr. Ho).  Jinhua anticipates that the government may contend that some of these individuals were agents or employees of Jinhua at the time these statements were made, and that the statements are thus admissible under Rule 801(d)(2)(D) because Jinhua supplemented the income of certain UMC employees (hired from Micron and several other DRAM companies in Taiwan, Korea, and Japan) to help attract and retain engineers.  In most instances, however, these individuals were not (and never became) Jinhua employees.

1.    Mr. Ho and the Other UMC Recruits Who Received Supplemental Income from Jinhua Were Never Jinhua Employees.

First, to the extent that the government asserts that Mr. Ho, Neil Lee, and possibly other yet-to-be-named UMC employees who received payments from Jinhua through its "R&D Talent Retention Fund" were Jinhua employees, and that their statements can thus be treated as statements by an agent or employee of Jinhua, the government is mistaken.  The Ninth Circuit has held that a court "must 'undertake a fact-based inquiry applying the common law principles of agency'" when deciding whether an individual is an employee or agent for purposes of Fed. R. Evid. 801(d)(2)(D).  *United States v. Bonds*, 608 F.3d 495, 504 (9th Cir. 2010) (citation omitted).  Here, because these so-called employees were allegedly employed by Jinhua, a Chinese company, the relevant analysis is whether an employment relationship was formed under Chinese law.  At trial, Jinhua will proffer expert testimony from Dr. Jiang Ying, who will explain why these individuals were not employees under Chinese law.  (Sloan Decl. Ex. D (Jiang Report) at 12-16.)[6]

---

[6]    The government has submitted an expert report from its purported labor law expert, Dr. Yu-Fan Chiu, opining that (1) Taiwan law should apply and (2) under Taiwan law, there was an employment relationship between Mr. Ho and Jinhua.  But as Jinhua's expert Dr. Jiang will explain

*(cont'd)*

1   The evidence at trial will demonstrate that the *UMC employees* who participated in this R&D
2   Talent Retention program were primarily engineers recruited from other companies; pursuant to the
3   program, they received additional compensation from Jinhua to make their salaries commensurate
4   with what they would have received at UMC's competitors—not to form an employer-employee
5   relationship with *Jinhua*. Some Taiwanese companies, like UMC, did not pay competitive salaries
6   compared to the salaries paid by Japanese, Korean and other Taiwanese companies, like Micron.
7   The evidence at trial will show that UMC wanted to recruit skilled DRAM engineers for its project,
8   and thus, was looking at engineers from Japan and Korea. These engineers would be unwilling to
9   work at UMC for the salary UMC would offer, so UMC asked Jinhua to provide additional funding
10  to help recruit and retain them. Jinhua agreed and agreed to pay certain newly recruited UMC
11  engineers. UMC, as their employer, paid their salary and benefits. The evidence will show that
12  neither UMC, Jinhua nor these new UMC recruits ever intended to create an employer-employee
13  relationship between these UMC employees and Jinhua.

14  Indeed, the evidence at trial will show that neither Jinhua nor these new UMC employees
15  viewed their receipt of additional funding from Jinhua as creating an employer-employee
16  relationship. Jinhua did not impose any requirements on the individuals' working hours, locations,
17  or responsibilities. There were no attendance requirements imposed by Jinhua—the individuals did
18  not need to request vacation or leave of absence from Jinhua. They were not supervised by anyone
19  from Jinhua. They did not report to anyone at Jinhua. They were not disciplined by, and did not
20  receive performance reviews from, Jinhua. They did not have Jinhua employee numbers, employee
21  cards, or offices. They did not have Jinhua email accounts. And Jinhua did not take any of the
22  traditional employment taxes out of these payments, or provide any of the "subsidies" that employees
23  are entitled to under Chinese law. Thus, these individuals were not employees, and their statements
24
25
26

27  further at trial, Chinese law should apply, there was no employment relationship between Mr. Ho
28  and Jinhua, and Dr. Chiu's report relies on several mistaken factual premises.

