# EXHIBIT J

**To Declaration of Matthew E. Sloan in
support of Jinhua's MIL 6 [ECF 248]**

## UNREDACTED VERSION OF DOCUMENT

## Interrogation Record

For Zhen Zi No. 4520, 4521, 5612, 5613 and 11035 cases of violation against trade secrets act of the Republic of China in 2017, the interrogation was carried out at No. 1 Investigation Room of Taiwan Taichung District Prosecutors Office at 09:04 a.m. on June 9, 2017. The staffs present were as follows:

Prosecutor: CHEN Li-Wei          Clerk: CHEN Yi-qing          Interpretation

The attendees were as follows:

Called the roll

The prosecutor inquired about the name, age, address and national ID card number

Agent

    Lawyer WANG Ren-Jyun

Agent

    Lawyer LI Ru-min

Agent

    Lawyer PENG Chien-jen

The defendant replied correspondingly

    WANG Yong-ming          male, 42 years old, born on October 25, 1974

        National ID card number: B121352878

        Address: 11/F-9, No. 201, Sec. 1, Wenxin South 5th Rd., Nantun District, Taichung City

        Contact no.: 0968896393

Selected defender

    Lawyer CHUANG Ting-yu

The defendant replied correspondingly

    HO Chien-ting          male, 41 years old, born on November 5, 1975

        National ID card number: B121163317

        Address: No. 129, Hecuo Street, Xitun District, Taichung City

        Present address: No. 6, Dashun 6th Road, Xinshi District, Tainan City

        Contact no.: 0906123677

The defender replied correspondingly

Lawyer JIA Chun-yi

The prosecutor informed the two defendants of the following matters:

1. The criminal suspect and its accusation was violation of the Trade Secrets Act.

2. The defendant may remain silent and does not have to make a statement against his own will.

3. The defendant has the right to a defense counsel before being questioned. The defendant has the right to request for the legal aid if he is a low-income household, low-middle-income household, aboriginal or meets other laws and decrees. If the defendant is aboriginal, mentally or psychologically deficient and cannot complete the statement, he has the right to request legal aid agencies to appoint lawyers to defend him.

4. The defendant has the right to request an investigation of evidence favorable to his case.

Following was the interrogation of WANG Yong-ming:

Q: (Present No. 8 plaint on Page 57 of 2017 Ta No. 6099 case) Would the warnings be displayed when you read the electronic files in the system during your service at Micron?

A: No, I haven't seen these warnings.

Following was the interrogation of the agent:

Q: Where do these warnings appear?

A (WANG): These should be the warnings that pop out when a controlled file of the company is opened.

Following was the interrogation of WANG Yong-ming:

Q: (Present evidence) The Office detained three copies of materials in your dormitory of UMC in Shanhua District, Tainan City, and numbered them C-1-1, C-1-2 and C-1-3. Among them, the part concerning Micron in C1-2 file was inspected by Micron's CHEN Yi-ling and Micron's engineers and was considered to be the business secret of Micron. Were these data of paper version printed from Micron's computer by you?

A: There's a lot of data. The data of paper version marked with LG were given to me by the Korean manufacturer when I worked for Micron. The other data were downloaded from the network and printed out by me.

Q: The prosecutor checked the interrogation record of CHEN Yi-ling at the Office on February 13, 2017, in which CHEN Yi-ling thought that the file named Design RULE DR25NMS in the data of paper version was the internal business secret of Micron. Did you print the file during your tenure at Micron?

A: I saw this data a long time ago, that is, when I worked for PQA (i.e. Product Quality Assurance Department) of Micron, but it was not printed in paper at that time. In April 2016, I brought out Micron's electronic files and printed them into paper.

Q: Did you print these data when you worked at UMC?

A: Yes, I don't remember when they were printed.

Q: Where did you print these data?

A: I printed them in my own home and took them to my dormitory for my own study.

