JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:     (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>          v.<br><br>UNITED MICROELECTRONICS CORPORATION, *et al.*,<br><br>                              Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE* NO. 2 TO ADMIT AUDIO RECORDINGS**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 28, 2022 |

---

JINHUA'S SUPP. MEM. OF LAW OPP MOT. *IN LIMINE* NO. 2          CASE NO.: 3:18-cr-00465-MMC
RE: AUDIO RECORDINGS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 1

II. BACKGROUND ................................................................................................... 1

III. ARGUMENT ......................................................................................................... 2

    A. The Statements Made During the Interview of Joyce Huang Are Barred By Both the Confrontation Clause and the Rule Against Hearsay .................................................................................................... 2

        1. The Statements on the Joyce Huang Recording Are Testimonial In Nature and Are Thus Barred by The Confrontation Clause ........................................................................ 2

        2. The Rule Against Hearsay Bars Admission of the Statements on the Joyce Huang Recording ............................................................. 5

    B. The Statements Made During the Interview of Mr. Guo Are Barred By Both the Confrontation Clause and the Rule Against Hearsay ................. 9

        1. Most of The Statements on the Guo Recording Are Testimonial In Nature and Are Thus Barred by The Confrontation Clause ........................................................................ 9

        2. The Rule Against Hearsay Bars Admission of the Statements on the Guo Recording ....................................................................... 11

IV. CONCLUSION .................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Canton v. Kmart Corp.*,
    470 F. App'x 79 (3d Cir. 2012) ........................................................................................ 5, 11

*Crawford v. Washington*,
    541 U.S. 36 (2004) ............................................................................................................ 4, 10

*Davis v. Washington*,
    547 U.S. 813 (2006) ................................................................................................. 2, 3, 9, 10

*Export Group v. Reef Industries, Inc.*,
    54 F.3d 1466 (9th Cir. 1995) ................................................................................................ 7

*Fiswick v. United States*,
    329 U.S. 211 (1946) ........................................................................................................ 8, 12

*Iannelli v. United States*,
    420 U.S. 770 (1975) ............................................................................................................ 11

*Michigan v. Bryant*,
    562 U.S. 344 (2011) ........................................................................................................... 3, 4

*Ohio v. Clark*,
    576 U.S. 237 (2015) ................................................................................................... 2, 3, 4, 5

*United States v. Clark*,
    31 F.3d 831 (9th Cir. 1994) .................................................................................................. 5

*United States v. Esparza*,
    791 F.3d 1067 (9th Cir. 2015) .............................................................................................. 4

*United States v. Layton*,
    855 F.2d 1388 (9th Cir. 1988) .......................................................................................... 7, 8

*United States v. Lopez-Zamubio*,
    No. CR 97-2341-MLH, 1999 WL 417894 (9th Cir. June 21, 1999) ...................................... 8

*United States v. Mikhel*,
    889 F.3d 1003 (2018) .......................................................................................................... 12

*United States v. Mouzin*,
    785 F.2d 682 (9th Cir. 1986) .......................................................................................... 5, 11

*United States v. Orm Hieng*,
　　679 F.3d 1131 (9th Cir. 2012) ........................................................................................... 9

*United States v. Peralta.*,
　　941 F.2d 1003 (9th Cir. 1991) ...................................................................................... 7, 8

*United States v. Rinaldi*,
　　393 F.2d 97 (2d Cir. 1968) ................................................................................................ 7

*United States v. Spencer*,
　　415 F.2d 1301 (7th Cir. 1969) ........................................................................................... 7

*United States v. Vera*,
　　770 F.3d 1232 (9th Cir. 2014) ........................................................................................... 9

**RULES**

Fed. R. Evid. 701 ............................................................................................................................ 9

Fed. R. Evid. 801(d)(2)(D) ......................................................................................................... 5, 6

Fed. R. Evid. 801(d)(2)(E) ............................................................................................... 6, 7, 8, 11

Fed. R. Evid. 805 ............................................................................................................................ 9

**OTHER AUTHORITIES**

30 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6533
　　(2d ed. April 2021 update) ............................................................................................ 3, 4

