JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:     (650) 470-4500
Facsimile:     (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:     (213) 687-5000
Facsimile:     (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 3:18-cr-00465-MMC |
| Plaintiff, | |
| v. | **DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S MOTION TO EXCLUDE EXHIBIT P1168** |
| UNITED MICROELECTRONICS CORPORATION, *et al.*, | |
| Defendants. | Judge: The Honorable Maxine M. Chesney |
| | Trial Date: February 28, 2022 |

1

1    The government is seeking to admit Exhibit P1168, an email from UMC employee Jeff Ochen

2    to UMC employee CS Chang, attaching an Excel file. Mr. Ochen provides no description or

3    explanation of the spreadsheet in his email. Nor does the government intend to present testimony

4    from Mr. Ochen. Instead, the government is relying on the testimony of Mr. Chang, Federal Rules

5    of Evidence Rule 902(13) and 803(6), and/or the "Certificate of Foreign Records of a Regularly

6    Conducted Activity Pursuant to 18 U.S. C.  § 3505," ("Foreign Records Certificate") marked as

7    Exhibit P1517, to admit Exhibit P1168.

8    On March 2, 2022, Jinhua objected to the introduction of Exhibit P1168 because (1) Mr.

9    Chang lacked sufficient information to authenticate the document, and (2) because the document was

10   not a business record. The Court invited the parties to provide further briefing on the issue.

11   As discussed in court and in more detail below, Mr. Chang's testimony, Rules 902(13) and

12   803(6), and the Foreign Records Certificate are insufficient to authenticate the exhibit, and P1168

13   should not be admitted.

14   **I.    The Government Has Failed to Offer Sufficient Evidence to Authenticate P1168**
       **Under Rule 901.**

15

16   The government has not "produce[d] evidence sufficient to support a finding that the [email

17   and attached spreadsheet] is what [it] claims it is"—an accurate and properly created Smart IT log

18   showing a record of Ho and Lee's USB usage.  Fed. R. Evid. 901(a).  The government attempted to

19   introduce exhibit P1168 through Mr. Chang, an individual who received the log in question. But Mr.

20   Chang has never—before or after the email in P1168—received another such log; nor could he testify

21   as to how this specific log was created. Typically, in situations like these, to satisfy Rule 901, the

22   government would simply present testimony from Mr. Ochen, the person who purportedly created

23   the alleged log, stating what the attachment is and how it was created. The government chose not to

24   do that. But without producing the person who actually created the log, whether that be Mr. Ochen

25   or someone else, the government cannot establish that P1168 is what it claims it to be—namely, an

26   accurate log detailing Ho and Lee's USB usage—and thus, cannot admit P1168.

27   First, as the Court saw yesterday, Mr. Chang cannot authenticate the document. All Mr.

28   Chang was able to testify to is that he asked Mr. Ochen to generate a Smart IT log and that, in return,

1   Mr. Chang received a spreadsheet containing certain entries. (Trial Tr. Vol. 3 at 569:2-9; 20-22.)[1]

2   Mr. Chang could not testify to how the spreadsheet was created or saved, except that Mr. Chang

3   indicated that he believed that Mr. Ochen had to "search within the database and extract the

4   information that was needed." (*Id.* at 537:22-538:1.)  There is no testimony about what those searches

5   may have been. Mr. Chang was unable to say whether Mr. Ochen properly followed the steps

6   necessary to generate the log. Mr. Chang was unable to say what a Smart IT log should look like

7   generally because excluding this particular log in P1168, Mr. Chang did not recall ever seeing a

8   Smart IT log before. (*Id.* at 576:2-4.)  Put simply, Mr. Chang "lacks personal knowledge of" what

9   happened between his request for Mr. Ochen to generate the log and his receipt of a spreadsheet from

10   Mr. Ochen. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). Therefore, P1168

11   cannot be admitted based on the testimony of Mr. Chang. *See Thompson v. Bank of Am. Nat. Ass'n*,

12   783 F.3d 1022, 1027 (5th Cir. 2015) (holding that logs not generated by the affiants were

13   unauthenticated).

