STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Laura.Vartain@usdoj.gov
    Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 353-3434
    Fax: (202) 233-2146
    Nicholas.Hunter@usdoj.gov
    Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD,<br><br>    Defendant. | CASE NO. 18-CR-00465 MMC<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE HEARSAY STATEMENTS IN THE "MEETING MINUTES" CONTAINED IN EXHIBIT P0482<br><br>The Honorable Maxine M. Chesney<br>Courtroom 7, 19th Floor |

UNITED STATES' OPP. TO DEF.'S MOT. TO EXCLUDE
MEETING MINUTES IN EX. P0482
18-CR-00465 MMC

**INTRODUCTION**

Exhibit P0482 is a foundational document of the conspiracy to steal Micron's DRAM process flow technology and conceal the use of that technology. Exhibit P0482 is an Excel workbook that contains five worksheets or tabs. The fifth tab is entitled "25nm 4G3D Flow" and contains Micron trade secrets in the form of a manufacturing process flow: steps in sequence, recipes, and tools. The first two tabs of Exhibit P0482 contain "Project M meeting minutes" of daily meetings from Monday, December 7, 2015 to Wednesday, December 16, 2015.

The government will seek to admit the entire Excel workbook that makes up Exhibit P0482. For purposes of its motion, Defendant Fujian Jinhua Integrated Circuit Co., Ltd. ("Jinhua") seeks to exclude only the first two "Project M meeting minutes" tabs of Exhibit P0482. By severing the Project M meeting minute tabs from the tab into which Micron's trade secrets were copied, Jinhua seeks to sever conspirators J.T. Ho and Neil Lee from their possession and use of Micron trade secrets, thus leaving the rump tabs of Exhibit P0482 as free-floating Micron trade secrets. The United States will use the first two tabs to identify participation in the conspiracy and provide context for the later tabs.

As explained below, the preponderance of the evidence, including Exhibit P0482 itself as well as admitted and hearsay evidence, establishes a *prima facie* case that Project M was a conspiracy to steal and conceal Micron's DRAM process flow technology, that J.T. Ho and Neil Lee were founding conspirators along with Stephen Chen, and that Jinhua joined the conspiracy when and after it was formed in February 2016 through agents Stephen Chen, J.T. Ho, and its joint venture partner, United Microelectronics Corporation ("UMC"). The Court should view the exhibit, deny Jinhua's motion, and admit the entire exhibit during the testimony of Special Agent Cynthia Ho.

**RELEVANT FACTS**

Exhibit 0482 is an Excel workbook that was recovered from Device 14. Device 14 is a Universal Serial Bus or USB "thumb" drive. According to a stipulation between the parties and testimony by Agent Leo Lee, the Taiwan authorities obtained Device 14 from a source on February 9, 2017, following the search of UMC's facilities on February 7, 2017.

On March 14, 2022, Andrew Crain, the government's computer forensic expert, opined that Device 14 is attributable to conspirator J.T. Ho based on the fact that his Lotus Notes e-mail messages appear on that device. Shortly, Special Agent Cynthia Ho will introduce metadata from the Excel workbook that lists Neil Lee as the original author, lists J.T. Ho as being the last person to modify the document, and shows a comment inserted into the document from J.T. Ho. Special Agent Ho will also introduce other documents that are copied or derived from Exhibit P0482 created by J.T. Ho and Neil Lee.

Exhibit 0482 is an Excel workbook with five worksheets or tabs, three of which are relevant to this motion. The first two tabs, which Jinhua seeks to exclude, are labeled "1207" and "Follow item." The 1207 tab is entitled "Project M meeting minutes (12/7)" and lists a meeting time; team members, including coconspirators "JT Ho" and "Neillee"; either an agenda for or subjects discussed on Monday, December 7, 2015; and a time and agenda for a meeting on the following day, Tuesday, December 8, 2015.

The second of the two tabs lists "Follow [up] item[s]" for the next week and a half, to Wednesday, December 16, 2015. The follow-up-item tab has columns for the items to be followed up, "Who" is to follow up the item (mostly "JT" or "Neil"), "Feeedback" [sic] and "due day" [sic]. The fifth tab is labeled "25nm 4G3D Flow" and contains manufacturing process steps in sequence, recipes, and tools for "R1" and "E300." Scott DeBoer and other Micron witnesses identified R1 and E300 as the Rexchip and Elpida fabs, respectively, that Micron acquired on July 31, 2013. The steps, recipes, and tools are identical to the Micron Trade Secret 1 documents Rexchip flow summary (P0048, P0063, P0074, P0085, P0089, P0109) and Rexchip flow compare (P0117). Conspirators J.T. Ho and Neil Lee therefore appear to have copied Micron Trade Secret 1 to P0482 tab 5.

