JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:   (650) 470-4500
Facsimile:   (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>UNITED MICROELECTRONICS CORPORATION, *et al.*,<br><br>          Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**DEFENDANT'S OPPOSITION, UNDER FED. R. EVID. 404(b), TO THE GOVERNMENT'S TRIAL MEMORANDUM IN SUPPORT OF GOV. EX. P1046**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 28, 2022 |

## I. INTRODUCTION

During its direct-examination of Dr. Scott DeBoer, the government sought to introduce P1046—a September 15, 2016, email received by Stephen Chen and an attachment to the email allegedly containing non-trade secret Micron information. Trial. Tr. Vol. VIII, at 1349. Jinhua objected, explaining that the email predated the charged conspiracy and that the government was offering evidence of a prior bad act by Mr. Chen without the written pretrial notice required by Federal Rule of Evidence 404(b). The Court recognized "a problem with the e-mail under 404(b)," sustained Jinhua's objection, but permitted the government to provide further briefing on the issue. *Id.* at 1365–68.

The government filed a Trial Memorandum and Opposition to Defs Oral Mot. to Exclude Conspiracy Evidence as Unnoticed Evidence Under Fed. R. Evid. 404(b) ("Trial Mem."). The government argued that Rule 404(b) was inapplicable "because (1) the evidence is not an 'other' act, as it is direct evidence of the overall conspiracy to steal Micron's trade secrets as alleged in the Indictment, (2) it is necessary to offer a coherent and comprehensible story regarding the commission of the crime, and (3) the evidence is not propensity evidence of the type forbidden by the Rule." Trial Mem. (ECF 392), at 5.  Each of the government's arguments is meritless.

The law in this Circuit is well settled that an act performed before the conspiracy is alleged to have begun is neither direct evidence of the charged conspiracy nor "inextricably intertwined" with the conspiracy. Moreover, as a factual matter, evidence that Mr. Chen received an email <u>that did not contain trade secrets</u> is not direct evidence or "inextricably intertwined" in a prosecution alleging that two different individuals—JT Ho and Kenny Wang—stole the trade secrets at issue. And even if the email attachment contains <u>confidential</u> Micron information, evidence that Mr. Chen used any such confidential Micron information is undoubtedly evidence of a bad act governed by Rule 404(b).

The government seeks to introduce P1046 to show that Stephen Chen had a propensity for using improper information. If Stephen Chen improperly used Micron information once, the government wants the factfinder to infer, he likely knew about and condoned Mr. Ho and Mr. Wang's

1

theft of Micron trade secrets. Assuming *argudeno*, that there was any impropriety as to what he did, this is precisely the type of propensity proof prohibited by Rule 404(b). Therefore, because Exhibit P1046 is Rule 404(b) evidence, and because the government failed to provide written pretrial notice under Rule 404(b) and no good cause for this failure exists, the Court should exclude P1046.

## II.  ARGUMENT

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). But in a criminal case, the prosecutor must:

> (A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> (C) do so in writing before trial—or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).

"Pretrial notice, or an excuse from the district court for failing to give notice, is a condition to the admission of other acts evidence." *United States v. Vega*, 188 F.3d 1150, 1155 (9th Cir. 1999). Indeed, Rule 404(b) was recently "amended principally to impose additional notice requirements on the prosecution in a criminal case." Rule 404(b) Advisory Committee Notes, 2020 Amendments.

Here, the government concedes it did not give proper 404(b) notice.[1] Trial. Tr. Vol. VIII, at 1355. However, it argues that notice was not required because the evidence is "direct evidence of the [charged] conspiracy," *United States v. Vaccaro*, 816 F.2d 443, 452 (9th Cir. 1987) (overruled on

---

[1] The government also failed to comply with this Court's rule requiring it to provide "[a] summary of any evidence of other crimes, wrongs or acts which the government intends to offer under F. R. Evid. 404(b), and which is supported by documentary evidence or witness statements in sufficient detail that the Court may rule on the admissibility of the proffered evidence." Crim. L.R. 16-1(c)(3).

2

other grounds), or "inextricably intertwined" with the charged conspiracy, *see United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). Neither exception to the notice requirements of Rule 404(b) applies here.

