JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:   (650) 470-4500
Facsimile:   (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:   (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED MICROELECTRONICS CORPORATION, *et al.*,<br><br>Defendants. | CASE NO.: 3:18-cr-00465-MMC<br><br>**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXHIBIT P1168**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 28, 2022 |

## I. INTRODUCTION

Exhibit P1168 is not a standard business computer file containing routine business records, like a listing of customer names or transaction details. Rather, Exhibit P1168 purports to be the output of a sophisticated computer surveillance technology, the SMART-IT System, that was queried by an engineer in Taiwan, Jeff OChen—after JT Ho and Neil Lee were suspected of trade secret theft—to retrieve and export targeted datapoints relating to usage of a particular USB device in a defined time period. The process of creating Exhibit P1168 can fairly be described as a computer forensics inquiry—not the retrieval of typical business records.

However, the government did not call Mr. OChen as a witness to try to lay a foundation for Exhibit P1168. When the government instead offered Exhibit P1168 during the testimony of UMC employee CS Chang, Jinhua orally objected because: (1) Mr. Chang lacked sufficient information to authenticate the document, and (2) the document was not a business record. The Court invited the parties to provide further briefing on the issue. *See* Def's Mot. to Exclude Exhibit P1168 (ECF 373); United States' Mot. to Admit Exhibit P1168 (ECF 372). For the first time, the government's brief attached a newly created certification from Mr. OChen, dated March 3, 2022, which provided a cursory summary of the surveillance capabilities of the SMART-IT System, the forensic queries he undertook to create and export the data comprising Exhibit P1168, and an affirmation that the contents of P1168 are the same as when the SMART-IT system allegedly created the spreadsheet.

The government asks the Court to admit the exhibit on the basis of this new certification. But this would violate Jinhua's rights in three ways. First, both P1168 and the OChen certification contain testimonial assertions that implicate Jinhua's right under the Confrontation Clause to cross-examine Mr. OChen. Second, the prosecution failed to give Jinhua pretrial notice of the certification as required by Fed. R. Evid. 902(11) & (13). As a result, Jinhua has been deprived of the opportunity to investigate and obtain the assistance of technical expertise to rebut Mr. OChen's testimonial assertions. Third, the exhibit is not an ordinary business record but rather the output of a forensic inquiry designed to create evidence for this trial. As such, the document is hearsay and, at most, could be an exhibit that helps Mr. OChen explain his testimony about the investigation he conducted.

## II. ARGUMENT

### A. The Confrontation Clause

In this criminal trial, Jinhua has the constitutional right to confront Mr. OChen regarding the forensic inquiry he undertook to create Exhibit P1168. Mr. Chang testified that he reached out to Mr. OChen because of suspicions that Mr. Ho and Mr. Lee's laptops were being used to commit a crime—trade secret theft. Therefore, the "primary purpose" of the creation of P1168 was "to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

Moreover, it is well-established that "[d]ocuments kept in the regular course of business" may not be admitted under the Confrontation Clause "if the regularly conducted business activity is the production of evidence for use at trial." *Melendez-Diaz v. Mass.*, 557 U.S. 305, 321 (2009); *see also Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011) ("A document created solely for an 'evidentiary purpose,' *Melendez–Diaz* clarified, made in aid of a police investigation, ranks as testimonial."). Such "a document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness." *Clark v. City of Los Angeles*, 650 F.2d 1033, 1037 (9th Cir. 1981) (quoting *Palmer v. Hoffman*, 318 U.S. 109 (1943)); *see also United States v. Olano*, 62 F.3d 1180, 1205 (9th Cir. 1995); *United States v. Baxter*, 492 F.2d 150, 165 (9th Cir. 1973). Under this Rule, in addition to P1168's inadmissibility under the Confrontation Clause (even if it, somehow, qualifies as a business record), Mr. OChen's business record certification, which was by definition prepared for litigation, is seemingly also inadmissible.

