JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:      (650) 470-4500
Facsimile:      (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:      (213) 687-5000
Facsimile:      (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 3:18-cr-00465-MMC |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S TRIAL BRIEF REGARDING CO-CONSPIRATOR STATEMENTS** |
| v. | |
| UNITED MICROELECTRONICS CORPORATION, *et al.*, | Judge: The Honorable Maxine M. Chesney |
| Defendants. | Trial Date: February 28, 2022 |

## I.    <u>INTRODUCTION</u>

The government seeks to dramatically expand the coconspirator exception to the hearsay rule to admit statements related to any common enterprise—even wholly lawful enterprises.  Based on this interpretation of the coconspirator exception, the government seeks to admit "any UMC or Jinhua document about the development of DRAM"—even from employees with no "knowledge about the illegal theft or use of Micron's trade secrets"—because "of evidence that Project M was a joint effort between UMC and [Jinhua] to develop DRAM for manufacturing in China."  United States Trial Brief Regarding Co-Conspirator Statements (ECF 404), at 2. That is, even assuming no conspiracy between UMC and Jinhua to develop DRAM using stolen trade secrets, the government argues that the agreement between UMC and Jinhua "to develop DRAM jointly" suffices to admit all statements by any UMC or Jinhua employee engaged in the project. *Id.*

However, the government's interpretation of the coconspirator exception is unmoored from text, history, and precedent, and would swallow the rule against hearsay.  And outside of some broad dicta, the government can point to no cases adopting its interpretation of the coconspirator exception. Therefore, the Court should exclude statements offered under the coconspirator exception unless the government establishes a joint criminal venture.

## II.    <u>ARGUMENT</u>

Rule 801(d)(2)(E) provides that a statement is "not hearsay" if it is "offered against an opposing party and . . . was made by the party's <u>coconspirator</u> during and <u>in furtherance</u> of the conspiracy."  Fed. R. Evid. 801(d)(2)(E) (emphasis added).  As discussed below, history, text, and precedent all confirm that this Rule applies, at most, to statements made in furtherance of a common enterprise with an <u>illicit purpose</u>.

Leading up to the adoption of Rule 801(d)(2)(E), courts universally required an illegal purpose before admitting a statement as a coconspirator statement.  In *United States v. Dennis*, 183 F.2d 201 (2d Cir. 1950), for example, the prosecution introduced statements made both before and after the charged conduct became a crime.  *See id.* at 230–31. Judge Learned Hand explained that "we have repeatedly stated that such declarations are competent against the accused in a prosecution for conspiracy, or for any other concerted venture, <u>when, but only when, they are made in execution</u>

of an enterprise-'a partnership in crime'- to which the accused and the declarant are both parties, and that the enterprise must itself comprise making some such declaration as a step in its realization." *Id.* at 230 (emphasis added).  Therefore, the statements from before the conduct was criminalized were admissible only after there was evidence that the enterprise included actual criminal conduct. *See id.* at 231; *see also Am. Fur Co. v. United States*, 27 U.S. 358, 365 (1829) ("[W]e hold the law to be, that where two or more persons are associated together for the same illegal purpose, any act or declaration of one of the parties, in reference to the common object, and forming a part of the res gestæ, may be given in evidence against the others." (emphasis added)).

When the Federal Rules of Evidence were codified, "[t]he House approved the long-accepted rule that 'a statement by a coconspirator of a party during the course and in furtherance of the conspiracy' is not hearsay."  Senate Report No. 93-1277, 1974 U.S.C.C.A.N. 7051, 7073. Presumably recognizing that a "coconspirator" is "[s]omeone who engages in a criminal conspiracy with another," Coconspirator, Black's Law Dictionary (11th ed. 2019) (emphasis added), the Senate Judiciary Committee clarified that "[w]hile the rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged," Senate Report No. 93-1277, 1974 U.S.C.C.A.N. 7051, 7073 (citing *United States v. Rinaldi*, 393 F.2d 97, 99 (2d Cir. 1968); *United States v. Spencer*, 415 F.2d 1301, 1304 (7th Cir. 1969)).

