JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
OSAMA ALKHAWAJA (SBN 334404)
Osama.Alkhawaja@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:      (650) 470-4500
Facsimile:       (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:      (213) 687-5000
Facsimile:       (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>     v.<br><br>UNITED MICROELECTRONICS CORPORATION, *et al.*,<br><br>                  Defendants. | CASE NO.: 3:18-CR-00465-MMC<br><br>**DEFENDANT FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.'S RESPONSE TO THE UNITED STATES' FOURTH STATUS REPORT REGARDING DIPLOMATIC CORRESPONDENCE**<br><br>Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 28, 2022 |

1

## <u>TABLE OF CONTENTS</u>

2   TABLE OF AUTHORITIES ............................................................................................ ii

3       I.      BACKGROUND .................................................................................... 3

4   ARGUMENT ............................................................................................................ 5

5       II.     The United States Should Submit An MLAA Request, Or, In The
                Alternative, Jinhua Respectfully Requests That The Court Consider Granting
6               Jinhua's Request To Issue A Letter Rogatory ........................................... 5

7               A.      The PRC Has Indicated That It is Open to Receiving an MLAA
                        Request and Will Actively Pursue Such a Request; There Is No Basis
8                       For Believing There Will Be Undue Delay .................................... 6

9               B.      The Court Is Capable Of Weighing The Credibility Of Any Remote
                        Testimony Taken In the Presence of PRC Governmental Officials ............ 7

10              C.      The Government Has A Duty To Pursue An MLAA Request Where,
                        As Here, Defendant Has Made A Showing That It Is Necessary To
11                      Secure Testimony That Is Material To The Defense And There Is
                        Precedent For Doing So ........................................................... 8
12
                D.      The Continued COVID Restriction Make It Unfeasible and Unfair to
13                      Require You Zhenfu, Wu Junsheng or any of Jinhua's Other
                        Witnesses to Testify Live in San Francisco by June 21, 2022 ................ 9
14
        III.    CONCLUSION ..................................................................................... 10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Cramton v. Grabbagreen Fran. LLC*,
   CV-17-04663-PHX-DWL, 2020 WL 8620346 (D. Ariz. Nov. 13, 2020) .............................. 8

*Guardant Health, Inc. v. Foundation Medicine, Inc.*,
   C.A. No. 17-1616-LPS-CJB, 2020 WL 6120186 (D. Del. 2020) .......................................... 8

*El-Hadad v. United Arab Emirates*,
   496 F.3d 658 (D.C. Cir. 2007) ............................................................................................. 8

*Lopez v. Miller*,
   915 F. Supp. 2d 373 (E.D.N.Y. 2013) .................................................................................. 8

*Lopez v. NTI, LLC*,
   748 F. Supp. 2d 471 (D. Md. 2010) ..................................................................................... 8

*Official Airline Guides, Inc. v. Churchfield Publications, Inc.*,
   756 F. Supp. 1393 (D. Or. 1990) ......................................................................................... 8

*In re RFC & ResCap Liquidating Trust Action*,
   444 F. Supp. 3d 967 (D. Minn. 2020) .................................................................................. 8

*United States v. McClellan*,
   959 F.3d 442 (1st Cir. 2020) ................................................................................................ 9

*United States v. Sapse*,
   No. 2:10-CR-0370-KJD-DWF, 2011 WL 1576898 (D. Nev. Apr. 26, 2011) ....................... 7

*United States v. Tao*,
   Case No. 19-20052-JAR, 2021 WL 5205446  (D. Kan. Nov. 9, 2021) .......................... 4, 8, 9

*Virtual Architecture, Ltd. v. Rick*,
   No. 08-Civ. 5866 (SHS), 2012 WL 388507 (S.D.N.Y. 2012) ............................................... 8

ii

1    Defendant Fujian Jinhua Integrated Circuit, Co., Ltd. ("Jinhua") hereby submits its response

2  to the United States' Fourth Status Report Regarding Diplomatic Correspondence, which was filed

3  on June 9, 2022.  (*See* ECF 490.)

