JACK P. DICANIO (SBN 138782)
Jack.DiCanio@skadden.com
EMILY REITMEIER (SBN 305512)
Emily.Reitmeier@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:      (650) 470-4500
Facsimile:      (650) 470-4570

MATTHEW E. SLOAN (SBN 165165)
Matthew.Sloan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:      (213) 687-5000
Facsimile:      (213) 687-5600

*Attorneys for Defendant*
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.: 3:18-cr-00465-MMC |
| Plaintiff, | **DEFENDANT'S SUPPLEMENTAL INSTRUCTION RE: CORPORATE ACTION (RESPONDEAT SUPERIOR)** |
| v. | |
| UNITED MICROELECTRONICS CORPORATION, *et al.*, | Judge: The Honorable Maxine M. Chesney<br>Trial Date: February 28, 2022 |
| Defendants. | |

1   Pursuant to the Court's July 31, 2023, Order, on August 11, 2023, the parties submitted

2   proposed instructions of governing law and statements in support of those instructions. The parties

3   noted that the instructions were "a starting point from which to work" and that they "reserve[d] the

4   right to ask for additional or different instructions." ECF No. 602, at 2.

5   Based on additional research undertaken by Fujian Jinhua Integrated Circuit Co., Ltd.

6   ("Jinhua") in response to the questions asked by the government to Jinhua's witnesses, Jinhua hereby

7   submits a supplemental proposed instruction on Dispute 7: Instruction Re: Corporate Action

8   (Respondeat Superior). For the Court's ease, words added are underlined and words removed are

9   ~~struck through~~. Though the revisions concern only the part of the instruction involving ratification,

10  the entire instruction is reproduced for the Court's convenience.

11  Dated: September 19, 2023

SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

By: _____/s/ Jack P. DiCanio_____
JACK P. DICANIO
Attorney for Defendant
FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.

1  **DEFENDANT'S SUPPLEMENTAL INSTRUCTION RE: CORPORATE ACTION**
2  **(RESPONDEAT SUPERIOR)**

3     Defendant Jinhua is a corporation. A corporation is a legal entity that may act only through
4  individuals who are called its agents. A corporation may be held criminally responsible for
5  criminal conduct committed by its agents. The agents of a corporation are its officers, employees,
6  and other persons who are authorized by the corporation to act for it.

7     For a corporation to be held responsible for its agent's actions, both the corporation and the
8  agent must consent to the agency relationship—they must both indicate an agreement that the agent
9  is acting for the corporation and is subject to the corporation's control. A company or organization
10 cannot be held liable for the conduct committed by an agent prior to the creation of the agency
11 relationship or after the agency relationship terminates, unless the company, with knowledge of the
12 conduct, ratifies it. That is, a criminal act committed prior to the formation of an agency
13 relationship cannot be ratified later by the corporation because a defendant must be criminally
14 liable at the time when the crime takes place.

15    [Alternatively, if the Court holds that ratification applies in the criminal context, it applies
16 only if the company, with knowledge of the conduct, ratifies it. In order to prove that the company
17 ratified the agent's prior action, the government must prove that the company made a conscious
18 and affirmative decision to approve the relevant acts of the purported agent while in possession of
19 full and complete knowledge of all relevant events. Besides, the range of ratifiable acts is limited to
20 those done by the agent who have acted or purported to act on behalf of the company.]

21    Even when an agency relationship has been proven, a corporation may be held criminally
22 responsible for criminal conduct committed by its agent only if the agent was in an advisory or
23 managerial position, was acting within the scope of his authority, and was acting for the benefit of
24 the corporation. An agent acting outside the scope of the agent's duties may not bind the
25 corporation. In deciding whether an agent's act was within the scope of his authority, you should
26 consider such factors as where and when the acts took place, and their foreseeability.

27    A corporation can be held responsible for an agent's knowledge when the agent obtained

28

2

1  the knowledge in the course of the engagement with the corporation and within the scope of his or

2  her authority. To impose criminal liability on a corporation, the relevant personal knowledge is that

3  of the individual who took the action that the statute criminalizes, or, in appropriate circumstances,

4  the personal knowledge of the individual who directed or ratified the action taken. Additionally,

5  notice of a fact that an agent knows or has reason to know is not imputed to a corporation if the

6  agent acts adversely to the corporation in a transaction or matter, intending to act solely for the

7  agent's own purposes or those of another person.