*(cont'd)*

JINHUA'S MOT. *IN LIMINE* NO. 6 TO EXCLUDE                    CASE NO.: 3:18-cr-00465-MMC
CO-CONSPIRATOR AND EMPLOYEE STATEMENTS

1  cannot fall under the hearsay exclusion of Rule 801(d)(2)(D).[7]  (*See generally* Declaration of Yu

2  Chen Fu in Support of Jinhua's Motion *in Limine* No. 6, ¶¶ 2-4.)

3       The fact that the agreement Mr. Ho signed was called a "labor contract" does not change the

4  conclusions set forth above—the intent of the parties was not to form an employment relationship,

5  and no such relationship was formed under law.  UMC did not consider them Jinhua employees.

6  Indeed, in UMC's sentencing memorandum, UMC states that "During the relevant period . . . JT Ho

7  [was a] UMC employee[]."  (ECF No. 144 at 4:25-26.)  These employees also did not self-identify

8  as Jinhua employees.  For example, when Neil Lee was asked if he was a Jinhua employee, based on

9  one "consulting" contract he signed with Jinhua in February 2017 to obtain this additional

10  renumeration, he said he was not.[8]  (Sloan Decl. Exs. E-F (Neil Lee Interrogation, D-000790) at D-

11  000794.)  Individuals identified the payment from Jinhua as a "bonus" or "incentive," not as a salary

12  received by an employee.  (Sloan Decl. Exs. G-H (LT Rong Interrogation, D-000366) at D-000379;

13  Sloan Decl. Exs. I-J (Kenny Wang Interrogation, D-000482) at D-000488; Sloan Decl. Exs. K-L (JT

14

15  [7]    The UMC employees who received these Jinhua bonuses would not be considered
agents or employees of Jinhua under U.S. law either.  Courts in the United States typically examine
16  the factors set forth in the Restatement of Agency (Second) when determining whether an
employee/agency relationship exists, or whether the declarant is an independent contractor.  *See*
17  *Bonds*, 608 F.3d at 504.  Such factors that this Court should examine are: (1) the control exerted by
the employer, (2) whether the one employed is engaged in a distinct occupation, (3) whether the
18  work is normally done under the supervision of an employer, (4) the skill required, (5) whether the
employer supplies tools and instrumentalities, (6) the length of time employed, (7) whether payment
19  is by time or by the job, (8) whether the work is in the regular business of the employer, (9) the
subjective intent of the parties, and (10) whether the employer is or is not in business.  *Id.*  When
20  examining these factors, the Court "will look to the totality of the circumstances, but the 'essential
ingredient . . . is the extent of control exercised by the employer.'"  *Id.* (quoting *NLRB v. Friendly*
21  *Cab Co.*, 512 F.3d 1090, 1096 (9th Cir. 2008)).

22       Here, there is no evidence that Jinhua has ever controlled, or exerted any type of control over,
Mr. Ho or the UMC employees who participated in this program.  Further, the UMC employees,
23  provided their own instrumentalities—Jinhua did not provide them with office space, a computer, or
any equipment.  Moreover, the UMC employees did not work under the supervision of anyone at
24  Jinhua, or work at Jinhua's direction.  They, at all times, answered to UMC.  Accordingly, the totality
of the circumstances as they relate to the factors outlined within the Restatement of Agency,
25  demonstrate that the employees who participated in this program were not agents or an employee of
Jinhua.  (*See generally* Declaration of Yu Chen Fu in Support of Jinhua's Motion *in Limine* No. 6,
26  ¶¶ 2-4.)

27  [8]    Mr. Lee later left UMC and was hired by Jinhua as an employee in approximately
December 2019.  (Declaration of Yu Chen Fu in Support of Jinhua's Motion *in Limine* No. 6, ¶4.)
28  The statements from Mr. Lee that the government seeks to introduce here pre-date Mr. Lee's
employment at Jinhua by years, however, and thus are not admissible under Rule 801(d)(2)(D).

Ho Interrogation, D-000200) at D-000243.)   Without proof that these individuals were Jinhua

employees, Rule 801(d)(2)(D) does not apply, and the statements cannot be admissible against

Jinhua.