Q: Did you print these data after RONG Le-tien called WEI Ming-te and you together in July and August 2016?

A: I printed them out prior to that.

Following was the interrogation of Lawyer CHUANG:

Q: The brief mentioned that Micron had to prove that it had the right of creation, didn't it?

A: First, identify who is the author, and then identify the ownership and creativity of the copyright. The creativity will be questioned if the contents of others are consulted.

Following was the interrogation of Lawyer CHUANG Ting-yu:

Q: (Present the written pleading of the complainant on October 28, 2016) Do you have any objection to the contents of the written pleading?

A: The data were too much to be browsed in such a short time. The complainant is expected to provide complete data before I express my opinion. As far as the part of No. 21 plaint is concerned, the contract has already expired, and the issues of Micron's files and binding force corresponding to the effectiveness of the contract as well as whether it has copyright or not should be further studied.

Following was the interrogation of Agent Lawyer Wang:

Q: Can the files of No. 21-25 plaint be provided to the defenders?

A: It depends on the complainant.

Q: (Present the brief of the defendant WANG Yong-ming on March 15, 2017) What's your opinion on the brief?

A: The intention of the defense is that the defendant WANG Yong-ming can access to all the files of Micron, and thus WANG Yong-ming believes that these files of Micron are not confidential. We hold the opinion that all the files of Micron can only be accessed by Micron's personnel internally and shall not be known to the personnel outside, so there ought to have a requirement of confidentiality. In addition to this, we also provide relevant policies and regulations of Micron, which stipulates the categories of data to be accessible by its staffs based on their position. This part can prove that Micron has taken reasonable confidentiality measures and these files also have been marked with the confidentiality text of Micron, which can be clearly distinguished as the

business secrets of Micron just from their appearance. As for the defendant's statement that he could access to the supererogatory files, it is necessary to clarify the files what he meant. If he obtained the files in violation of Micron's regulations, it could not be presumed that Micron did not implement the confidentiality rules, and moreover, Micron prohibits staffs from bringing its confidential data out or providing them to the personnel outside the company or using them for other purposes. As for the copyright just mentioned by the defender, the complainant informs us that Micron has two member companies: Micron Memory Taiwan and U. S. parent company. Micron Memory Taiwan is authorized by Micron to use these business secrets. Both Micron Memory Taiwan and U. S. parent company can claim the copyright.

Q: As for the part of copyright mentioned in the bill of complaint, was Micron Memory Taiwan exclusively authorized by U. S. parent company, or was Micron Memory Taiwan simply authorized to use the copyright?

A: It was not an exclusive authorization. It's simply authorized to be used by Micron Memory Taiwan. The copyright was owned by the U. S. parent company.

Following was the interrogation of WANG Yong-ming:

Q: (Present the interrogation records of LIN Xiu-zhen and LIN Hung-yi) Before your departure, you entered Micron's system and copied 930 files into your USB. Did the 930 files include the data of probes and alg 1ibrary that you had obtained from LIN Xiu-zhen and LIN Hung-yi of Micron before your departure?

A: No. The data I asked for from both of them were related to my work in the PQA Department of Micron. LIN Hung-yi's statement that these data were blended into the Integration Department and were not available after Micron merged with Rexchip is incorrect. These data were left over by Elpida previously and I was already accessible to these data before they provided them to me, because I was also the supervisor of LIN Xiu-zhen and LIN Hung-yi in Micron. The data concerning the probe card mentioned by LIN Xiu-zhen were prepared under the instructions of my former department and were known to me too.

Q: (Present the statement signed by WANG Yong-ming for UMC on April 18, 2016, that is, No. 2B-7 distress of the Office) Later, when you joined UMC and expressed that you had not obtained the confidential data of your former company through signing files, did UMC take any measures to prevent you from using the data of Micron?

A: UMC expressly stipulates that those staffs that hold data from other companies will be ordered to be dismissed, and my labor contract with UMC was also terminated due to this case.