30 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6634
　　(2d ed. April 2021 update) ............................................................................................... 3

30 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (Evidence)
　　§ 6778 (2d ed. April 2021 update) ................................................................................ 6, 7

*Coconspirators, "Coventurers," and the Exception Swallowing the H*earsay Rule,
　　61 Hastings L.J. 581 (2010) .............................................................................................. 7

S. Rep. No. 93-1277, 93d Cong., 2d Sess. 24, Reprinted in (1974) U.S. Code Cong. &
　　Admin. News, pp. 7051, 7073 .......................................................................................... 6

## I. INTRODUCTION

The government's Motion *In Limine* No. 2 seeks to admit audio recordings from two interviews conducted during an internal UMC investigation of allegations that various UMC employees infringed upon Micron's trade secrets. This Court previously determined that the government had preliminarily established the authenticity of the recordings, but deferred ruling on their admissibility. *See* Criminal Minutes (ECF 323), at 1. At the January 28, 2022, hearing, the Court indicated that the parties "would have to brief" whether the two interviews were testimonial to "try to show me which box I ought to put [the recordings] in." Hr'g Tr., 46:13-14, 47:3-4, Jan. 28, 2022. In response to the Court's request, Jinhua now provides supplemental briefing demonstrating why the Confrontation Clause and the hearsay rules require the two recordings to be excluded.

## II. BACKGROUND

After the Taiwanese authorities raided UMC in February 2017 to determine if Kenny Wang or other UMC employees had taken confidential Micron documents, UMC in-house counsel, David Huang, initiated an internal investigation "to find out whether any infringement of any other third party's business secrets actually occurred within the company." Gov't Mot. *In Lim.* No. 2, Ex. C (ECF 237-3), at 4. Because Mr. Huang was worried that he would be implicated in wrongdoing, he recorded interviews in which he took part. *Id.* at 6, 10.

Mr. Huang later turned over two recordings to the authorities. The first was a telephonic interview of Joyce Huang, a UMC secretary, conducted by Mr. Huang and several unnamed persons. The interview focused on what Joyce Huang knew about one of the public laptops that had been turned over to the Taiwanese authorities, as well as an allegation that there was a missing laptop containing Micron trade secrets. At the end of this recording, after the interview of Joyce Huang concludes and she hangs up the phone, Mr. Huang and the other unnamed participants discuss the allegations against various UMC employees.

The second recording turned over by Mr. Huang contained an interview with Ray Guo, a UMC engineer. This interview was purportedly conducted by Mr. Huang and two of UMC's outside legal counsel in Taiwan, Chen Zhehong and Liu Jiakun. During the first part of the interview, Mr.

1

Guo was questioned about the laptops, Micron's data security, and whether any UMC employees used Micron trade secrets. Although Mr. Guo denied possessing Micron trade secrets or knowing of Micron trade secrets being used by UMC employees, he acknowledged using one of the public laptops and formatting it. In the second part of the interview, Mr. Guo and the interviewers discussed what Mr. Guo should do with the computer.

The government seeks to introduce statements from these recordings against Jinhua.

## III.   ARGUMENT

The Confrontation Clause and the Rule Against Hearsay bar introduction of virtually all statements on the two recordings. First, most of the statements are "testimonial" because the purpose of the interviews was to establish events potentially related to criminal prosecution. The government has indicated that it cannot present the declarants as witnesses at trial, so Jinhua will be deprived of its right to confront them. Second, the recordings reflect out of court statements offered for the truth of the matter asserted—and no exceptions to, or exclusions from, the Rule Against Hearsay apply. This Court should thus deny the government's motion to admit the recordings.