14        Mr. Chang's lack of knowledge is summarized in the below exchanges:

15        Q:    In order to get the log file, does the person running the program have to do
              something more than enter the name of or number of the computer you're
16              interested in?

17        A:    ***I don't know because I don't do that myself***, but I did tell Jeff Ochen the name
              of the computer." (Trial Tr. Vol. 3 at 574:5-10.) (emphasis added)
18                              *       *       *       *       *

19        Q:    And you can pull it by other criteria, if you chose to?

20        A:    ***I'm not sure because I'm not super familiar with this system***. (*Id.* at 574:18-
              21.) (emphasis added)
21                              *       *       *       *       *

22

23   ————————————————————

24        [1]      The court inquired about whether the request was Mr. Chang's or whether Mr. Chang
     was making the request on someone else's behalf and whether that would change the analysis. It
25   does not. Mr. Chang asked for a log, but does not have sufficient familiarity with the system as to
     know whether what he received was actually a true and correct copy of the log he requested. This is
26   the same whether Mr. Chang asked for the log or whether he was making the request on someone
     else's behalf. Moreover, it is unclear who decided to ask for the logs—Mr. Chang, Mr. Chou, or
27   someone else. Mr. Chang's testimony was vaguely that "*we* decided to look at the USB log," possibly
     referring to Mr. Chou, but he does not specify whether it was his idea, or someone else's, to have the
28   logs generated. (Trial Tr. Vol. 3 at 568:2-3.) (Emphasis added.)

Q:     Other than this case, have you seen log files?

A:     I don't remember. (*Id.* at 576:2-4.)

More importantly, even if the government could find someone who could testify as to the general steps necessary to create a Smart IT log, the searches one would use, and that this log generally looks like the logs generated from the Smart IT system (the government proffered maybe its expert could), that witness would not be able to testify **whether Mr. Ochen followed those general steps and that what is attached to the email in P1168 is, actually, a true and accurate copy of the Smart IT log generated from JT Ho and Neil Lee's computers**.

Only Mr. Ochen, who attached the log to the email—or whomever else may have created the log—has the potential to describe what he did to pull the log, what searches or search terms he used, and what, if anything he did to the log before he sent it to Mr. Chang. No expert can establish whether Mr. Ochen entered the right data into the Smart IT system. *United States v. Lizarraga-Tirado*, 789 F.3d 1107, 1110 (9th Cir. 2015) ("A proponent must show that a machine is reliable and correctly calibrated, and that the data put into the machine (here, the GPS coordinates) is accurate."); *see also United States v. Washington*, 498 F.3d 225, 231 (4th Cir. 2007) (explaining that authentication of machine generated information "require[es] the proponent to show that the machine and its functions are reliable, that it was correctly adjusted or calibrated, and that the data . . . put into the machine was accurate").

Even if the government could get a declaration from Mr. Ochen, that declaration would be insufficient. Assuming what Mr. Chang said was correct, this is not a situation where you press a button and a report is generated. Various searches or queries must be utilized in order to generate this type of log. And the courts are clear—in such situations, a declaration under Rule 902(13) is insufficient to authenticate the documents.[2]

---

[2]     Additionally, for reasons briefed at length by Jinhua in prior filings, there would be a confrontation clause issue with Mr. OChen providing such a testimonial declaration without the ability to be cross-examined. *See, e.g.*, *United States v. Bustamante*, 687 F.3d 1190, 1194 (9th Cir. 2012) (holding that that a certification from a Civil Registrar's office that an employee had checked records and summarizing a birth certificate was a testimonial affidavit).

1    Nor can an expert show that the email attachment in P1168 is the log created by the Smart IT

2    system. Indeed, the log file bears no indication of having been created by specialized software. The

3    so-called "log file" is a basic Excel spreadsheet. Anyone could have created it. Excel spreadsheets

4    can also be edited—columns and rows can be deleted or added—after they are created. Only Mr.