The "Project M meeting minutes" in the first "1207" tab of Exhibit P0482 also appear in Exhibit P0934. Exhibit P0934 is an e-mail message from Neil Lee to himself with a date of Monday, December 7, 2015, and time stamp of 15:23, which is about half an hour after the "Project M meeting minutes" record the first day's meeting to have ended at "1450." In Exhibit P0934, Mr. Lee copied the first tab of Exhibit P0482, the "Project M meeting minutes," which Jinhua seeks to exclude by its motion. UMC has

1  certified Exhibit P0934 as a business record.

2      The United States will have expert testimony about the meaning of the fifth tab, entitled "25nm

3  4G3D Flow" that contains Micron trade secrets in the form of a manufacturing process flow: steps in

4  sequence, recipes, and tools.

5

6                                 **ARGUMENT**

7      To the extent they are statements at all, the Project M meeting minutes tabs of Exhibit 0482 – the

8  first two tabs labeled "1207" and "Follow item" – are not hearsay because they are the statements of

9  coconspirators in furtherance of the conspiracy. Jinhua appears to concede the existence of "an internal

10  UMC conspiracy." Dkt. 380, at 6. The preponderance of the evidence, including hearsay evidence,

11  shows the existence of a conspiracy among Stephen Chen, J.T. Ho, Neil Lee, and UMC no later than

12  December 2015. Jinhua joined that conspiracy when and after it was formed in February 2016 through

13  those natural-person conspirators and the joint venture partner who employed them, UMC.

14  **I.    To the Extent that Exhibit P0482's "Project M Meeting Minutes" Are Statements that Have a Truth Value, They Are Coconspirator's Statements and Therefore Not Hearsay**

15

16      To the extent that the Project M meeting minutes tabs contain written assertions of truth,[1] they are admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E).

17

18      **A.    This Court Determines the Existence and Participants in a Conspiracy as a Preliminary Matter by a Preponderance of the Evidence including Hearsay Evidence**

19

20      Under the Supreme Court's decision in *Bourjaily v. United States*, 483 U.S. 171, 176, 181

21  (1987), this Court determines the *prima facie* existence of the conspiracy, the defendant's and

22  declarant's participation in it, and whether the statements are in the course and furtherance of the

23  conspiracy by "a preponderance of the evidence" based on "the hearsay statement sought to be

24  admitted" as well as other hearsay. "As we have held in other cases concerning admissibility

25  determinations, 'the judge should receive the evidence and give it such weight as [her] judgment and

26

27          [1] Much of the meeting minutes is not a written assertion. Further, the government seeks admission to show the fact of the meetings, not the accuracy of the minutes. As such, much of the two disputed tabs do not constitute hearsay in the first place. FED. R. EVID. 801(c).

28  UNITED STATES' OPP. TO DEF.'S MOT. TO EXCLUDE
MEETING MINUTES IN EX. P0482
18-CR-00465 MMC                                3

1   experience counsel.'" *Id*. at 181.

2   **B.      The Declarants of Exhibit P0482 Are Conspirators J.T. Ho and Neil Lee**

3          On March 14, 2022, the government's forensic expert Andrew Crain opined that Device 14 (on

4   which Special Agent Ho will testify that Exhibit P0482 was found) has indicia connecting it to

5   conspirator J.T. Ho based on the presence of Ho's Lotus Notes e-mail on that device. Special Agent

6   Cynthia Ho will also testify that the metadata on the Excel workbook lists Neil Lee as the original

7   author, lists J.T. Ho as being the last person to modify the document, and shows a comment inserted into

8   the document from J.T. Ho. Exhibit P0934, which is a certified UMC business record, shows Neil Lee

9   forwarding the first "Project M meeting minutes" tab for Monday, December 7, 2015, to himself about

10  half an hour after the end of the first day's meeting. *See* Fed. R. Evid. 901(b)(4) (self-authentication

11  based on "contents [and] . . . distinctive characteristics of the item, taken together with all the

12  circumstances."); *see also* Dkt. 379 (government motion on authentication of digital storage devices by

13  source and content alone). As such, the declarants are identified as two of the core coconspirators and

14  the document is thus authenticated.

15  **C.      The Conspiracy among Stephen Chen, J.T. Ho, Neil Lee, and UMC to Steal
            Micron's Trade Secrets to Make DRAM and Conceal Their Possession, Use, and**
16          **Alteration of Those Trade Secrets**

17         In mid-September 2015, before he joined UMC, Stephen Chen explored the feasibility of Project

18  M with UMC's finance employee Bowen Huang. P707T. In mid-November 2015, UMC's hired J.T. Ho

19  and Neil Lee. On November 22, 2015, UMC's CEO P.W. Yen named the project: "I would suggest we

20  give it the name of Project M (meaning Memory and Mainland China)." P0730.0001.