### A. Conduct Occurring Before The Alleged Start of the Conspiracy Cannot Be Direct Evidence or "Inextricably Intertwined" With The Conspiracy

The main thrust of the government's argument is that P1046 is either direct evidence of the charged conspiracy or "inextricably intertwined" with the conspiracy. But it is well established that, "in order to be direct evidence or inextricably intertwined with a conspiracy count, the un-charged conduct must fall within the temporal scope of the conspiracy." *United States v. Yagi*, 12-cr-0483 EMC, 2013 WL 10570994, at *9 (N.D. Cal. Oct. 17, 2013) (citing *United States v. Rizk*, 660 F.3d 1125, 1131 (9th Cir. 2011)); *see also United States v. Bertuglia*, 10 F.3d 808, 1993 WL 470440, at *3 (9th Cir. 1993) (table) ("The problem with using the letters as direct evidence of the conspiracy, however, is that they were not written within the time frame specified in the indictment."); *United States v. Montgomery*, 384 F.3d 1050, 1062 (9th Cir. 2004); *United States v. Strubbe*, 198 F.3d 256, 1999 WL 786328, at *2, (9th Cir. 1999) (table); *United States v. Brown*, 800 F. App'x 455, 460 (9th Cir. 2020); *United States v. Murillo*, 11 F. App'x 901, 903 (9th Cir. 2001); *United States v. Jimenez-Mercado*, 70 F.3d 121, 1995 WL 653960 (9th Cir. 1995) (table); *United States v. Escobar-de Jesus*, 187 F.3d 148, 167 (1st Cir. 1999).

For example, in *United States v. Strubbe*, the Ninth Circuit explained that "some of the prior bad acts here at issue, and particularly the evidence of three prior alleged drug deals, preceded the commencement of the conspiracy charged in this case." 1999 WL 786328, at *2. The Court held that "such evidence is therefore not inextricably intertwined conduct." *Id.*; *see also Bertuglia*, 1993 WL 470440, at *3 ("[B]ecause the limited time frame of the indictment precluded the admission of the letters as direct evidence, the district court abused its discretion.").

The same is true here. The government did not charge a conspiracy with "an unknown or indeterminate start date." *Yagi*, 2013 WL 10570994, at *9. Count I charged a conspiracy "[b]eginning in or about January 2016," and Count II charged a conspiracy "[b]eginning in or about October 2015." Indictment (ECF 1), at ¶¶ 17, 51. That is, "the government decided to charge the conspiracy

3

as beginning in [October 2015], and it cannot escape the evidentiary ramifications of that choice." *Bertuglia*, 1993 WL 470440, at *3. P1046 is an email sent on September 16, 2015. Therefore, P1046 cannot be admitted as direct evidence of, or as "inextricably intertwined" with, the charged conspiracies. *See Bertuglia*, 1993 WL 470440, at *3 ("To allow the government essentially to *underindict* by excluding the letters from the charged conspiracy and then introduce the letters under 404(b) is improper.").

### B. P1046 Is Not Direct Evidence of a Charged Conspiracy

Even if P1046 were within the temporal scope of the charged conspiracies, it is not, factually, direct evidence of the charges. Stephen Chen is not alleged to have stolen or possessed the trade secrets at issue in this case, and P1046 did not even contain trade secrets. Therefore, for this additional reason, P1046 cannot be introduced as direct evidence.

Evidence is direct when it has a "direct bearing on the elements of conspiracy in [the] case." *United States v. Hill*, 953 F.2d 452, 457 (9th Cir. 1991). "The essential elements of conspiracy are an agreement to accomplish an illegal objective, coupled with one or more overt acts in furtherance of the illegal purpose, and the requisite intent necessary to commit the underlying substantive offense." *Id.* The Indictment alleged that Mr. Chen hired Mr. Ho and Mr. Wang to work at UMC, and that Mr. Ho and Mr. Wang stole Micron trade secrets. Indictment (ECF 1), at ¶¶ 23–29. The Indictment does not allege that Mr. Chen stole Micron trade secrets, as the Court has recognized. *See* Trial. Tr. Vol. VIII, at 1367 ("Stephen Chen is not someone who is alleged to have personally removed these items or stored them himself.").

Evidence that Mr. Chen retained and used Micron information that is not a trade secret, therefore, has no direct bearing on any element of the conspiracy. The indictment charges Stephen Chen, Jinhua, and others, with entering into a conspiracy to steal eight specific trade secrets. It does not charge Stephen Chen, Jinhua, and others with a conspiracy to use "unique" Micron DRAM technology (Trial Mem. (ECF 392), at 5), and rightly so. Using Micron information, that is not a trade secret, is not a crime. Establishing that Mr. Chen asked for or received Micron information— which again, is not a trade secret and is not a criminal act—does not support an inference that Mr. Chen intended to use <u>trade secrets</u> to copy Micron's technology. Mr. Chen using non-trade secret

4

information is, at best, circumstantial evidence that he intended to use trade secrets in developing UMC's DRAM technology. That is not direct evidence.[2]

The cases cited by the government are inapposite. *First*, in *United States v. Campbell*, 774 F.2d 354 (9th Cir. 1985), proof that the charged items were stolen from the mail was a "necessary element" for convicting the defendant, and therefore was direct evidence. *Id.* at 356; *see also Hill*, 953 F.2d at 457 ("*Campbell* is distinguishable because the theft testimony was admissible because it was direct proof that the items were stolen from the mail, a necessary element of one of the charged crimes."). *Second*, while the government relies on *United States v. Testa*, 548 F.2d 847 (9th Cir. 1977), that case supports exclusion. There, the Ninth Circuit held that evidence was admissible under Rule 404(b) because "acts by others (and statements by others, if not offered for the truth) before or after the conspiracy may be relevant in suggesting the existence and aims of the conspiracy charged." *Id.* at 851. If the evidence at issue here is Rule 404(b) evidence, it is not admissible because the government failed to give proper notice. *Third*, *United States v. Park*, 164 F. App'x 584 (9th Cir. 2006), did not indicate that evidence from before and after the conspiracy could be introduced as direct evidence. In fact, the court stated that such evidence would "indirectly establish[]" the relevant point. *Id.* at 585.