However, in *Melendez-Diaz*, the Supreme Court recognized a narrow historical exception to the general rule that evidence "prepared for use at trial" is inadmissible; traditionally, a clerk could "authenticat[e] an official record—or a copy thereof—for use as evidence." 557 U.S. at 322. But this exception did not allow the clerk to "create a record for the sole purpose of providing evidence against a defendant." *Id.* at 323. For example, the prosecution could not admit into evidence "a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed

2

to find it" because the "statement would serve as substantive evidence against the defendant whose guilt depended on the nonexistence of the record for which the clerk searched." *Id.* at 323.

In *United States v. Bustamante*, 687 F.3d 1190 (9th Cir. 2012), the Ninth Circuit applied *Melendez-Diaz* to exclude evidence similar to Mr. OChen's certification. There, the government introduced what "purported to be a 'copy' of" the defendant's birth certificate to prove that he was not a U.S. citizen. *Id.* at 1192. In reality, this document was a certification from the Office of a Local Civil Registrar in the Philippines that "transcribe[d] the information contained . . . [in] the office's birth records." *Id.* Relying on *Melendez-Diaz*, the Ninth Circuit explained that the certification was "an affidavit testifying to the contents of the birth records of the City of Bacolod and is 'functionally identical to [the] live, in-court testimony' that an employee of the Civil Registrar's office might have provided." *Id.* at 1194 (quoting *Melendez-Diaz*, 557 U.S. at 310–11). And because "[i]t was also created for the purpose of the . . . investigation into [the defendant's] citizenship and was 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id.* (quoting *Melendez-Diaz*, 557 U.S. at 311), the Ninth Circuit held that the admission "violated [the defendant's] confrontation rights because [he] did not have a prior opportunity to examine [the affiant]," *id.* (citing *Crawford v. Washington*, 541 U.S. 36, 38–39 (2004)).

A month later, the Ninth Circuit addressed *Melendez-Diaz* and *Bustamante* specifically in the context of an 18 U.S.C. § 3505 foreign record certification. In *United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012), "[t]he primary question raised on appeal [was] whether the district court committed plain error by admitting certificates of authentication for foreign public and business records by means of affidavit in violation of the Confrontation Clause." *Id.* at 971.  The Ninth Circuit concluded that the district court did not plainly err in admitting the certifications. *See id.* at 977. But the court explained that the certifications certified "that the documents [were] true copies and that the person certifying the documents [was] the custodian," and while "[t]he certificates name[d] the company and the date dissolved in order to specify the company to which the certificate applie[d,] [t]his information [did] not interpret what the records contain[ed] or certify their substance or effect." *Id.* at 975 (emphasis added). Therefore, even though the *Melendez-Diaz* exception was limited to a

3

government clerk certifying official records, because the certifications "were not substantive evidence" and the certified records were "otherwise admissible," the court affirmed the defendant's convictions. *Id.* at 976–77.

P1168 was testimonial because it was prepared "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52 (citation omitted). And Mr. OChen's certification interpreted and provided testimony about P1168 that is "functionally identical to live, in-court testimony," and does "precisely what a witness does on direct examination." *Melendez-Diaz*, 557 U.S. at 310–11 (quoting *Davis*, 547 U.S. at 830). Mr. OChen's certification states, for example, that:

- "No human intervention is required for SMART-IT to log those actions."
- "SMART-IT automatically logs instances when UMC employees perform actions with USB devices."
- "I have reviewed the log files for computers UMC035551 and UMC035481."
- "I am the person who originally retrieved the Excel file."
- "I accessed the SMART-IT server and exported data from it into the Excel spreadsheet, a copy of which is labeled as P1168,"
- "The data was output from SMART-IT to an Excel file to identify all logged USB activity associated with computer UMC035551 and UMC035481."
- "[E]xhibit P1168 is a true and accurate copy of information that was captured and stored by the SMART-IT system."