The referenced "universally accepted doctrine," however, was not that any joint venturer could be considered a coconspirator—it was only that the government did not have to charge a conspiracy to admit the statements made by an individual with whom the defendant engaged in illicit conduct.  *Id.*  Indeed, the two cases cited by the Senate Judiciary Committee in support of the "universally accepted doctrine" demonstrate that the committee understood that the Rule only applied to joint criminal ventures.  In *United States v. Rinaldi*, the defendant and the declarant "were engaged in an illegal joint enterprise, which makes statements by any member of the venture admissible against the others and each of them, whether or not a conspiracy is charged."  393 F.2d at 99 (emphasis added).  And in *United States v. Spencer*, the "[d]efendant's acts of receiving money

1  from [the declarant] and delivering the heroin [were] proof of his participation in the joint <u>criminal</u>

2  <u>venture</u>."  415 F.2d at 1304 (emphasis added).

3         Likewise, the sources relied upon by the Advisory Committee's comment to Rule

4  801(d)(2)(E) all understood the coconspirator exception to only apply to unlawful common

5  enterprises. *See* Ben Trachtenberg, *Coconspirators, "Coventurers," and the Exception Swallowing*

6  *the Hearsay Rule*, 61 Hastings L.J. 581, 605–06 (2010).  The two Supreme Court cases cited by the

7  comment concerned criminal conspiracies. *See Krulewitch v. United States*, 336 U.S. 440, 442–43

8  (1949); *Wong Sun v. United States*, 371 U.S. 471, 490 (1963).  The law review article and student

9  comment both discuss criminal conspiracies exclusively. *See* Joseph H. Levie, *Hearsay and*

10 *Conspiracy (Reexamination of the Co-Conspirators' Exception to the Hearsay Rule)*, 52 Mich. L.

11 Rev. 1159 (1954); Comment, *The Hearsay Exception for Co-Conspirators' Declarations*, 25 U. Chi.

12 L. Rev. 530 (1958).  And, significantly, the two existing evidence codes cited by the Advisory

13 Committee as "similarly limited provisions," Advisory Comm. Note Rule 801(d)(2)(E), both limited

14 the exception to a conspiracy or plan "<u>to commit a crime or civil wrong</u>," California Evidence Code

15 § 1223; New Jersey Rule 63(9)(b) (emphasis added).

16        Against this backdrop and years of history, the government argues that, in fact, Rule

17 801(d)(2)(E) applies to even wholly innocent common enterprises.  In support, the government

18 principally relies on a single Ninth Circuit opinion—*United States v. Layton*, 855 F.2d 1388 (9th Cir.

19 1988).  But as Jinhua has previously explained, *Layton* does not bear the weight the government

20 seeks to assign it.

21        In *Layton*, as the government notes, the issue before the Court was whether the district court

22 erred in holding "that the Government had proffered sufficient evidence to establish that [Jim] Jones

23 and Layton had participated in a conspiracy to prevent the Ryan [congressional] delegation from

24 discovering the truth about the conditions at Jonestown" that ended in the Congressman's death. *Id.*

25 at 1397-98. And the Ninth Circuit affirmed the admission of this evidence because "the district court

26 correctly determined that Rule 801(d)(2)(E) applies to statements made during the course and in

27 furtherance of any enterprise, whether legal or illegal, in which the declarant and the defendant

28 jointly participated." *Id.* at 1400.