4    The trial in this action was ready to move forward with the remote testimony of Jinhua's

5  China-based witnesses on May 16, 2021.  The United States government, however, elected to send

6  a diplomatic note to the Chinese central government that has pushed the issues into a diplomatic

7  process between the two countries.  Given the extreme sensitivity of current China-U.S. relations, it

8  is not surprising that the United States' diplomatic note, which likely triggered the involvement of

9  several agencies within the Chinese government, would cause the delay the Court and the parties are

10  presently encountering.  Despite that delay, however, the Chinese central government has promptly

11  responded to each of the United States' diplomatic notes, and has provided the U.S. government with

12  a clear path forward, i.e., submit a request to the Chinese government to take the remote testimony

13  of Jinhua's China-based witnesses in China, pursuant to the Agreement Between the Government of

14  the United States of America and the Government of the People's Republic of China on Mutual Legal

15  Assistance in Criminal Matters ("MLAA").

16    Significantly, the Chinese central government has never once told the United States that it

17  would not approve a request under the MLAA; nor has it informed Jinhua that it may not proceed

18  with remote testimony.  To the contrary, the Chinese central government informed the United States

19  that it is "open to receiving" either an MLAA request or letters rogatory, and that it "will actively

20  proceed on such requests." (ECF 490 at 11-12, ¶ 9.)  A fair reading of this messaging is that the

21  Chinese government will likely grant the request for remote testimony and that it is simply requesting

22  that the United States follow what the Chinese government believes to be the proper diplomatic and

23  legal process now that the United States has elevated this to a diplomatic issue.

24    Given the above, Jinhua has requested that the United States submit a request for remote

25  testimony of Jinhua's China-based witnesses pursuant to the MLAA.  It is the next step in a process

26  that the United States prompted, and having started that process, the United States should finish it by

27  complying with the request of the Chinese central government.  It is also the right thing to do.  The

28  witnesses at issue are central to Jinhua's defense and directly contradict the United States' theory of

1

1  the case -- a theory that was pieced together by a speculative reading of documents without a single

2  percipient witness with knowledge of United Microelectronic Corporation's development of Project

3  M's DRAM technology.  Respectfully, the United States' objective in this action should be to pursue

4  justice, not to secure a conviction at any cost.  Considerations of due process and fundamental

5  fairness should prompt the United States to submit the MLAA request.  It would be the most efficient

6  and effective manner in which to obtain approval for the remote testimony.

7       In the event the United States rejects this request, Jinhua intends to file a motion promptly

8  for this Court to issue letters rogatory for obtaining such remote testimony in China.  In order to

9  permit sufficient time for the Chinese central government to respond to either the MLAA request or

10  the letters rogatory, Jinhua respectfully requests that the Court continue the resumption of trial in this

11  matter pending the response of the Chinese government and set a renewed status conference for

12  August 15, 2022.  The parties will obviously report to the Court as soon as we hear back from the

13  Chinese government.  In the event that the US Government or Jinhua hears back from the Chinese

14  government reasonably in advance of the August 15 date with confirmation that the Chinese

15  government will approve the remote testimony of Jinhua's witnesses, however, Jinhua proposes

16  using August 15 as the date to resume the trial.

17       The United States has asked the Court to move forward on June 21, 2021 with whatever

18  witnesses it can get to San Francisco regardless of the travel complications and health concerns

19  caused by the COVID pandemic.  That approach would deprive Jinhua of three critical witnesses,

20  and for the reasons set forth in the declarations of Jinfu Zheng (ECF 459-1; ECF 491-1), it would

21  impose a significant personal hardship on the other two Jinhua witnesses.  The United States

22  proposed approach would therefore deprive Jinhua of its due process rights to present a full and

23  complete defense.

24       Based on the Chinese government's representation that it will "actively proceed on [an

25  MLAA or letters rogatory] request[]" (ECF 490 at 11-12, ¶ 9) and its timely responses to the U.S.

26  government's past diplomatic notes in this case, there is no reason to assume that the Chinese

27  government will not respond promptly.  Accordingly, Jinhua respectfully requests that the Court

28  continue the resumption of the trial and schedule new status conference on August 15, 2022 to give

1    the U.S. government and/or Jinhua sufficient time to submit their respective MLAA request or letters

2    rogatory, and to give the Chinese central government sufficient time to respond.