8      A corporation is not liable for the acts of its agent if that person performed an act which the

9  corporation, in good faith, had forbidden them to perform. A corporate defendant is also not

10  responsible for acts which it tries to prevent. However, a corporate defendant, like an individual

11  defendant, may not avoid criminal responsibility by meaningless or purely self-serving

12  pronouncements.

13      You must give to a corporate defendant the same impartial consideration of the evidence

14  that you would give to an individual defendant. You may find a corporate defendant guilty or not

15  guilty of the offense charged under the same instructions that apply to an individual.

16

17  **Source**: Third Circuit Model Criminal Jury Instructions 7.06 (modified); See Also Eighth Circuit

18  Model Criminal Jury Instructions 5.03 (modified); Fourth Circuit Model Criminal Jury Instructions

19  VII.G (modified); Seventh Circuit Model Criminal Jury Instructions 5.03 (modified); Ninth Circuit

20  Model Civil Jury Instruction 4.7 (modified); Restatement (Third) Agency §§ 1.01, 2.03, 4.01, 4.06,

21  5.03, and 5.04 (2006); Restatement (Second) of Agency § 217D (1958); *Jones v. Royal*

22  *Administration Services, Inc.*, 887 F.3d 443, 448 (9th Cir. 2018); *People v. Park*, 87 Cal. App. 3d

23  550, 565 (1978); *United States v. Hilton Hotels Corp.*, 467 F.2d 1000 (9th Cir. 1972); *C.I.T. Corp.*

24  *v. United States*, 150 F.2d 85 (9th Cir. 1945); Restatement (Second) of Agency §§ 217D, 272, 276

25  (1958); *United States v. Beusch*, 596 F.2d 871 (9th Cir. 1979); *New York Cent. & H.R.R. Co. v.*

26  *United States*, 212 U.S. 481 (1909); *Curtis, Collins & Holbrook Co. v. United States*, 262 U.S. 215

27  (1923); *El Ranco, Inc. v. First Nat. Bank of Nev.*, 406 F.2d 1205 (9th Cir. 1968); *R.B.Z. v. Warwick*

28

1  *Dev. Co.*, 725 So. 2d 261, 264 (Ala. 1998); *Engen v. Mitch's Bar & Grill*, 1995 WL 387738 (Minn.

2  App. 1995); *United States v. President & Fellows of Harvard College*, 323 F. Supp. 2d 151, 192

3  (D. Mass. 2004); *United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010); *United States v.*

4  *Sayakhom*, 186 F.3d 928, 940 (9th Cir. 1999); *United States v. Covelli*, 738 F.2d 847, 859 (7th Cir.

5  1984); *People v. Pulido*, 15 Cal. 4th 713, 726 (1997); Francis Bowes Sayre, *Criminal*

6  *Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689, 708 (1930); *Mallory v. O'Neil*, 69 So.

7  2d 313, 314–15 (Fla. 1954); G. Robert Blakey & Brian J. Murray, *Threats, Free Speech, and the*

8  *Jurisprudence of the Federal Criminal Law*, 2002 B.Y.U. L. Rev. 829, 855 n.56 (2002); *United*

9  *States v. Fairchild*, 990 F.2d 1139, 1142 (9th Cir. 1993).

10

11  **I.      Jinhua's Position**

12         The government's burden is to prove beyond a reasonable doubt that an agent of Jinhua

13  completed each of the requisite *elements* of each offense—not just that he or she "participated in

14  the offense." The instruction above holds the government to its burden of proof. Jinhua's proposed

15  instruction is taken from several sister circuits' model *criminal* jury instruction which specifically

16  address corporate *criminal* liability and applicable case law. These well-reasoned instructions

17  accurately state the basis for criminal liability of a corporation for the acts of its agents, and should

18  be used in this case.

19         **1.      Limited Agency**: An agent cannot bind its principal beyond the scope of the agency

20  relationship. "It is the function delegated to the corporate officer or agent which determines his

21  power to engage the corporation in a criminal transaction." *C.I.T. Corp. v. United States*, 150 F.2d

22  85, 89 (9th Cir. 1945); *see also* Oliver Wendell Holmes Jr., *Agency*, 5 Harv. L. Rev. 1 (1891) ("[I]t

23  always has been the law that an agent could not bind his principal beyond the powers actually

24  given."); *see also* U.S. Dep't of Justice, Justice Manual § 9-28.210 (2018) ("Under the doctrine of

25  respondeat superior, a corporation may be held criminally liable for the illegal acts of its directors,

26  officers, employees, and agents. To hold a corporation liable for these actions, the government

27  must establish that the corporate agent's actions (i) were within the scope of his duties . . .."). The

28

4

1   government is not entitled to assume the scope of an agency relationship; it must prove it beyond a

2   reasonable doubt with evidence at trial.