2.   The Statements Were Not Made During the Individual's Alleged
Employment with Jinhua.

Second, to be admissible under Rule 801(b)(2)(D), the statements must have been made while

the individual was employed by Jinhua.  *See* Fed. R. Evid. 801(d)(2)(D).  Here, even if, for the sake

of argument, the R&D Talent Retention program created an employment relationship with Jinhua,

the alleged "dual" employment did not start until July 2016 at the earliest for Mr. Ho and potentially

not until February 2017 for Mr. Lee.  (Sloan Decl. Exs. M-N (JT Ho Contract, D-0000970) at D-

0000970; Sloan Decl. Exs. E-F (Neil Lee Interrogation, D-000790), at D-000794.)   Yet the

government may seek to introduce 2015 LINE chats between Mr. Ho and Kenny Wang under this

exception.  (*See* Sloan Decl. Ex. A (Local Rule 16-1(c) Notice) at 2.)  Thus, these statements were

not made while Mr. Ho was an employee of Jinhua, since even by the government's own account,

Mr. Ho did not become a Jinhua employee until approximately June or July 2016.  (Sloan Decl. Exs.

M-N (Ho Contract, D-0000970) at D-0000970.)  Similarly, Stephen Chen did not even arguably

become an employee of Jinhua until February 2017, and he did not begin receiving payment from

Jinhua until the second half of 2017.  (Sloan Decl. Ex. O (Stephen Chen Depo. Tr., USD-0351510)

at 46:11-47:2.)  Thus, any statements by Chen prior to this date cannot be admissible under Rule

801(d)(2)(D).  The government bears the burden of showing the alleged hearsay was made during

the individual's employment, and has not, and for many of the statements cannot, meet that burden.

3.   The Statements Were Not on a Matter Within the Scope of the Alleged
Employment.

Finally, to be admissible as statements of an agent or employee, the statements must concern

"a matter within the scope of that relationship."  Fed. R. Evid. 801(d)(2)(D).  Here, most of the

statements that the government seeks to introduce concern the declarant's *UMC* or *Micron*

employment, not their *Jinhua* employment.  For example, the government seeks to introduce

statements Mr. Ho made to Taiwanese investigators, including statements about his employment

1  history prior to UMC (Sloan Decl. Ex. A (Local Rule 16-1(c) Notice) at 11); his role at UMC (*id.*);

2  and UMC's ability to enter the DRAM market (*id.* at 16).  Even if Mr. Ho was ever employed by

3  Jinhua (which he was not), these statements relate to his employment at UMC, and thus do not relate

4  to a "matter within the scope" of his purported employment *relationship* with Jinhua.  Similarly, the

5  statements Mr. Ho made in his deposition in the civil case were made in his role as a UMC employee

6  and concerned his role at *UMC*, not *Jinhua*.  In fact, he was designated pursuant to Federal Rule of

7  Civil Procedure Rule 30(b)(6) as a *UMC* corporate representative.  (Sloan Decl. Ex. P (JT Ho Depo.

8  Tr., USD-0351661), at  15:2-19.)   Statements  made  while  testifying  as  a  UMC  corporate

9  representative are not statements made within the scope of his Jinhua employment.  Accordingly,

10  these statements, and the others like these, are not admissible under Fed. R. Evid. 801(d)(2)(D).

11  Because the government cannot satisfy its burden to show that the so-called "dual" UMC

12  employees who made the statements identified in the Local Rule 16-1(c) Notice were ever agents or

13  employees of Jinhua (in the case of Mr. Ho, for example) or that other UMC employees who later

14  became Jinhua employees were speaking during their employment at Jinhua and within the scope of

15  their employment relationship at Jinhua when they made the relevant statements, the hearsay

16  exclusion in Rule 801(d)(2)(D) does not apply, and these statements constitute inadmissible hearsay.

17  **IV.    CONCLUSION**

18  For the reasons set forth above, this Court should grant a motion *in limine* excluding the so-

19  called "co-conspirator" and "employee" statements set forth in the government's Local Rule 16-1(c)

20  Notice.

21  Dated: December 1, 2021

22                                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

23

24

25  By: _____*/s/ Jack P. DiCanio*_____
                                                JACK P. DICANIO
26                                          Attorneys for Defendant
                          FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

27

28