Q: If UMC had taken the related measures, why would there be Micron's electronic files in the notebook computer that UMC allots to you for official business?

A: For this, I want to apologize to Micron as I did not delete the data of Micron after I left office. But these data are only for my personal research. They are only stored on my personal computer, that is, the computer that UMC allotted to me for personal use. I have not disclosed these data to anyone else.

Q: Can the notebook computer allotted by UMC access to UMC's intranet?

A: The notebook computer allotted by UMC can be connected to UMC's intranet, but other people couldn't read my personal data.

Q: Have you ever attended the educational courses on business secrets since you joined UMC?

A: When I joined UMC, the HR Department gave educational courses to new staffs. It's been so long that I can't remember the contents of the courses. The HR Department asked me to sign some data including the statement just presented by the prosecutor.

Q: Did the Asset Security Department of UMC regularly check whether the notebook computers allotted by UMC contained the data from other companies or installed software of other companies?

A: I don't know.

Following was the interrogation of HO Chien-ting:

Q: (Present No. 8 plaint) Did you ever see the warnings in No. 8 plaint when you worked for Micron?

A: Yes. These warnings would pop up when I access certain web page.

Q: (Present the shot image of the computer inspected on May 25, 2017) During the prosecutor's investigation on May 15, 2017, Engineer CHEN Yi-ling of Micron pointed out that there was a file named 1bg DDR3 SDRM in an ASUS notebook computer that was detained in UMC. Why does this file appear in your UMC's notebook computer?

A: I think that the file should be a product manual. The product was put into the market 7 or 8 years ago. Anyone can download the product manual from the network.

Q: During the prosecutor's investigation on May 25, 2017, CHEN Yi-ling pointed out that the No. 15 file with sticker on it (present the original file, No. ECD-DPB-1111) that you had given HUANG Shu-han for storage was a confidential file of Micron. When did you print the data out?

A: This data should have been printed during my service at Powerchip, and I brought it out after I left Micron.

Q: After that, why did you bring the data to the office of UMC?

A: It's just force of habit.

Q: Have you noticed the printed "Confidential" watermark (in English) on the file?

A: I didn't pay special attention to it. The data was prepared in 2006 and it's been around for a long time. I'm just used to taking data with me for a long time.

Q: (Present No. 2B-3 distress) Had UMC taken any measures to prohibit you from using the business secrets of the former company after you joined, in addition to signing the statement?

A: In my memory, new staffs had to attend the courses on the next day after registration, which introduced the regulations that prohibited staffs from using the confidential data of the former company in UMC, or disclosing the data of UMC to anyone else outside. In addition, UMC intranet was blocked and couldn't be connected to the external network.

Q: Did UMC specify that staffs that used the data of their former companies were in violation of the labor contract and would be fired?

A: I remember that the statement I signed should contain such rules, but I don't have the rules memorized.

Q: What was your purpose when you stored Micron's electronic files in the USB at your dormitory?

A: That's what I've accumulated in so many years of work. According to my own legal perception, I think its ok as long as I don't use that data for the company I'm going to work for. I don't know it's illegal.

Q: The KINGSTON USB you gave to HUANG Shu-han also contained the electronic files of Micron. Why?

A: It was also for my personal study.

Q: You borrowed a public notebook computer from UMC that can read USB. Was your purpose to read USB?

A: Although UMC prohibits the use of USB, it is still required during our work. I applied for a notebook computer that could read the USB interface in order to read the data of customers or the data provided by manufacturers.

Q: (Present No. 2B-3 distress of the Office) When was the undated labor contract signed?

A: This was a reward for my work offered by our supervisor. I remember that it was signed in November 2016.

Q: According to the labor contract, you could work for JHICC of Fujian Province, but the main place of work was Tainan City, is that right?

A: I didn't work in the mainland.

Q: Why it was necessary to sign this contract since you already joined UMC?

A: To my understanding, the supervisor wanted to give us extra pay and bonus, so we were willing to accept it.