### A.   The Statements Made During the Interview of Joyce Huang Are Barred By Both the Confrontation Clause and the Rule Against Hearsay

#### 1.   The Statements on the Joyce Huang Recording Are Testimonial In Nature and Are Thus Barred by The Confrontation Clause

The Confrontation Clause bars Joyce Huang's interview recording from being admitted. As Jinhua established in its previous briefing, "testimonial" statements of witnesses who are absent from trial are inadmissible unless the declarant is unavailable and the defendant had a previous opportunity to cross examine them. *See* Def.'s Suppl. Mem. in Further Supp. of Mot. *In Lim.* No. 6 (ECF 328), at 2–4. Statements are testimonial when "circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

The Supreme Court has expressly held that **"statements to persons other than law enforcement officers are subject to the Confrontation Clause."** *Ohio v. Clark*, 576 U.S. 237, 246 (2015) (emphasis added). Moreover, the "primary purpose" test is not limited to the declarant's

2

intent—it is "the primary purpose of the conversation" that matters. *Id.* at 247; *Michigan v. Bryant*, 562 U.S. 344, 367 (2011) ("In addition to the circumstances in which an encounter occurs, the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation."); 30 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 6533 (2d ed. April 2021 update) ("Motives count. And those motives are not limited to the declarant.").

Accordingly, statements made in the course of an internal corporate investigation, like those at issue here, are clearly testimonial in nature. As a leading treatise has explained:

> Companies routinely engage in in-house investigations that are designed to uncover internal wrongdoing without any knowledge of, or assistance by, law enforcement. Undoubtedly, a prime purpose is to identify malefactors and terminate them as quickly as feasible, without law enforcement intervention (and the bad publicity that follows). **Nonetheless, if those same persons are criminally prosecuted it is likely that** . . . **recorded statements by witnesses** . . . **during the investigation will be declared testimonial hearsay. When beginning an investigation, it may be unclear whether it will result in a referral to law enforcement or an internal resolution, yet any investigation into criminal wrongdoing will generate statements and records that by definition have a primary purpose to assist in any (eventual) prosecution**.

30 Wright et al., *supra*, § 6634 (emphasis added).

This reasoning is especially applicable here because an active criminal investigation had already commenced by the time Joyce Huang and Mr. Guo were interviewed. As the government has admitted, UMC's in-house counsel initiated the investigation "to find out whether any infringement of any other third party's business secrets actually occurred within the company." Gov't Mot. *In Lim.* No. 2, Ex. C (ECF 237-3), at 4. These "circumstances objectively indicate that . . . the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822.

Indeed, Mr. Huang explained on one of the recordings that his goal in conducting the interviews was to find out who "gave the instruction" about the laptops because "whoever did it must bear the responsibility" themselves and not "let the company get burned." Gov't Mot. *In Lim.* No. 2, Ex. A (ECF 237-1), at 9–10. Mr. Huang also told the Taiwanese investigators that the fear of being

3

"**subjected to criminal prosecution . . . was one of my motives for recording internal investigations**." Gov't Mot. *In Lim.* No. 2, Ex. C (ECF 237-3), at 10 (emphasis added). In other words, Mr. Huang conducted the interviews so that he could identify any wrongdoers and turn them in to the authorities and he recorded the interviews to insulate himself from criminal prosecution. Therefore, Mr. Huang's "statements and actions . . . provide objective evidence [that] the primary purpose of the interrogation" was testimonial. *Bryant*, 562 U.S. at 367.

In addition, the statements made during Joyce Huang's interview were testimonial because an objective person in her position would have understood that her statements could be available for future prosecution. Mr. Huang opened the interview by making sure that Joyce knew about the search of UMC's facilities, and then explained: "This case . . . involves two laptop computers . . . why did you have [the] laptop computers . . . in your possession." Gov't Mot. *In Lim.* No. 2, Ex. A (ECF 237-1), at 2. Joyce also knew that she was being questioned by UMC's in-house counsel—someone whose allegiance was to UMC and its interest. Joyce was asked to implicate JT Ho and Neil Lee. Later in the interview, Joyce told Mr. Huang that "because of [the] case" she had become "concerned that" the laptops were "still under [her] name" so she had "tried asking" about them. *Id.* at 5. In sum, because "[s]he knew of the ongoing investigation and made her statement[s] 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" Joyce's statements were testimonial. *United States v. Esparza*, 791 F.3d 1067, 1073 (9th Cir. 2015) (quoting *Crawford v. Washington*, 541 U.S. 36, 55, 65 (2004)).