5    Ochen can establish that he inputted the correct data into the Smart IT server, that the Smart IT

6    system produced the spreadsheet, and that the spreadsheet was not edited before being attached to

7    the email. *See United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (authenticating evidence

8    because a witness "explained how he created the logs with his computer and stated that the printouts,

9    which did not contain the deleted material, appeared to be an accurate representation of the chat room

10    conversations.").

11    **II.      P1168 Is Not Self-Authenticating Under Rule 902(13).**

12    Rule 902(13) provides for self-authentication of "[a] record generated by an electronic

13    process or system that produces an accurate result, as shown by a certification of a qualified person

14    that complies with the certification requirements of Rule 902(11) or (12). Fed. R. Evid. 902(13). "A

15    proponent establishing authenticity under this Rule must present a certification containing

16    information that would be sufficient to establish authenticity were that information provided by a

17    witness at trial. If the certification provides information that would be insufficient to authenticate the

18    record if the certifying person testified, then authenticity is not established under this Rule." Fed. R.

19    Evid. 902, Advisory Comm. Note, para. 13.

20    The government has not satisfied Rule 902(13). The Foreign Records Certification, Exhibit

21    P1517, only establishes that that UMC regularly maintains emails; the certification does not attest to

22    the accuracy of all electronically generated records mentioned or included in the thousands of

23    documents referenced in the certification. It says nothing about the Smart IT system, how those

24    records are generated, and how the specific log was generated in this case.

25    What is more, there is no indication whether Hsin Hong Chou ("HH Chou"), who signed the

26    Foreign Records Certification, would even know how the Smart IT systems operates. Mr. Chang

27    noted that Mr. Ochen is the Smart IT administrator, (Trial Tr. Vol. 3 at 537:20-21; 569:7-9), but there

28    is no evidence whether or what role Mr. Chou has with respect to the Smart IT program or the

4

1  department at UMC of which Mr. Ochen is a member. So it could be that the only UMC employee

2  who even *potentially* has the requisite knowledge to testify about the operation of Smart IT's systems

3  is Mr. Ochen.  (And the Court has no admissible evidence that he is even the person who created the

4  log or that he has the specialized training and experience in the Smart IT system to create an accurate

5  log.)

6        But crucially, ***even if*** the government proffers a new certificate under Rule 902(13) with these

7  details, that certification does not authenticate the ***specific version*** of the log that is attached to Mr.

8  Ochen's email which was, again, a document that may have been created based on specific inputs

9  that only Mr. Ochen (or its author, if someone other than Mr. Ochen) knows, and could be freely

10  edited by Mr. Ochen after it was generated and before it was sent to Mr. Chang. This is not an

11  immutable electronic record that was pulled and sent to Mr. Chang. Thus, Rule 901(13) does not

12  apply here. *See United States v. Weber*, 21-cr-28, 2021 WL 5772328, at *4 (D. Mont. Dec. 6, 2021)

13  (explaining that "content [that] arises not from an automatic electronic process but from the actions

14  of the user of the account . . . is not the sort of evidence generated by electronic process that falls

15  within the scope of Rule 902(13).");  31 Wright & Miller, Prac. & Proc. Evid. § 7147 (2d ed.)

16  ("Human involvement usually is limited to creating a printout or copy of that record for purposes of

17  offering into evidence . . . Rule 902(13) applies in such a situation because the potential for human

18  error or manipulation is not a factor in generating the data.").

19  **III.   P1168 Is Not a Business Record Under Rule 803(6) or § 3505.**

20        The Foreign Records Certificate (Exhibit P1517) purports to certify *en masse* a catalogue of

21  hundreds of documents—consisting of emails and email attachments—as records of a regularly

22  conducted activity under 18 U.S.C. § 3505 and Federal Rule of Evidence 803(6).[3] Exhibit P1168

23  appears in the Foreign Records Certificate at P1517.020 and is described as: (1) "Email Thread of

24  12/04/2015 regarding USB"; and (2) "Attachment IST.xlsx."