21         From mid-November 2015 to the end of 2015, Project M had three and only three full-time staff:

22  Vice President Stephen Chen, J.T. Ho, and Neil Lee. P0889.0001. On Thursday and Friday, December 3

23  and 4, 2015, conspirators J.T. Ho and Neil Lee prepared to meet with engineers then assigned part time

24  from other UMC departments for the purpose of "learning" the DRAM process flow from Monday,

25  December 7, 2015, to Wednesday, December 16, 2015. In preparation for that series of meetings, UMC

26  received a request to remove and replace two solid-state drives (SSDs). P1147T, P1148, P1151. The

27  original drive in J.T. Ho's UMC laptop is the SSD known as Device 28. P0242. The original drive in

28

1   Neil Lee's UMC laptop is Device 27. P0243. According to Andrew Crain's testimony, the use of

2   Devices 27 and 28 ends early on Friday, December 4, 2015, and both SSDs were erased.

3       Before erasing the drives, UMC's IT department pulled log files of USB connections to the

4   laptops that contained the drives. P1168T; P1169T. Previously, Stephen Chen had asked questions about

5   whether UMC's IT department could monitor him if he typed information from one computer to another

6   computer. *See* 03/02/2022 Tr. 590:18-21 (C.S. Chang). On J.T. Ho's UMC laptop, the log files record

7   25,882 events involving USB drives, with many of those files containing "Micron" and "Elpida" and

8   "Rexchip" in the file names. P1168T; P1169T. The log files also show that Neil Lee transferred other

9   files. P1168T; P1169T. Andrew Crain was able to recover the partition on J.T. Ho's SSD, Device 28

10  (P0242), and its contents corroborate the log file obtained by UMC's Jeff OChen from Smart IT.

11      Meanwhile, late on Friday afternoon, December 4, 2015, someone in Stephen Chen's three-

12  person team requested two public laptops that could be shared. P1146T. Forensics expert Andrew Crain

13  testified that Device 12, which the government will show is one of the public laptops, recorded the first

14  opening of a trade secret on December 8, 2015, after use of the SSDs in J.T. Ho and Neil Lee's original

15  UMC laptops ceased earlier that Friday. Like the Ho and Lee SSDs (Devices 27 (P0243) and 28

16  (P0242)), the public laptop (Device 12) contained Micron's trade secrets.

17      Over the following weekend, one of the UMC employees newly assigned to Project M, S.F.

18  Tzou, wrote to his supervisor, Vice President T.R. Yew, about the purpose of the coming weeks'

19  meeting: to "learn the process" for Project M. P0741T. Earlier, S.F. Tzou had written to T.R. Yew in

20  English that "VP Chen would like to create the flow as UMC naming since next Monday." P1059. To

21  put it in plainer English, Stephen Chen wanted to "create" – what turned out to be a euphemism for

22  copying Micron's – DRAM process flow, change the names to UMC step names to conceal the theft,

23  and do so beginning on Monday of the coming week, or December 7, 2015. Stephen Chen replied to

24  S.F. Tzou's Sunday night message within two hours. He told the engineers to "keep project

25  confidential." P0741T. Stephen Chen apologized that he couldn't attend the first day's meeting on

26  Monday but said that he would join on Tuesday. P0741T.

27      On Monday, December 7 through Wednesday, December 16, 2015, J.T. Ho, Neil Lee, and, at

28

least on Tuesday, Stephen Chen met and "learn[ed]" the DRAM process flow. The Project M meeting minutes show that the conspirators met and copied, possessed, used, and began to alter Micron's trade secrets. The statements were in furtherance of the conspiracy. *See United States v. Yarbrough*, 852 F.2d 1522, 1535-36 (9th Cir. 1988) ("[T]o be 'in furtherance' the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. Statements made to induce enlistment or further participation in the group's activities are considered to be 'in furtherance' of the conspiracy. Likewise, statements made to prompt further action on the part of conspirators are admissible under 801(d)(2)(E), as are those made to 'reassure' members of a conspiracy's continued existence. Statements made to allay a coconspirator's fears are admissible. Most importantly, statements made to keep coconspirators abreast of an ongoing conspiracy's activities satisfy the 'in furtherance' of requirement.") (numerous internal citations omitted).