### C.  P1046 Is Not "Inextricably Intertwined" With a Charged Conspiracy

P1046 is also not, as a factual matter, "inextricably intertwined" with a charged conspiracy—even setting aside the temporal scope issue. The government argues that "P1046 is necessary, in conjunction with other evidence that will be admitted in the trial, to offer a coherent and

---

[2] For example, in *United States v. Hill*, the government sought to introduce evidence that the defendant—an attorney who provided $70,000 for a cocaine deal—had previously been in an intimate relationship with the individual who asked him to financially back the drug deal, and that they had used cocaine together. 953 F.2d at 455. The defense objected to this testimony, but the district court held "that the evidence was direct evidence establishing the circumstances and background under which it became logical and proper for [the borrower] to contact [the attorney] in an attempt to obtain money for the cocaine deal." *Id.* Though the Ninth Circuit recognized the merit in the argument that the evidence "demonstrates [the attorney's] knowledge and intent" and explained to the jury why "a well-off attorney . . . would give . . . money to finance a drug transaction," the court reversed because the evidence did not have a "direct bearing on the elements of [the] conspiracy." *Id.* at 457; *see also United States v. Mayans*, 17 F.3d 1174, 1183 (9th Cir. 1994). So too, here, the proffered evidence has no "direct bearing on the elements of conspiracy in this case." *Hill*, 953 F.2d. at 457.

comprehensible story regarding the commission of the crime." Trial Mem. (ECF 392), at 5. Not so. The government's theory of the case does not rely on admitting evidence that a person not alleged to have stolen trade secrets, used information that was not a trade secret. *See United States v. P. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 965 (N.D. Cal. 2016) (holding that the government would not be hampered in telling a coherent story without evidence not mentioned in the superseding indictment).

*United States v. DeGeorge*, 380 F.3d 1203 (9th Cir. 2004), cited by the government, is inapposite. There, "[t]he government specifically alleged that [the defendant's] scheme included sham transactions to hide his ownership of the boat and concealment of his loss history on the insurance application." *Id.* at 1220. Because the allegations included that the defendant had engaged in a sham transaction to hide ownership, the government was permitted to introduce evidence explaining why he needed to hide ownership—he had lost three boats previously. *Id.* Otherwise, the allegation that he hid his ownership of the boat would have made no sense. By contrast, here, the government can tell its story about the theft of trade secrets without sharing Mr. Chen's email.

### D. The Government Seeks to Offer P1046 As Propensity Evidence

Finally, the government resorts to arguing that Rule 404(b) "is not directed at the mere sending of business emails." Trial Mem. (ECF 392), at 5. According to the government, such a wholly innocent act cannot be the type of act with which Rule 404(b) is concerned. However, the government cannot argue in one breath that P1046 contained all manner of Micron information and therefore is direct evidence of Stephen Chen's—and thus Jinhua's—guilt, and, in the other, argue that P1046 was a mere business email that cannot contain a Rule 404(b) bad act.

This is a case in which Jinhua is alleged to have conspired to steal Micron trade secrets. The government alleges that P1046 contained "unique" Micron DRAM technology. Trial Mem. (ECF 392), at 5. While not illegal, this act undoubtedly "resembles crimes or wrongs." *Id.* (quoting 30 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5245 (2d ed. April 2021 update)).[3] And because P1046 does not provide direct evidence of the charged offenses in this case—

---

[3] Although the government characterized the information in P1046 discussing the change from 2x3 to 3x2 as "a change Scott DeBoer established was unique to Micron's DRAM technology," (Trial Mem. at 5:10-11), he also testified that "[a]ll the major players in the DRAM industry had
*(cont'd)*

it is not a trade secret and Stephen Chen is not alleged to have stolen Micron trade secrets—the government clearly seeks to introduce P1046 to show that Stephen Chen had a propensity for using improper information. This is precisely the type of propensity proof prohibited by Rule 404(b).

### III.   CONCLUSION

Because the government did not provide notice under Rule 404(b), and has not even attempted to show good cause for this failure, the Court should exclude P1046.

Dated: March 15, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____*/s/ Jack P. DiCanio*_____
JACK P. DICANIO
Attorney for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

---

already switched to 3x2 throughout this whole timeframe." Trial Tr., Vol VIII, at 1370. To the extent that P1046 contains public information, it is simply not relevant.