In sum, there are two layers of Confrontation Clause issues here. The underlying record—P1168—is testimonial because it was prepared in response to suspicions that Mr. Ho and Mr. Lee were engaged in trade secret theft. And "[r]ather than simply authenticat[e] an existing non-testimonial record, [Mr. OChen] created a new record for the purpose of providing evidence against [Jinhua]." *Bustamante*, 687 F.3d at 1194. He "certif[ied]" the "substance" of the record. *Anekwu*, 695 F.3d at 975. Therefore, both P1168 and Mr. OChen's certification are testimonial and cannot be admitted absent compliance with the strictures of the Confrontation Clause.

### B.     No Required Notice

In its title, Mr. OChen's certification states that it was offered "pursuant to Federal Rules of Evidence 902(11) and 902(13) and 18 U.S.C § 3505." But those provisions specifically require that

4

such a certification be shared with the adverse party prior to trial.  Specifically, to make use of Rule 902(11), the proponent of the evidence must meet the following clear requirement: "Before the trial or hearing, the proponent <u>must</u> give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." Fed. R. Evid. 902(11) (emphasis added).[1] The same requirement applies to Rule 902(13). Fed. R. Evid. 902(13) ("The proponent must also meet the notice requirement of Rule 902(11)."). And § 3505 provides that "[a]t the arraignment or as soon after the arraignment as practicable, a party intending to offer in evidence under this section a foreign record of regularly conducted activity <u>shall</u> provide written notice of that intention to each other party." 18 U.S.C. § 3505(b) (emphasis added).

Here, the government failed to provide any pretrial notice of the OChen certification. Indeed, Mr. OChen's certification was not signed and submitted until March 3, 2022, and only in response to Jinhua's midtrial, oral objection to Exhibit P1168. This failure of notice is particularly prejudicial when the government is offering the complex output of a sophisticated technical surveillance system. As the Advisory Committee Notes observes: "A challenge to the authenticity of electronic evidence may require technical information about the system or process at issue, including possibly retaining a forensic technical expert; such factors will affect whether the opponent has a fair opportunity to challenge the evidence given the notice provided." Fed. R. Evid. 902, Advisory Committee Note. Jinhua is in no position midtrial to undertake the sort of technical analysis, with expert assistance, required to address the forensic inquiries undertaken and memorialized by Mr. OChen.

The way the government proposes to proceed is doubly prejudicial to Jinhua.  Not only would the government deprive Jinhua of an opportunity to cross-examine Mr. OChen, but the government also belatedly disclosed Mr. OChen's certification so that Jinhua lacked the time to prepare a technical rebuttal.

---

[1] Jinhua also notes that Rule 902(11) does not apply in this criminal case. *See* Fed. R. Evid. 902(11) (discussing admission of *domestic* records).

5

### C. <u>Not a Business Record</u>

Finally, Exhibit P1168 is the output of a computer forensics inquiry, not an ordinary business record. In response to suspected criminal activity, Mr. OChen queried the UMC computer systems looking for data supporting an allegation of misconduct. This was a targeted inquiry, not the storing and retrieval of routine business records. As Mr. Chang testified, despite his long history in UMC's IT department, he had never even seen a SMART-IT log file. Trial Tr. Vol. III, at 576:2-4. The business records exception does not apply. *See Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258 (9th Cir. 1984) (holding that reports from an audit conducted after suspected breach of collective bargaining agreements were not business records, in part, because "they were prepared in anticipation of litigation"); *see also Palmer v. Hoffman*, 318 U.S. 109, 113–14 (1943) (holding that a train engineer's statement during an internal investigation into a train accident was not a business record because the business was railroading—not investigating accidents—and "the[] reports [were] calculated for use essentially in the court, not in the business. Their primary utility [was] in litigating, not in railroading.").

### **CONCLUSION**

For the reasons set forth above, as well as Jinhua's March 3, 2022, Motion to Exclude Exhibit P1168, the Court should exclude the Excel spreadsheet labeled P1168.

Dated: March 16, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP


By: _____*/s/ Jack P. DiCanio*_____
JACK P. DICANIO
Attorney for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.