3

1    However, although this language in *Layton* is broad, the common enterprise at issue there

2    was far from innocent.  Preventing a Congressman from learning the truth about a suicidal cult

3    undoubtedly has an illicit nature.  There was also ample evidence that Jones and Layton were

4    engaged in an actual criminal conspiracy to kill Congressman Ryan.  Layton had been a member of

5    the Jonestown security force, which "was under Jones' control."  *Id.* at 1393. And before

6    Congressman Ryan's arrival, Jones made multiple speeches in which he stated that if Ryan and his

7    delegation "enter this property illegally, they will not leave it alive," that he had "the right to shoot

8    [Ryan] in the ass," and threatened that "if [Ryan] stays long enough for tea he's gonna regret it."  *Id.*

9    at 1401.  Because the issue before the court was whether to admit statements from a coconspirator

10   to a common enterprise with an illicit objective, this Court is not bound by the "dicta" contained in

11   the "[e]xpressions in the [*Layton*] court's opinion which go beyond the facts before the court."

12   *Export Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1472 (9th Cir. 1995) (quoting *Black's Law Dictionary*,

13   454 (6th ed. 1990)); *see also Best Life Assur. Co. of Cal. v. C.I.R.*, 281 F.3d 828, 834 (9th Cir. 2002)

14   (defining "dicta" as a statement "made during the course of delivering a judicial opinion, but one

15   that is unnecessary to the decision in the case and therefore not precedential (though it may be

16   considered persuasive" (quoting *Black's Law Dictionary* 1100 (7th ed. 1999))); *see also Reyes v.*

17   *Garland*, 11 F.4th 985, 1001–02 (9th Cir. 2021) (Van Dyke, J., dissenting) ("And as is often the case

18   with dicta, because it was untethered from any real facts actually presented in that case, in hindsight

19   it was also obviously wrong.").[1]

20

21

22   _____

23   [1] This understanding of *Layton* was implied in *United States v. Peralta*,  941 F.2d 1003 (9th Cir. 1991).  There, the defendant challenged the admission of statements under Rule 801(d)(2)(E)

24   after the district court entered a judgment of acquittal of the conspiracy charge against the declarant. *See id.* at 1005.  The *Peralta* court did not adopt a broad interpretation of *Layton* and hold that an

25   acquittal was irrelevant because Rule 801(d)(2)(E) applies even when there is a wholly lawful purpose.  Rather, the court held "that if a district court is persuaded by a preponderance of the

26   evidence that the declarant and the accused were members of a conspiracy, the declarant's statement is admissible notwithstanding the fact that the court concludes that the evidence is insufficient under

27   the reasonable doubt standard to support a *conviction* of the declarant of the crime of conspiracy." *Id.* at 1007 (emphasis in original).  That is, although citing *Layton*, the *Peralta* court found the

28   applications of Rule 801(d)(2)(E) required evidence of an unlawful conspiracy—not that Rule 801(d)(2)(E) is untethered from an illicit purpose.

4

1   Indeed, the government has not pointed to a single case in which statements were admitted

2   under Rule 801(d)(2)(E) in the absence of a joint criminal venture.  In *United States v. Nelson*, 732

3   F.3d 504 (5th Cir. 2013), the statements at issue were made by a mayor who both helped set up the

4   arrangement for a group of four mayors to receive bribes in exchange for government contracts, and

5   paid the defendant mayor a bribe on behalf of the contractor.  *Id.* at 509.  In *United States v. Gewin*,

6   471 F.3d 197 (D.C. Cir. 2006), the court admitted statements made by the defendant's coconspirators

7   in a trial in which the defendant and his coconspirators were charged with engaging in an illegal

8   "'pump and dump' scheme" to "pump[] up the share price [of a company] through a campaign of

9   strategically-timed, fraudulent press releases, and sold its holdings into the artificially inflated

10  market."  *Id.* at 75.  In *United States v. Brockenborrugh*, 575 F.3d 726 (D.C. Cir. 2009), the "joint

11  enterprise" at issue was an attempt to steal a parcel of real property by impersonating a United States