3    **I.    BACKGROUND**

4           Based on the Court's familiarity with the factual background of this issue, Jinhua provides

5    the following abbreviated information for context.

6           On May 2, 2022, the Court granted Jinhua's request to present the testimony of all five of its

7    remaining witnesses -- Lu Wensheng, Wu Kunrong (Albert Wu), You Zhenfu (Jeff Yu), Wu

8    Junsheng, and Professor Jiang Ying – remotely by video link from China.  (ECF 461.)[1]  The Court

9    subsequently ordered that the trial would resume on May 16, 2022.  (ECF 471.)

10          On May 15, 2022, the day before trial was supposed to resume, the government notified the

11   Court that it had received a diplomatic note from the Embassy of the People's Republic of China

12   ("PRC") on May 13, 2022, in response to the United States government's diplomatic note to the PRC,

13   dated April 29, 2022, notifying the PRC that this Court had approved the taking of remote testimony

14   in China.  (ECF 476 at 2.)  The PRC's May 13 diplomatic note, received just two weeks after the

15   United States' initial diplomatic overture, stated that the PRC "was reviewing the issue and would

16   respond further soon" and asked the Court to postpone the taking of remote testimony scheduled for

17   May 16.  (*Id.*)  In response, the Court temporarily postponed the trial.  (ECF 478.)  Jinhua was fully

18   ready and prepared to commence the remote testimony of its witnesses on May 16.

19          On May 19, 2022, less than a week after receiving the first diplomatic note from the Chinese

20   Government, the United States received a second diplomatic note from the PRC.  In its May 19

21   diplomatic note, the Chinese Government "directed that the United States submit a request to arrange

22   for the [remote] testimony" of Jinhua's witnesses pursuant to the MLAA in order to comply with the

23   Chinese government's view of the PRC's International Criminal Judicial Assistance Law ("ICJAL").

24   (ECF 482-1 at 3, ¶ 2.)

25          On May 24, 2022, the United States Department of State sent the PRC a follow-up diplomatic

26   note in which the State Department informed the PRC, among other things, that because the remote

27   _____

28   [1]  The Court had decided earlier that Lu Wensheng, Wu Kunrong and Professor Jiang Ying could
     testify remotely.  (*See* ECF 458.)

1  testimony "would be voluntary testimony at the request of the defendant," rather than testimony

2  sought by the United States, the United States did not believe that the MLAA applied.  (*Id.* at 3-4, ¶

3  ¶ 3-4.)

4        On June 2, 2022, the government filed a third status report in which the United States notified

5  the Court that "[c]onsistent with its position in other cases," the United States would "decline[] to

6  invoke the diplomatic process in this case."  (ECF 486 at 4-5.)  At the subsequent hearing on June 6,

7  2022, however, Jinhua noted that, contrary to its status conference report, the National Security

8  Division of the Department of Justice had filed an MLAA request in a similar case in Kansas as

9  recently as November 2021 (*see United States v. Tao*, Case No. 19-20052-JAR, 2021 WL 5205446

10 (D. Kan. Nov. 9, 2021)) (6/6/2022 TR at 13:4-10), and Jinhua expressly asked the United States to

11 follow that precedent here by submitting an MLAA request.  (*Id.* at 12:6-21.) The Court also

12 "suggest[ed]" that the United States consider filing an MLAA "in the interest of moving [the case]

13 along." (*Id.* at 23:13-24:18 (noting that "it may be worth just making the request").)[2]

14       On June 7, 2022, just two weeks after the United States *sent* the May 24 diplomatic note, the

15 United States received a third diplomatic note from the Chinese government, notifying the United

16 States that the PRC "disagrees with the Department of States' May 24 Diplomatic Note that the

17 MLAA process in not applicable to the Jinhua remote testimony."  (ECF 490 (Declaration of V.

18 Prugh from U.S. State Department) at 11, ¶ 8.)  In fact, the Chinese Embassy stated that "it has

19 records of requests for witnesses in China to testify pursuant to the MLAA from the United States

20 Department of State."  (*Id.*)  The Chinese government further advised the United States that the PRC

21 "is **open to receiving both MLAA requests and letters rogatory** in the Jinhua case" and stated that

22 "**the Chinese side will actively proceed on such requests**."  (*Id.*, at 11-12, ¶ 9) (emphasis added).