3          Jinhua's instruction properly states the law as it relates when a corporation can be held

4   criminally responsible for an individual's criminal conduct. "A corporation is responsible for acts

5   and statements of its agents, done or made within the scope of their employment, even though their

6   conduct may be contrary to their actual instructions or contrary to the corporation's stated

7   policies." *United States v. Hilton Hotels Corp.*, 467 F.2d 1000 (9th Cir. 1972). Thus, while an

8   agent can act within the scope of their employment even if the corporation does not bless—or even

9   forbids—the act, this does not mean that a company is liable for *all* acts of its employees. It is only

10  liable for acts within the scope of employment. Thus, if Jinhua retained Mr. Chen as an agent for

11  hiring, for example, the government's case law establishes that Jinhua could be liable for *hiring-*

12  *related acts* even if not exactly what Jinhua authorized. But it would not support a broader finding

13  of liability beyond those hiring-specific acts. Jinhua's instruction properly states the law as to this

14  point and holds the government to its burden.

15         **2.      Ratification**: "[R]atification . . . is not a criminal-law doctrine." *United States v.*

16  *Covelli*, 738 F.2d 847, 859 (7th Cir. 1984) (quoting Rollin M. Perkins, *The Act of One Conspirator*,

17  26 Hastings L.J. 337, 344–345 (1974)); *see also People v. Pulido*, 15 Cal. 4th 713, 726 (1997).

18  "[T]he defendant's ratification of another's criminal act cannot form the basis of criminal liability"

19  because "[a] defendant must be criminally liable, if at all, at the time when the crime takes place."

20  Francis Bowes Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689, 708 &

21  n.70 (1930) (citing *Morse v. State*, 6 Conn. 9, 13 (Conn. 1825); *Cook v. Commonwealth.*, 132 S.W.

22  1032, 1032 (Ky. Ct. App. 1911); *Walker v. State*, 29 Tex. App. 621, 625 (Tex. Ct. App. 1891)); *see*

23  *also Mallory v. O'Neil*, 69 So. 2d 313, 314–15 (Fla. 1954); G. Robert Blakey & Brian J. Murray,

24  *Threats, Free Speech, and the Jurisprudence of the Federal Criminal Law*, 2002 B.Y.U. L. Rev.

25  829, 855 n.56 (2002) ("Ratification was not a ground on which to impose criminal as opposed to

26  civil responsibility at common law. Nor is it considered an independent basis for criminal

27  responsibility in the leading treatises, which are either silent on the matter or expressly reject it."

28

1    (citations omitted)).[1] The Ninth Circuit has agreed that "the criminal intent essential to the

2    commission of the crime must exist at the time of the criminal act." *United States v. Fairchild*, 990

3    F.2d 1139, 1142 (9th Cir. 1993) (quoting *United States v. Fox*, 95 U.S. 670, 671 (1877)). Indeed,

4    the government itself has acknowledged that "[a]n individual's ratification of another's criminal act

5    cannot form the basis of criminal liability" because "[h]e must be criminally liable, if at all, at the

6    time when the crime takes place." Br. for the United States, *Pinkerton v. United States*, No. 719,

7    1946 WL 26002, at *45 (U.S. Apr. 23, 1946).

8        In support of a ratification instruction, the government's proposed jury instruction cites to

9    the Third, Seventh, and Eighth Circuits' model jury instructions. ECF No. 602, at 52-53. But

10   besides not being from the Ninth Circuit, these model jury instructions do not cite any case law

11   applying a ratification theory to impute criminal liability. The Third and Seventh Circuits'

12   proposed instructions cite no cases supporting the instruction, and the Eighth Circuit's proposed

13   instruction cites a civil case.