Following was the interrogation of WANG Yong-ming:

Q: (Present No. 2B-3 distress of the Office) Have you signed a contract like this?

A: No.

Following was the interrogation of HO Chien-ting:

Q: Who in UMC could sign such a contract?

A: I don't know. I only know that a lot of staffs with good performance had signed this contract. I'm not clear about the specific number.

Q: Had the contract come into force?

A: It should take effect.

Following was the interrogation of the defender:

Q: Do you have any opinion on this?

A (CHUANG): As for the facts, the defendant WANG Yong-ming admitted that he had downloaded the files from Micron, stored them to his USB and uploaded them to the cloud. However, whether such acts were a kind of "remake" under the context of the copyright law and violated the trade secrets act, the answer is no.

WANG Yong-ming added: Micron prohibits the use of USB, but I had applied for an USB.

Following was the interrogation of WANG Yong-ming:

Q: You downloaded a lot of files on the eve of your departure. Should it be beyond the scope of permission?

Defender: We believe that the files were restricted when being downloaded, but they had not been deleted after the defendant left office. For this part, the defendant acknowledges the facts and hopes to seek reconciliation.

Following was the interrogation of the defender:

Q: Do you have any opinion on this?

Lawyer JIA: It is denied according to Article 359 of the Criminal Law. The defendant had the right to download the data and he held the data due to his personal work habits and for personal use, which is totally different from the use of Micron's business secrets in UMC. What HO Chien-ting should be blamed for is that he did not delete the electronic filed he had obtained in Micron before. In addition, according to his statement, the business secrets of Micron were actually useless in his work at UMC.

Following was the interrogation of Lawyer WANG:

Q: What's the opinion of the complainant about the defendants' wishes to seek reconciliation?

Lawyer WANG: It depends on the degree of frankness and the attitude of cooperating with the investigation of the defendants in the whole process.

Following was the interrogation of the defender:

Q: Is there a willingness to reconcile in terms of the part of HO Chien-ting?

Defender: Yes. The data preserved by WANG Yong-ming have been around a long time, and we also hope to seek the reconciliation of Micron.

Following was the interrogation of Lawyer WANG:

Q: Do you have any comment on this?

A: It was during WANG Yong-ming's resignation and vacation when he inquired about it from LIN Hung-yi. Therefore, it is questionable whether the data was related to his position. In addition, Micron has acquired Elpida and Rexchip, so these data belong to the confidential information or works of Micron. WANG Yong-ming just expressed that the probe was made under his guidance, but these data were owned by Micron at all events. If he knew the data, it was not necessary for him to request them from others. Defendant HO Chien-ting contended that these data had been around for a very long time. As far as business secrets are concerned, such data are endowed with the value of business secrets as long as they can be helpful in reducing costs and errors. The defendant pleaded that the data were for personal research and not for use in UMC, but he did refer to Micron's files in UMC and his acts did constitute a use of the business secrets in the context of the Trade Secrets Act. From the defendant's statement, the business secrets of Micron were actually handed over to other staffs of UMC, that is, the staffs of UMC would refer to Micron's business secrets, which would also constitute an unjustified disclosure. Besides, the defendant transferred the data to his USB, which exceeded his scope of work and constituted an unjustified acquisition.

You are hereby informed.

10:48 a.m. on June 9, 2017, Republic of China

It is confirmed that this record is true and correct, and is signed as below

     Defendants: [Handwritten] HO Chien-ting, WANG Yong-ming

     Defender: [Handwritten] Lawyer JIA Chun-yi

     Agents: [Handwritten] Lawyer CHUANG Ting-yu

       [Handwritten] Lawyer WANG Ren-Jyun

       [Handwritten] Lawyer PENG Chien-jen

       [Handwritten] Lawyer LI Ru-min

Clerk: [Handwritten] CHEN Yi-qing

Prosecutor: [Handwritten] CHEN Li-Wei