Likewise, the primary purpose of the discussion between Mr. Huang and unnamed participants after Joyce hung up the line was also testimonial. Mr. Huang—who knew the conversation was being recorded, intended to turn the recording over to law enforcement, and sought to exculpate himself—elicited various responses from the other participants on the recordings. *See Clark*, 576 U.S. at 247; *Bryant*, 562 U.S. at 367; 30 Wright et al, *supra*, § 6533. The unnamed participants knew about the investigation into UMC because Mr. Huang opened the interview of Joyce by describing it. They also knew that the goal of the interview was to respond to the government investigation by identifying who was responsible so that Mr. Huang could deflect blame

4

**JINHUA'S SUPP. MEM. OF LAW OPP MOT. *IN LIMINE* NO. 2
RE: AUDIO RECORDINGS**    CASE NO.: 3:18-CR-00465-MMC

from himself and UMC. For example, one of the anonymous participants worried that the investigators might "suspect" UMC of having given the order about the laptops. Gov't Mot. *In Lim.* No. 2, Ex. A (ECF 237-1), at 9. The participants considered the need to "sever[] from the company . . . unscrupulous employees." *Id.* at 9, 13. They discussed Mr. Ho and Mr. Wang "accusing, accusing, accusing" LT Rong. *Id.* at 17. Therefore, "the primary purpose of the conversation" was testimonial. *Clark*, 576 U.S. at 247.

    2. <u>The Rule Against Hearsay Bars Admission of the Statements on the Joyce Huang Recording</u>

Even if portions of the Joyce Huang interview were determined not to be testimonial, the hearsay rules bar admission of the entire interview. The government seeks to introduce these out of court statements to prove that employees at UMC were allegedly issued "secret" laptops for storing and using Micron trade secrets. As demonstrated below, none of the exclusions or exceptions to the Rule Against Hearsay, including Federal Rules of Evidence 801(d)(2)(D) and (E), apply.

*First*, because the government cannot identify who made each specific statement—the "transcript" identifies three of the participants only as "UM," "UF," and "UF2," and the government has no percipient witness who can identify whom these declarants were—it cannot show that the statements were made by a Jinhua agent or coconspirator. *See United States v. Mouzin*, 785 F.2d 682, 693 (9th Cir. 1986); *see also Canton v. Kmart Corp.*, 470 F. App'x 79, 85 (3d Cir. 2012); *cf. United States v. Clark*, 31 F.3d 831, 834 (9th Cir. 1994) ("[H]earsay from an unknown informant is highly suspect").

*Second*, as Jinhua has previously explained, basic agency principles doom the government's argument that Mr. Huang, Joyce Huang, and the unidentified participants were Jinhua's agents for purposes of Rule 801(d)(2)(D). *See* Def's Opp'n to Mot. *In Lim.* No. 2 (ECF 275), at 12–14. The government cannot show that Jinhua assented to every UMC employee and agent—*especially* those not privy to the alleged conspiracy—acting on its behalf. Nor is there any indication that Jinhua controlled *UMC* employees working on Project M—much less in-house counsel and other

5

unidentified UMC employees conducting an internal investigation.[1] Therefore, Rule 801(d)(2)(D) is inapplicable here.

*Third*, Mr. Huang, Joyce Huang, and the unidentified participants were not Jinhua's coconspirators for purposes of Rule 801(d)(2)(E). Jinhua never entered into a criminal conspiracy with UMC, or any UMC employees. *See* Def's Mot. *In Lim.* No. 6 (ECF 248), at 5–7; Def's Opp. to Mot. *In Lim.* No. 2 (ECF 275), at 14–16. Even assuming *arguendo* that Jinhua joined a criminal conspiracy, there is no evidence whatsoever (besides the hearsay statements on the recordings) that Joyce Huang, Mr. Huang, or the unnamed participants had any connection to the alleged conspiracy to steal Micron's trade secrets. *See* Def's Mot. *In Lim.* No. 6 (ECF 248), at 5–7; Def's Opp'n. to Mot. *In Lim.* No. 2 (ECF 275), at 15–16; Def's Reply in Supp. of Mot. *In Lim.* No. 6 (ECF 305), at 4–5. And even the recordings only show Mr. Huang and the unnamed participants seeking to root out illegal activities from UMC, while Joyce Huang merely fulfilled her ministerial secretarial role by procuring two laptops when requested.