25

26

---

27        [3]     Jinhua saves for another day its objections to any and all documents included in this
28  certification, and will object, as it has, as the government seeks to offer these documents into
   evidence at trial.

The hearsay exception under Rule 803(6) and § 3505(a)(1) rests on the premise that such records are made reliable by "systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." Fed. R. Evid. 803(6) Advisory Comm. Note. Paralleling the Rule 803(6) business records exception to the hearsay rules, § 3505(a)(1) provides:

> In a criminal proceeding in a court of the United States, a foreign record of regularly conducted activity, or a copy of such record, shall not be excluded as evidence by the hearsay rule if a foreign certification attests that--
>
> (A) such record was made, at or near the time of the occurrence of the matters set forth, by (or from information transmitted by) a person with knowledge of those matters;
>
> (B) such record was kept in the course of a regularly conducted business activity;
>
> (C) the business activity made such a record as a regular practice; and
>
> (D) if such record is not the original, such record is a duplicate of the original;
>
> unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

18 U.S.C. § 3505(a)(1).

P1168 does not satisfy these standards. To begin, emails are not automatically admissible under the business records hearsay exception. *Monotype Corp. PLC v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994) (noting that "e-mail is far less of a systematic business activity than a monthly inventory printout" but rather is "an ongoing electronic message and retrieval system."). Instead, "[t]he analysis of email, like any other document that finds its way into an organization's files, depends on a record-by-record analysis." 30B Wright & Miller, Prac. & Proc. Evid. § 6864 (2021 ed.). In *United States v. Lischewski*, 860 F. App'x 512 (9th Cir. 2021), for example, the Ninth Circuit held that the district court did not abuse its discretion in admitting an email as a business record because the district court reasonably concluded that the email was written "'at or near the time' of the conversation," and that the "email was kept in the course of a regularly conducted activity of a business and was prepared as part of the business's regular practice." *Id.* at 516; *see also* Trial Tr. Vol. 3, at 508:4-6 ("[E]-mails ordinarily are not . . . a business record.").

Thus, the email in P1168 is not a business record notwithstanding the conclusory certification in P1517. It is "insufficient to survive a hearsay challenge simply to say that since a business keeps

6

1  and receives e-mails, then ergo all those e-mails are business records falling within the ambit of Rule

2  803(6)(B)." *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013); *see also United States v.*

3  *Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019) ("An email is not a business record for purposes of

4  the relevant hearsay exception simply because it was sent between two employees in a company or

5  because employees regularly conduct business through emails; such evidence alone is insufficient to

6  show that the email is a record, made as 'a regular practice' of the company, and that 'the record was

7  kept in the course of a regularly conducted activity of a business.'").

8       And the attachment to P1168 does not contain indicia of trustworthiness. As noted above,

9  there is no evidence as how the Smart IT system works, any limitations in the system, how the

10  spreadsheet was created from the Smart IT system in this instance, whether Mr. Ochen (or its true

11  author, if someone different from Mr. Ochen) properly followed the steps necessary to generate the

12  log, or whether Mr. Ochen (or it author) edited the spreadsheet before sending it (and if so, how). In

13  short, there is no evidence as to the accuracy and trustworthiness of *this particular* SmartIT log.

14  Therefore, P1168 cannot be admitted as a business record of regularly conducted activity.

15  **CONCLUSION**

16       For the reasons set forth above, the Court should exclude the Excel spreadsheet labeled

17  P1168.

18  Dated: March 3, 2022

19          SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

20

21

22          By: _____*/s/ Jack P. DiCanio*_____

23                  JACK P. DICANIO
              Attorney for Defendant
      FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

24

25

26

27

28

7