## II. Jinhua Joined and Is Liable for the Conspiracy When and After It Was Formed in February 2016

### A. A Subsequently Joining Conspirator is Liable for the Acts And Statements of Its Coconspirators Before It Joined The Conspiracy

It is the law of this Circuit that subsequently joining conspirators are substantively liable for the acts of coconspirators previously taken in the course of and furtherance of the conspiracy:

> Once it is found that the defendant was connected with the conspiracy, he is equally liable with those who originated and dominated the common scheme, though he joined it after its inception and his part was minor and subordinate. He is responsible not only for the acts of the conspirators in furtherance of the conspiracy following his joinder, but also for those that precede it. Moreover, he is liable for the acts of his co-conspirators though he was not aware of the performance of those acts, nor even of the existence of the actors.

*Hernandez v. United States*, 300 F.2d 114, 122 (9th Cir. 1962) (footnotes omitted); *see United States v. Grovo*, 826 F.3d 1207, 1215 (9th Cir. 2016) ("One may join a conspiracy already formed and in existence, and be bound by all that has gone on before in the conspiracy, even if unknown to him." (internal alteration and quotation marks omitted)).

Likewise, it is the law of this Circuit that prior statements by coconspirators made in the course of and furtherance of the conspiracy are not hearsay when admitted against the subsequently joining conspirator: "Statements of a co-conspirator are not hearsay even if made prior to the entry of the

conspiracy by the party against whom it is used." *United States v. Anderson*, 532 F.2d 1218, 1230 (9th Cir. 1976). This Circuit expanded on *Anderson* in 1993:

> [O]ne who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of co-conspirators, made after the formation and in furtherance of the conspiracy. As long as it is shown that a party, having joined a conspiracy, is aware of the conspiracy's features and general aims, statements pertaining to the details of plans to further the conspiracy can be admitted against the party even if the party does not have specific knowledge of the acts spoken of.

*United States v. Mkhsian*, 5 F.3d 1306, 1312 (9th Cir. 1993) (citations omitted). *Accord United States v. United States Gypsum Co.,* 333 U.S. 364, 393 (1948) ("With [a] conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy."); *United States v. Barksdale-Contreras*, 972 F.2d 111, 114 (5th Cir. 1992) ("[I]t is settled law, however, that one who joins an ongoing conspiracy is deemed to have adopted the prior acts and declarations of conspirators, made after the formation and in furtherance of the conspiracy." (citations omitted)); *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991) ("The prevailing view among the circuits is that previous statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy. . . The fact that appellant may have joined the conspiracy after its inception does not make his co-conspirators' previous statements inadmissible.") (collecting cases); *United States v. Baines,* 812 F.2d 41, 42 (1st Cir.1987) ("[A] conspiracy is like a train[;] when a party knowingly steps aboard he is part of the crew and accepts responsibility for the existing freight [it is already carrying.]").

As described below, Jinhua joined the "internal UMC conspiracy," so all coconspirator statements made from the inception of the conspiracy to steal and conceal Micron's trade secrets are not hearsay when sought to be admitted against Jinhua.

### B.     Jinhua is Liable for the Conspiracy through Stephen Chen

Jinhua was created by the February 19, 2016, Project Collaboration Framework Agreement ("PCFA") between two PRC state-owned entities and UMC. P1023T. By the terms of the PCFA, the PRC entities had a majority shareholding and controlled a majority of the board of directors and UMC

1   had a minority shareholding and appointed the "general manager." P1023T.0007. On February 29, 2016,

2   UMC's CEO, P.W. Yen, announced internally the appointment of Stephen Chen: "CEO will be [Stephen

3   Chen] appointed by UMC." P1057T.0001. As CEO, Stephen Chen will "build and run this company,"

4   meaning Jinhua. *Id*.

5        Following his appointment as CEO, Stephen Chen joined Jinhua's supervisory board no later

6   than May 5, 2016 (P1034T.0106), created "Whole JV's Business Plan" on July 14, 2016, served as the

7   head of the sales and marketing and operations divisions as of September 23, 2016 (03/03/2022 Tr.

8   647:15-18 (Leticia Wu), and delegated his Jinhua management authority on December 6, 2016, because

9   he needed to remain in Taiwan to direct the joint venture's research and development (P0613T.0002). It

10   is undisputed that in February 2017, Stephen Chen formally became president of Jinhua and wore two

11   hats as Jinhua President and UMC Senior Vice President for the next 20 months.