12  Marshal and filing a false deed.  *Id.* at 730–31, 735. In *United States v. Postal*, 589 F.2d 862 (5th

13  Cir. 1979), the challenged logbook was for a boat voyage illegally transporting eight thousand

14  pounds of marijuana.  *Id.* at 867–68, 886 n.41.  Finally, in *United States v. Ferris*, CR-18-159-D,

15  2019 WL 3935102, at *1 (W.D. Okla. Aug. 20, 2019), the three defendants were engaged in a

16  common enterprise for which they were each charged with distributing controlled substances outside

17  the usual course of professional medical practice and with Medicare fraud.  While these opinions

18  contained broad statements about Rule 801(d)(2)(E)'s applicability, none of the cases admitted

19  statements that were made as part of a wholly innocent common enterprise.

20  It is understandable that the government cannot cite to a single case in which statements were

21  admitted under Rule 801(d)(2)(E) without a showing that the defendant and declarant were engaged

22  in a common enterprise <u>with an illicit purpose</u>.  One scholar conducted a broad survey of cases

23  invoking Rule 801(d)(2)(E)—from eight federal circuits in the period 1975 through 2010—and, out

24  of 2,516 cases, discovered just two instances of admission where the object of the conspiracy did not

25  have an illegal object.  Trachtenberg, *supra*, at 624–26.

26  The government also cites to Wright & Miller in support of its argument that a wholly

27  innocent agreement can constitute a Rule 801(d)(2)(E) "conspiracy."  As the government notes, the

28  treatise states that "[t]he expansion beyond criminal joint ventures also reflects the rationale

5

1  underlying the hearsay exemption which depends on an association between the party and the

2  declarant, but not necessarily a criminal association." 30 Charles Alan Wright & Arthur R. Miller,

3  *Federal Practice and Procedure* § 6778 (2d ed. April 2021 update).  However, the government

4  ignores the remainder of the paragraph in which Wright and Miller go on to explain:

> 5  Still, it is important for courts to remain vigilant so that Rule 801(d)(2)(E)
> does not become impermissibly unmoored from its foundations.  <u>After all,</u>
> 6  <u>Rule 801(d)(2)(E) uses the term "conspiracy"—a term that has</u>
> <u>unmistakably illicit undertones.</u>  As one commentator explains, "[c]ourts
> 7  and commentators have routinely used words such as 'criminal,' 'illegal,'
> 'illicit,' and 'wrongful' when describing the joint conduct relevant to the
> 8  Exception."  <u>The Senate Judiciary Committee's comments, quoted above,</u>
> <u>emphasize only that a conspiracy need not be criminally charged.  That is</u>
> 9  <u>a step removed from the suggestion that the "conspiracy" can be something</u>
> <u>completely innocuous like a plan to take a colleague out for a birthday</u>
> 10  <u>lunch.</u>

11  *Id.* (emphasis added) (citations omitted).

12      In sum, the text of Rule 801(d)(2)(E), the history of the Rule, and precedent interpreting the

13  Rule, all confirm that a wholly lawful agreement does not constitute a Rule 801(d)(2)(E)

14  "conspiracy."  To admit statements under the Rule, therefore, it is not enough for the government to

15  establish that UMC and Jinhua entered into a business agreement to develop DRAM jointly.  The

16  government must also show some illicit purpose to this agreement.  Otherwise, Rule 801(d)(2)(E) is

17  inapplicable, and statements made by UMC employees not privy to the alleged theft of trade secrets

18  cannot be admitted against Jinhua as coconspirator statements.

19  **III.**     <u>**CONCLUSION**</u>

20      For the reasons set forth above, the Court should exclude statements that the government

21  seeks to introduce under Rule 801(d)(2)(E) absent proof that the declarant and Jinhua were engaged

22  in a common enterprise with an illicit purpose.

23  Dated: March 23, 2022

                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

26                By:  _____*/s/ Jack P. DiCanio*_____

27                           JACK P. DICANIO
                         Attorney for Defendant

28           FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.