23       On June 9, 2022, the United States filed its Fourth Status Report Regarding Diplomatic

24 Correspondence, in which the United Sates reported on the Chinese government's June 7 diplomatic

25

26 [2]   Jinhua repeated its request that the United States follow the Chinese Government's request and

27 submit an MLAA request for Jinhua to take the testimony of its witnesses remotely in a letter Jinhua sent to the United States on June 8, 2022.  (Declaration of Matthew E. Sloan ("Sloan Decl."), Ex. 1

28 (J. DiCanio 6/8/22 Letter to DOJ).)

1  note.  (ECF 490.)  Despite the Chinese Government's statement that it believes the MLAA process

2  applies to Jinhua's request, that it is "open to receiving an MLAA request" and that is would "actively

3  proceed" on such a request, the United States once again refused in its status report to submit an

4  MLAA request, and instead requested the Court to order Jinhua to produce all of its witnesses in-

5  person for live testimony on June 21, 2022 or forego the opportunity to present the testimony of these

6  witnesses.  (*Id.* at 6-7.)

7         On June 11, 2022, Jinhua submitted the Second Declaration of Jinfu Zheng Regarding Travel

8  for Defendant's Witnesses You Zhenfu and Wu Junsheng, setting forth the reasons that it would still

9  be prohibitively difficult for Jinhua's witnesses to travel to San Francisco to testify live.  (ECF 491-

10  1.)

11         The PRC has never said in any of its three diplomatic notes that it would not consent to the

12  taking of remote testimony if the United States followed what the PRC considers to be the appropriate

13  process of filing an MLAA request or serving a letter rogatory on the Chinese government.  The PRC

14  has also never informed Jinhua that it could not proceed with remote testimony.

15  **ARGUMENT**

16  II.     The United States Should Submit An MLAA Request, Or, In The Alternative, Jinhua
           Respectfully Requests That The Court Consider Granting Jinhua's Request To Issue A

17             Letter Rogatory

18         Despite the Chinese government's – and Jinhua's – repeated requests that the United States

19  submit a request for the remote testimony of Jinhua's witness under either the MLAA or a letter

20  rogatory, the United States has refused to do so on several grounds.  First, the United States contends

21  that submitting an MLAA request would be futile because "there is no reason to believe the PRC

22  will ever consent to remote testimony, and certainly not within any reasonable time period."  (ECF

23  490 at 5-6.)  Second, the United States asserts that even if the Chinese government would agree to

24  such remote testimony on a timely basis, it would be futile because it would not result in admissible

25  evidence due to the Chinese government's demand that the U.S. allow a PRC government official,

26  with authority to terminate the testimony if it proved detrimental to China's interests, to sit in the

27  room with the testifying witness and monitor his or her testimony.  (ECF 490 at 4-5.)  Finally, the

28

1  United States contends, incorrectly, that the COVID conditions and travel restriction for travel to and

2  from China have now improved significantly, thus eliminating the need for remote testimony.

3      As demonstrated below, the United States is wrong on all accounts.  In light of the precedent

4  for submitting MLAA requests in similar cases and the Department of Justice's duty to pursue justice

5  and avoid the deprivation of Jinhua's due process rights, the United States should submit an MLAA

6  request to the PRC Government to seek the remote testimony of Jinhua's proposed witnesses.  In the

7  event that the United States declines to do so, Jinhua intends to promptly file a motion for the issuance

8  of letters rogatory in a form substantially similar to the draft motion attached hereto.  (*See* Sloan

9  Decl., Ex. 2 (draft Motion for Issuance of Letters Rogatory).)

10      A.    The PRC Has Indicated That It is Open to Receiving an MLAA Request and Will

11      Actively Pursue Such a Request; There Is No Basis For Believing There Will Be

    Undue Delay

12      The United States has expressed skepticism that an MLAA request will be given prompt

13  attention by the PRC or that the PRC would ever grant such a request.  (*See* ECF 490 at 4-5.)  But

14  this runs directly counter to the government's actual experience with the PRC in this matter.  Far

15  from ignoring the United States' communications, the PRC has been actively responding and telling

16  the United States precisely what steps it needs to take.  (*See generally* ECF Nos. 482, 486, 490.)