14       But even if ratification was a criminal law doctrine, ~~The government acknowledges that a~~

15   ~~corporation can be liable for an agent's act when it adopts, approves, or ratifies them. The~~

16   ~~government even cites to the Eighth Circuit Model Criminal Jury Instruction 5.03. However,~~ the

17   government's instruction is notably silent as to including language from ~~that~~ the model instructions

18

19   [1] For other authority stating this rule, *see, e.g.*, William Lawrence Clark & William Lawrence
     Marshall, *A Treatise on the Law of Crimes* 484 (6th ed. rev. by Melvin F. Wingersky 1958) ("If an
20   unlawful act is done by a person's agent or servant without his authority, subsequent ratification of
     the act will not render him responsible. He must be liable, if at all, at the time the act is done.");
21   William Lawrence Clark, William Lawrence Marshall & Herschel Bouton Lazell, *A Treatise on the
     Law of Crimes* 267-68 (1905) ("A principal or master does not become criminally responsible for
22   the act of his agent or servant, committed without his knowledge or authority, by subsequently
     ratifying the same. He must be liable, if at all, at the time the act is done."); Joshua Dressler,
23   *Reassessing the Theoretical Underpinnings of Accomplice Liability: New Solutions to an Old
     Problem*, 37 Hastings L.J. 91, 110–11 (1985) ("Moreover, civil, but not criminal, liability can be
24   predicated not only on expressed or implied authority, but also on apparent authority or subsequent
     ratification."); Susan W. Brenner, *Of Complicity and Enterprise Criminality: Applying Pinkerton
25   Liability to RICO Actions*, 56 Mo. L. Rev. 931, 971 n.173 (1991) ("The major difference between
     imputing liability in criminal law and vicarious liability in civil law is that the latter allows liability
26   to be imposed for prior 'bad acts' that one subsequently adopts, or 'ratifies,' while the former does
     not."); Joshua Dressler, *Reforming Complicity Law: Trivial Assistance as a Lesser Offense?*, 5 Ohio
27   St. J. Crim. L. 427, 433 n.29 (2008) ("Moreover, civil agency law, but not criminal complicity law,
     recognizes 'ex post facto ratification.'" (quoting K.J.M. Smith, *A Modern Treatise on the Law of
28   Criminal Complicity* 75 (1991))).

of the other circuits. Without this language, the government's proposed instruction is incomplete and misleading.

Jinhua's proposed language (applicable if the Court disagrees with Jinhua's position that ratification does not apply in criminal cases), which is derived from the Ninth Circuit Model Civil Jury Instruction 4.7, properly sets forth that a principal can only be held liable for an agent's pre- or post- agency conduct if the principal ratifies the conduct after it occurs. What is more, ratification requires "an externally observable manifestation of assent to be bound by the prior act of another person." Restatement (Third) of Agency § 4.01 cmt. b (2006). "A person is not bound by a ratification made without knowledge of material facts involved in the original act when the person was unaware of such lack of knowledge." *Id.* § 4.06. While Jinhua has argued that the civil instructions are generally inappropriate, this language it uses from the Ninth Circuit Civil Instructions is consistent with the language from the Eight Circuit Model Criminal Jury instruction cited by the government. This language holds the government to its burden not just to show that an agent performed an act prior to the agency relationship being created, but that Jinhua made a "conscious and affirmative decision" to ratify the acts "while in possession of full and complete knowledge of all relevant events."

**3.      Apparent Authority**: In support of its instruction, the government cites the doctrine of apparent authority. But apparent authority does not apply here. "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 (2006). That is, apparent authority helps protect third parties who, for example, enter a contract reasonably believing that the agent has the power to bind the principal based on the conduct of the agent and/or the principal although the agent, in fact, lacks such actual authority. Apparent authority is inapplicable here, however. There is no argument that some actor had apparent authority to act for Jinhua and somehow interacted with a third party who mistakenly believed the actor to have actual authority to act for Jinhua. The government presumably wants to twist the doctrine to mean that

7

1   Jinhua can be criminally liable for actions by an actor who was not Jinhua's agent if it can make

2   some weaker argument that third parties might have believed the actor to be Jinhua's agent.

3   Apparent authority does not apply to such situations, and certainly not in a criminal context.

4          Nor do the government's cases support its apparent authority instruction. *United States v.*

5   *Hilton Hotels Corp.*, 467 F.2d 1000 (9th Cir. 1972), does not mention "apparent authority." In that

6   case, the district court instructed the jury that a corporation is liable for the acts and statements of

7   its agents "within the scope of their employment." *Id.* at 1004. The district court defined "scope of

8   employment" to mean "in the corporation's behalf in performance of the agent's general line of

9   work," including "not only that which has been authorized by the corporation, but also that which

10  outsiders could reasonably assume the agent would have authority to do." *Id.* In *Hilton*, the concept

11  of apparent authority was relevant because the perceptions of third parties mattered for imposing

12  criminal liability—the jury had to determine whether there was an unreasonable restraint on trade

13  under the Sherman Act so it could consider whether a restraint on trade was imposed by an actor

14  acting with the corporation's apparent authority. Moreover, the instruction recited above was not at

15  issue on appeal and so the Ninth Circuit did not consider it. But here, unlike in *Hilton*, there is no

16  argument that some actor had apparent authority to act for Jinhua and somehow interacted with a

17  third party who mistakenly believed the actor to have actual authority to act for Jinhua.