*Fourth*, a common enterprise with a wholly lawful object—as was Jinhua's understanding of its agreement with UMC—is not a Rule 801(d)(2)(E) "conspiracy" that might permit statements of alleged coconspirators to be admitted. In enacting Rule 801(d)(2)(E), the Senate Judiciary Committee explained: "While (this) rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged." 30 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (Evidence) § 6778 (2d ed. April 2021 update) (quoting S. Rep. No. 93-1277, 93d Cong., 2d Sess. 24, Reprinted in (1974) U.S. Code Cong. & Admin. News, pp. 7051, 7073).

---

[1] Even if there had been an agency relationship between Jinhua and the participants of the UMC internal investigation, that relationship terminated when the Taiwanese authorities raided UMC and UMC launched an internal investigation aimed at uncovering criminal conduct. *See* Def.'s Suppl. Mem. in Further Supp. of its Mot. *In Lim.* No. 6 (ECF 328), at 11–15; Def's Opp'n to Mot. *In Lim.* No. 1 (ECF 274), at 18.

*(cont'd)*

"What the Senate Report makes clear is that despite the explicit inclusion of the word 'conspiracy' in the codified Exception, the drafters did not intend to limit the scope of the Exception to charged conspiracies. Under Rule 801(d)(2)(E), a 'conspiracy' may be uncharged, but it must still be a conspiracy." Ben Trachtenberg, *Coconspirators, "Coventurers," and the Exception Swallowing the Hearsay Rule*, 61 Hastings L.J. 581, 607 (2010).[2] Significantly, "Rule 801(d)(2)(E) uses the term 'conspiracy' – a term that has unmistakably illicit undertones." 30 Wright et al., *supra*, § 6778. Therefore, while a Rule 801(d)(2)(E) "conspiracy" does not require a charged conspiracy, at a minimum, it does require a joint venture with an illicit purpose.

As the Court has recognized, *United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988), states that a "conspiracy" under Rule 801(D)(2)(E) "need not have an illegal objective." *Id.* at 1398. However, *Layton* is distinguishable. *Id.* at 1398. Although the language in *Layton* is broad, the common enterprise at issue there was far from innocent—"the Government had proffered sufficient evidence to establish that [Jim] Jones and Layton had participated in a conspiracy to prevent the Ryan [congressional] delegation from discovering the truth about the conditions at Jonestown" that ended in the Congressman's death. *Id.* Because the issue before the court was whether to admit statements from a coconspirator to a common enterprise with an illicit objective—preventing a Congressman from learning the truth about a suicidal cult—this Court is not bound by the "dicta" contained in the "[e]xpressions in the [*Layton*] court's opinion which go beyond the facts before the court."[3] *Export Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1472 (9th Cir. 1995) ((alteration in original)

---

[2] The two cases cited by the Senate Judiciary Committee in support of the "universally accepted doctrine" are in accord. One concerned "an illegal joint enterprise, which [made] statements by any member of the venture admissible against the others and each of them, whether or not a conspiracy [was] charged," *United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir. 1968), and the other involved "a common enterprise, with the objective of dealing in and disposing of narcotics" that constituted a "joint criminal venture," *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969).

[3] This interpretation of *Layton* was implicitly recognized in *United States v. Peralta*. 941 F.2d 1003 (9th Cir. 1991). There, the defendant challenged the admission of statements under Rule 801(d)(2)(E) after the district court entered a judgment of acquittal of the conspiracy charge against the declarant. *See id.* at 1005. Rather than adopt a broad interpretation of *Layton* and hold that an acquittal was irrelevant because Rule 801(d)(2)(E) applies even when there is a wholly lawful purpose, the court held "that if a district court is persuaded by a preponderance of the evidence that the declarant and the accused were members of a conspiracy, the declarant's statement is admissible