12        Under firmly established principles of *respondeat superior* liability, Jinhua is responsible for the

13   acts of its President and CEO Stephen Chen. *See, e.g.*, *New York Central & Hudson River R.R. Co. v.*

14   *United States*, 212 U.S. 481, 493-94 (1909) ("A corporation is held responsible for acts not within the

15   agent's corporate powers strictly construed, but which the agent has assumed to perform for the

16   corporation when employing the corporate powers actually authorized, and in such cases there need be

17   no written authority under seal or vote of the corporation in order to constitute the agency or to authorize

18   the act."); *United States v. Beusch*, 596 F.2d 871, 877-78 (9th Cir. 1979) (affirming jury instruction: "A

19   corporation may be responsible for the acts of its agents done or made within the scope of its authority,

20   even though the agent's conduct may be contrary to the corporation's actual instruction or contrary to

21   the corporation's stated policies."); *United States v. Hilton Hotels Corp.*, 467 F.2d 1000, 1004 (9th Cir.

22   1972) ("Congress may constitutionally impose criminal liability upon a business entity for acts or

23   omissions of its agents within the scope of their employment. Such liability may attach without proof

24   that the conduct was within the agent's actual authority, and even though it may have been contrary to

25   express instructions.").

26        **C.    Jinhua is Liable for the Conspiracy through J.T. Ho**

27        Conspirator J.T. Ho signed a "labor contract" with Jinhua effective July 1, 2016. P0272. As of

28

1   that date, Jinhua became responsible for J.T. Ho's possession, use, and alteration of Micron's trade

2   secrets and Ho's knowledge that they were copied from Micron without authorization. Like all the

3   Project M conspirators, Stephen Chen and J.T. Ho knew that Project M was Memory for Mainland

4   China. *Respondeat superior* principles apply to Project M's principal engineer just as they do to Project

5   M's principal executive officer.

6         **D.    Jinhua is Liable for the Conspiracy through its Joint Venture Partner UMC**

7         Project M was a joint venture. The PCFA tells us so. P1023T.0007 (section 4.3: referring to "the

8   project company" – that is, Jinhua – signing a "joint venture agreement"); *see* P1193T (Technology

9   Cooperation Agreement between Jinhua and UMC). The signed corporate documents more than suffice

10  to establish a *prima facie* case that Project M is a joint venture, which is all that is needed to permit

11  coconspirator statements to be admitted against Jinhua.

12        Joint ventures are partnerships between corporations for a specified purpose and specified time.

13  *See Nelson v. Serwold*, 687 F.2d 278, 282 (9th Cir. 1982) ("The scope of a joint venture may be

14  considerably narrower than that of a partnership and limited to the achievement of a single transaction or

15  common purpose."). The TCA is a joint venture to develop DRAM technology for a period of five years.

16        In a joint venture, the corporate venturers are partners and thus principals and agents of each

17  other and liable for each other's acts and statements during the course or and in furtherance of the joint

18  venture. *See* 46 AM. JUR. 2D *Joint Ventures* § 3, at 21-22 (2017) ("A joint venture is generally governed

19  by the same rules as those governing partnership, because a joint venture is a form of partnership, or is

20  essentially partnership for a limited purpose, or is a kind of partnership and there is generally no

21  essential difference between a partnership and a joint venture."); W. PAGE KEETON, DAN B. DOBBS,

22  ROBERT E. KEETON & DAVID G. OWEN, PROSSER AND KEETON ON THE LAW OF TORTS § 72, at 516-17

23  (5th ed. 1984) ("A '*joint enterprise*' is something like a partnership, for a more limited period of time,

24  and a more limited purpose. It is an undertaking to carry out a small number of acts or objectives, which

25  is entered into by associates under such circumstances that all have an equal voice in directing the

26  conduct of the enterprise. The law then considers that each is the agent or servant of the others, and that

27  the act of any within the scope of the enterprise is to be charged vicariously against the rest.").

28

Thus, Jinhua is liable for the acts and statements of UMC in the course of and in furtherance of Project M. Because UMC is an artificial entity that can act only through its agents, Jinhua is liable for the acts and statements of Stephen Chen and J.T. Ho in the course of and in furtherance of Project M, even if Jinhua had never hired Stephen Chen or J.T. Ho.

Exhibit P0482 is admissible as a coconspirator statement against Jinhua on any one of the three theories. Collectively, the case for admissibility is overwhelming.

## CONCLUSION

Jinhua's motion to exclude the "Project M meeting minutes" tabs of Exhibit P0482 should be denied. Instead, Exhibit P0482 should be admitted during the testimony of Special Agent Cynthia Ho.

Dated: March 15, 2022

Respectfully Submitted,

STEPHANIE M. HINDS
United States Attorney


_____/s/_____
LAURA VARTAIN HORN
NICHOLAS WALSH
Assistant United States Attorneys

NICHOLAS O. HUNTER
STEPHEN MARZEN
Trial Attorneys, National Security Division