17  Indeed, in its June 7 Diplomatic Note, the Chinese Government stated that it is "open to receiving

18  both MLAA requests and letters rogatory" and that the PRC is committed to "actively proceed[ing]"

19  on any requests made for remote testimony in this action.  (ECF 490, Ex. 1 at 12.)  Moreover, the

20  PRC has never once indicated that it will deny a request.  Instead, it has continually laid out the

21  process it believes the United States should follow and has committed to responding.  There is no

22  reason to believe that the PRC will suddenly fail to respond once the formal request, which it has

23  repeatedly requested, is actually made.  Nor is there any reason to believe that the PRC is actively

24  engaging with the United States and specifying the process for submitting a proper request only so

25  that it can deny that request once it has been made.

26      To the extent that any concerns about the timeliness of the PRC's response still exist, the

27  United States can ask in its MLAA request for the Chinese government to provide an estimated

28

1  timeline for the PRC's expected response.  This will enable the Court to properly evaluate how

2  responsive the PRC is being and determine a reasonable time when trial may resume.

3      B.    The Court Is Capable Of Weighing The Credibility Of Any Remote Testimony
            Taken In the Presence of PRC Governmental Officials

4

5      The United States also claims that any remote testimony would be unreliable due to the

6  potential presence of a PRC official during the testimony.  (*See* ECF 490 at 3-4.)  In particular, the

7  United States takes exception to the Chinese government's position in the June 7 diplomatic note

8  that under Article 37 of the ICJAL, an official "from the Chinese competent authority shall be present

9  during the testimony and, upon finding any circumstance detrimental to the sovereignty, security, or

10 public interest" of the PRC "may intervene to stop the testimony."  (ECF 490, Ex. 1 at 11, ¶ 6.)  The

11 United States' position, however, completely discounts this Court's capability as the fact finder to

12 properly assess the credibility of the witnesses.  It also ignores the fact that "the risk of false testimony

13 does not justify prohibiting the *taking* of the [testimony] so long as the witness takes an oath to tell

14 the truth and is informed of the potential penalty for false testimony."  *United States v. Sapse*, No.

15 2:10-CR-0370-KJD-DWF, 2011 WL 1576898, at *3 (D. Nev. Apr. 26, 2011) (emphasis in original)

16 (discussing remote deposition conducted in Ukraine pursuant to the U.S.-Ukrainian MLAT when a

17 suggestion was made that it was "questionable whether Ukrainian authorities would prosecute the

18 witness for false testimony").  Rule 15 depositions in foreign jurisdictions are frequently used in

19 criminal cases, and in many of those cases, the depositions are sought by the United States.

20     Moreover, the United States' position ignores the purpose and practical application of Article

21 37.  The PRC requires an official to be present simply to ensure that remote testimony is conducted

22 in accordance with Chinese laws and that information which may affect China's national security is

23 not revealed.  (ICJAL, Art. 37 (stating that testimony should be stopped if it is "harmful to the

24 sovereignty, security, or societal public interest" of the PRC).)  The official is not there to monitor

25 and manipulate testimony.  Here, it is highly improbable that any of the remote testimony would

26 implicate China's national security or other public interest.  Rather, Jinhua's witnesses will be

27 providing testimony regarding documents that have already been produced in this action and do not

28

7

1    touch on such sensitive matters.  It is therefore unlikely that any Chinese official would proactively

2    intervene in any remote testimony in this action.

3           Moreover, the Court is fully capable of weighing the credibility of any remote testimony

4    conducted within the presence of a foreign official.  To assist the Court's ability to judge the

5    credibility of witnesses, the Court could require that a camera be installed in the room in which the

6    witnesses testify which shows both the witness as well as any PRC official who may be present, so

7    that the Court is able to fully observe the circumstances.  This would give the Court the ability to

8    observe whether any undue pressure was imposed on the witness by the presence of the PRC official

9    and take that into consideration when assessing the credibility of the witnesses.  This sort of targeted

10   weighing of the credibility of the witnesses' testimony based on the circumstances of his or her

11   testimony is well within the Court's capacity; there is no need to exclude the witnesses' testimony

12   altogether.[3]