18         Similarly, *United States v. Beusch*, 596 F.2d 871 (9th Cir. 1979), which the government

19  cites, does not even mention "apparent authority." The challenged instruction quoted by the

20  government was challenged on the grounds that "it imposed strict liability." *Id.* at 877. And the

21  Ninth Circuit disagreed, holding that "it suggests that a corporation may be liable for acts of its

22  employees done contrary to express instructions and policies, but that the existence of such

23  instructions and policies may be considered in determining whether the employee in fact acted to

24  benefit the corporation." *Id.* at 878. Nowhere does *Beusch* state that a corporation can be liable

25  based on a third party incorrectly believing that someone was its agent.

26         Like in *Hilton*, the offense in *American Radiator & Standard Sanitary Corp.*, 433 F.2d 935

27  (3rd Cir. 1963), was price fixing in violation of the Sherman Act. Thus, apparent authority was

28

8

1   relevant and the corporation could be held liable for an agent acting outside the scope of his

2   employment, but with apparent authority, because liability was premised on third parties entering

3   into the agreements with the employee. *See also United States v. AU Optronics Corp.*, No. CR-09-

4   00110 SI, 2012 WL 889875 (N.D. Cal. Mar. 1, 2012), Dkt. 829 (jury instructions cited by the

5   government were in a price fixing case brought under the Sherman Act). Because the concepts of

6   apparent authority do not apply, the numerous references in the government's instruction to

7   apparent authority are improper and misstate the applicable law. Jinhua's instruction, which does

8   not refer to apparent authority, should be used instead.

9        **5.        Liability for Independent Contractor**: The government seeks to expand corporate

10  criminal liability to include acts committed by an independent contractor. But over a century of

11  precedent establishes that corporate *criminal* liability extends only to certain acts of an agent. In

12  *New York Central & Hudson River Railroad. Co. v. United States*, 212 U.S. 481 (1909), the

13  Supreme Court considered whether a corporation could be criminally responsible for the acts of an

14  agent. The Court explained that "[i]t is now well established that, in actions for tort, the corporation

15  may be held responsible for damages for the acts of its agent within the scope of his employment."

16  *Id.* at 493. The Court then held that "[a]pplying the principle governing *civil liability*, we go only a

17  step farther in holding that *the act of the agent*, while exercising the authority delegated to him"

18  could be sufficient to hold a corporation liable. *Id.* at 494 (emphasis added); *see also id.* at 494-95

19  ("[W]e see no good reason why corporations may not be held responsible for and charged with the

20  knowledge and purposes *of their agents*, acting within the authority conferred upon them."

21  (emphasis added)).

22       Although ordinarily "employers are not liable for the torts of independent contractors," *Ek*

23  *v. Herrington*, 939 F.2d 839, 843 (9th Cir. 1991), the government seeks to expand corporate

24  criminal liability to criminal acts of independent contractors. But the government can only cite one

25  case so holding—the 1947 out-of-circuit opinion in *United States v. Parfait Powder Puff Co.*, 163

26  F.2d 1008 (7th Cir. 1947). And this holding has <u>never</u> been repeated. Thus, the treatise on which

27  the government relies cites only this case. 1 Corporate Criminal Liability, 3d, § 3:6. Because a

28

DEFENDANT'S SUPPLEMENTAL INSTRUCTION RE: CORPORATE ACTION          CASE NO.: 3:18-cr-00465-MMC
(RESPONDEAT SUPERIOR)

1  corporation cannot be held liable for the criminal acts of an independent contractor, the Court

2  should reject the government's proposed instruction.

3      **6.**    **Liability of Directors:** According to the Restatement, "directors are neither the

4  shareholders' nor the corporation's agents." Restatement (Third) of Agency § 1.01 cmt. (f)(2).