*(cont'd)*

7

quoting *Black's Law Dictionary*, 454 (6th ed. 1990)); *see also* Trachtenberg, *supra*, at 624–26 (discussing a broad survey of 2,516 federal cases concerning Rule 801(d)(2)(E) that found only two instances of admission where the object of the conspiracy was not illegal).[4]

*Fifth*, even if the lawful cooperation agreement between Jinhua and UMC could constitute a Rule 801(d)(2)(E) "conspiracy," this "conspiracy" was entirely separate from the internal criminal conspiracy allegedly perpetrated by various UMC employees. Because the government cannot show that Jinhua knew of the alleged conspiracy to create DRAM technology using stolen trade secrets, Jinhua "cannot be made to answer for any and all other conspiracies into which [UMC] may have entered, even if such other conspiracy ha[d] similar goals." *United States v. Lopez-Zamubio*, No. CR 97-2341-MLH, 1999 WL 417894, at *2, *6 (9th Cir. June 21, 1999) (table).

*Sixth*, even if there was a conspiracy in which Jinhua was a participant, the statements were not in furtherance of the conspiracy because the express purpose of the interview was to uncover any past use of trade secrets and turn the perpetrators over to law enforcement. *See Fiswick v. United States*, 329 U.S. 211, 217 (1946). The government has failed to identify any part of the interview with Joyce Huang or the colloquy between the lawyers that follow it that could further the conspiracy. *See* Def's Mot. *In Lim.* No. 6 (ECF 248), at 9. The statements by Mr. Huang were solely about past events, and the colloquy by the lawyers after they dismissed Joyce Huang discuss their findings from interviewing other witnesses. All are therefore inadmissible hearsay. *See* Def's Opp'n to Mot. *In Lim.* No. 2 (ECF 275), at 12–17.

---

notwithstanding the fact that the court concludes that the evidence is insufficient under the reasonable doubt standard to support a *conviction* of the declarant of the crime of conspiracy." *Id.* at 1007. That is, although *Peralta* expressly relied on *Layton*, it impliedly held that Rule 801(d)(2)(E) only applied when there is evidence of an unlawful conspiracy even if it is not enough evidence to convict—not that Rule 801(d)(2)(E) is untethered from an illicit purpose.

[4] The government's reliance on *Layton* is particularly inapt here. In *Layton*, the defendant signed a petition circulated by Jim Jones pledging to conceal the conditions at Jonestown, making the defendant and Jones each the agent of the other to promote the conspiracy. 855 F.2d at 1393. By contrast, here, as explained above, there was no agency relationship between Jinhua and the declarants on Mr. Huang's recordings. Therefore, the Court should reject the government's "efforts to broaden" Rule 801(d)(2)(E) to apply the fictional agency theory to bind a principal in a wholly lawful common enterprise to the statements made by its fictional agent's agent. Fed. R. Evid. 801(d)(2)(E) Advisory Comm. Note; *see* Def's Reply in Supp. of Mot. *In Lim.* No. 6 (ECF 305), at 4–5.

8

*Finally*, when a hearsay statement itself contains hearsay, each level "must conform to an exception in order for the testimony to be admissible." *United States v. Orm Hieng*, 679 F.3d 1131, 1142 (9th Cir. 2012) (citing Fed. R. Evid. 805). Here, much of the recording contains multiple levels of hearsay. For example: (i) the participants discussed information they had learned from others about the amount of data allegedly downloaded from Micron; (ii) UF informed the group that IT told her about Chen asking to bring his private laptop into work and that Chen's secretary had told her that one of the laptops was lost; and (iii) Mr. Huang discussed information someone had told him about Mr. Wang sending information when he was still with Micron. *See* Gov't Mot. *In Lim.* No. 2, Ex. A (ECF 237-1), at 8, 10–11, 13–14, 17. Therefore, even if the participants in the interview were Jinhua's agents or coconspirators, the government cannot show that an exception to the Rule Against Hearsay applies to the second and third levels of hearsay contained in the recording.[5]

### B. The Statements Made During the Interview of Mr. Guo Are Barred By Both the Confrontation Clause and the Rule Against Hearsay