13          C.     The Government Has A Duty To Pursue An MLAA Request Where, As Here,
                   Defendant Has Made A Showing That It Is Necessary To Secure Testimony That Is
14                 Material To The Defense And There Is Precedent For Doing So

15          Contrary to the United States' suggestion (*see* ECF 486 at 5-6), moreover, it would not be

16   novel or unprecedented for the government to submit an MLAA request to seek remote testimony

17   on behalf of a defendant.  In fact, as Jinhua has previously stated before this Court (6/6/2022 TR at

18   13), the National Security Division of the Department of Justice took precisely this position in case

19   in Kansas late last year.  *See United States v. Tao*, 2021 WL 5205446, at *1 (discussing the

20   government's voluntary submission of an MLAA request on behalf of defendant for Rule 15

21

22   ───────────────
     [3] Significantly, it is not uncommon to have a foreign government official present to oversee the
23   taking of remote testimony in a foreign country.  For example, Rule 15 depositions in criminal cases
     are often conducted in a foreign embassy or under the oversight of a magistrate or judicial officer of
24   the requested nations.  Moreover, courts frequently weigh the credibility of foreign witnesses
     testifying remotely, *see, e.g., El-Hadad v. United Arab Emirates*, 496 F.3d 658 (D.C. Cir. 2007)
25   (Egypt); *Lopez v. Miller*, 915 F. Supp. 2d 373, 396 & n.9 (E.D.N.Y. 2013) (Dominican Republic);
     *Virtual Architecture, Ltd. v. Rick*, No. 08-Civ. 5866 (SHS), 2012 WL 388507, *2 (S.D.N.Y. 2012)
26   (Seychelles); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 480 (D. Md. 2010) (Honduras); *Official
     Airline Guides, Inc. v. Churchfield Publications, Inc.*, 756 F. Supp. 1393, 1398 n.2 (D. Or. 1990)
27   (United Kingdom), especially as necessitated by the COVID-19 pandemic, *see, e.g., Cramton v.
     Grabbagreen Fran. LLC*, CV-17-04663-PHX-DWL, 2020 WL 8620346, at *2 (D. Ariz. Nov. 13,
28   2020); *Guardant Health, Inc. v. Foundation Medicine, Inc.*, C.A. No. 17-1616-LPS-CJB, 2020 WL
     6120186, *3 (D. Del. 2020); *In re RFC & ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967,
     971-72 (D. Minn. 2020).

1  depositions of defense witnesses located within the PRC).  Moreover, as this Court itself recognized

2  at the last status conference on June 6, the First Circuit has ruled that "[p]rosecutors have a duty to

3  'act in accordance with the obligations imposed on [them] as . . . agent[s] of justice,' . . . . and where

4  practicable, deploying the government's MLAT capabilities [to obtain remote deposition testimony

5  sought by defendants] would be a just way of fulfilling those obligations."  *United States v.*

6  *McClellan*, 959 F.3d 442, 476 (1st Cir. 2020) (internal citations omitted); *see* 6/6/2022 TR at 14:2-

7  21 (the Court citing to the above passage in *McClellan*).  While the First Circuit ultimately found

8  that the prosecutors did not violate that duty in *McClellan* because the defendant had not made a

9  plausible showing that the requested testimony "could have secured evidence that is both material

10  and favorable" to the defense, *McClellan*, 959 F.3d at 476, here Jinhua has made a clear showing

11  that the requested testimony would be both material and exculpatory in numerous respects.  As such,

12  the Government should comply with the PRC's request and do what it has done before in the *Tao*

13  case and what the First Circuit has stated it should do: submit an MLAA request to assist the defense

14  in being able to obtain the testimony it needs at trial.

15       Should the Government continue to refuse to submit an MLAA request, Jinhua will file a

16  motion requesting the Court to transmit a letter rogatory on Jinhua's behalf to the PRC requesting

17  the remote testimony of Jinhua's witnesses.  According to the PRC's June 7 diplomatic note, the

18  Chinese government is receptive to letters rogatory in the Jinhua case.  (*See* ECF 490, Ex. 1 at 11-

19  12.)  Jinhua still believes that, given the Government's ongoing dialogue with the PRC, an MLAA

20  request is the proper mechanism here.  However, if the Court would prefer, Jinhua is prepared to

21  promptly file a motion requesting the issuance of a letter rogatory, a draft of which is attached as

22  Exhibit 2.

23       D.    The Continued COVID Restriction Make It Unfeasible and Unfair to Require You
              Zhenfu, Wu Junsheng or any of Jinhua's Other Witnesses to Testify Live in San
24            Francisco by June 21, 2022.