5  "Directors' powers originate as the legal consequence of their election and are not conferred or

6  delegated by shareholders. Although corporation statutes require shareholder approval for specific

7  fundamental transactions, corporation law generally invests managerial authority over corporate

8  affairs in a board of directors, not in shareholders, providing that management shall occur by or

9  under the board of directors. Thus, shareholders ordinarily do not have a right to control directors

10  by giving binding instructions to them . . . In any event, directors' ability to bind the corporation is

11  invested in the directors as a board, not in individual directors acting unilaterally." *Id.* For example,

12  in *Novak v. NanoLogix, Inc.*, No. 5:13-CV-01971-EJD, 2014 WL 991119 (N.D. Cal. Mar. 11,

13  2014), the court held that a director of a company's meeting in California was insufficient to

14  establish specific personal jurisdiction because he "was not an agent of [the company] and thus his

15  actions do not, under these circumstances, form the basis for jurisdiction over the company,

16  whereas Mr. Barnhizer, an officer, could act in a way to establish jurisdiction." *Id.* at *4. Jinhua's

17  instruction properly excludes directors from the scope of respondeat superior.

18      **7.**    **Good Faith / Corporate Instructions**: As explained below in support of

19  Defendant's proposed good faith instruction, Jinhua's good faith is a defense to the charged

20  offenses. In this matter, the government bears the burden of proving beyond a reasonable doubt

21  that Jinhua, or its agents, committed the crimes in question with a knowing *mens rea*. However,

22  good faith serves as an absolute defense against the charged offenses, as in *United States v. Bush*,

23  626 F.3d 527, 539 (9th Cir. 2010), and *United States v. Sayakhom*, 186 F.3d 928, 940 (9th Cir.

24  1999).

25      The government's instruction, and its argument in support thereof, implies that because

26  compliance programs are not defenses to liability, such policies should not be considered by the

27  trier of fact. This is directly contrary to controlling Ninth Circuit precedent. While an individual

28

10

1  can be held criminally responsible for criminal conduct, even if such conduct were against

2  corporate policy or express instructions, the trier of fact should consider the existence of policies or

3  instructions preventing the acts at issue in determining whether the agent was acting to benefit the

4  corporation. *See United States v. Beusch*, 596 F.2d 871, 878 (9th Cir. 1979) (stating that "the

5  existence of such instructions and policies may be considered in determining whether the employee

6  in fact acted to benefit the corporation"). Jinhua's instruction properly instructs on the

7  consideration of these policies.

8      **8.     Managerial Role**: Neither the Supreme Court nor the Ninth Circuit has provided

9  firm guidance on when respondeat superior applies in the context of corporate criminal liability.

10  When it comes to respondeat superior for punitive damages, however, the Supreme Court has

11  adopted the Restatement of Agency's limitations. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526,

12  542–43 (1999) (quoting Restatement (Second) of Agency § 217C). And the Supreme Court has

13  labeled punitive damages "quasi-criminal." *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532

14  U.S. 424, 432 (2001) (*quoting Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991)). Therefore,

15  Jinhua argues here that it cannot be held criminally liable for the acts of any non-managerial

16  employee. *See* Restatement (Second) of Agency § 217D (Am. L. Inst. 1958).

17      The only cases which would be controlling precedent cited by the government are

18  distinguishable. Neither *United States v. Illinois Cent. R. Co.*, 303 U.S. 239 (1938), nor *Dollar S.S.*

19  *Co. v. United States*, 101 F.2d 638 (9th Cir. 1939), addressed this issue. In fact, *Illinois Central*

20  *Railroad* concerned the negligence of a "yardmaster," 303 U.S. at 241, and in *Dollar Steamship*,

21  the perpetrator was unknown, but under a "fiction" of "maritime law," the ship itself was

22  considered the perpetrator, 101 F.2d at 639.

23      **9.     Intent to Benefit the Corporation:** The government states that Jinhua implies that

24  an agent cannot intend to benefit both the corporation and the agent, and that an agent's purpose must

25  only to benefit the corporate principal. The government cites to Jinhua's Rule 29 Motion (ECF

26  449) at 33:23 and 35:12 in support of this inference. But Jinhua has not argued that an agent's purpose

27  must be *only* to benefit the corporate principal. It has argued the adverse interest exception to agency

28

**DEFENDANT'S SUPPLEMENTAL INSTRUCTION RE: CORPORATE ACTION**          **CASE NO.: 3:18-cr-00465-MMC**
**(RESPONDEAT SUPERIOR)**

1   liability, but that is discussed below in connection with the instruction on knowledge and intent of a

2   corporation. *See also* argument on "Intent to Benefit" in relation to the instruction on knowledge and

3   intent of a corporation.

DEFENDANT'S SUPPLEMENTAL INSTRUCTION RE: CORPORATE ACTION      CASE NO.: 3:18-cr-00465-MMC
(RESPONDEAT SUPERIOR)