#### 1. Most of The Statements on the Guo Recording Are Testimonial In Nature and Are Thus Barred by The Confrontation Clause

For many of the same reasons as discussed above, Mr. Guo's interview by Mr. Huang, Mr. Chen, and others was also testimonial. UMC had just been raided by the Taiwanese government, and Mr. Guo was called in for a meeting with in-house *and* outside counsel. A primary purpose was to "establish or prove past events potentially relevant to later criminal prosecution," *Davis*, 547 U.S. at 822—indeed, this was Mr. Huang's stated reason for recording the interview. Gov't Mot. *In Lim.* No. 2, Ex. C (ECF 237-3), at 6, 10.

The specifics of Mr. Guo's interview demonstrate that an objective person in his position would have understood his interview to be about establishing past events relevant to a later prosecution. At the beginning of the "transcript," Mr. Guo was asked whether he had brought over

---

[5] Many of the statements are also inadmissible under Federal Rule of Evidence 701, which precludes a lay witness from "testify[ing] based on speculation." *United States v. Vera*, 770 F.3d 1232, 1242 (9th Cir. 2014). For example, the participants speculated as to how UMC employees were "able to read Micron's stuff," why the laptops were not detected, whether one of the laptops was actually lost, whether UMC could avoid blame, and why someone would bring trade secrets into the company. Gov't Mot. *In Lim.* No. 2, Ex. A (ECF 237-1), at 8, 9, 11, 13, 14, 15.

9

"any information from Micron?" Gov't Mot. *In Lim.* No. 2, Ex. B (ECF 237-2), at 2. He was also questioned at length about the public laptops. *See id.* at 6–11. Far from responding casually, as was suggested at one of the hearings, when Mr. Guo was asked who knew about the laptops, he responded, "Am I allowed to say it?" *Id.* at 7. No one asks permission when making a "casual remark to an acquaintance." *Crawford*, 541 U.S. at 51. Mr. Guo's reticence confirms that he "reasonably . . . believe[d] that the statement would be available for use at a later trial." *Id.* at 52 (citation omitted).

To be sure, as this Court has recognized, at times "the tone of that interview of Ray Guo . . . was a little bit more [like] everybody's kind of on the same . . . level." Hr'g Tr. 111:1-3, Jan. 18, 2022. However, as the Court also recognized, the protections afforded by the Confrontation Clause do not turn on the tone of the interview.[6] First, "this could be an interview technique" to "put [Mr. Guo] at ease." *Id.* at 111:4-5. Second, a primary purpose of the interview was mining for information implicating others, including Mr. Wang and Mr. Ho, for stealing Micron information and using the laptops. A testimonial statement does not require an overt interrogation or an accusation of wrongdoing. Instead, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are testimonial. *Crawford*, 541 U.S. at 52 (citation omitted). Thus, victim statements made to police in a 911 call "after the operator gained the information needed to address the exigency of the moment" are testimonial. *Davis*, 547 U.S. at 828. Considering the raid of UMC, the presence of in-house and outside counsel, and the questions seeking to implicate others, Mr. Guo's statements during the interview were clearly testimonial and must be excluded pursuant to the Confrontation Clause.

---

[6] Moreover, many portions of the recording exhibited classic signs of a more formal interview. As explained above, Mr. Guo was questioned about whether he brought "over any information from Micron." Gov't Mot. *In Lim* No. 2, Ex. B (ECF 237-2), at 1. He "admit[ted]" to knowing about the laptops. *Id.* at 6. He then asked whether he was "allowed" to discuss the laptops. *Id.* at 7. He asked for legal advice about whether he could talk to Mr. Wang. *See id.* at 13–17. He was given legal advice on how to handle a police interrogation. *See id.* at 17–18. He asked for an explanation of the Micron indictment. *See id.* at 18–19. While Mr. Guo was not in handcuffs, he also was not making "casual remark[s] to an acquaintance." *Crawford*, 541 U.S. at 51.