25       Further, the Court should reject the United States' request to make Jinhua's witnesses travel

26  to San Francisco to testify live in Court.  First, as discussed at length with the court, Lu Wensheng,

27  Wu Kunrong, and Prof. Jiang Ying have medical conditions which make traveling to the United

28  States during the Covid pandemic unduly risky. Second, with respect to Wu Junsheng and Jeff You,

9

1   for the reasons set forth in the Second Declaration of Jinfu Zheng, on June 11, 2021 (ECF 491-1),

2   travel to the United States to testify remains unduly burdensome.  As noted in Mr. Zheng's

3   declaration, it is not so much the travel to the United States, but rather the delays in returning to

4   China which create the extreme burden.  Due to a shortage of direct flights, testing requirements,

5   quarantine restrictions, and the risk of contracting the virus, the witnesses would be absent from their

6   jobs and families for weeks, and possibly months.  (*See id.*)

7          The Government's suggestion that Jinhua charter a flight for its witnesses is not feasible.  A

8   direct private flight from San Francisco to Shanghai is $884,000; a flight with one stop is $665,000.

9   (*Id.* ¶ 10.)  In addition, chartered private flights require approval from the PRC government, and it is

10  our understanding that approvals are a lengthy process and rarely granted.  (*Id.*)  Even if Jinhua were

11  to charter a flight, all of the pre-travel testing requirements still apply.  (*Id.*)

12         Moreover, if Jinhua's witnesses flew to Taiwan instead of mainland PRC, they would still

13  have to quarantine for seven days in Taiwan with an additional seven day "self-monitoring" period.

14  (*Id.* ¶ 14.)  When they fly to mainland China from Taiwan, they would then be subject to the same

15  quarantine requirements as when they fly from the U.S.  (*Id.*)  Additionally, Taiwan also has recently

16  seen a surge in positive COVID cases such that flying through Taiwan would further increase one's

17  total quarantine time.  (*Id.*)  Accordingly, Jinhua respectfully submits that taking the testimony of all

18  its witnesses remotely is still the fairest and most appropriate approach to complete the testimonial

19  portion of the trial.  It is the only way to ensure that the Court hears all the relevant testimony from

20  Jinhua's witnesses and that Jinhua's due process rights to present a full and complete defense are

21  protected.

22  **III.    CONCLUSION**

23         Given the PRC's repeated requests for and stated receptiveness to a request under the MLAA,

24  Jinhua asks that the Government submit an MLAA request to the PRC for the remote testimony of

25  defense witnesses Lu Wensheng, Wu Kunrong (Albert Wu), You Zhenfu (Jeff Yu), Wu Junsheng,

26  and Professor Jiang Ying.  In the alternative, if the Government will not submit an MLAA request,

27  Jinhua intends to promptly file the necessary papers for a letter rogatory, as set forth in the attached

28  draft motion.  (*See* Sloan Decl., Ex. 2.)  Regardless of whether the Government submits an MLAA

1 | request or Jinhua requests a letter rogatory, Jinhua respectfully requests that the Court continue the
2 | date for the resumption of trial to permit the PRC adequate time to respond, and that the Court
3 | schedule a new status conference on August 15, 2022.   We expect that the U.S. Government will
4 | inform the Court as soon as it hears back from the Chinese central government, and the parties will
5 | request an expedited status conference sooner than August 15 if the Chinese government responds
6 | well in advance of August 15.    In the event that the Chinese government approves the proposed
7 | remote testimony reasonably in advance of August 15, so that the parties have sufficient time to
8 | prepare for the resumption of trial by that date, however, Jinhua would propose using August 15,
9 | 2022 as the new date for the resumption of trial.

10 | Dated: June 13, 2022

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP


By:   _____/s/ Jack P. DiCanio_____
JACK P. DICANIO
Attorneys for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

---

11