10

2. The Rule Against Hearsay Bars Admission of the Statements on the Guo Recording

As with Joyce Huang's interview, even if some statements in the Guo interview were not testimonial, the hearsay rules bar their admission on multiple independent grounds. *First*, the government's transcript identifies "UM1," "UM2," and "UM3," but does not identify who made each specific statement. Therefore, it cannot show that the statements were made by an agent or coconspirator. *See Mouzin*, 785 F.2d at 693; *see also Canton*, 470 F. App'x at 85 ("The inability to identify the speaker of the statements . . . undermines any notion that this hearsay statement is reliable.").

*Second*, Jinhua has already demonstrated that Mr. Guo and Mr. Huang were never employees or agents of Jinhua. *See supra*, at 5–6; Def's Mot. *In Lim.* No. 6 (ECF 248), at 13–17; Def.'s Opp'n to the Gov't's Mot. *In Lim.* No. 1 (ECF 274), at 6–7, 10–13; Def's Opp'n to Mot. *In Lim.* No. 2 (ECF 275), at 11–14. And the government cannot credibly claim that Jinhua consented to an agency relationship with UMC's internal or outside counsel or exercised control over them. *Supra*, at 5–6.

*Third*, Mr. Guo did not join any conspiracy involving Jinhua. Besides hearsay statements, the only evidence the government has to link Mr. Guo to the alleged conspiracy is that he possibly participated in Jinhua's R&D Talent Retention Fund. *See* Hr'g Tr. 112:18-19, Jan. 18, 2022 (noting that the only evidence the government has is "a partially signed agreement and his trip to the bank"). For the reasons explained in prior briefing, this falls far short. *See* Def.'s Opp'n to the Gov't's Mot. *In Lim.* No. 1 (ECF 274), at 5–7, 10–12; Def.'s Mot. *In Lim.* No. 6 (ECF 248), at 13–15. In fact, in his interview, Guo told investigators that he disposed of Micron's information when he left the company, and that he did not know whether Wang took Micron information. *See* Gov't Mot. *In Lim.* No. 2, Ex. B (ECF 237-2), at 1, 5. Because the government cannot show an "agreement" between Jinhua and Mr. Guo "to commit an unlawful act," *Iannelli v. United States*, 420 U.S. 770, 777 (1975), it cannot satisfy its burden of showing that Mr. Guo was Jinhua's coconspirator for purposes of Rule 801(d)(2)(E).

1  *Fourth*, the government cannot show that UMC's inside or outside counsel were part of a
2  conspiracy with Jinhua. They were not part of Project M and there is no indication that they entered
3  into any agreement with Jinhua—let alone without considering the hearsay statements on the
4  recording itself. *See United States v. Mikhel*, 889 F.3d 1003, 1049 (2018). Most importantly, Jinhua
5  cannot be held to have conspired with outside counsel for UMC, who had little to no direct contract
6  with Jinhua, and only had an engagement letter with UMC, not Jinhua.

7  *Fifth*, the statements by Mr. Guo, Mr. Huang, and outside counsel were not in furtherance of
8  the alleged conspiracy. *See* Def's Opp'n to Mot. *In Lim.* No. 2 (ECF 275), at 17. Most of the interview
9  was focused on asking Mr. Guo questions about past illegal conduct. *See Fiswick*, 329 U.S. at 217.
10 And while Mr. Guo was advised to turn over the laptop to Stephen Chen's secretary, it is unclear
11 why or by whom this direction was given (it may have been to keep the computer safe). There is no
12 evidence that it was in furtherance of the alleged conspiracy to steal Micron's trade secrets.

13 **IV.  CONCLUSION**

14  For the reasons set forth above, as well as the reasons provided in the previous briefing
15 submitted by Jinhua on this matter, the Court should deny the government's Motion *In Limine* No.
16 2 as to admissibility, and exclude the recordings made during UMC's internal investigation because
17 they violate the Confrontation Clause and constitute impermissible hearsay.

20 Dated: February 25, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By:  */s/ Jack P. DiCanio*
JACK P. DICANIO
Attorney for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

12

**JINHUA'S SUPP. MEM. OF LAW OPP MOT. *IN LIMINE* NO. 2
RE: AUDIO RECORDINGS**

CASE NO.: 3:18-CR-00465-MMC